1

**LAW OFFICES**
OF
2
**GARY W. GORSKI**
8459 NEPHI WAY
3
FAIR OAKS, CA 95628
(916) 965-6800
(916) 965-6801 FAX
4

5
**LAW OFFICE OF DANIEL M KARALASH**
1207 FRONT STREET, SUITE 15
SACRAMENTO, CA 95814
6
TELEPHONE: (916) 787-1234
FACSIMILE: (916) 787-0267
DMKARALASH@SUREWEST.NET
7

8
GARY W. GORSKI
SBN: 166526
9
DANIEL M. KARALASH
SBN 176422
10
Attorneys for Plaintiffs

11
**IN THE UNITED STATES DISTRICT COURT**

12
**IN AND FOR THE EASTERN DISTRICT OF CALIFORNIA**

13
-ooOoo-

| | |
|---|---|
| 14 JAMES ROTHERY, Esq.; ANDREA HOFFMAN ) | CASE NO.: |
| 15 ) | |
| Plaintiffs, ) | **COMPLAINT FOR:** |
| 16 ) | |
| vs. ) | **1.** RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS statute (hereafter "RICO"), Title 18, United States Code, Sections 1961 through 1968 |
| 17 ) | |
| 18 Former Sheriff LOU BLANAS; SHERIFF JOHN MCGINNIS; Detective TIM SHEEHAN; ) | |
| 19 Detective FRED MASON; SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, an ) | 2. 42 U.S.C. § 1983 (Fourteenth Amendment - Equal Protection - preferential treatment, including unconstitutional CCW statute and County policies on their face). |
| 20 independent branch of government of the COUNTY OF SACRAMENTO; COUNTY OF ) | |
| 21 SACRAMENTO; STATE OF CALIFORNIA ATTORNEY GENERAL JERRY BROWN; ) | |
| 22 DOES 1 through 25, unknown co-consipirators; ) ATTORNEY GENERAL MICHAEL B. MUKASEY ) | 3. 42 U.S.C. § 1983 (First and Fourteenth Amendment- Political Association and Speech) |
| 23 ) | |
| 24 Defendants. ) | 4. 42 U.S.C. § 1983 (Second and Fourteenth Amendment - unconstitutional CCW statute and policy) |
| 25 ) | |
| 26 ) | 5. 42 U.S.C. § 1983 (14th Amendment Privileges and Immunities) |
| 27 ) | |
| 28 ) | 6. 42 U.S.C. § 1983 (Ninth and Fourteenth Amendment) |
| ) | |
| | 7. 42 U.S.C. § 1983 (Fourteenth Amendment - unconstitutional CCW |

statute and Policy - re Honorably Retired California Peace Officers and Prima Facie Good Cause Standard) Defendants ATTORNEY GENERAL BROWN and ATTORNEY GENERAL MICHAEL B. MUKASEY **only.**

**CLASS ACTION CERTIFICATION REQUESTED**

**JURY TRIAL DEMANDED**

**COMES NOW** Plaintiffs who aver as follows:

1. Plaintiffs JAMES ROTHERY, Esq. and ANDREA HOFFMAN, are competent adults residing in the County of Sacramento, who have applied for permits to Carry Concealed Weapon (CCW) by filling out the appropriate applications and paying the required fee.

2. Plaintiffs have exhausted all CCW administrative appeal rights.

3. Plaintiffs, and others similarly situated, have been denied CCWs even though they were both qualified to have a CCW and they met the purported "good cause" criteria for issuance of a CCW, as that purported standard was applied to other approved applications.

4. Both would have sought to apply for Honorary Deputy Sheriff's Commissions, had such commissions been allowed to the general public.

5. By obtaining an Honorary Deputy Sheriff Commission, the Honorary Deputy Sheriff is given the same wallet badge as given to full time deputy sheriffs with a signed written credential issued by the Defendant Sheriff's themselves, allowing these individuals to use such credentials for the purposes of graft and favors (e.g. getting out of traffic tickets).

6. In additions, Plaintiff Hoffman requested an Honorary Deputy Sheriff's Commission, to the join the Sheriff's Posse, and to join the Sheriff's Aero-Squadron, and she was denied all such oral applications as there is no written application made available to the public, and till this date, no response to her appeal regarding her deputy commission.

7. Plaintiff Hoffman applied for a CCW in November of 2007, and was denied a CCW. Thereafter, she appealed the decision, and was again denied in 2008.

8. Plaintiff Rothery applied three separate times over the course of Defendant Blanas' and Defendant McGinnis' administrations, commencing in 2003, and submitting his third and final consecutive application August 31, 2006.

9.  Each time an application was denied, Plaintiff Rothery was advised that he could not apply for another year.

10. Approximately one week after he submitted his final application on August 31, 2006, he was contacted by a Detective of the Sheriff's Department, and then approximately one to two weeks later he was notified via written letter from the Sheriff's Department that his application was denied, but that he had the right to appeal.

11. Since he had lost his two previous appeals, he now for the first time realized the CCW application process was wrought with unequal application of the law, and was not fair, and did not file an appeal knowing that it would be summarily be denied.

12. Plaintiff Hoffman did not believe that her application would be denied because of the high crime area she lives in, and the threats to her life and safety.

13. Both Plaintiffs' were emotionally upset about their constitutional rights being violated in the CCW application process.

14. Defendants LOU BLANAS is the former elected Sheriff of the County of Sacramento in 1998 and 2002, with his co-conspirator, Defendant SHERIFF JOHN MCGINNIS (then Undersheriff as appointed By Blanas) being handed an election in 2006 to the present.

15. Defendants Detective TIM SHEEHAN and Detective FRED MASON are California Peace Officers and employees Defendant County of Sacramento Sheriff's Department.

16. Defendants Detective TIM SHEEHAN and Detective FRED MASON were co-conspirators with Defendants BLANAS and MCGINNIS in that they were used extensively to solicit bribe money from campaign contributors and in return assisted in having campaign contributors be issued CCWs and Honorary Deputy Sheriff's Commission.

17. Defendants Detective TIM SHEEHAN and Detective FRED MASON were co-conspirators with Defendants BLANAS and MCGINNIS in that they were used extensively to provide safety classes to campaign contributors only so that they may obtain CCWs, all during county hours authorized by Defendants BLANAS and MCGINNIS.

18. Defendant SACRAMENTO COUNTY SHERIFF'S DEPARTMENT is an independent branch of government of the COUNTY OF SACRAMENTO, created under California law.

19. Defendant COUNTY OF SACRAMENTO is an independent branch of government created

under the California Constitution and California Law.

20. Defendants Former Sheriff LOU BLANAS; SHERIFF JOHN MCGINNIS; Detective TIM SHEEHAN; Detective FRED MASON; SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, an independent branch of government of the COUNTY OF SACRAMENTO; COUNTY OF SACRAMENTO (hereinafter collectively known as "NAMED DEFENDANT RACKETEERS") have engaged in racketeering activities.

21. Plaintiffs' bring this suit for monetary damages and injunctive relief pursuant to the Racketeer Influenced and Corrupt Organizations statute (hereafter "RICO"), Title 18, United States Code, Sections 1961 through 1968, to put an end to this systematic, long-standing, and ongoing corruption of the County of Sacramento Sheriff's Department and to restore control of the organization's affairs to the general public.

22. The Racketeer Influenced and Corrupt Organizations (RICO) provisions are a chapter of the Organized Crime Control Act of 1970 (OCCA), Pub. L. 91-452, Title IX, 84 Stat. 941, as amended, 18 U.S.C. §§ 1961-1968 (1988 ed. and Supp. IV).  Section 1962(c) prohibits any person associated with an enterprise from conducting the affairs of the organization through a pattern of racketeering activity.

23. RICO does not require proof that either the racketeering enterprise or the predicate acts of racketeering were motivated by an economic purpose. *N.O.W. v. Scheidler*, 510 U.S. 249, 250 (1994).

24. **JURISDICTION**: Jurisdiction in this action is predicated upon Title 18, United States Code, Section 1964(b) and Title 28, United States Code, Sections 1331, 1345, and 2201.

25. **VENUE:** Venue for this action is predicated upon Title 18, United States Code, Section 1965 and Title 28, United States Code, Section 1391(b)).

## AVERMENTS

26. Defendant COUNTY OF SACRAMENTO SHERIFF'S DEPARTMENT's

27. Defendants, through a pattern of racketeering issue through commerce (i.e. U.S. Mail) false and fraudulent denial letters of CCW application with the proffered statements that there was no "good cause" for issuance of the CCW.

28. Defendants have engaged in misleading, deceptive or otherwise contrived actions and

schemes, in the course of denying qualified citizens and Plaintiffs CCWs, that is designed to mask the illegal and improper of denials of CCWs.  See *Riddell v. Riddell Washington Corp.*, 866 F.2d 1480, 1491 (D.C. Cir. 1989).

29. **The Enterprise:**  At all times material to this complaint, COUNTY OF SACRAMENTO SHERIFF'S DEPARTMENT constitutes an "enterprise" , as that term is defined in Title 18, United States Code, Section 1961(4), which enterprise was engaged in, and the activities of which affected interstate commerce. The enterprise has been, and continues to be, a government law enforcement agency which has been continuously and systematically controlled, exploited, and dominated in the conduct of its affairs by NAMED DEFENDANT RACKETEERS and Co-Conspirators in the manner and means which are described herein.

30. The term "enterprise" is defined in 18 U.S.C. § 1961(4) as including "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."

31. Over the last five or six terms of office for Sheriff, the County of Sacramento Sheriff's office and management level employees of the County of Sacramento have systematically exercised a sphere of influence over the issuance of Concealed Weapons Permits and Honorary Deputy Commissions (without completing any POST training, the commissions are signed by the Sheriff which consist of a peace officer wallet badge and Sheriff's official identification card which stated that the holder of such credential was an honorary deputy sheriff, and these badges and identification cards usually accompanied a concealed weapons permit if an application was made for one.)

32. These badges and identification cards are created using taxpayer funds, and are also made and issued by the same vendors and employees that are responsible for producing peace officer credentials for Full Time Active Duty Deputy Sheriffs.

33. Honorary Deputy Commissions are issued only to close friends and supporters of the Sheriff, and are not available to general members of the public.

34. **Acquiring and Maintaining Control of COUNTY OF SACRAMENTO SHERIFF'S DEPARTMENT:** Commencing sometime in 1986, Defendant Blanas was specifically recruited by former Sheriff Craig to raise money for political campaigns.  Later, Defendant

1    McGinnis joined the conspiracy through a process which later placed him in the position of

2    Sheriff.

3    35.   Defendants created various sub-organizations of the Enterprise ( **COUNTY OF**

4          **SACRAMENTO SHERIFF'S DEPARTMENT**) for the purposes of money laundering

5          campaign contributions and legitimizing the issuance of CCWs, Deputy Sheriff's

6          Commissions, and for campaign contributors and supporters to take tax deductions for their

7          campaign contributions.

8    36.   These sub-organizations are called the Sheriff's Aero Squadron and Sheriff's Posse.

9    37.   The Aero Squadron entity consists of wealthy campaign contributors who own private planes

10         and jets, used to transport Defendant Blanas in particular, to Las Vegas and various other

11         venues for personal, none business related reasons.

12   38.   The Posse consists of campaign contributors who own horses.

13   39.   Craig and Blanas conspired to sell their power to those who contributed money, through a

14         variety of acts, including the issuance of level 3 reserve status to individuals who contributed,

15         issuance of identification cards and badges to those who donated which constituted, issuance

16         of CCWs to those who donated, and promotion of individuals into key positions to effectuate

17         these acts, including individuals Captain Jim Cooper, Chief Bill Kelley, Detective Fred

18         Mason and Captain Tim Sheehan.

19   40.   Based upon information and belief, both unnamed co-conspirators Captain Cooper and Chief

20         Kelly were tacitly aware of the conspiracy and were peripheral participants.

21   41.   Defendant Blanas undertook a scheme and plan to infiltrate Defendant COUNTY OF

22         SACRAMENTO SHERIFF'S DEPARTMENT by soliciting bribes and extorting money

23         from individuals to use his election campaign and position of office with the COUNTY OF

24         SACRAMENTO SHERIFF'S DEPARTMENT as a conduit for money laundering.

25   42.   Mason, Kelly, Cooper and Sheehan have been part of Defendant Blanas' Hobbs act violations

26         by being placed in key positions, such as Internal Affairs (IA) and Special Investigations

27         Bureau (SIB) and in other sensitive positions since the  mid-1990s.

28   43.   NAMED DEFENDANT RACKETEERS up to and including the date of the filing of this

     complaint, in the Eastern District of California and elsewhere, defendants and co-conspirators

unlawfully, knowingly and intentionally did acquire and maintain, directly and indirectly, an interest in and control of the aforementioned enterprise which was engaged in, and the activities of which affected interstate commerce through a pattern of racketeering activity, as alleged herein, in violation of Title 18, United States Code, Sections 1962.

44. NAMED DEFENDANT RACKETEERS are all natural persons, and were sworn peace officers of the enterprise COUNTY OF SACRAMENTO SHERIFF'S DEPARTMENT, and have currently maintained *de facto* status.

45. NAMED DEFENDANT RACKETEERS are a group of individuals associated in fact with others in the conspiracy for the purpose of engaging in certain specified racketeering activities, conducting and participating in the affairs of an enterprise engaged in interstate commerce by and through a pattern of said racketeering activities, in violation of 18 U.S.C. § 1962.

FIRST CAUSE OF ACTION
RICO
**Title 18, United States Code, Sections 1961 through 1968**

46. All averments contained in this pleading herein are incorporated in their entirety, as though fully set forth below.

47. Defendant Blanas was specifically recruited by then Sheriff Craig because of his connections to well known developer Angelo Tsakopoulos in the Sacramento region, who is one of the largest and wealthiest land holders in the region.

48. This developer who owns AKT Development Corporation located at 7700 College Town Drive Suite #101 Sacramento, CA 95826, which said location is the hub and nerve center for other business entities, all closely associated with Defendants and their agents. Among these are John Anthony Christie (wife Julie Christie) who employees Defendant Blanas' wife, Nanette June. Also located at this address are Eleni Tsakopoulos-Kounalakis, president of AKT Development, inc., Mark Enes, executive vice president of AKT Investments Inc., and Frank Greg Stathos DBA Metro Properties.

49. **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

50. Former Sheriff Glenn Craig paid Defendant Blanas a Captains slot in return for Defendant

7

Blanas obtaining campaign contributions from various wealthy individuals and giving these contributions to Craig for payment of his Captain, Chief, and ultimately Under-Sheriff position.

51. Defendant Blanas was promoted to these positions, by-passing a civil service promotion process for the position of Captain, though there were more qualified individuals (Defendant Blanas was not even qualified for the position of Sergeant when employed by the Sacramento City Police Department as he had previously failed that exam on several occasions.)

52. During this period, Defendant Blanas (and later Defendant McGinnis) realized that many citizens of Sacramento County were applying for CCW permits.

53. Because of the demand for CCWs, Defendants were able to sell CCWs permits in return for both monetary campaign contributions and in-kind exchanges of wealth.

54. **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

55. Based upon information and belief, John and Julie Christie have become conduits for AKT Development Corporation (and related individuals and entities) disbursing campaign contributions to Defendant Blanas and McGinnis, and payments to Nanette June Blanas in the form of real estate sales commissions, and in return, have each received CCWs, and based upon information and belief, Honorary Deputy Commissions.

56. **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

57. John Christie was issued a CCW and based upon information and belief, an Honorary Deputy Sheriff Commission on or about 1/4/1999.

58. John Christie was either employed by or had a business interest in AKT Development Corporation, 7700 College Town Drive, Suite 101, Sacramento, CA  95826, as a licensed real estate broker at the time the CCW was issued.

59. At the same time, as part of the payment for his CCW, John Christie employed Defendant Blanas' wife, Nanette Blanas as a real estate agent working under his brokers license.

60. AKT Development and John Christie, are conduits for the personal campaign contributions of Angelo Tsakopoulos.

61.   Through AKT Development Corporation, acting as a conduit, John Christie paid DEFENDANT NAMED RACKETEERS campaign contributions and employed Defendant Blanas' wife.

62.   DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from AKT Development Corporation and John Christie and employed Defendant Blanas' wife, and in return for these payments in the form of campaign contributions, sales commissions, and employment opportunities, DEFENDANT NAMED RACKETEERS issued to John Christie a CCW in return for payment under color of authority.

63.   **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

64.   Julie Christie, the wife of John Christie, was issued a CCW and based upon information and belief, an Honorary Deputy Sheriff Commission on or about 12/15/1998.

65.   Based upon information and belief, Julie Christie has a financial relationship in AKT Development Corporation, 7700 College Town Drive, Suite 101, Sacramento, CA 95826, at the time the CCW was issued, since that is her husband's business as well.

66.   DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from Julie Christie and in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Julie Christie a CCW in return for payment under color of authority.

67.   **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

68.   William Christie was issued a CCW and based upon information and belief, an Honorary Deputy Sheriff Commission on or about 7/5/1990.

69.   William Christie paid DEFENDANT NAMED RACKETEERS campaign contributions.

70.   William Christie is believed to be a relation of John and Julie Christie, who also made campaign contributions to the DEFENDANT NAMED RACKETEERS.

71.   DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from this CCW permit holder contributed and in return for these payments in

1   the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to

2   William Christie a CCW in return for payment under color of authority.

3   72.   **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of

4   official right)

5   73.   David Bruce Fite was issued a CCW and based upon information and belief, an Honorary

6   Deputy Sheriff Commission on or about 1/23/2007.

7   74.   Fite is a member of the Aero Squadron.

8   75.   David Bruce Fite was either employed by or had a business interest in D. Bruce Fite &

9   Associates, Fite Construction & Development Co., and Fite Properties, all registered at 9857

10   Horn Road, Sacramento, CA 95827, at the time the CCW was issued.

11   76.   Through D. Bruce Fite & Associates, Fite Construction & Development Co., and Fite

12   Properties, acting as a conduit, David Bruce Fite paid DEFENDANT NAMED

13   RACKETEERS campaign contributions.

14   77.   DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of

15   official right from D. Bruce Fite & Associates, Fite Construction & Development Co., and

16   Fite Properties and in return for these payments in the form of campaign contributions,

17   DEFENDANT NAMED RACKETEERS issued to David Bruce Fite a CCW in return for

18   payment under color of authority.

19   78.   **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of

20   official right)

21   79.   Charles Fite was issued a CCW and based upon information and belief, an Honorary Deputy

22   Sheriff Commission on or about 4/20/1996.

23   80.   Fite is a member of the Aero Squadron.

24   81.   Based upon information and belief, Charles Fite was a relation of David Bruce Fite and in

25   connection with  D. Bruce Fite & Associates, Fite Construction & Development Co., and Fite

26   Properties at the time the CCW was issued.

27   82.   Through D. Bruce Fite & Associates, Fite Construction & Development Co., and Fite

28   Properties, acting as a conduit, Charles Fite paid DEFENDANT NAMED RACKETEERS

    campaign contributions.

83. DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from D. Bruce Fite & Associates, Fite Construction & Development Co., and Fite Properties and in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Charles Fite a CCW in return for payment under color of authority.

84. **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

85. Pete Halimi was issued a CCW and based upon information and belief, an Honorary Deputy Sheriff Commission on or about 1/2/2007.

86. Pete Halimi was either employed by or had a business interest in D. Bruce Fite & Associates, Fite Construction & Development Co., and Fite Properties, all registered at 9857 Horn Road, Sacramento, CA 95827, at the time the CCW was issued.

87. Through D. Bruce Fite & Associates, Fite Construction & Development Co., and Fite Properties, acting as a conduit, Pete Halimi paid DEFENDANT NAMED RACKETEERS campaign contributions.

88. Halimi is a member of the Aero Squadron.

89. DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from D. Bruce Fite & Associates, Fite Construction & Development Co., and Fite Properties and in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Pete Halimi a CCW in return for payment under color of authority.

90. **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

91. Patrick R. Frink was issued a CCW and based upon information and belief, an Honorary Deputy Sheriff Commission on or about 2/24/2000.

92. Patrick R. Frink was either employed by or had a business interest in Bob Frink Imports, Inc, and RPM Management, 5112 Madison Avenue, Suite 201, Sacramento, Ca 95841, at the time the CCW was issued.

93. Through Bob Frink Imports, Inc, and RPM Management, acting as a conduit, Patrick R. Frink

1    paid DEFENDANT NAMED RACKETEERS campaign contributions.

2    94.   DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of

3          official right from Bob Frink Imports, Inc, and RPM Management, and in return for these

4          payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS

5          issued to Patrick R. Frink a CCW in return for payment under color of authority.

6    95.   **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of

7          official right)

8    96.   Robert Frink was issued a CCW and based upon information and belief, an Honorary Deputy

9          Sheriff Commission on or about 5/18/1995.

10   97.   Robert Frink is believed to be a relation of Patrick R. Frink.

11   98.   Robert Frink was either employed by or had a business interest in Bob Frink Imports, Inc,

12         Bob Frink Mangement, Inc., and RPM Management, 5112 Madison Avenue, Suite 201,

13         Sacramento, Ca 95841, at the time the CCW was issued.

14   99.   Personally, and through Bob Frink Imports, Inc, and RPM Management, acting as a conduit,

15         Robert Frink paid DEFENDANT NAMED RACKETEERS campaign contributions and

16         made campaign loans, some of which were forgiven.

17   100.  DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of

18         official right from Bob Frink Imports, Inc, and RPM Management, and in return for these

19         payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS

20         issued to Robert Frink a CCW in return for payment under color of authority.

21   101.  **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of

22         official right)

23   102.  Richard Gord Hill was issued a CCW and based upon information and belief, an Honorary

24         Deputy Sheriff Commission on or about 9/6/2000.

25   103.  Richard Gord Hill was either employed by or had a business interest in Bob Frink

26         Management, Inc., RPM Management, 5112 Madison Avenue, Suite 201, Sacramento, CA

27         95841, at the time the CCW was issued.

28   104.  Through Bob Frink Management, Inc., RPM Management, acting as a conduit, Richard Gord

           Hill paid DEFENDANT NAMED RACKETEERS campaign contributions.

105.   DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from Bob Frink Management, Inc., RPM Management, and in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Richard Gord Hill a CCW in return for payment under color of authority.

106.   **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

107.   Edwin Gerber was issued a CCW and based upon information and belief, an Honorary Deputy Sheriff Commission on or about 9/25/2006.

108.   Edwin Gerber was either employed by or had a business interest in Energetic Painting and Drywall, Inc., 3030 Orange Grove Ave, North Highlands, CA 95660 at the time the CCW was issued.

109.   Through Energetic Painting and Drywall, Inc., acting as a conduit, Edwin Gerber paid DEFENDANT NAMED RACKETEERS campaign contributions.

110.   In addition, Edwin Gerber bought Defendant Blanas a vacation home in Reno, Nevada, and this home was purchased from other campaign contributors, Reynen and Bardis.

111.   DEFENDANT NAMED RACKETEERS obtained a vacation home and campaign contributions from Energetic Painting and Drywall, Inc. under color of official right, and in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Edwin Gerber a CCW in return for payment under color of authority.

112.   **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

113.   Bart E. Hightower was issued a CCW and based upon information and belief, an Honorary Deputy Sheriff Commission on or about 9/27/2005.

114.   Bart E. Hightower was either employed by or had a business interest in Porter, Scott, Weiberg & Delehant, 350 University Avenue, Suite 200, Sacramento, CA  95825,at the time the CCW was issued.

115.   Through Porter, Scott, Weiberg & Delehant, acting as a conduit, Bart E. Hightower paid DEFENDANT NAMED RACKETEERS campaign contributions.

116. DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from Porter, Scott, Weiberg & Delehant, and in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Bart E. Hightower a CCW in return for payment under color of authority.

117. **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

118. Jack Kimmel was issued a CCW and based upon information and belief, an Honorary Deputy Sheriff Commission on or about 12/1/1987.

119. Jack Kimmel was either employed by or had a business interest in Kimmel Construction, Inc., 1815 Stockton Boulevard, Sacramento, CA 95816, and Sacramento Rendering, Co., 11350 Kiefer Boulevard, Sacramento, CA 95830, at the time the CCW was issued.

120. Through Kimmel Construction, Inc., and Sacramento Rendering, Co., acting as a conduit, Jack Kimmel paid DEFENDANT NAMED RACKETEERS campaign contributions.

121. DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from Kimmel Construction, Inc., and Sacramento Rendering, Co., and in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Jack Kimmel a CCW in return for payment under color of authority.

122. **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

123. Michael Koewler was issued a CCW and based upon information and belief, an Honorary Deputy Sheriff Commission on or about 6/5/1996.

124. Michael Koewler was either employed by or had a business interest in Sacramento Rendering, Co., 11350 Kiefer Boulevard, Sacramento, CA 95830 at the time the CCW was issued.

125. Personally, and through Sacramento Rendering, Co., acting as a conduit, Michael Koewler paid DEFENDANT NAMED RACKETEERS campaign contributions.

126. DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from Sacramento Rendering, Co., and in return for these payments in the form

of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Michael Koewler a CCW in return for payment under color of authority.

127. **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

128. John Manikas was issued a CCW and based upon information and belief, an Honorary Deputy Sheriff Commission on or about 10/18/1994.

129. John Manikas was either employed by or had a business interest in Color Core Incorporated and Five Star Painting at 975 Fee Drive, Sacramento, CA 95815, at the time the CCW was issued.

130. Personally and through Color Core Incorporated and Five Star Painting acting as a conduit, John Manikas paid DEFENDANT NAMED RACKETEERS campaign contributions.

131. DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from Color Core Incorporated and Five Star Painting and in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to John Manikas a CCW in return for payment under color of authority.

132. **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

133. Kermit Schayltz was issued a CCW and based upon information and belief, an Honorary Deputy Sheriff Commission on or about 9/6/1996.

134. Kermit Schayltz was either employed by or had a business interest in Point-Walker, Inc., Lucky Derby Casino, 7433 Greenback Lane, Citrus Heights, CA 95610 at the time the CCW was issued.

135. Personally, and through Point-Walker, Inc., Lucky Derby Casino, acting as a conduit, Kermit Schayltz paid DEFENDANT NAMED RACKETEERS campaign contributions.

136. DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from Point-Walker, Inc., Lucky Derby Casino, and in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Kermit Schayltz a CCW in return for payment under color of authority.

137. **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of

1    official right)

2    138.   Michael Hisaw was issued a CCW and based upon information and belief, an Honorary

3           Deputy Sheriff Commission on or about 1/6/2000.

4    139.   Michael Hisaw was believed to be either employed by or had a business interest in Lucky

5           Derby Casino at the time the CCW was issued.

6    140.   Personally, and through Lucky Derby Casino acting as a conduit, Michael Hisaw paid

7           DEFENDANT NAMED RACKETEERS campaign contributions.

8    141.   DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of

9           official right from Lucky Derby Casino and in return for these payments in the form of

10          campaign contributions, DEFENDANT NAMED RACKETEERS issued to Michael Hisaw a

11          CCW in return for payment under color of authority.

12   142.   **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of

13          official right)

14   143.   Gerry Harris was issued a CCW and based upon information and belief, an Honorary Deputy

15          Sheriff Commission on or about 9/9/1999.

16   144.   Gerry Harris was believed to be either employed by or had a business interest in Lucky Derby

17          Casino at the time the CCW was issued.

18   145.   Gerry Harris is a known associate of Kermit Schayltz and Michael Hisaw.

19   146.   Personally, and through Lucky Derby Casino, acting as a conduit, Gerry Harris paid

20          DEFENDANT NAMED RACKETEERS campaign contributions.

21   147.   DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of

22          official right from Lucky Derby Casino and in return for these payments in the form of

23          campaign contributions, DEFENDANT NAMED RACKETEERS issued to Gerry Harris a

24          CCW in return for payment under color of authority.

25   148.   **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of

26          official right)

27   149.   Jack Sellers was issued a CCW and based upon information and belief, an Honorary Deputy

28          Sheriff Commission on or about 3/3/1993.

     150.   Jack Sellers was either employed by or had a business interest in Sacramento Coca-Cola

Bottling Company, Inc., P.O. Box 160608, Sacramento, CA 95816, at the time the CCW was issued.

151.  Personally, and through Sacramento Coca-Cola Bottling Company, Inc, acting as a conduit, Jack Sellers paid DEFENDANT NAMED RACKETEERS campaign contributions.

152.  DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from Sacramento Coca-Cola Bottling Company, Inc., and in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Jack Sellers a CCW in return for payment under color of authority.

153.  **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

154.  Ronald Sellers was issued a CCW and based upon information and belief, an Honorary Deputy Sheriff Commission on or about 3/3/1993 and 2/5/2001.

155.  Ronald Sellers was either employed by or had a business interest in Sacramento Coca-Cola Bottling Company, Inc., P.O. Box 160608, Sacramento, CA 95816, at the time the CCW was issued.

156.  Personally, and through Sacramento Coca-Cola Bottling Company, Inc., acting as a conduit, Ronald Sellers paid DEFENDANT NAMED RACKETEERS campaign contributions.

157.  DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from Sacramento Coca-Cola Bottling Company, Inc. and in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Ronald Sellers a CCW in return for payment under color of authority.

158.  **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

159.  Stephen Sellers was issued a CCW and based upon information and belief, an Honorary Deputy Sheriff Commission on or about 5/24/1994.

160.  Stephen Sellers is believed to be a relation of Jack Sellers.

161.  Stephen Sellers was either employed by or had a business interest in Sacramento Coca-Cola Bottling Company, Inc., P.O. Box 160608, Sacramento, CA 95816, at the time the CCW was issued.

162. Personally, and through Sacramento Coca-Cola Bottling Company, Inc., acting as a conduit, Stephen Sellers paid DEFENDANT NAMED RACKETEERS campaign contributions.

163. DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from Sacramento Coca-Cola Bottling Company, Inc. and in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Stephen Sellers a CCW in return for payment under color of authority.

164. **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

165. Margaret Abrate was issued a CCW and based upon information and belief, an Honorary Deputy Sheriff Commission on or about 4/28/1993.

166. Margaret Abrate was either employed by or had a business interest in Capitol Steel, Co., P.O. Box 215239, Sacramento, CA 95821, at the time the CCW was issued.

167. Through Capitol Steel, Co. acting as a conduit, Margaret Abrate paid DEFENDANT NAMED RACKETEERS campaign contributions.

168. DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from Capitol Steel, Co. and in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Margaret Abrate a CCW in return for payment under color of authority.

169. **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

170. James Anderson was issued a CCW and based upon information and belief, an Honorary Deputy Sheriff Commission on or about 11/21/1994.

171. James Anderson was either employed by or had a business interest in Pacific Coast Building Products, and Pacific Coast Companies at P.O. Box 160488, Sacramento, CA 95816, at the time the CCW was issued.

172. Personally and through Pacific Coast Building Products, and Pacific Coast Companies, acting as a conduit, James Anderson paid DEFENDANT NAMED RACKETEERS campaign contributions.

173. DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of

official right from Pacific Coast Building Products, and Pacific Coast Companies and in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to James Anderson a CCW in return for payment under color of authority.

174. **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

175. Richard Merri was issued a CCW and based upon information and belief, an Honorary Deputy Sheriff Commission on or about 5/21/1998.

176. Richard Merri was either employed by or had a business interest in Pacific Coast Building Products, and Pacific Coast Companies at P.O. Box 160488, Sacramento, CA 95816, and a close association with James Anderson, at the time the CCW was issued.

177. Personally and through Pacific Coast Building Products, and Pacific Coast Companies, acting as a conduit, Richard Merri paid DEFENDANT NAMED RACKETEERS campaign contributions.

178. DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from Pacific Coast Building Products, and Pacific Coast Companies and in close association with James Anderson, and in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Richard Merri a CCW in return for payment under color of authority.

179. **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

180. Stephen Beneto was issued a CCW and based upon information and belief, an Honorary Deputy Sheriff Commission on or about 8/28/1993.

181. Stephen Beneto was either employed by or had a business interest in Beneto Petroleum Products, P.O. Box 1496, West Sacramento, CA 95691, at the time the CCW was issued.

182. Personally, and through Beneto Petroleum Products acting as a conduit, Stephen Beneto paid DEFENDANT NAMED RACKETEERS campaign contributions.

183. DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from Beneto Petroleum Products and in return for these payments in the form of

campaign contributions, DEFENDANT NAMED RACKETEERS issued to Stephen Beneto a CCW in return for payment under color of authority.

184. **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

185. Christopher Hansen was issued a CCW and based upon information and belief, an Honorary Deputy Sheriff Commission on or about 6/30/1998.

186. Christopher Hansen was either employed by or had a business interest in Chris Hansen Insurance, 8788 Elk Grove Boulevard, Suite M, Elk Grove, CA 95624, at the time the CCW was issued.

187. Personally and through Chris Hansen Insurance, acting as a conduit, Christopher Hansen paid DEFENDANT NAMED RACKETEERS campaign contributions.

188. DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from Chris Hansen Insurance and in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Christopher Hansen a CCW in return for payment under color of authority.

189. **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

190. David Mastagni was issued a CCW and based upon information and belief, an Honorary Deputy Sheriff Commission on or about 12/30/1996.

191. David Mastagni was either employed by or had a business interest in Mastagni, Holstedt & Chiurazzi, 1912 I Street, Suite 102, Sacramento, CA 95814, at the time the CCW was issued.

192. Through Mastagni, Holstedt & Chiurazzi, acting as a conduit, David Mastagni paid DEFENDANT NAMED RACKETEERS campaign contributions.

193. DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from Mastagni, Holstedt & Chiurazzi, and in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to David Mastagni a CCW in return for payment under color of authority.

194. **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

195. Kathleen Mastagni was issued a CCW and based upon information and belief, an Honorary Deputy Sheriff Commission on or about 3/3/1994.

196. Based upon information and belief Kathleen Mastagni was either employed by or had a relationship with Mastagni, Holstedt & Chiurazzi, 1912 I Street, Suite 102, Sacramento, CA 95814, at the time the CCW was issued.

197. Through Mastagni, Holstedt & Chiurazzi, acting as a conduit, Kathleen Mastagni paid DEFENDANT NAMED RACKETEERS campaign contributions.

198. DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from Mastagni, Holstedt & Chiurazzi, and in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Kathleen Mastagni a CCW in return for payment under color of authority.

199. **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

200. John Holstedt was issued a CCW and based upon information and belief, an Honorary Deputy Sheriff Commission on or about 9/26/1988.

201. Based upon information and belief John Holsdtedt was either employed by or had a relationship with Mastagni, Holstedt & Chiurazzi, 1912 I Street, Suite 102, Sacramento, CA 95814, at the time the CCW was issued.

202. Through Mastagni, Holstedt & Chiurazzi acting as a conduit, John Holstedt paid DEFENDANT NAMED RACKETEERS campaign contributions.

203. DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from Mastagni, Holstedt & Chiurazzi and in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to John Holstedt a CCW in return for payment under color of authority.

204. **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

205. Joseph Mohamed was issued a CCW and based upon information and belief, an Honorary Deputy Sheriff Commission on or about 3/15/1994.

206. Joseph Mohamed was either employed by or had a business interest in Joseph Mohamed

Enterprises, 4405 College Oak Drive, Sacramento, CA 95841, at the time the CCW was issued.

207. Joseph Mohamed was a member of the Sheriff's Posse.

208. Through Joseph Mohamed Enterprises acting as a conduit, Joseph Mohamed paid DEFENDANT NAMED RACKETEERS campaign contributions.

209. DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from Joseph Mohamed Enterprises and in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Joseph Mohamed a CCW in return for payment under color of authority.

210. **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

211. John Mohamed was issued a CCW and based upon information and belief, an Honorary Deputy Sheriff Commission on or about 12/28/1987.

212. John Mohamed was either employed by or had a business interest in Joseph Mohamed Enterprises, 4405 College Oak Drive, Sacramento, CA 95841, at the time the CCW was issued.

213. Through Joseph Mohamed Enterprises acting as a conduit, John Mohamed paid DEFENDANT NAMED RACKETEERS campaign contributions.

214. DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from Joseph Mohamed Enterprises and in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to John Mohamed a CCW in return for payment under color of authority.

215. **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

216. Ahmed Mohamed was issued a CCW and based upon information and belief, an Honorary Deputy Sheriff Commission on or about 2/10/1996.

217. Ahmed Mohamed is believed to be a relation of Joseph Mohamed.

218. Ahmed Mohamed was either employed by or had a business interest in Joseph Mohamed Enterprises, 4405 College Oak Drive, Sacramento, CA 95841, at the time the CCW was

1    issued.

2    219.   Through Joseph Mohamed Enterprises acting as a conduit, Ahmed Mohamed paid

3           DEFENDANT NAMED RACKETEERS campaign contributions.

4    220.   DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of

5           official right from Joseph Mohamed Enterprises and in return for these payments in the form

6           of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Ahmed

7           Mohamed a CCW in return for payment under color of authority.

8    221.   **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of

9           official right)

10   222.   Shirley Mohamed was issued a CCW and based upon information and belief, an Honorary

11          Deputy Sheriff Commission on or about 7/3/1993.

12   223.   Shirley Mohamed is believed to be a relation of Ahmed Mohamed and Joseph Mohamed.

13   224.   Shirley Mohamed was either employed by or had a business interest in Joseph Mohamed

14          Enterprises, 4405 College Oak Drive, Sacramento, CA 95841, at the time the CCW was

15          issued.

16   225.   Through Joseph Mohamed Enterprises acting as a conduit, Shirley Mohamed paid

17          DEFENDANT NAMED RACKETEERS campaign contributions.

18   226.   DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of

19          official right from Joseph Mohamed Enterprises and in return for these payments in the form

20          of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Shirley

21          Mohamed a CCW in return for payment under color of authority.

22   227.   **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of

23          official right)

24   228.   Ed Rincon was issued a CCW and based upon information and belief, an Honorary Deputy

25          Sheriff Commission on or about 12/31/1997.

26   229.   Ed Rincon was either employed by or had a business interest in Ed Rincon Towing, 1762

27          Santa Ynez Way, Sacramento, CA 95816, at the time the CCW was issued.

28   230.   Through Ed Rincon Towing acting as a conduit, Ed Rincon paid DEFENDANT NAMED

            RACKETEERS campaign contributions.

231.   DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from Ed Rincon Towing and in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Ed Rincon a CCW in return for payment under color of authority.

232.   **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

233.   Julie Rollofson was issued a CCW and based upon information and belief, an Honorary Deputy Sheriff Commission on or about 3/5/1999.

234.   Julie Rollofson was either employed by or had a business interest in Donald P. Rollofson, D.M.D., Inc., 9727 Elk Grove-Florin Road, Suite 280, Elk Grove, CA 95624, at the time the CCW was issued.

235.   Through Donald P. Rollofson, D.M.D., Inc. acting as a conduit, Julie Rollofson paid DEFENDANT NAMED RACKETEERS campaign contributions.

236.   DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from Donald P. Rollofson, D.M.D., Inc. and in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Julie Rollofson a CCW in return for payment under color of authority.

237.   **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

238.   David Smith was issued a CCW and based upon information and belief, an Honorary Deputy Sheriff Commission on or about 12/9/1995.

239.   David Smith was either employed by or had a business interest in Eagle Ridge Development and Eagle Ridge Construction & Roofing, 11721 Fair Oaks Boulevard, Fair Oaks, CA 95628, at the time the CCW was issued.

240.   Through Eagle Ridge Development and Eagle Ridge Construction & Roofing acting as a conduit, David Smith paid DEFENDANT NAMED RACKETEERS campaign contributions.

241.   DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from Eagle Ridge Development and Eagle Ridge Construction & Roofing and in return for these payments in the form of campaign contributions, DEFENDANT NAMED

RACKETEERS issued to David Smith a CCW in return for payment under color of authority.

242. **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

243. Benjamin Upton was issued a CCW and based upon information and belief, an Honorary Deputy Sheriff Commission on or about 7/11/1994.

244. Benjamin Upton was either employed by or had a business interest in Valley Painting, 8999 Elk Grove-Florin Road, Elk Grove, CA 95624, at the time the CCW was issued.

245. Through Valley Painting acting as a conduit, Benjamin Upton paid DEFENDANT NAMED RACKETEERS campaign contributions.

246. DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from Valley Painting and in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Benjamin Upton a CCW in return for payment under color of authority.

247. **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

248. Ronald D. Yee was issued a CCW and based upon information and belief, an Honorary Deputy Sheriff Commission on or about 12/9/1996.

249. Ronald D. Yee was either employed by or had a business interest in Ronald D. Yee, D.D.S., Inc, 7213 Fawn Way, Sacramento, CA 95823, at the time the CCW was issued.

250. Through Ronald D. Yee, D.D.S., Inc acting as a conduit Ronald D. Yee paid DEFENDANT NAMED RACKETEERS campaign contributions.

251. DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from Ronald D. Yee, D.D.S., Inc and in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Ronald D. Yee a CCW in return for payment under color of authority.

252. **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

253. Lloyd O'Kieff Snelson was issued a CCW in 1979.

254. Lloyd O'Kieff Snelson paid DEFENDANT NAMED RACKETEERS campaign contributions.

255. DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from this CCW permit holder contributed and in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Lloyd O'Kieff Snelson a CCW in return for payment under color of authority.

256. **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

257. James Teel was issued a CCW and based upon information and belief, an Honorary Deputy Sheriff Commission on or about 6/11/1987.

258. James Teel paid DEFENDANT NAMED RACKETEERS campaign contributions.

259. DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from this CCW permit holder contributed and in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to James Teel a CCW in return for payment under color of authority.

260. **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

261. John Francis Valensin was issued a CCW and based upon information and belief, an Honorary Deputy Sheriff Commission on or about 9/18/1987.

262. John Francis Valensin paid DEFENDANT NAMED RACKETEERS campaign contributions in the form of loans that appear to be forgiven.

263. John Francis Valensin resides in Galt, which is outside the jurisdiction of Sacramento County.

264. DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from this CCW permit holder contributed and in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to John Francis Valensin a CCW in return for payment under color of authority.

265. **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

266.   Dale W. Mahon  was issued a CCW and based upon information and belief, an Honorary Deputy Sheriff Commission on or about 1/1/1988.

267.   Dale W. Mahon was a member of the Sheriff's Posse.

268.   Dale W. Mahon paid DEFENDANT NAMED RACKETEERS campaign contributions.

269.   DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from this CCW permit holder contributed and in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Dale W. Mahon a CCW in return for payment under color of authority.

270.   **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

271.   Christopher Taylor was issued a CCW and based upon information and belief, an Honorary Deputy Sheriff Commission on or about 5/25/1988.

272.   Christopher Taylor is believed to be related to John Taylor Fertilizer who is also a campaign contributor.

273.   Christopher Taylor paid DEFENDANT NAMED RACKETEERS campaign contributions.

274.   DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from this CCW permit holder contributed and in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Christopher Taylor a CCW in return for payment under color of authority.

275.   **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

276.   Spencer C. Bole was issued a CCW and based upon information and belief, an Honorary Deputy Sheriff Commission on or about 8/12/1988.

277.   At the time he was issued a CCW, Spencer C. Bole was the Deputy Director of General Services of Sacramento County.

278.   Spencer C. Bole paid DEFENDANT NAMED RACKETEERS campaign contributions.

279.   DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from this CCW permit holder contributed and in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to

Spencer C. Bole a CCW in return for payment under color of authority.

280. **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

281. Kent H. Gould was issued a CCW and based upon information and belief, an Honorary Deputy Sheriff Commission on or about 1/1/1989.

282. Kent H. Gould was either employed by or had a business interest in R & G Associates, Inc. at the time the CCW was issued.

283. Kent H. Gould presides outside of the jurisdiction of Sacramento County.

284. Through R & G Associates, Inc. acting as a conduit, Kent H. Gould paid DEFENDANT NAMED RACKETEERS campaign contributions.

285. DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from R & G Associates and in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Kent H. Gould a CCW in return for payment under color of authority.

286. **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

287. George Albert Gould was issued a CCW and based upon information and belief, an Honorary Deputy Sheriff Commission on or about 10/21/1996.

288. George Albert Gould is believed to be in relation to Kent H.Gould.

289. George Albert Gould paid DEFENDANT NAMED RACKETEERS campaign contributions.

290. DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from this CCW permit holder contributed and in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to George Albert Gould a CCW in return for payment under color of authority.

291. **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

292. George Paras was issued a CCW and based upon information and belief, an Honorary Deputy Sheriff Commission on or about 5/1/1989.

293. George Paras paid DEFENDANT NAMED RACKETEERS campaign contributions.

294. DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from this CCW permit holder contributed and in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to George Paras a CCW in return for payment under color of authority.

295. **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

296. Clinton Luhmann was issued a CCW and based upon information and belief, an Honorary Deputy Sheriff Commission on or about 7/25/1992.

297. Clinton Luhmann paid DEFENDANT NAMED RACKETEERS campaign contributions.

298. Clinton Luhmann and George Paras, who also made donations to the DEFENDANT NAMED RACKETEERS, were neighbors in an upscale neighborhood on Del Dayo Drive.

299. DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from this CCW permit holder contributed and in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Clinton Luhmann a CCW in return for payment under color of authority.

300. **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

301. Joseph Consulo was issued a CCW and based upon information and belief, an Honorary Deputy Sheriff Commission on or about 11/13/1989.

302. Joseph Consulo paid DEFENDANT NAMED RACKETEERS campaign contributions.

303. DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from this CCW permit holder contributed and in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Joseph Consulo a CCW in return for payment under color of authority.

304. **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

305. Maurica Marie Crooks was issued a CCW and based upon information and belief, an Honorary Deputy Sheriff Commission on or about 10/5/1992.

306. Maurica Marie Crooks paid DEFENDANT NAMED RACKETEERS campaign

contributions.

307. DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from this CCW permit holder contributed and in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Maurica Marie Crooks return for payment under color of authority.

308. **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

309. Craig Regan was issued a CCW and based upon information and belief, an Honorary Deputy Sheriff Commission on or about 5/21/1993.

310. Craig Regan paid DEFENDANT NAMED RACKETEERS campaign contributions.

311. DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from this CCW permit holder contributed and in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Craig Regan a CCW in return for payment under color of authority.

312. **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

313. James Colafrancesco was issued a CCW and based upon information and belief, an Honorary Deputy Sheriff Commission on or about 7/22/1993.

314. James Colafrancesco paid DEFENDANT NAMED RACKETEERS campaign contributions.

315. James Colafrancesco was arrested for (**) .  As stated in the police report, James Colafrancesco said "***".

316. DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from this CCW permit holder contributed and in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to James Colafrancesco a CCW in return for payment under color of authority.

317. **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

318. Roger V. Bennett was issued a CCW and based upon information and belief, an Honorary Deputy Sheriff Commission on or about 8/24/1993.

319.   Roger V. Bennett paid DEFENDANT NAMED RACKETEERS campaign contributions.

320.   DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from this CCW permit holder contributed and in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Roger V. Bennett a CCW in return for payment under color of authority.

321.   **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

322.   Jose Ramirez was issued a CCW and based upon information and belief, an Honorary Deputy Sheriff Commission on or about 1/24/1994.

323.   Jose Ramirez paid DEFENDANT NAMED RACKETEERS campaign contributions.

324.   DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from this CCW permit holder contributed and in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Jose Ramirez a CCW in return for payment under color of authority.

325.   **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

326.   Anselmo Padilla was issued a CCW and based upon information and belief, an Honorary Deputy Sheriff Commission on or about 1/31/1994.

327.   Anselmo Padilla paid DEFENDANT NAMED RACKETEERS campaign contributions.

328.   Anselmo Padilla is believed to be a relation of Alejandro Reid Padilla, Greg A. Padilla, and Jess "Leonard" Padilla; who all made campaign contributions to the DEFENDANT NAMED RACKETEERS.

329.   Defendants conditioned issuance of the CCW on a bail bonds company based upon their contribution, and essentially extorted money from the Padilla Bail bond entities as employees of a bail bond company have no chance of obtaining a CCW without payment of campaign contributions.

330.   DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from this CCW permit holder contributed and in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to

Anselmo Padilla a CCW in return for payment under color of authority.

331. **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

332. Alejandro Reid Padilla was issued a CCW and based upon information and belief, an Honorary Deputy Sheriff Commission on or about 5/11/1995.

333. Alejandro Reid Padilla paid DEFENDANT NAMED RACKETEERS campaign contributions.

334. Alejandro Reid Padilla is believed to be a relation of Anselmo Padilla, Greg A. Padilla, and Jess "Leonard" Padilla; who all made campaign contributions to the DEFENDANT NAMED RACKETEERS.

335. DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from this CCW permit holder contributed and in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Alejandro Reid Padilla a CCW in return for payment under color of authority.

336. **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

337. Greg A. Padilla was issued a CCW and based upon information and belief, an Honorary Deputy Sheriff Commission on or about 12/30/1996

338. Greg A. Padilla paid DEFENDANT NAMED RACKETEERS campaign contributions.

339. Greg A. Padilla is believed to be a relation of Anselmo Padilla, Alejandro Reid Padilla, and Jess "Leonard" Padilla; who all made campaign contributions to the DEFENDANT NAMED RACKETEERS.

340. DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from this CCW permit holder contributed and in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Greg A. Padilla a CCW in return for payment under color of authority.

341. **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

342. Jess "Leonard" Padilla was issued a CCW and based upon information and belief, an

1    Honorary Deputy Sheriff Commission on or about 8/11/1997.

2    343.   Jess "Leonard" Padilla paid DEFENDANT NAMED RACKETEERS campaign

3    contributions.

4    344.   Jess "Leonard" Padilla is believed to be a relation of Anselmo Padilla, Alejandro Reid

5    Padilla, and Greg A. Padilla; who all made campaign contributions to the DEFENDANT

6    NAMED RACKETEERS.

7    345.   DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of

8    official right from this CCW permit holder contributed and in return for these payments in

9    the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Jess

10    "Leonard" Padilla a CCW in return for payment under color of authority.

11    346.   **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of

12    official right)

13    347.   Darrell J. Dettling was issued a CCW and based upon information and belief, an Honorary

14    Deputy Sheriff Commission on or about 6/30/1994.

15    348.   Based upon information and belief, Dettling Development was used as a conduit to funnel

16    such contributions.

17    349.   Darrell J. Dettling paid DEFENDANT NAMED RACKETEERS campaign contributions.

18    350.   DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of

19    official right from this CCW permit holder contributed and in return for these payments in

20    the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to

21    Darrell J. Dettling a CCW in return for payment under color of authority.

22    351.   **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of

23    official right)

24    352.   Stanley Silva was issued a CCW and based upon information and belief, an Honorary Deputy

25    Sheriff Commission on or about 10/2/1994.

26    353.   Stanley Silva paid DEFENDANT NAMED RACKETEERS campaign contributions.

27    354.   DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of

28    official right from this CCW permit holder contributed and in return for these payments in

the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to

Stanley Silva a CCW in return for payment under color of authority.

355. **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

356. James Crump, Jr. was issued a CCW and based upon information and belief, an Honorary Deputy Sheriff Commission on or about 10/27/1994.

357. James Crump, Jr. paid DEFENDANT NAMED RACKETEERS campaign contributions.

358. DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from this CCW permit holder contributed and in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to James Crump, Jr. a CCW in return for payment under color of authority.

359. **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

360. Alvin Earl Ricci was issued a CCW and based upon information and belief, an Honorary Deputy Sheriff Commission on or about 11/28/1994.

361. Alvin Earl Ricci paid DEFENDANT NAMED RACKETEERS campaign contributions.

362. Alvin Earl Ricci is believed to be a relation of Gary M. Ricci, who also made campaign contributions to the DEFENDANT NAMED RACKETEERS.

363. DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from this CCW permit holder contributed and in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Alvin Earl Ricci a CCW in return for payment under color of authority.

364. **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

365. Gary M. Ricci was issued a CCW and based upon information and belief, an Honorary Deputy Sheriff Commission on or about 7/24/1996.

366. Gary M. Ricci paid DEFENDANT NAMED RACKETEERS campaign contributions.

367. Gary M. Ricci is believed to be a relation of Alvin Earl Ricci, who also made campaign contributions to the DEFENDANT NAMED RACKETEERS.

368. DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of

official right from this CCW permit holder contributed and in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Gary M. Ricci a CCW in return for payment under color of authority.

369.   **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

370.   Douglas Barkdull was issued a CCW and based upon information and belief, an Honorary Deputy Sheriff Commission on or about 1/30/1995.

371.   Douglas Barkdull paid DEFENDANT NAMED RACKETEERS campaign contributions.

372.   Douglas Barkdull is believed to preside in Scottsdale, Arizona which is outside the jurisdiction of Sacramento County.

373.   DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from this CCW permit holder contributed and in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Douglas Barkdull a CCW in return for payment under color of authority.

374.   **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

375.   Rico Morotti was issued a CCW and based upon information and belief, an Honorary Deputy Sheriff Commission on or about 4/14/1995.

376.   Rico Morotti paid DEFENDANT NAMED RACKETEERS campaign contributions.

377.   DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from this CCW permit holder contributed and in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Rico Morotti a CCW in return for payment under color of authority.

378.   **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

379.   Peter G. Scordakis was issued a CCW and based upon information and belief, an Honorary Deputy Sheriff Commission on or about 6/5/1995.

380.   Peter G. Scordakis paid DEFENDANT NAMED RACKETEERS campaign contributions.

381.   DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of

official right from this CCW permit holder contributed and in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Peter G. Scordakis a CCW in return for payment under color of authority.

382.   **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

383.   George G. Brannigan was issued a CCW and based upon information and belief, an Honorary Deputy Sheriff Commission on or about 7/7/1995.

384.   George G. Brannigan paid DEFENDANT NAMED RACKETEERS campaign contributions (major contributor + $20,000).

385.   DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from this CCW permit holder contributed and in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to George G. Brannigan a CCW in return for payment under color of authority.

386.   **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

387.   Daryl B. Foreman was issued a CCW and based upon information and belief, an Honorary Deputy Sheriff Commission on or about 10/27/1995.

388.   Daryl B. Foreman paid DEFENDANT NAMED RACKETEERS campaign contributions.

389.   DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from this CCW permit holder contributed and in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Daryl B. Foreman a CCW in return for payment under color of authority.

390.   **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

391.   William Mosher  was issued a CCW and based upon information and belief, an Honorary Deputy Sheriff Commission on or about 11/1/1995.

392.   William Mosher paid DEFENDANT NAMED RACKETEERS campaign contributions.

393.   DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from this CCW permit holder contributed and in return for these payments in

the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to William Mosher a CCW in return for payment under color of authority.

394. **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

395. Ernest Charles Martini was issued a CCW and based upon information and belief, an Honorary Deputy Sheriff Commission on or about 12/9/1995.

396. Ernest Charles Martini paid DEFENDANT NAMED RACKETEERS campaign contributions.

397. DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from this CCW permit holder contributed and in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Ernest Charles Martini a CCW in return for payment under color of authority.

398. **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

399. Spiro Vasos was issued a CCW and based upon information and belief, an Honorary Deputy Sheriff Commission on or about 2/5/1996.

400. Spiro Vasos paid DEFENDANT NAMED RACKETEERS campaign contributions.

401. DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from this CCW permit holder contributed and in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Spiro Vasos a CCW in return for payment under color of authority.

402. **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

403. Robert J. Lessman was issued a CCW and based upon information and belief, an Honorary Deputy Sheriff Commission on or about 2/23/1996.

404. Robert J. Lessman paid DEFENDANT NAMED RACKETEERS campaign contributions.

405. DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from this CCW permit holder contributed and in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to

Robert J. Lessman a CCW in return for payment under color of authority.

406. **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

407. Alan Fukushima was issued a CCW and based upon information and belief, an Honorary Deputy Sheriff Commission on or about 5/4/1996.

408. Alan Fukushima paid DEFENDANT NAMED RACKETEERS campaign contributions.

409. DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from this CCW permit holder contributed and in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Alan Fukushima a CCW in return for payment under color of authority.

410. **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

411. James Donald Sandison was issued a CCW and based upon information and belief, an Honorary Deputy Sheriff Commission on or about 5/6/1996.

412. Through the Law Offices of Whaley and Anderson acting as a conduit, James Donald Sandison paid DEFENDANT NAMED RACKETEERS campaign contributions.

413. DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from Law Offices of Whaley and Anderson  and in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to James Donald Sandison a CCW in return for payment under color of authority.

414. **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

415. Christopher Ahern Lee was issued a CCW and based upon information and belief, an Honorary Deputy Sheriff Commission on or about 7/24/1996.

416. Christopher Ahern Lee paid DEFENDANT NAMED RACKETEERS campaign contributions.

417. Christopher Ahern Lee stated that he "confronts strangers on his property",when applying for his CCW.

418. DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of

official right from this CCW permit holder contributed and in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Christopher Ahern Lee a CCW in return for payment under color of authority.

419.   **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

420.   Louis A. Porta, Jr. was issued a CCW and based upon information and belief, an Honorary Deputy Sheriff Commission on or about 7/29/1996.

421.   Louis A. Porta, Jr. paid DEFENDANT NAMED RACKETEERS campaign contributions.

422.   DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from this CCW permit holder contributed and in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Louis A. Porta, Jr. a CCW in return for payment under color of authority.

423.   **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

424.   James Franklin Grey was issued a CCW and based upon information and belief, an Honorary Deputy Sheriff Commission on or about 7/30/1996.

425.   James Franklin Grey was either employed by or had a business interest in [****banking] at the time the CCW was issued.

426.   James Franklin Grey paid DEFENDANT NAMED RACKETEERS campaign contributions.

427.   James Franklin Grey is believed to be a relation of Sam Manalokas, who also made campaign contributions to the DEFENDANT NAMED RACKETEERS.

428.   DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from this CCW permit holder contributed and in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to James Franklin Grey a CCW in return for payment under color of authority.

429.   **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

430.   Sam Manalokas was issued a CCW and based upon information and belief, an Honorary Deputy Sheriff Commission on or about 2/28/1993 and 7/14/1994.

431.  Sam Manalokas paid DEFENDANT NAMED RACKETEERS campaign contributions.

432.  Sam Manalokas is believed to be related to James Franklin Grey, who also made campaign contributions to the DEFENDANTS NAMED RACKETEERS.

433.  Sam Manalokas lives in an exclusive American River neighborhood that has extra police patrol.

434.  DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from this CCW permit holder contributed and in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Sam Manalokas a CCW in return for payment under color of authority.

435.  **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

436.  John Korean was issued a CCW and based upon information and belief, an Honorary Deputy Sheriff Commission on or about 8/16/1996.

437.  John Korean paid DEFENDANT NAMED RACKETEERS campaign contributions.

438.  DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from this CCW permit holder contributed and in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to John Korean a CCW in return for payment under color of authority.

439.  **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

440.  Anne Hubbard was issued a CCW and based upon information and belief, an Honorary Deputy Sheriff Commission on or about 8/27/1996.

441.  Anne Hubbard paid DEFENDANT NAMED RACKETEERS campaign contributions.

442.  Anne Hubbard lives in safe neighborhood.

443.  DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from this CCW permit holder contributed and in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Anne Hubbard a CCW in return for payment under color of authority.

444.  **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of

1   official right)

2   445.   William Harrison Myers, Jr. was issued a CCW and based upon information and belief, an

3   Honorary Deputy Sheriff Commission on or about 9/6/1996.

4   446.   William Harrison Myers, Jr. was either employed by or had a business interest in Myers-

5   Pacific Aviation and Marine Insurance at the time the CCW was issued.

6   447.   Through Myers-Pacific Aviation and Marine Insurance acting as a conduit, William Harrison

7   Myers, Jr. paid DEFENDANT NAMED RACKETEERS campaign contributions.

8   448.   William Harrison Myers, Jr. was a member of the Aero Squadron.

9   449.   DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of

10   official right from Myers-Pacific Aviation and Marine Insurance contributed and in return for

11   these payments in the form of campaign contributions, DEFENDANT NAMED

12   RACKETEERS issued to William Harrison Myers, Jr. a CCW in return for payment under

13   color of authority.

14   450.   **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of

15   official right)

16   451.   David Commons was issued a CCW and based upon information and belief, an Honorary

17   Deputy Sheriff Commission on or about 9/20/1996.

18   452.   David Commons paid DEFENDANT NAMED RACKETEERS campaign contributions.

19   453.   DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of

20   official right from this CCW permit holder contributed and in return for these payments in

21   the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to

22   David Commons a CCW in return for payment under color of authority.

23   454.   **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of

24   official right)

25   455.   Robert Creedon was issued a CCW and based upon information and belief, an Honorary

26   Deputy Sheriff Commission on or about 9/30/1996.

27   456.   Robert Creedon was either employed by or had a business interest in Senator Ford at the time

28   the CCW was issued.

457.   Through Senator Ford acting as a conduit, Robert Creedon paid DEFENDANT NAMED

1    RACKETEERS campaign contributions.

2    458.  DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of

3    official right from Senator Ford and in return for these payments in the form of campaign

4    contributions, DEFENDANT NAMED RACKETEERS issued to Robert Creedon a CCW in

5    return for payment under color of authority.

6    459.  **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of

7    official right)

8    460.  Jeffrey C. Vernon was issued a CCW and based upon information and belief, an Honorary

9    Deputy Sheriff Commission on or about 10/23/1996.

10   461.  Jeffrey C. Vernon paid DEFENDANT NAMED RACKETEERS campaign contributions.

11   462.  Jeffrey C. Vernon is believed to be a successful dentist in the Sacramento area and lives in an

12   upscale neighborhood.

13   463.  DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of

14   official right from this CCW permit holder contributed and in return for these payments in

15   the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to

16   Jeffrey C. Vernon a CCW in return for payment under color of authority.

17   464.  **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of

18   official right)

19   465.  Robert G. Poage was issued a CCW and based upon information and belief, an Honorary

20   Deputy Sheriff Commission on or about 11/30/1996.

21   466.  Robert G. Poage paid DEFENDANT NAMED RACKETEERS campaign contributions.

22   467.  DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of

23   official right from this CCW permit holder contributed and in return for these payments in

24   the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to

25   Robert G. Poage a CCW in return for payment under color of authority.

26   468.  **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of

27   official right)

28   469.  Greta Crossland was issued a CCW and based upon information and belief, an Honorary

Deputy Sheriff Commission on or about 2/23/1997.

470. Greta Crossland paid DEFENDANT NAMED RACKETEERS campaign contributions.

471. DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from this CCW permit holder contributed and in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Greta Crossland a CCW in return for payment under color of authority.

472. **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

473. John Raptakis was issued a CCW and based upon information and belief, an Honorary Deputy Sheriff Commission on or about 3/13/1997.

474. John Raptakis was either employed by or had a business interest in J.R. Painting and Waterproofing at the time the CCW was issued.

475. Through J.R. Painting and Waterproofing acting as a conduit, John Raptakis paid DEFENDANT NAMED RACKETEERS campaign contributions.

476. Based upon information and belief, John Raptakis was convicted of two D.U.I.'s and grand theft.

477. John Raptakis is believed to be a relation of Steve M. Raptakis, who also made campaign contributions to the DEFENDANTS NAMED RACKETEERS.

478. DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from J.R. Painting and Waterproofing contributed and in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to John Raptakis a CCW in return for payment under color of authority.

479. **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

480. Steve M. Raptakis was issued a CCW and based upon information and belief, an Honorary Deputy Sheriff Commission on or about 4/27/1999.

481. Steve M. Raptakis paid DEFENDANT NAMED RACKETEERS campaign contributions.

482. Steve M. Raptakis is believed to be a relation of John Raptakis.

483. DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from this CCW permit holder contributed and in return for these payments in

1    the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Steve

2    M. Raptakis a CCW in return for payment under color of authority.

3    484.  **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of

4    official right)

5    485.  Edward Faust was issued a CCW and based upon information and belief, an Honorary

6    Deputy Sheriff Commission on or about 4/25/1997.

7    486.  Edward Faust paid DEFENDANT NAMED RACKETEERS campaign contributions.

8    487.  DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of

9    official right from this CCW permit holder contributed and in return for these payments in

10   the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to

11   Edward Faust a CCW in return for payment under color of authority.

12   488.  **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of

13   official right)

14   489.  John Edward Virga was issued a CCW and based upon information and belief, an Honorary

15   Deputy Sheriff Commission on or about 6/21/1997.

16   490.  John Edward Virga paid DEFENDANT NAMED RACKETEERS campaign contributions.

17   491.  DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of

18   official right from this CCW permit holder contributed and in return for these payments in

19   the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to John

20   Edward Virga a CCW in return for payment under color of authority.

21   492.  **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of

22   official right)

23   493.  Blake Snider was issued a CCW and based upon information and belief, an Honorary Deputy

24   Sheriff Commission on or about 9/18/1997.

25   494.  Blake Snider paid DEFENDANT NAMED RACKETEERS campaign contributions.

26   495.  DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of

27   official right from this CCW permit holder contributed and in return for these payments in

28   the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to

Blake Snider a CCW in return for payment under color of authority.

496. **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

497. John J. Capra was issued a CCW and based upon information and belief, an Honorary Deputy Sheriff Commission on or about 10/27/1997.

498. John J. Capra paid DEFENDANT NAMED RACKETEERS campaign contributions.

499. DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from this CCW permit holder contributed and in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to John J. Capra a CCW in return for payment under color of authority.

500. **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

501. Gerald "Jerry" Greenburg was issued a CCW and based upon information and belief, an Honorary Deputy Sheriff Commission on or about 11/13/1997.

502. Gerald "Jerry" Greensburg paid DEFENDANT NAMED RACKETEERS campaign contributions.

503. DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from this CCW permit holder contributed and in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Gerald "Jerry" Greensburg a CCW in return for payment under color of authority.

504. **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

505. Jack Becker was issued a CCW and based upon information and belief, an Honorary Deputy Sheriff Commission on or about 1/22/1998.

506. Jack Becker paid DEFENDANT NAMED RACKETEERS campaign contributions.

507. DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from this CCW permit holder contributed and in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Jack Becker a CCW in return for payment under color of authority.

508. **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of

1    official right)

2    509.  Thomas Blair Holloway was issued a CCW and based upon information and belief, an

3    Honorary Deputy Sheriff Commission on or about 5/21/1998.

4    510.  Thomas Blair Holloway paid DEFENDANT NAMED RACKETEERS campaign

5    contributions.

6    511.  DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of

7    official right from this CCW permit holder contributed and in return for these payments in

8    the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to

9    Thomas Blair Holloway a CCW in return for payment under color of authority.

10    512.  **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of

11    official right)

12    513.  Herbert Hooper was issued a CCW and based upon information and belief, an Honorary

13    Deputy Sheriff Commission on or about 10/8/1998.

14    514.  Herbert Hooper paid DEFENDANT NAMED RACKETEERS campaign contributions.

15    515.  DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of

16    official right from this CCW permit holder contributed and in return for these payments in

17    the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to

18    Herbert Hooper a CCW in return for payment under color of authority.

19    516.  **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of

20    official right)

21    517.  Marc Alan Mogol was issued a CCW and based upon information and belief, an Honorary

22    Deputy Sheriff Commission on or about 2/2/1999.

23    518.  Marc Alan Mogol paid DEFENDANT NAMED RACKETEERS campaign contributions.

24    519.  DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of

25    official right from this CCW permit holder contributed and in return for these payments in

26    the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Marc

27    Alan Mogol a CCW in return for payment under color of authority.

28    520.  **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of

official right)

521. Dale Alan Terry was issued a CCW and based upon information and belief, an Honorary Deputy Sheriff Commission on or about 2/8/1999.

522. Dale Alan Terry paid DEFENDANT NAMED RACKETEERS campaign contributions.

523. Dale Alan Terry was a member of the Aero Squadron.

524. DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from this CCW permit holder contributed and in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Dale Alan Terry a CCW in return for payment under color of authority.

525. **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

526. Dennis Carpenter was issued a CCW and based upon information and belief, an Honorary Deputy Sheriff Commission on or about 4/27/1999.

527. Dennis Carpenter paid DEFENDANT NAMED RACKETEERS campaign contributions.

528. DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from this CCW permit holder contributed and in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Dennis Carpenter a CCW in return for payment under color of authority.

529. **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

530. Pano Nicholas Stathos was issued a CCW and based upon information and belief, an Honorary Deputy Sheriff Commission on or about 5/10/1999.

531. Pano Nicholas Stathos was either employed by or had a business interest or related to AKT Investments Inc., and Frank Greg Stathos DBA Metro Properties at the time the CCW was issued.

532. Through AKT Investments Inc. and Frank Greg Stathos DBA Metro Properties acting as a conduit, Pano Nicholas Stathos paid DEFENDANT NAMED RACKETEERS campaign contributions.

533. DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from Stathos and in return for these payments in the form of campaign

contributions, DEFENDANT NAMED RACKETEERS issued to Pano Nicholas Stathos a CCW in return for payment under color of authority.

534. **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

535. Brian Chase was issued a CCW and based upon information and belief, an Honorary Deputy Sheriff Commission on or about 5/19/1999.

536. Brian Chase was either employed by or had a business interest in [name of companies] at the time the CCW was issued.

537. Through [name of companies] acting as a conduit, Brian Chase paid DEFENDANT NAMED RACKETEERS campaign contributions.

538. DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from Brian Chase and in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Brian Chase a CCW in return for payment under color of authority.

539. **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

540. Hatem N. Sharif  was issued a CCW and based upon information and belief, an Honorary Deputy Sheriff Commission on or about 8/12/1999.

541. Hatem N. Sharif was photographed with Defendant Blanas (*)

542. Hatem N. Sharif was either employed by or had a business interest in [name of companies] at the time the CCW was issued.

543. Hatem N. Sharif paid DEFENDANT NAMED RACKETEERS campaign contributions.

544. DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from [CCW permit holder contributed] and in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Hatem N. Sharif a CCW in return for payment under color of authority.

545. **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

546. John Charles Morgan was issued a CCW and based upon information and belief, an Honorary

Deputy Sheriff Commission on or about 11/12/2002.

547. John Charles Morgan was either employed by or had a business interest in Padilla Bail Bonds at the time the CCW was issued.

548. Defendants conditioned issuance of the CCW on a bail bonds company based upon their contribution, and essentially extorted money from the Padilla Bail bond entities.

549. Through Padilla entities acting as a conduit, John Charles Morgan paid DEFENDANT NAMED RACKETEERS campaign contributions.  John Morgan personally contributed as well.

550. DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from Morgan and in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to John Charles Morgan a CCW in return for payment under color of authority.

551. **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

552. David John Baker was issued a CCW and based upon information and belief, an Honorary Deputy Sheriff Commission on or about 4/15/2003.

553. David John Baker was either employed by or had a business interest in a carpet business Conesco, Inc. at the time the CCW was issued.

554. Through Conesco, Inc. acting as a conduit, David John Baker paid DEFENDANT NAMED RACKETEERS campaign contributions.

555. His CCW was approved by a single individual, Chief Dan Lewis, and no application was ever submitted, and it never went before any committee.

556. Based upon information and belief, he was subsequently convicted of wiretapping.

557. DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from Baker and in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to David John Baker a CCW in return for payment under color of authority.

558. **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

559. Christine Janele Barritt and John Everett Barritt were issued CCWs and based upon information and belief, Honorary Deputy Sheriff Commissions on or about 5/12/2003.

560. Christine Janele Barritt and John Everett Barritt was either employed by or had a business interest in Badger John's at the time the CCW was issued.

561. Through Badger John's acting as a conduit, Christine Janele paid DEFENDANT NAMED RACKETEERS campaign contributions.

562. DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from Christine Janele Barritt and John Everett Barritt and in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Christine Janele Barritt and John Everett Barritt a CCW in return for payment under color of authority.

563. **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

564. John Patrick Kearns was issued a CCW and based upon information and belief, an Honorary Deputy Sheriff Commission on or about 7/7/2006.

565. DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from CCW permit holder Kearns and in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to John Patrick Kearns a CCW in return for payment under color of authority.

566. **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

567. Daniel Heil was issued a CCW and based upon information and belief, an Honorary Deputy Sheriff Commission on or about.

568. Daniel Heil worked as a fleet manager at Swift Car Dealership, owned by Chuck Swift who donated campaign contributions to DEFENDANT NAMED RACKETEERS.

569. Daniel Heil was either employed by or had a business interest in Swift Car Dealershpi at the time the CCW was issued.

570. Through Chuck Swift and Swift Auto acting as a conduit, Heil and Swift paid DEFENDANT NAMED RACKETEERS campaign contributions.

571. DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from Heil and in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Heil a CCW in return for payment under color of authority.

572. The above list is not inclusive, but is only representative of the more oblivious predicate acts.

573. The following business have acted as conduits in funelling campaign funds and/or other bribes in exchange for CCWs: Al Ricci's Sacramento Bail Bond Agency; Beneto Petroleum Products; Bob Frink Mangement, Inc., RPM Management, Frink Chevrolet; Capital Steel Co.; Central Valley Bail Bonds; Chris Hansen Insurance; Color Core Incorporated; Sheriff's Aero Squadron; D. Bruce Fite & Associates, Fite Properties, Fite Development; FHS Properties & Investments Inc 9857 HORN ROAD SACRAMENTO, CA 95827 DBA  Pacific West Properties = Fite, Charles D; Delta; Dettling Development; Donald P. Rollofson, D.M.D., Inc.; Eagle Ridge Development; Ed Rincon Towing Service; Florin Road Toyota; Hobby Warehouse of Sacramento; J.C. Parts Distributors, Inc.; John Taylor Fertilizer; Law Offices of Whaley & Anderson; Martini Associates Property Management; Mercantile Saloon; Mogol Construction; Mohamed Realty; Mosher Ranch; Myers Pacific Insurance; Old Republic Title Company; Old Sacramento Armory, Inc.; Pacific Coast Building Products, Inc.; Padilla Bail Bonds; Patrick Frink Properties; PMG Properties; Point-Walker, Inc.; R & G Associates, Inc.; Rico's; Ronald D. Yee, D.D.S., Inc.; Sacramento Bail Bonds; Sacramento Coca-Cola Bottling Company, Inc.; Sacramento Commerce Bank; Sacramento Metro Airport; Sacramento Rendering, Co.; Sacramento Rendering, Co.; Kimmel ConstructionBy majority vote, the rank and file membership of the COUNTY OF SACRAMENTO SHERIFF'S DEPARTMENT elected Plaintiff Steve FISK  as COUNTY OF SACRAMENTO SHERIFF'S DEPARTMENT President for a term of four years, effective January 1, 2004.

574. **PREDICATE ACT: 29 U.S.C. § 186.**

575. 29 U.S.C. § 186 prohibits any person involved with an employer or labor organization to accept or receive any money or other thing of value.

576. Almost immediately after President FISK's election to the Sacramento County Deputy

Sheriffs' Association (a labor union also known as the SCDSA), commencing in early 2004, then Sheriff Blanas used SIB personnel (Tim Sheehan) to attempt to collect bribes and launder SCDSA union funds solicited from FISK.

577.   While on-duty as a peace officer employed by the Sacramento County Sheriff's Department Special Investigations Bureau, Tim Sheehan solicited $15,000 in bribe money from then SCDSA general manager Marlin Weinberger.

578.   Weinberger relayed this solicitation to newly elected President Steve FISK, advising that the $15,000 was to be used by then Sheriff Blanas for "political purposes" which Blanas did not want directly associated with himself (a violation of California FPPC statutes), and that SCDSA would eventually "get the money back."

579.   In response, very soon thereafter, President FISK called Blanas to obtain more information regarding the request for money from the COUNTY OF SACRAMENTO SHERIFF'S DEPARTMENT treasury.

580.   Blanas was evasive as to the purpose of the request, though it was very clear to President FISK that the money was going to some other individual's campaign or personal account for political purposes.

581.   Although Blanas used cryptic terms, it was very clear that: 1) a check in the amount of $15,000 was to be tendered <u>without</u> a payee listed; 2) the SCDSA would have the money returned eventually (e.g. "you'll get the money back"); and, 3) when President FISK was hesitant about the concept of what Blanas was requesting, Blanas stated, " [immediate past SCDSA President] Jerry [Moore] always did it."

582.   **PREDICATE ACT 1 (Predicate Acts are defined in 18 U.S.C. § 1961, including enumerated State law offenses):**  (Solicitation to Commit Bribery, Bribery, and Extortion - Cal. Penal Code §§ 7, 67, 518. )(Cal. Penal Code § 7  "6. The word "bribe" signifies *anything of value or advantage*, present or prospective, or any promise or undertaking to give any, asked, given, or *accepted*, with a corrupt intent to influence, unlawfully, the person to whom it is given, in his or her action, vote, or opinion, in any public or official capacity." Cal. Penal Code § 67.  "Every person who gives or offers any bribe to any executive officer in this state, *with intent to influence him* in respect to *any act, decision*, vote, opinion, ..."

Under this section every person who merely offers a bribe to an executive officer with intent to influence his decision is guilty. *People v. Finkelstin* (App. 1950) 98 Cal.App.2d 545, 220 P.2d 934.)(Cal. Penal Code 518. ***Extortion is the obtaining of property from another, with his consent***, or the obtaining of an official act of a public officer, induced by a wrongful use of force or fear, or ***under color of official right***.)(Hobbs Act 18 U.S.C. § 1951 - "[a]t common law, extortion was an offense committed by a public official who took 'by color of his office' money that was not due to him for the performance of his official duties. . . . Extortion by the public official was the rough equivalent of what we would now describe as 'taking a bribe.'" *Evans v. United States*, 504 U.S. 255 (1992).)

583.   Cal.Penal Code § 165 "Every person who gives or offers a bribe to any member of any common council, board of supervisors, or board of trustees of any county, city and county, city, or public corporation, with intent to corruptly influence such member in his action on any matter or subject pending before, or which is afterward to be considered by, the body of which he is a member, and every member of any of the bodies mentioned in this section who receives, or offers or agrees to receive any bribe upon any understanding that his official vote, opinion, judgment, or action shall be influenced thereby, or shall be given in any particular manner or upon any particular side of any question or matter, upon which he may be required to act in his official capacity, is punishable by imprisonment in the state prison for two, three or four years, and upon conviction thereof shall, in addition to said punishment, forfeit his office, and forever be disfranchised and disqualified from holding any public office or trust."

584.   Penal Code Section 653f(a) provides: "Every person who, with the intent that the crime be committed, solicits another to offer, accept, or join in the offer or acceptance of a bribe, or ..., robbery, burglary, grand theft, receiving stolen property, extortion, ... shall be punished by imprisonment ...in the state prison ..."

585.   This section against receiving and agreeing to receive bribe is satisfied when the individual "agreed" and intended in his own mind to receive bribe. *People v. Fitzpatrick* (App. 2 Dist. 1926) 78 Cal.App. 37, 247 P. 601.

586.   Because Blanas made an admission against his penal interest, the following fact is alleged: Prior to 2004, then SCDSA President Jerry Moore paid bribe money and made illegal loans

that were laundered (Money Laundering Control Act, 18 U.S.C. §§ 1956 and 1957) for then Sheriff Lou Blanas in return for things of value, such as Moore being appointed to represent the Law Enforcement Management Association (LEMA), a paid position, after his re-election loss in the SCDSA elections for the January 1, 2004-December 31, 2007 term, and subsequent retirement from the Sacramento County Sheriff's Department.

587.   LEMA's interests are adverse to the interests of COUNTY OF SACRAMENTO SHERIFF'S DEPARTMENT's "rank and file" general membership, because that organization represents law enforcement management's interests.

588.   Moore's appointment as the business agent of LEMA is a conflict of interest as he possessed trade secrets of COUNTY OF SACRAMENTO SHERIFF'S DEPARTMENT regarding collective bargaining and other matters.

589.   President FISK questioned the legality and purpose of the funds which were being solicited, requested from the SCDSA, and told Blanas that he would have to report it to Officers or Directors of SCDSA (i.e. Board Members of SCDSA at the time).

590.   Blanas became very angry and agitated, and the conversation ended.

591.   Blanas, along with then Undersheriff John McGinness, Chief Deputy Bill Kelly (a former SCDSA Board member), then Chief Deputy Dave Lind, then Chief Deputy Dan Drummond, then Sergeant Glenn Powell and then Lt. Tim Sheehan, threatened through economic coercion that the SCDSA Board of Directors remove President FISK from office, stating that Plaintiff FISK was ineffective as President because he would not continue former SCDSA President Jerry Moore's practice of laundering COUNTY OF SACRAMENTO SHERIFF'S DEPARTMENT funds to pay bribes to, or at the direction of, Blanas.

592.   **PREDICATE ACT 2:** (State law violations Solicitation to Commit Bribery, Bribery, and Extortion)(Hobbs Act 18 U.S.C. § 1951)  President FISK was placed in economic fear (i.e. loss of his salary as the President of the COUNTY OF SACRAMENTO SHERIFF'S DEPARTMENT). This fear constituted economic extortion, and Defendants and Blanas and the members of Blanas' management team who were present conspired to do such.

593.   Thereafter, in furtherance of the conspiracy to extort compliance from President FISK and to place him in further economic fear, Defendants first attempted to obtain a recall of President

1  FISK by putting that question to the Union's general membership. This unsuccessful recall

2  attempt took place in July of 2004.

3  594.  Defendants are members of a continuing conspiracy to gain control of the SCDSA and

4  advance a fraudulently obtained Collective Bargaining Agreement (CBA) procured through a

5  pattern of racketeering activity, including extortion, in violation of the Hobbs Act, 18 U.S.C.

6  § 1951 and state law.

7  595.  One of the ultimate goals of Defendants' conspiracy are: 1) to seize or take control of the

8  Union (SCDSA) by fraud and force; 2) to commit fraud on the union's general membership

9  by seizing control of the members' dues ($55,000.00 bi-weekly) which collectively form the

10  Union's treasury; 3) commit fraud on the SCDSA general membership by inserting in the

11  CBA language that provided a "thing of value" for the Sheriff and the County of Sacramento

12  and David P.  Mastagni, Sr., and major campaign contributor and CCW permit holder and

13  Honoarary Deputy Sheriff, and his law firm.

14  596.  The inclusion of these "things of value" (i.e. CBA authority to civilianize currently sworn

15  jobs in Security and Corrections Divisions of the Sheriff's Department, and waiver of Civil

16  Service [and beyond] appeals of management imposed discipline) were never revealed to the

17  Union's general membership prior to or during the CBA mailed-out ratification vote.

18  597.  **PREDICATE ACTS 14 and 15** - (Hobbs Act 18 U.S.C. § 1951)(Extortion, Bribery and

19  solicitation thereof).

20  598.  A Hobbs Act violation does not require that the public official be the recipient of the benefit

21  of the extortion, and that a Hobbs Act case exists where the corpus of the corrupt payment

22  went to a third party.  See *United States v. Haimowitz*, 725 F.2d 1561, 1577 (11th Cir.), cert.

23  denied, 469 U.S. 1072 (1984) ("a Hobbs Act prosecution is not defeated simply because the

24  extorter transmitted the extorted money to a third party."); *United States v. Margiotta*, 688

25  F.2d 108 (2d Cir. 1982), cert. denied, 461 U.S. 913 (1983) (insurance agency made kickbacks

26  to brokers selected by political leader of town); *United States v. Scacchetti*, 668 F.2d 643 (2d

27  Cir.), cert. denied, 457 U.S. 1132 (1982); *United States v. Forszt*, 655 F.2d 101 (7th Cir.

28  1981); *United States v. Cerilli*, 603 F.2d 415 (3rd Cir. 1979), cert. denied, 444 U.S. 1043

(1980); *United States v. Trotta*, 525 F.2d 1096 (2d Cir. 1975), cert. denied, 425 U.S. 971

1  (1976); *United States v. Brennan*, 629 F.Supp. 283 (E.D.N.Y.), aff'd, 798 F.2d 581 (2d Cir.

2  1986).

3  599.  Private persons who are not themselves public officials can be convicted under the Hobbs

4  Act if they caused public officials to perform official acts in return for payments to the

5  non-public official.  *United States v. Margiotta*, 688 F.2d 108 (2d Cir. 1982), cert. denied,

6  461 U.S. 913 (1983) (court upheld conviction of head of local Republican Party under color

7  of official right where defendant could be said to have caused, under 18 U.S.C. 1951), public

8  officials to induce a third party to pay out money); see *United States v. Haimowitz*, 725 F.2d

9  1561, 1572-73 (11th Cir.), cert. denied, 469 U.S. 1072 (1984) (private attorney's conviction

10  of Hobbs Act violation upheld due to complicity with state senator); *United States v. Marcy*,

11  777 F.Supp. 1398, 1399-400 (N.D.Ill. 1991); *United States v. Barna*, 442 F.Supp. 1232

12  (M.D. Pa.), aff'd mem., 578 F.2d 1376 (3rd Cir.), cert. denied, 439 U.S. 862 (1978).

13  600.  Private individuals who make payments to a public official can be charged under the Hobbs

14  Act, either as an aider and abettor or co-conspirator, if he or she is truly the instigator of the

15  transaction. See *United States v. Torcasio*, 959 F.2d 503, 505-06 (4th Cir. 1992); *United*

16  *States v. Spitler*, 800 F.2d 1267, 1276-79 (4th Cir. 1986) (conviction affirmed for aiding and

17  abetting extortion under color of official right even though defendant, who paid kickbacks

18  from corporate coffers, was an officer of the victim corporation); *United States v. Wright*, 797

19  F.2d 245 (5th Cir. 1986).

20  601.  Under color of authority, and in furtherance of the conspiracy, Lakich, Schutten, and

21  McGinness circulated letters with the specific intent to defraud the SCDSA general

22  membership by attempting to legitimize the continuing influence and control over SCDSA by

23  NAMED DEFENDANT RACKETEERS and to justify the continuing transmittal of SCDSA

24  members' dues and other funds, held in trust by the County to NAMED DEFENDANT

25  RACKETEERS as part of a scheme of money laundering.

26  602.  **PREDICATE ACTS 15 through 33 (a thing of value received by each defendant**

27  **primarily)**  -  29 U.S.C. § 186, which prohibits any person involved with an employer or

28  labor organization to accept or receive any money or other thing of value.

603.  "Thing of value" " . . .  is <u>not</u> limited to cash or tangible property." [emphasis added]

*Conditioned Ari & Refrig. Co. v. Plumbing & Pipe Fit, Etc.*, 159 F.Supp. 887, 899 (S.D. Cal. 1956) aff'd 253 F.2d 427 (9th Cir. 1958).

604.   "Similarly, ... courts have broadly construed the property element of extortion.... [to include] tangible as well as *intangible* property...." [emphasis added] *Petrochem Insulation v. Trade Council*, 137 L.R.R.M. 2199, 2196 (N.D. Cal. 1991).

605.   The County of Sacramento and Sheriff McGinness received a thing of value in the form of cost reductions (elimination of higher paying jobs through civilianization discretion) and the ability to terminate employees more cheaply and swiftly by replacing the system of checks and balances incorporated into the civil service appeals process with a new scheme of a single arbitration not subject to appeal.

606.   An ancillary benefit to this was that the SCDSA then attorney Mastagni received the same monthly retainer for less work and not advising the SCDSA of also received a benefit. While continuing to receive an undiminished monthly retainer, his firm has to perform substantially less work (i.e. the substitution of a "one bite at the apple" appeals process).  It was no accident that Mastagni's agent, who served as chief negotiator for the most recent CBA negotiations, was intimately involved in the fraudulently procured CBA.

607.   Key recruits by Defendant racketeers in acquiring the fraudulently procured CBA, were then subsequently rewarded.

608.   Coauette was promoted to Sergeant, in January, 2007, in return for his participation in delivering a fraudulently procured CBA for Sheriff McGinness and the County.

609.   Roberts was promoted to Records Officer II (Supervisor) in March, 2007, in return for her participation in delivering a fraudulently procured CBA for Sheriff McGinness and the County.

610.   Polete was promoted to Sergeant, in April, 2007, in return for his participation in delivering a fraudulently procured CBA for Sheriff McGinness and the County.

611.   This scheme required the State of California to step in, and obtain a ruling from the State of California Public Employees Relations Board, with a finding the Enterprise has been involved in unfair labor practices by dominating and controlling the SCDSA.

612.   Mastagni, while being paid by the SCDSA, is now fighting the State of California to have the

1   finding of unfair labor practices nullified, or, in other words, Mastagni is now representing

2   the County of Sacramento while being paid by the SCDSA.

3   613.   **PREDICATE ACT 34:** (Hobbs Act 18 U.S.C. § 1951, threat of violence, robbery under

4   color of authority)  Cal.Penal Code § 211: "Robbery is the felonious taking of personal

5   property ***in the possession of another***, from his person or immediate presence, and ***against***

6   ***his will***, accomplished by means of force or ***fear***."

7   614.   Hobbs Act 18 U.S.C. § 1951 prohibits actual or attempted robbery or extortion affecting

8   interstate or foreign commerce.

9   615.   Section 1951 also proscribes conspiracy to commit robbery or extortion without reference to

10   the conspiracy statute at 18 U.S.C. § 371.

11   616.   The extortion offense reaches the obtaining of property "under color of official right" by

12   public officials as well.

13   617.   NAMED DEFENDANT RACKETEERS conspired to use threatened or actual force,

14   violence, or fear to obtain from Plaintiffs Barnsdale and Weitnauer pay that was lawfully

15   theirs, and property in the possession and control of Plaintiff Blevins, and NAMED

16   DEFENDANT RACKETEERS acquired the property of Plaintiffs (physically taking the jobs

17   from Plaintiffs by threat of force under color of authority, thus acquiring property rights

18   which were not NAMED DEFENDANT RACKETEERS to acquire.).

19   618.   On Monday, June 18, 2007, at approximately 0750 Hours, Deputy Sheriffs Polete, Rodriguez,

20   Wyant, Guerrero, Cvitanov and  Marlin Weinberger (who is a sworn on-call reserve deputy

21   sheriff), approached SCDSA headquarters with privately owned vehicles displaying official

22   placards signed by Sheriff McGinness, stating "OFFICIAL BUSINESS, Sacramento County

23   Sheriff's Department, Sheriff John McGinness", followed by a Sheriff's Department seal and

24   McGinness' signature.

25   619.   Standing outside of SCDSA headquarters was a private security guard, CODY BLEVINS.

26   620.   Mr. BLEVINS was engaged in an occupation affecting interstate commerce.

27   621.   Mr. BLEVINS had a property interest in the his legal and gainful employment as a

28   contractual security officer, hired by COUNTY OF SACRAMENTO SHERIFF'S

DEPARTMENT and President FISK.

622.  As they approached, all dressed in street clothes, several of the individuals displayed firearms on their hips in plain view along with an official Deputy Sheriff Badge worn directly adjacent to each firearm.

623.  These individuals surrounded Mr. BLEVINS with the specific intent to cause fear and apprehension through the threat of force under color of authority.

624.  Based upon information and belief, Weinberger removed his Sheriff's Identification from his wallet, flashed it at Mr. BLEVINS, along with a firearm attached to his hip in plain view, and demanded that Mr. BLEVINS hand over his keys to the COUNTY OF SACRAMENTO SHERIFF'S DEPARTMENT declaring it was "official police business."  POLETE, standing in front of BLEVINS, also displayed his firearm and badge in plain view.

625.  Because these individuals pulled up in privately owned vehicles displaying "Official Business" placards, displayed firearms in such a manner that it was threatening, and displayed official badges under color of authority, Mr. BLEVINS, under threat of force under color of authority, handed over the (washroom) keys that he was entrusted to guard.  Such relinquishment was against his will.

626.  In addition, Mr. BLEVINS was forced to leave the location of his employment, depriving him of work since he was placed in fear of returning to his place of business.

627.  Removal of property in Mr. BLEVINS exclusive control and trust against his will under both threat of force and under color of authority constitutes both Robbery and Hobbs Act violations by all of these individuals, and conspiracy to commit same.

628.  JOY BARNSDALE, who was seated in her car in the parking lot, had Mr. BLEVINS and the armed peace officers in plain sight and saw them rob Mr. BLEVINS of his keys under color of authority.

629.  **PREDICATE ACT 35:** Hobbs Act 18 U.S.C. § 1951.

630.  JOY BARNSDALE was hired by President FISK to work as the SCDSA's general secretary, a paid position.

631.  While she approached work at the SCDSA headquarters, she witnessed the armed deputies removing Mr. BLEVINS' keys under color of authority and threat of force with firearms.

632.  She further witnessed them breaking into the locked SCDSA headquarters, her lawful place

of employment which affects interstate commerce.

633. Upon witnessing the crime, several of these individuals established eye contact with JOY BARNSDALE, and turned and faced her in an aggressive and threatening manner.

634. Because these RACKETEERS were armed under color of authority, and were breaking into COUNTY OF SACRAMENTO SHERIFF'S DEPARTMENT headquarters, and because of the look they gave her upon her witnessing of the crimes that had been committed, as a reasonable woman in that circumstance, JOY BARNSDALE did not go to work because of the threat of force and because she was afraid.

635. The specific intent of NAMED DEFENDANT RACKETEERS was to use the threat of force under color of authority to seize control of SCDSA property, and to remove all employees and contractors of the SCDSA from the premises.

636. JOY BARNSDALE also witnessed SCDSA President FISK being forced outside the SCDSA offices onto the sidewalk under threat of force.

637. This act affected Plaintiff JOY BARNSDALE'S gainful employment, and caused her economic harm as she can no longer work for Defendant COUNTY OF SACRAMENTO SHERIFF'S DEPARTMENT.

638. As Plaintiff JOY BARNSDALE has a property interest in her job, NAMED DEFENDANT RACKETEERS took her job away under threat of force and color of authority.

639. **PREDICATE ACT 36:** Hobbs Act 18 U.S.C. § 1951.

640. On June 18, 2007 Plaintiff  President FISK was forcefully removed from his position as President of the SCDSA under threat of dangerous and deadly force, and under color of official authority by agents of NAMED DEFENDANT RACKETEERS and unnamed co-conspirators.

641. The agents of NAMED DEFENDANT RACKETEERS and co-conspirators acted in concert to use force, and threat of force upon the person of President FISK, to gain control of SCDSA property, abusing their powers as peace officers.  They did so by breaking into the Union office and forcing President FISK out of the building.

642. This act was sanctioned by Sheriff McGinness as his signature appears on the official placards used to effectuate the hijacking of the COUNTY OF SACRAMENTO SHERIFF'S

DEPARTMENT office.

643.   In addition, after this unlawful use of force, Sheriff McGinness refused to investigate, even though a detailed internal affairs complaint was lodged.

644.   **PREDICATE ACT 37:** Hobbs Act 18 U.S.C. § 1951; Burglary P.C. 459, 418 (entry without legal process), 182 (conspiracy).

645.   Agents of NAMED DEFENDANT RACKETEERS breached a locked door of the SCDSA headquarters, under color of authority and law, with the intent to remove funds and assets from Defendant SCDSA.

646.   NAMED DEFENDANT RACKETEERS have remained in control of the SCDSA building with loaded firearms and government issued badges, and continue to occupy property to which they have no rightful claim, and they remain in control under threat of force and color of law.

647.   NAMED DEFENDANT RACKETEERS have prevented President FISK from occupying said building to perform his work, and to serve the general membership, all originally because he refused to submit to money laundering.

648.   Plaintiffs have been damaged according to proof.

SECOND CAUSE OF ACTION
**42 U.S.C. 1983**
(DEFENDANTS COUNTY OF SACRAMENTO, BLANAS and McGINNISS ONLY)
(Fourteenth Amendment - Equal Protection - preferential treatment, including unconstitutional CCW statute and County policies on their face).

649.   All averments contained in this pleading herein are incorporated in their entirety, as though fully set forth below.

650.   Plaintiffs have a personal individual right to keep and possess a handgun for purposes of self defense, and any licensing scheme must meet strict scrutiny standards.

651.    In addition, even assuming arguendo that such a permit scheme is constitutionally permissible, Plaintiffs allege that in form, substance and application it is applied in a discriminatory fashion in violation of the Fourteenth Amendment's Equal Protection Clause and the First, Second and Ninth Amendment.

652.   This complaint challenges the constitutionality of Penal Code Sections 12027, 12031(b), 12050-12054 in that it exempts retired law enforcement personnel from those provisions and

burdens which are held applicable to common good citizens.

653.   The holding in Silveira v. BROWN, 312 F.3d 1052 (9th Cir.)(Reinhardt, J), rehearing en
banc denied, 328 F.3d 567 (9th Cir. 2003)(six dissents) is controlling, which struck down an
identical exemption in the State's Semi-Automatic Rifle's statute.  Similarly, Penal Code
12050 makes exceptions in the statutory scheme for state and federal court judges as well.

654.   Plaintiffs further allege that County Defendants have maintained an unconstitutional policy
that mirrored Penal Code Sections 12027, 12031(b), 12050-12054 in that it exempts retired
law enforcement personnel from those provisions and burdens which are held applicable to
common good citizens.

655.   For instance, an officer who worked one day on the job, honorably retires because of injury,
or just voluntarily, is granted a privilege to carry a concealed handgun for life, whereas all
other citizens are not granted the same privilege.

656.   County Defendants have conspired to destroy evidence.

657.    Zelig V. County of Los Angeles, et al; (2002) 27 Cal. 4th 1112 held in a unanimous
California Supreme Court decision that government agencies and law enforcement officers
have no duty to protect an individual from harm.  Beginning on page 1141 of the opinion,
"We have alluded above to the statutory immunity of both a public entity and a public
employee "for failure to provide sufficient police protection services.: (Gov. Code section
845.)  This provision supports our conclusion that the relevant parts of the Tort Claims Act
do not impose liability upon either the public entity defendants or their policy making officers
and employees under the facts alleged in the present complaint.  Even before the enactment
of the Tort Claims act, public entities enjoyed sovereign immunity in most instances from
liability for their failure to provide police protection.  (See Gates v. Superior Court (1995) 32
Cal. App. 4th 481, 500, 38 Cal. Rptr. 2d 489, and cases cited.)  As noted, "the overwhelming
weight of case law 'rejects liability based on a failure to provide police protection.' "
(Slansky, The Private Police, supra, 46 supra, 46 UCLA. L.Rev. at pp. 1281-1282.)  In
recommending adoption of the language of Government Code section 845 as part of the Tort
Claims Act, the California Law Revision Commission stated: "This section grants a general
immunity for failure to provide police protection or for failure to provide enough police

protection.  Whether police protection should be provided at all, and to the extent to which it should be provided, are political decisions which are committed to the policy-making officials of government.  To permit review of these decisions by judges and juries would remove the ultimate decision-making authority from those politically responsible for making the decisions."  Zelig v. County of Los Angeles (2002) 24 Cal. 4th 1112, 1141.

658.   A standard state DOJ application is used statewide for all CCW applications.

659.   There is a section required to be filled out in the presence of an "investigator" in order to obtain facts justifying issuance of a CCW (i.e. good cause)

660.   The so-called "good cause" standard for Plaintiffs and other average citizens is addressed by the form in the form of "investigator's interview notes", but information for the "prima facie" good cause standard for retired peace officers is not addressed in the application itself – even though the County Defendants have such a policy.

661.   In 1999, the Attorney General BROWN was tasked with creating a new state-standard CCW application form to replace those forms created and used by local agencies.

662.   Defendants, individually and collectively, are responsible for the issuance of concealed weapons permits under California Statute (i.e. California Penal Code 12027, 12050-12054). The failure of any citizen to obtain such a permissive use permit is subject to prosecution and incarceration.

663.   Plaintiffs have applied for concealed weapons permits, and are systematically impeded and rejected in the obtaining of such a permit, along with other ancillary government benefits such as deputy sheriffs commission and joining the Sheriff's Aero Squadron.

664.   As such, this is a claim for retrospective and/or prospective relief, as well as monetary damages, if applicable.

665.   Plaintiffs own handguns which they would like to carry in their vehicle and/or on their person concealed for protection of themself, family, and other citizens, just as other privileged and well connected citizens and retired peace officers and the sheriff's various cronies and campaign contributors are allowed to carry a concealed handgun.

666.   Plaintiffs also demand Honorary Deputy Sheriff's Commisions, and membership in the Sheriff's Aero Squadron.

667.   Law enforcement has failed to stop crime; therefore, Plaintiffs have a natural right of self preservation as recognized in both the Second, Ninth and Fourteenth Amendment, and the right to self preservation included the right to posses the tools to defend oneself, and this right pre-existed Plaintiffs enumerated Second Amendment rights.

668.   If Plaintiffs were to exercise their right to self defense, self preservation, self and family protection, and right to keep and bear arms without obtaining a CCW, they would be arrested, prosecuted, and incarcerated.

669.   Defendants enforce, and threaten to enforce, all penal codes sections that involve the carrying of a concealed handgun without a CCW.

670.   Plaintiffs are placed at unnecessary risk of prosecution due to Defendants deliberate discrimination and unconstitutional statutes and/or policies.

671.   Indeed, law enforcement is not responsible for protecting Plaintiffs, but will prosecute Plaintiffs if Plaintiffs were to carry the means to protect themselves.

672.   Government officials have paid body guards or are easily granted CCWs.

673.   Defendant Brown was elected as California's Attorney.  The Attorney General is the Chief Law Officer of the State of California and is elected and charged by the State constitution with the responsibility to ensure that State laws are uniformly and adequately enforced.

674.   Article V, Section 13, of the California Constitution describes the responsibilities of the Attorney General with the following words: "Subject to the powers and duties of the Governor, the Attorney General shall be the chief law officer of the State. It shall be the duty of the Attorney General to see that the laws of the State are uniformly and adequately enforced. The Attorney General shall have direct supervision over every district attorney and sheriff and over such other law enforcement officers as may be designated by law, in all matters pertaining to the duties of their representative offices, and may require any of said officers to make reports concerning the investigation, detection, prosecution, and punishment of crime in their respective jurisdictions as to the Attorney General may seem advisable. Whenever in the opinion of the Attorney General any law of the State is not being adequately enforced in any county, it shall be the duty of the Attorney General to prosecute any violations of law of which the superior court shall have jurisdiction, and in such cases the

Attorney General shall have all the powers of a district attorney. When required by the public interest or directed by the Governor, the Attorney General shall assist any district attorney in the discharge of the duties of that office."

675.    The Attorney General represents the people of California before trial, appellate, and Supreme Courts of California and the United States in criminal and civil matters; serves as legal counsel to State officers, boards, commissions, and departments; and assists district attorneys in the administration of justice.

676.    Section 11042 of the Government Code requires state agencies to employ only the Attorney General, with few exceptions, as legal counsel to centralize legal work done on behalf of the State. Section 11041 lists those agencies that can represent themselves.

677.    It is the responsibility of the Attorney General to assist city, county, state, federal, and international criminal justice agencies to ensure the uniformity and adequacy of enforcement of California State laws.

678.    To support California's local law enforcement community, the Attorney General coordinates State-wide law enforcement efforts, participates in criminal investigations, provides forensic science services, and provides identification and information services and telecommunication support.

679.    County Defendants have, on occasion, submitted legal filings signed under Rule 11 stating that Monell liability cannot attach to the County and it's officials since the Attorney General is the Chief Law Enforcement Officer of the state, and that local sheriff's have to report to him.

680.    Defendants Blanas and McGinniss are an elected law enforcement official of Sacramento County, and are charged with issuing CCWs, under the auspices of the State DOJ.

681.    Defendant COUNTY OF SACRAMENTO is an incorporated municipality created under the constitution, laws and statutes of the State of California.  COUNTY OF SACRAMENTO, Sheriff's Department is an agency subject to the control of the COUNTY OF SACRAMENTO.

682.    Defendant COUNTY OF SACRAMENTO, SHERIFF'S DEPARTMENT was and is at all times relevant herein a law enforcement agency which employed duly appointed and acting

California Peace Officers.

683. At all times mentioned herein, Defendant COUNTY OF SACRAMENTO and Defendant BLANAS, by and through the Defendant SHERIFF'S DEPARTMENT, was acting under color of law, to wit, under color of statutes, ordinances, regulations, policies, customs, and usages of the State of California and/or the COUNTY OF SACRAMENTO, SHERIFF'S DEPARTMENT.

684. At all times mentioned herein, Defendant COUNTY OF SACRAMENTO and Defendant BLANAS, by and through the Defendant SHERIFF'S DEPARTMENT, was acting under color of law, to wit, under color of statutes, ordinances, regulations, policies, customs, and usages of the State of California and/or the COUNTY OF SACRAMENTO, SHERIFF'S DEPARTMENT and denied each Plaintiff a CCW.

685. The State DOJ designed the CCW application which is discriminatory on its face since it circumvents the Equal Protection clause in that it has certain blocks delineating differing standards for approval of applicants between peace officers, judges, and common citizens.

686. At all relevant times mentioned herein, Defendants are public officials subject to the limitations as set forth in the United States Constitution and the laws of the United States of America, including, but not limited to, the First, Second, Ninth and Fourteenth Amendments.

687. Defendants, and each of them, were policy makers and ratified and/or supplemented the conduct of the other named defendants, and former Sheriff Glen Craig, and were in a position of power to enforce the laws of the State of California, United States of America, and uphold the Constitution.

688. Defendants were, at all times herein mentioned, legally responsible for the acts of their employees, agents, and servants committed in the scope of their employment.

689. As a direct and proximate result of the herein acts, omissions, and systematic deficiencies, policies and customs of all and/or part of Defendants, Plaintiffs have been harmed according to proof.

690. Plaintiffs have continuously applied for, and been denied CCW permits, and have been denied access to the application forms themselves.

691. Defendants set up impediments to even obtaining applications for CCWs by giving citizens

the run around about how and where to apply, and how to obtain the applications.

692. Each time Plaintiffs attempted to apply, he is given the run around whereby he would visit the same office several times before and employee of Defendant Sheriff's Department would eventually provide him with the application forms.

693. Per "Sacramento County Sheriff's Department, Concealed Weapons Permit Issuance Policy and Application Process" (codified in the challenged statutes), "Good cause exists for issuance of a concealed weapons permit as follows:  General: The determination of good cause for the issuance of a concealed weapons permit is perhaps the most difficult aspect in this process. While every applicant may believe that he/she has good cause for a license, the Sheriff's determination is based on consideration of public good and safety."

694. However, under the same policy, the following is "prima facie [i.e. accepted as so until proved otherwise]  evidence of good cause for issuance of a concealed weapons permit: Applicant is an active or honorably separated member of the criminal justice system directly responsible for the investigation, arrest, incarceration, prosecution or imposition of sentence on criminal offenders and has received threats of harm to person or family as a result of official duties."

695. Under this policy, all retired and former members of the State DOJ, Judges, District Attorney's Office and Sheriff's Department are automatically granted permits, whereas all other citizens must show good cause, in direct violation of the Equal Protection clause.

696. This is especially disturbing considering that members of the armed forces are excluded from the so-called prima-facie good cause standards.

697. However, in practice, Defendant BLANAS, Defendant MCGINNIS and Defendant COUNTY go much further in violation of the Equal Protection Clause.

698. Former Sheriff Glen Craig, Defendant BLANAS, Defendant MCGINNIS and Defendants COUNTY and SHERIFF'S DEPARTMENT have established a policy and practice of issuing CCWs to campaign contributors, in direct violation of the First (association and speech) and Fourteenth (Equal Protection) Amendments.

699. Defendants issue honorary and low-level reserve law enforcement credentials ("Level 3" untrained reserve status) to political campaign contributors just so that these campaign

contributors can carry a concealed weapon.

700.   Some of the lists of such "low level crony reservists" are NOT held within the sheriff's department or any county building - they are instead held in the offices of a private attorney and not available to the sheriff's department "reserve coordinator".

701.   For instance, through public records reviewed, it is well documented that Defendants have obtained at least a half a million dollars from individuals for whom Blanas will not release the so-called good cause data for issuance of a CCW; nevertheless, these same individuals were given CCWs in exchange for campaign contributions.

702.   Defendant BROWN tacitly allow Defendants LOU BLANAS and Defendant MCGINNIS , individually and official capacity as SHERIFF OF COUNTY OF SACRAMENTO; COUNTY OF SACRAMENTO, SHERIFF'S DEPARTMENT; COUNTY OF SACRAMENTO to issue CCWs to campaign contributors and political supporters of the issuing authority.

703.   The CCW statute in California creates seperate classes of CCW recipients on its face, and in order of ease of obtaining one are as follows: 1) Honorably Retired California Peace officers [life time issuance], 2) retired law enforcement officers who were not California POST certified [reapply every two years], 3) Judges, 4) Prima Facie standard for those affiliate with law enforcement, and 5) all other citizens who must establish good cause for obtaining a CCW.

704.   Police officers and retired police officers, including federal officers, obtain their concealed weapons authorization under a separate statute, which does not demand a showing of good cause. See Cal. Penal Code S 12031(b).

705.   In other words, 12031(b) grants to "active or honorably retired" law enforcement officers preferential access to concealed weapons permits due to their current or former affiliation to the law enforcement community.

706.   Furthermore, Honorably Retired California Peace officers, as part of their retirement benefits along with their gold watch for years of service, get issued a lifetime CCW permit whereby they don't even have to apply or pay a fee, as compared to all other applicants who must apply and pay a fee.

707.   Though the stated reason is to protect California Peace Officers from possible harm due to their high involvement in crime, other professions carry the same or higher risk, military personnel subject to terrorist attacks and protests, doctors employed at abortion clinics, attorney's dealing with disgruntled litigants and inmates, and so forth.

708.   There is no rationale basis for this statute as a young black male in California under the age of 25 has a exceedingly far greater chance of being murdered than all law enforcement officers combined throughout the entire United States.

709.   Non-law enforcement citizens of good moral character and who adequate training and experience in the use of firearms (i.e. hunters, military, etc.) are not granted the same privilege.  Therefore, the law has no rationale purpose other than not to disrupt law endorsements support of the current firearms laws.

710.   If defendants enforced the same gun laws against law enforcement officers, the current gun laws would never have been passed as they would have been opposed by law enforcement.

711.   Currently, any California resident can carry a concealed weapon simply by becoming a member of a law enforcement agency, then immediately retiring; thus, Plaintiff would have to just join "the club", then quit.

712.   Plaintiffs are entitled to equal rights, protections and privileges under the law.  However, peace officers are given rights simply because they happen to be associated with law enforcement.  Enforcement of such laws violates Plaintiffs' equal protection and association rights.

713.   Plaintiffs have applied for, and attempted to apply for, a CCW with the Defendant County of Sacramento, Sheriff's Department.

714.   Each time Plaintiffs have applied, or attempted to apply, they are summarily rejected or prevented from obtaining a CCW.

715.   However, individuals who have made political campaign contributions to Defendant BLANAS', have summarily received both a CCW and/or a honorary deputies badge when they apply for their CCW.

716.   Under California's statutory scheme, CCWs are sold via campaign contributions.

717.   The selling of CCWs has been a long tradition since Defendant BLANAS was first brought in

69

by then Sherif Craig to generate campaign contributions.

718. Plaintiffs' right to equal protection under the law has been violated, and continues to be violated on a daily basis for the following reasons:

719. Penal Code Sections 12027, 12031(b), 12050-12054 are unconstitutional in that this statutory scheme specifically exempts retired law enforcement personnel from those provisions and burdens which are held applicable to common good citizens, including Plaintiff.  The holding in Silveira v. BROWN, 312 F.3d 1052 (9th Cir.)(Reinhardt, J), rehearing en banc denied, 328 F.3d 567 (9th Cir. 2003)(six dissents) is controlling, which struck down an identical exemption in the State's Semi-Automatic Rifle's statute.  Similarly, Penal Code 12050 makes exceptions in the statutory scheme for state and federal court judges as well.

720. Plaintiff can discern no legitimate state interest in permitting retired peace officers to possess and use for their personal pleasure concealed handguns.  "Rather, the retired officers exception arbitrarily and unreasonably affords a privilege to one group of individuals that is denied to others, including plaintiffs."  See Silveira.

721. Plaintiff is deprived of equal protection since those who have contributed to political campaigns are summarily given CCWs upon request.

722. Defendants BLANAS, COUNTY, Defendant MCGINNIS and DEPARTMENT have a written policy for the issuance of CCWs which discriminates against anyone who is not a honorably retired peace officer (i.e. Prima Facie good cause standard)

723. For Monell liability purposes, Defendants BLANAS, Defendant MCGINNIS SHERIFF'S DEPARTMENT, AND COUNTY have argued and taken the position that Defendant BROWN is the policy and decision maker for Sacramento County.

724. However, all Defendants have created and/enforced a unconstitutional statutory scheme and policy of issuing CCWs in violation of the Fourteenth Amendments Equal Protection Clause.

725. For instance, and officer who worked one day on the job, honorably retires because of injury, or just voluntarily, is granted a privilege to carry a concealed handgun for life, whereas all other citizens are not granted the same privilege.  Plaintiff requests injunctive relief in either having a CCW issued, or having the statutes and County's written policy declared unconstitutional.

726.   Plaintiff has been damaged and harmed according to proof.

727.   In addition, the California Constitution, Article I, Section 1 specifically provides that "All people are by nature free and independent and have inalienable rights.  Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy."

728.   As a direct and proximate result, if Defendants are not enjoined from enforcing the subject laws, Plaintiffs will be irreparably harmed according to proof, including, but not limited to the loss of use and enjoyment of constitutional rights.

729.   As a direct and proximate result, Plaintiffs have been damaged according to proof, including, but not limited to the loss of use and enjoyment of constitutional rights.

## THIRD CAUSE OF ACTION
42 U.S.C. § 1983
(1st and 14th Amendment - Free Speech and Association)
[Defendants LOU BLANAS, MCGINNIS individually and official capacity as SHERIFF OF COUNTY OF SACRAMENTO; COUNTY OF SACRAMENTO, SHERIFF'S DEPARTMENT; COUNTY OF SACRAMENTO only]

730.   As  Plaintiffs incorporate by all preceding paragraphs as though the same were set forth herein at length.

731.   Individuals who financially support defendants are provided CCWs upon request, whereas those who do not politically/financially support Defendants are summarily denied CCWs, such as Plaintiffs were denied.

732.   Because of Defendants policies favoring campaign contributors and political supporters regarding the issuance of CCWs, Plaintiff's First Amendment rights to freedom of expression and association have been violated.

733.   As a direct and proximate result, Plaintiffs have been damaged according to proof, including, but not limited to the loss of use and enjoyment of constitutional rights.

## FOURTH CAUSE OF ACTION
42 U.S.C. § 1983
(2nd and 14th Amendment)
[all Defendants except Sheehan and Mason]

734.   Plaintiff incorporate the above referenced paragraphs as though the same were set forth herein at length.

71

735. Plaintiff's right to keep and bear arms has been infringed under the Second Amendment, and as incorporated through the 14th Amendment.

736. Plaintiff has been damaged according to proof.

FIFTH CAUSE OF ACTION
42 U.S.C. § 1983
(14TH Amendment - Privileges and Immunities)
[all Defendants except Sheehan and Mason]

737. As Plaintiff incorporates the above referenced paragraphs as though the same were set forth herein at length.

738. Plaintiff's privileges and immunities includes the right to keep and bear arms, and is deemed a personal right. See Saenz v. Roe, 526 U.S. 489 (1999). Flack, The Adoption of the Fourteenth Amendment (Johns Hopkins 1908) is illustrative on this cause of action.

739. Defendants have violated Plaintiffs' Privileges and Immunities of the Fourteenth Amendment.

740. Plaintiff has been damaged according to proof.

SIXTH CAUSE OF ACTION
42 U.S.C. § 1983
(Ninth Amendment - Right to Self Preservation)
[all Defendants except Sheehan and Mason]

741. Plaintiff incorporate the above reference paragraphs as though the same were set forth herein at length.

742. The Supreme Court has ruled that right to keep and bear arms is an individual right for purposes of self defense, the Ninth Amendment of the U.S. Constitution specifically provides that the rights of the people, though not expressly enumerated, are nevertheless entitled to protection.

743. The Ninth Amendment is directly applicable to Plaintiffs since "The State of California is an inseparable part of the United States of America, and the United States Constitution is the supreme law of the land." Article III, Section 1 of the California Constitution.

744. In this case, this country has a long and established history of "the people" keeping and bearing military arms; keeping and bearing arms is a natural right which pre-existed the rights enumerated in the constitution.

745. The right to keep and bear arms is a natural right that every law abiding citizen posses, this

right can never be restricted or taken away by Government.

746. Plaintiff has a natural right to self preservation as noted by the Ninth Amendment which means nothing unless he or she is allowed to possess to tools to exercise such a right, which includes the right to keep and bear arms, and is deemed a personal right.

747. Defendants have violated Plaintiff's Ninth Amendment.

748. Plaintiff has been damaged according to proof.

749. Defendants have infringed upon Plaintiffs' natural right to possess, bear and keep firearms. As a direct and proximate result, Plaintiffs have been damaged according to proof, including, but not limited to the loss of use and enjoyment of constitutional rights.

SEVENTH OF ACTION
42 U.S.C. § 1983 and Bivens as to the Federal Government
(Declaratory and Injunctive Relief)
State and Federal Attorney Generals only

750. Plaintiff incorporates the above referenced paragraphs as though the same were set forth herein at length.

751. Plaintiff seeks a declaration from the court regarding the constitutionality of the CCW statutes enforced and promulgated by Defendants ATTORNEY GENERAL BROWN and ATTORNEY GENERAL MICHAEL B. MUKASEY, providing preferential treatment to retired law enforcement officers.

752. PC § 12027, which provides "Any peace officer described in this paragraph who has been honorably retired shall be issued an identification certificate by the law enforcement agency from which the officer has retired. The issuing agency may charge a fee necessary to cover any reasonable expenses incurred by the agency in issuing certificates pursuant to this subdivision. As used in this section and Section 12031, the term "honorably retired" includes all peace officers who have qualified for, and have accepted, a service or disability retirement. For purposes of this section and Section 12031, the term "honorably retired" does not include an officer who has agreed to a service retirement in lieu of termination."

753. The Law Enforcement Officers Safety Act (LEOSA) is a United States federal law, enacted in 2004, that allows two classes of persons -- the "qualified law enforcement officer" and the "qualified retired law enforcement officer" -- to carry a concealed firearm in any jurisdiction in the United States, regardless of any state or local law to the contrary, with certain

exceptions.

754. The LEOSA was considered during the 108th Congress as H.R. 218. It was signed into law by President George W. Bush on July 22, 2004 as Public Law 108-277. It is codified as 18 U.S. Code 926B (qualified law enforcement officers) and 926C (qualified retired law enforcement officers).

755. This federal law allows two classes of persons — the "qualified law enforcement officer" and the "qualified retired law enforcement officer" — to carry a concealed firearm in any jurisdiction in the United States, regardless of any state or local law to the contrary, with certain exceptions.

756. Thus, between both State and Federal law, honorably retired law enforcement officers are provided a lifetime endorsement of self defense that is not bestowed upon any other citizen not affiliated with law enforcement.

757. See Melendez v City of Los Angeles (1998) 63 Cal. App. 4th I; 73 Cal. Rpts. 2d 469.

758. These statutes violate the Second Amendment and as applied to the States through the Fourteenth.

WHEREFORE, Plaintiffs demand judgment against the Defendants, jointly and severally, including but not limited to:

1. For general damages in a sum to be determined.

2. For special damages in a sum to be determined.

3. For attorney fees and costs.

4. For punitive damages.

5. For issuance of a preliminary and permanent injunction, including, but not limited to, prohibiting further enforcement of any act or law in violation of Plaintiffs' constitutional rights.

DATED:      September 2, 2008      LAW OFFICES OF GARY GORSKI

By /s/ Gary W. Gorski
Gary Gorski
Attorney for Plaintiffs