1   EDMUND G. BROWN JR., State Bar No. 37100
    Attorney General of California
2   DOUGLAS J. WOODS, State Bar No. 161531
    Supervising Deputy Attorney General
3   GEOFFREY GRAYBILL, State Bar No. 53643
    Deputy Attorney General
4    1300 I Street, Suite 125
     P.O. Box 944255
5    Sacramento, CA 94244-2550
     Telephone:  (916) 324-5465
6    Fax:  (916) 324-8835
     E-mail:  Geoffrey.Graybill@doj.ca.gov
7   *Attorneys for Defendant Edmund G. Brown Jr.,*
    *Attorney General of the State of California*

8

9                    IN THE UNITED STATES DISTRICT COURT

10                  FOR THE EASTERN DISTRICT OF CALIFORNIA

11

12  **JAMES ROTHERY, Esq.; ANDREA**          Case No:  2:08-cv-02064-JAM-KJM
    **HOFFMAN,**
13                                           **MEMORANDUM OF POINTS AND**
                                 Plaintiffs,  **AUTHORITIES IN SUPPORT OF**
14                                           **ATTORNEY GENERAL EDMUND G.**
                                             **BROWN JR.'S MOTION TO DISMISS**
                      v.                     **COMPLAINT**
15                                           **[Fed. R. Civ. P. 12(b)(1) and 12(b)(6)]**

16  **Former Sheriff LOU BLANAS; SHERIFF**
    **JOHN MCGINNIS; Detective TIM**         Date:       May 6, 2009
17  **SHEEHAN; Detective FRED MASON;**       Time:       9:00 a.m.
    **SACRAMENTO COUNTY SHERIFF'S**          Ctrm:       6
18  **DEPARTMENT, an independent branch of** Judge       The Honorable John A. Mendez
    **government of the COUNTY OF**          Action Filed:  9/3/2008
19  **SACRAMENTO; COUNTY OF**
    **SACRAMENTO; STATE OF**
20  **CALIFORNIA ATTORNEY GENERAL**
    **JERRY BROWN; DOES 1 through 25,**
21  **unknown co-consipirators; ATTORNEY**
    **GENERAL MICHAEL B. MUKASEY,**
22
                                 Defendants.
23

24  / / /

25  / / /

26  / / /

27  / / /

28

# TABLE OF CONTENTS

Page

Introduction ........................................................................................................ 1

California's regulation of concealed weapons ...................................................... 3

Allegations of the complaint ................................................................................ 4

    I.    First cause of action (against county defendants only) ........................... 4

    II.    Second cause of action (against county defendants only) ...................... 5

    III.    Third cause of action (against county defendants only) ......................... 5

    IV.    Fourth cause of action (against all defendants except sheriff's deputies) .............. 5

    V.    Fifth cause of action (against all defendants except sheriff's deputies) ................ 6

    VI.    Sixth cause of action (against all defendants except sheriff's deputies) ............... 6

    VII.    Seventh cause of action (against former u.S. Attorney general mukasey and california attorney general brown only) ................................................................. 6

Argument ............................................................................................................ 6

    I.    Applicants have not met the case or controversy requirement of article iii as to attorney general brown ........................................................... 7

        A.    Applicants lack standing as to the attorney general because their alleged injuries are not traceable to any action or authority of the attorney general ......................................................................... 8

        B.    Applicants lack standing as to the attorney general because any hypothetical relief to redress applicant's alleged injuries could only be addressed to the sheriff ..................................................... 9

        C.    Applicants lack standing because they allege no legally recognized injury ....................................................................................... 10

    II.    The eleventh amendment likewise bars this action as to the attorney general ...... 12

    III.    The CCWs statutes do not prevent applicants from using a handgun to protect themselves, their families and property .................................. 14

    IV.    There is no federally protected right to carry a concealed handgun beyond what california permits ...................................................... 15

        A.    The second amendment does not establish a right beyond what california permits ................................................................. 15

        B.    In any event the second amendment rights prescribed in heller are not applicable to the states ........................................................ 16

        C.    The privileges or immunities clause of the fourteenth amendment does not establish a right to carry a concealed weapon ..................... 17

        D.    The ninth amendment does not establish a right to carry a concealed weapon ...................................................................................... 18

    V.    Authorization for retired peace officers to carry concealed weapons without a CCWs license does not deny non-peace officers equal protection of the law ...................................................................................................... 19

        A.    Peace officers and non-peace officers are not similarly situated .............. 19

i

**TABLE OF CONTENTS**
(continued)

**Page**

      B.      The CCWs application process is necessary to determine whether non-peace officers meet approximately the same qualifications for carrying loaded concealed weapons in public as peace officers .............. 20

Conclusion ...................................................................................................................... 22

# TABLE OF AUTHORITIES

**Page**

CASES

*Astoria Federal Sav. & Loan Assn. v. Solarino*
501 U.S. 104 (1991) ............................................................................................. 7

*Augustine v. United States*
704 F.2d 1074 (9th Cir. 1983) ............................................................................. 7

*Aydin Corp. v. Union of India*
940 F.2d 527 (9th Cir. 1991) ............................................................................. 10

*Biotics Research Corp. v. Heckler*
710 F.2d 1375 (9th Cir. 1983) ............................................................................. 7

*City of Los Angeles v. Lyons*
461 U.S. 95 (1983) ............................................................................................. 10

*Cleburne v. Cleburne Living Center, Inc.*
473 U.S. 432 (1985) ..................................................................................... 19, 20

*Cruz v. Beto*
405 U.S. 319 (1972) ............................................................................................. 6

*Dandridge v. Williams*
397 U.S. 471 (1970) ........................................................................................... 20

*David K. Mehl, et al. v. Lou Blanas, et al.*
USDC ED Case No. CIV S 03 2682 MCE/KJM ............................................. 1, 2

*Demery v. Kupperman*
735 F.2d 1139 (9th Cir. 1984) ........................................................................... 12

*District of Columbia v. Heller*
128 S.Ct. 2783 (2008) ................................................................................. passim

*Erdelyi v. O'Brien*
680 F.2d 61 (9th Cir. 1982) ............................................................................... 16

*Ex parte Young*
209 U.S. 123 (1908) ......................................................................... 9, 12, 13, 14

*Fresno Rifle & Pistol Club, Inc. v. Van De Kamp*
965 F.2d 723 (9th Cir. 1992) ....................................................................... 16, 17

iii

1

## TABLE OF AUTHORITIES
### (continued)

2

Page

3

*Gifford v. City of Los Angeles*

4
    88 Cal. App. 4th 801 (2001) ............................................... 8

5
*Guillory v. County of Orange*
    731 F.3d 1379 (9th Cir. 1984).............................................. 16

6

7
*Heller v. Doe*
    509 U.S. 312 (1993)........................................................ 21

8
*Hickman v. Block*
    81 F.3d 98 (9th Cir. 1996)............................................ 11, 16

9

10
*Hishon v. King & Spaulding*
    467 U.S. 69 (1984).......................................................... 6

11

12
*Idaho Conservation League v. Mumma*
    956 F.2d 1508 (9th Cir. 1992)............................................ 10

13
*Long v. Van de Kamp*
    961 F.2d 151 (9th Cir.1992)......................................... 9, 12, 13

14

15
*Los Angeles Co. Bar Assoc. v. Eu*
    979 F.2d 697 (9th Cir. 1992)............................................. 13

16

17
*Lujan v. Defenders of Wildlife*
    504 U.S. 555 (1992) ................................................ 7, 8, 9, 10

18
*Mack v. South Bay Beer Distributors, Inc.*
    798 F.2d 1279 (9th Cir. 1986)........................................... 6, 7

19

20
*McCarthy v. United States*
    850 F.2d 558 (9th Cir. 1988), cert. den., 489 U.S. 1052 (1989) ............... 7

21
*McGowan v. Maryland*
    366 U.S. 420 (1961)....................................................... 20

22

23
*Monell v. Dept. of Social Services*
    436 U.S. 658 (1978) ....................................................... 2

24

25
*Nordyke v. King*
    319 F.3d 1185 (9th Cir. 2003)........................................... 16

26
*Pennhurst State School & Hosp. v. Halderman*
    465 U.S. 89 (1984)....................................................... 12

27

28

1

## TABLE OF AUTHORITIES
### (continued)

2
Page

3

*Plyler v. Doe*
    457 U.S. 202 (1982) ................................................................................... 19

4

5

*Presser v. Illinois*
    116 U.S. 252 (1886) ................................................................................... 17

6

*Saenz v. Roe*
    526 U.S. 489 (1999) .............................................................................. 17, 18

7

8

*San Diego County Gun Rights Committee v. Reno*
    98 F.3d 1121 (9th Cir. 1996) ................................................................. 18, 19

9

*Schowengerdt v. United States*
    944 F.2d 483 (9th Cir. 1991) ..................................................................... 18

10

11

*Scott v. Pasadena Unified School Dist.*
    306 F.3d 646 (9th Cir. 2002) ..................................................................... 10

12

13

*Silveira v. Lockyer*
    312 F.3d 1062 (9th Cir. 2002) ........................................................ 11, 19, 21

14

*Southern Pac. Transp. Co. v. Redden*
    651 F.2d 613 (1980) ............................................................................ 9, 12, 13

15

16

*Thomas v. Anchorage Equal Rights Comm.*
    220 F.3d 1134 (9th Cir. 2000) (en banc) ................................................... 10

17

*United States v. Cruikshank*
    92 U.S. 542 (1876) ..................................................................................... 17

18

19

*Valley Forge Christian Coll. v. Ams. United for Separation of Church & State*
    454 U.S. 464 (1982) ..................................................................................... 7

20

21

*Warth v. Seldin*
    422 U.S. 490 (1975) ..................................................................................... 8

22

23

*Whitmore v. Arkansas*
    495 U.S. 149 (1990) ................................................................................... 10

24

**STATUTES**

25

American Constitutional Law
    § 11-2 (2d ed. 1988) ................................................................................... 17

26

27

28

1

## <u>TABLE OF AUTHORITIES</u>
### (continued)

2

<u>Page</u>

3    Cal. Family Code § 6380 ................................................................................................ 4

4    Cal. Gov. Code § 1031(f) ........................................................................................... 20

5    Cal. Penal Code

6        § 832 .............................................................................................................. 20
    § 832.4 ........................................................................................................... 20

7        § 832.05 ......................................................................................................... 20
    § 11105(a) ........................................................................................................ 4

8        § 12000, et seq. ................................................................................................ 3

9        § 12021 .......................................................................................................... 15
    § 12021.1 ....................................................................................................... 15

10       § 12026 .......................................................................................................... 15
    § 12026(b) .......................................................................................... 3, 11, 14

11       § 12027 ................................................................................................... 2, 5, 6
    § 12027.1(a) .............................................................................................. 4, 20

12       § 12027.1(a)(1)(B) ......................................................................................... 20

13       § 12027.1(e) .............................................................................................. 4, 20
    § 12031(a) ...................................................................................................... 21

14       § 12031(b) ....................................................................................................... 5
    § 12031(b)(1) ................................................................................................. 20

15       § 12031(b)(2) ................................................................................................. 20
    § 12031(h) ...................................................................................................... 21

16       § 12031(h) ........................................................................................................ 3

17       § 12031(j) .................................................................................................. 3, 21
    § 12031(l) .................................................................................................. 3, 21

18       § 12050 ..................................................................................... 8, 9, 11, 21
    § 12050 ....................................................................................................... 1, 19

19       § 12050.2 .......................................................................................................... 3

20       §§ 12050-12054 ......................................................................................... 5, 13
    § 12050(a)(1)(A), (B) ...................................................................................... 3

21       § 12050(a)(1)(A), (B), (E) ............................................................................... 3
    § 12050(a)(2)(A)(i) ........................................................................................ 11

22       § 12050(b) ........................................................................................................ 3

23       § 12051(a)(1) .................................................................................................... 4
    § 12051(a)(1) and (3) ....................................................................................... 3

24       § 12051(a)(3)(A) ........................................................................................ 4, 13
    § 12051(a)(3)(B) ............................................................................................... 4

25       § 12052 ............................................................................................................ 4
    § 12052(a) ......................................................................................................... 4

26       § 12053(c) ...................................................................................................... 11
    § 12054(c) .................................................................................................. 3, 21

27       § 13510 .......................................................................................................... 20

28

1

## TABLE OF AUTHORITIES
### (continued)

2

Page

3

Cal. Welf. & Inst. Code

4

§ 8100 ................................................................................................ 15
§ 8103 ................................................................................................ 15

5

§ 8103(h) ............................................................................................. 4
§ 8104 .................................................................................................. 4

6

Modern Constitutional Law

7

§ 39.01 (2d ed. 1997) ........................................................................ 17

8

United States Code
Title 18

9

§ 1961-1968 ......................................................................................... 4

10

Title 42

11

§ 1983 ............................................................................................. 2, 5

12

**CONSTITUTIONAL PROVISIONS**

13

California Constitution Articlevol.

14

§ 13 ................................................................................................... 13

15

First Amendment ................................................................................. 5

16

Second Amendment ................................................................... passim

17

Ninth Amendment ..................................................................... passim

18

Eleventh Amendment ............................................................... passim

19

Fourteenth Amendment ............................................................ passim

20

Article III of the U.S. Constitution ........................... 7, 9, 11, 14

21

United States Constitution ........................................ 2, 3, 12, 18

22

**COURT RULES**

23

Fed.R.Civ.P.

24

12(b)(1) ........................................................................................... 2, 7
12(b)(6) ........................................................................................... 2, 6

25

**OTHER AUTHORITIES**

26

113 Harv. L. Rev. 110 (1999) ............................................................ 18

27

70 Alb. L. Rev. 1473, 1481 (2007) .................................................... 18

28

1

## TABLE OF AUTHORITIES
**(continued)**

2

**Page**

3

Cal. Code Regs.
 Title 11, § 1000 ........................................................................................ 20
 Title 11, § 1005 ........................................................................................ 20

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

As it pertains to defendant Edmund G. Brown Jr. sued in his official capacity as Attorney General of California[1], the complaint in this action challenges the California law governing the issuance of Concealed Carry Weapons Permits (CCWSs), California Penal Code Sections 12050, et seq. (hereinafter the "Statute").  Plaintiffs ask this Court to declare the Statute invalid and void, as written and as applied, and to grant injunctive relief to prevent defendants from enforcing the Statute.  In this regard the complaint is a reiteration of plaintiffs' counsel's unsuccessful action in *David K. Mehl, et al. v. Lou Blanas, et al.*, United States District Court for the Eastern District of California, Case No. CIV S 03 2682 MCE/KJM for which an appeal is pending in the United States Court of Appeal for the Ninth Circuit (No. 08-15773).  This new version fares no better.

The plaintiffs, James Rothery and Andrea Hoffman, are apparently California citizens who are residents of Sacramento County, and not otherwise prohibited by law from possessing firearms.  They allegedly applied several times for CCWSs from the defendant County of Sacramento through the defendant Office of the Sheriff, but were denied each time.  Complaint [Compl.], pp. 2-3. Accordingly, plaintiffs are referred to hereinafter as the "Applicants."  The first three causes of action are stated exclusively against the County defendants[2], and allege that permits were granted to others for reasons that purportedly constitute violations of federal RICO and were denied to Applicants on grounds that allegedly deprive them of equal protection of the law and violate their speech and association rights protected by the First and Fourteenth Amendments.  Compl., pp. 1-71.

/ / /

---

[1] Since Attorney General Brown appears to have been sued only in his official capacity, he will be referred to hereinafter as "Attorney General Brown" to avoid confusion with United States Attorney General Michael B. Mukasey, also a named defendant

[2] The complaint identifies the defendants as to these causes of action as the County of Sacramento, Sacramento County Sheriff's Department, former Sheriff Lou Blanas, incumbent Sheriff John McGinnis, Detective Tim Sheehan and Detective Fred Mason.  Complaint [Compl.], p. 4:2-6.  In this memorandum these defendants will be referred to collectively as the "County defendants."

1

The Fourth through Sixth Causes of Action are directed against Attorney General Brown and the County defendants aside from the defendant detectives. These causes of action assert the Statute violates Applicants' right to carry handguns for protection of themselves, their families and their property as purportedly guaranteed by the Second, Ninth and Fourteenth Amendments of the United States Constitution. Compl., pp. 71:25-28-73:1-9. In their Seventh Cause of Action the Applicants also seek redress against Attorney General Brown alleging that their right to equal protection of the laws is violated by California Penal Code section 12027, which purportedly "provide[s] preferential treatment to retired law enforcement officers." Compl., pp.73:14-25; 74:10-12.

Attorney General Brown moves this Court for an order dismissing this action pursuant to Fed.R.Civ. P. 12(b)(1) and 12(b)(6), on the ground that no case or controversy has been stated against him and that allegations of the Complaint fail to allege a claim for which relief can be granted. These grounds are the same on which virtually identical allegations against Attorney General Brown's predecessor, Bill Lockyer, were dismissed in *Mehl*.

Applicants' standing to challenge California's CCWS statute derives from and depends solely on their applications for and intentions to reapply for CCWS. Attorney General Brown has no authority to grant or deny CCWS. Such authority resides exclusively in the Sheriff or Chief of Police in the jurisdiction where Applicants reside or have a business.

Applicants candidly acknowledge that their purpose in bringing this action against Attorney General Brown is to overcome their concern that damages cannot be recovered against defendant County of Sacramento pursuant to 42 U.S.C. § 1983 as construed by *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978). Compl., pp. 65:18-21; 70:20-22. However, the limitations on liability under section 1983 cannot confer standing where it does not otherwise exist.

Applicants cannot allege or prove any set of facts that would entitle them to the requested relief against Attorney General Brown. Because the Statute does not confer upon Attorney General Brown authority to grant or deny CCWSs or to control County defendants' authority in that regard. Applicants neither have standing to pursue their asserted claims against him nor can overcome his immunity from suit under the Eleventh Amendment. Moreover, the decision in

2

1    *District of Columbia v. Heller*, 128 S.Ct. 2783 (2008) does not support Applicants' contentions

2    that the Statute violates their the Second Amendment "right to keep and bear arms" or "natural

3    rights" as allegedly guaranteed them by the Ninth and Fourteenth Amendments to the United

4    States Constitution.  Finally, the Statute's alleged separate treatment of retired law enforcement

5    officers' eligibility to carry concealed weapons does not deny Applicants equal protection or

6    privileges or immunities under the Fourteenth Amendment because they are not similarly situated

7    with retired law enforcement officers.

8                       **CALIFORNIA'S REGULATION OF CONCEALED WEAPONS**

9         California's system for regulation of firearms is set forth in its Dangerous Weapons Control

10   Law, California Penal Code Section 12000, et seq.

11        Unless disqualified due to commission of a felony, use of narcotic drugs or a determination

12   of mental infirmity, Californians may keep loaded and concealable firearms in their homes,

13   businesses and other private property without a CCWS license, and may use them for self-defense

14   or defense of another.  Cal. Penal Code §§ 12026(b), 12031(h), (j), (l).

15        CCWS licenses can be issued only by a chief of police or county sheriff ("licensing

16   authority") in the jurisdiction within which the applicant resides, is employed or conducts a

17   business.  Cal. Penal Code § 12050(a)(1)(A), (B).  The licensing authority is required to publish

18   its policy for reviewing applications (Cal. Penal Code § 12050.2) and may impose restrictions on

19   the licenses it issues (Cal. Penal Code § 12050(b)).

20        The licensing authority may issue a license only if the applicant establishes to the

21   satisfaction of the sheriff or police chief that he or she is of good moral character, that good cause

22   exists for issuance, and that he or she has completed an acceptable course of training in firearm

23   safety and the law regarding the permissible use of a firearm.  Cal. Penal Code § 12050(a)(1)(A),

24   (B), (E).  Moreover, the licensing agency may require the applicant to submit to the same

25   psychological examination process used for law enforcement officers.  Cal. Penal Code

26   § 12054(c).

27        The elements of a CCWS application are prescribed by California Penal Code section

28   12051(a)(1) and (3).  The Attorney General is required to make available a standardized

3

1    application form subject to review by a committee including representatives of the California

2    State Sheriffs' Association, the California Police Chiefs' Association and the California

3    Department of Justice ("DOJ"), which must be used to apply for a CCWS license.  Cal. Penal

4    Code § 12051(a)(3)(A).  The Court is requested to take judicial notice of the standard application

5    form.  An applicant must submit a written, signed application (Cal. Penal Code § 12051(a)(1))

6    attesting to the truth of the information provided (Cal. Penal Code § 12051(a)(3)(B)).

7        As part of the application process, chiefs or sheriffs must forward the applicants'

8    fingerprints to the DOJ.  Cal. Penal Code § 12052.  A CCWS license cannot be issued until the

9    licensing authority receives a DOJ report showing that the applicant is not prohibited from

10   possessing, receiving, owning or purchasing a firearm based upon data about the applicant which

11   DOJ is required by law to retain.  *Id.*  DOJ retains state summary criminal history information

12   (Cal. Penal Code § 11105(a)) and federal criminal history information (Cal. Penal Code §

13   11105(a)).  DOJ also retains information about mental health adjudications (Cal. Welf. & Inst.

14   Code §§ 8103(h), 8104) and protective orders (Cal. Family Code § 6380) that result in the loss of

15   eligibility to possess firearms.  DOJ checks all of these databases and informs the licensing

16   authority whether the applicant may lawfully own or possess firearms.  *See* Cal. Penal Code

17   § 12052(a).  The licensing agency then makes the determination of whether the applicant qualifies

18   for a CCWS license.

19       A retired peace officer is not entitled under state law to carry a loaded concealable weapon

20   unless the employing agency certifies on the identification card issued at retirement that it

21   approves the officer's carrying such a firearm.  Cal. Penal Code § 12027.1(a).  An officer who is

22   retired for psychiatric disability cannot receive this certification.  Cal. Penal Code § 12027.1(e).

23                    **ALLEGATIONS OF THE COMPLAINT**

24   **I.    FIRST CAUSE OF ACTION (AGAINST COUNTY DEFENDANTS ONLY)**

25       The complaint consists of seven causes of action set out in 74 pages and 758 paragraphs.

26   Of these, 61 pages and 648 paragraphs constituting the first cause of action are directed

27   exclusively against the County defendants pursuant to federal RICO (18 U.S.C. §§ 1961-1968).

28

                                    4

1   Compl., p. 4:2-19.  Applicants accuse the County defendants of requiring political and financial

2   support in exchange for CCWSs.  Compl., pp. 1-61.

3   **II.     SECOND CAUSE OF ACTION (AGAINST COUNTY DEFENDANTS ONLY)**

4          The second cause of action is directed only against County defendants, excluding the

5   Sheriff's deputies.  Compl., p. 61:18-19.  Applicants contend that "Penal Code Sections 12027,

6   12031(b), 12050-12054 [are unconstitutional] in that it [sic] exempts retired law enforcement

7   personnel from those provisions and burdens which are held applicable to common good

8   citizens."  Compl., pp. 61:28-62:1, 6-9.  This cause of action also appears to be a facial challenge

9   to Statute brought under 42 U.S.C. § 1983 on the ground that it allegedly impacts the "personal

10  individual right to keep and possess a handgun for purposes of self defense and any licensing

11  scheme must meet strict scrutiny standards."  Compl., p. 61:22-23.  In the alternative, Applicants

12  allege that even if the Statute passes constitutional muster, "in form, substance and application it

13  is applied in a discriminatory fashion in violation of the Fourteenth Amendment's Equal

14  Protection Clause and the First, Second and Ninth Amendment."  Compl., p. 61:24-27.

15         Applicants claim County defendants repeatedly denied them CCWSs based on

16  unconstitutional policies and procedures.  Compl., pp. 66:27-28; 67-68; 69:69:21-28.

17  Accordingly, they "request injunctive relief in either having a CCWS issued, or having the

18  statutes and the County's written policy declared unconstitutional."  Compl., p. 70:27-28.

19  **III.    THIRD CAUSE OF ACTION (AGAINST COUNTY DEFENDANTS ONLY)**

20         Applicants contend that County defendants' alleged "policies favoring campaign

21  contributors and political supporters regarding issuance of CCWSs, [violates] Plaintiff's First

22  Amendment rights to freedom of expression and association" for which they seek relief pursuant

23  to 42 U.S.C. § 1983.  Compl., p. 71:11-24.

24  **IV.    FOURTH CAUSE OF ACTION (AGAINST ALL DEFENDANTS EXCEPT SHERIFF'S
            DEPUTIES)**

25
           This three-sentence cause of action appears to be a facial challenge to the CCWS Statute on
26
    the ground it allegedly impermissibly infringes on Applicants' right to keep and bear handguns
27

28
                                                    5

purportedly provided by the Second Amendment applied to the states through the Fourteenth Amendment.  Compl., pp. 71:27-72:3.

**V.   FIFTH CAUSE OF ACTION (AGAINST ALL DEFENDANTS EXCEPT SHERIFF'S DEPUTIES)**

This four-sentence cause of action appears to be a facial challenge to the CCWS Statute on the ground it allegedly impermissibly infringes on Applicants' right to keep and bear handguns purportedly provided by the Privileges or Immunities Clause of the Fourteenth Amendment. Compl., p. 72:9-13.

**VI.   SIXTH CAUSE OF ACTION (AGAINST ALL DEFENDANTS EXCEPT SHERIFF'S DEPUTIES)**

This cause of action appears to be a facial challenge to the CCWS Statute on the ground it allegedly impermissibly infringes on Applicants' right to keep and bear handguns purportedly provided by the Ninth Amendment.  Compl., pp. 72:15; 73:9.

**VII.   SEVENTH CAUSE OF ACTION (AGAINST FORMER U.S. ATTORNEY GENERAL MUKASEY AND CALIFORNIA ATTORNEY GENERAL BROWN ONLY)**

Applicants allege that Penal Code section 12027 provides "preferential treatment to retired law enforcement officers" and contend this statute "violate[s] the Second Amendment and [sic] as applied to the States through the Fourteenth."  Compl., pp. 73:10-25; 74:10-15.  They seek declaratory relief against Attorney General Brown "regarding the constitutionality of the CCWS statutes enforced and promulgated by [] ATTORNEY GENERAL BROWN [] providing preferential treatment to retired law enforcement officers."  Compl., p. 73:14-17.

**ARGUMENT**

Attorney General Brown moves this Court pursuant to Fed.R.Civ.P. 12(b)(6) for an order entering a judgment dismissing the complaint in its entirety and each cause of action alleged against him therein because each asserted cause of action fails to state a claim upon which relief can be granted.  Although the complaint must be construed in the light most favorable to the plaintiffs (*Cruz v. Beto*, 405 U.S. 319, 322 (1972)), a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) should be granted where it appears that the plaintiffs can prove no set of facts that would entitle them to relief.  *Hishon v. King & Spaulding*, 467 U.S. 69, 73 (1984); *Mack v. South Bay*

6

1  *Beer Distributors, Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986), *abrogated on other grounds*, *Astoria*

2  *Federal Sav. & Loan Assn. v. Solarino*, 501 U.S. 104 (1991). The court may take judicial notice

3  of facts outside pleadings without converting to summary judgment procedures. *Mack*, 798 F.2d

4  at 1282.

5        Additionally, the causes of action alleged against Attorney General Brown must be

6  dismissed without leave to amend pursuant to Fed.R.Civ P. 12 (b)(1) because there is no present

7  case or controversy between either Applicant and the Attorney General, and therefore this Court

8  lacks subject matter jurisdiction.  This motion is brought on the additional ground that Attorney

9  General Brown has Eleventh Amendment immunity from suit based on the claims alleged against

10  him.

11        When reviewing such a motion "no presumptive truthfulness attaches to plaintiff

12  allegations, and the existence of disputed material facts will not preclude the court from

13  evaluating for itself the merits of jurisdictional claims." *Augustine v. United States*, 704 F.2d

14  1074, 1077 (9th Cir. 1983).  Nor is the court restricted to the face of the pleadings to resolve

15  factual disputes concerning the existence of jurisdiction.  *McCarthy v. United States*, 850 F.2d

16  558, 560 (9th Cir. 1988), cert. den., 489 U.S. 1052 (1989).  A court's consideration of material

17  outside the pleadings does not convert a 12 (b)(1) motion into a motion for summary judgment.

18  *Biotics Research Corp. v. Heckler*, 710 F.2d 1375, 1379 (9th Cir. 1983).

19  **I.**    **APPLICANTS HAVE NOT MET THE CASE OR CONTROVERSY REQUIREMENT OF**
        **ARTICLE III AS TO ATTORNEY GENERAL BROWN**

20

21        The judicial power of the United States is restricted by the requirement found in Article III

22  of the U.S. Constitution that confines federal courts' jurisdiction "to the resolution of cases and

23  controversies."  *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State*,

24  454 U.S. 464, 471 (1982) (internal quotation marks omitted).  A plaintiff's standing is "an

25  essential and unchanging part of the case-or-controversy requirement." *Lujan v. Defenders of*

26  *Wildlife*, 504 U.S. 555, 560 (1992).  "As an aspect of justiciability, the standing question is

27  whether the plaintiff has alleged such a personal stake in the outcome of the controversy as to

28  warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial

1    powers on his behalf." *Warth v. Seldin*, 422 U.S. 490, 498-499 (1975) (internal quotation marks

2    and citations omitted).  A plaintiff's standing is made of three separate elements:  (1) he or she

3    must allege an injury in fact; (2) he or she must be able to trace the causation of his injury to the

4    named defendant; and (3) the federal court must have the ability to redress the plaintiff's

5    grievance.  *Lujan*, 504 U.S. at 560-561.  Plaintiffs' allegations meet none of these elements, and

6    this action should be dismissed without leave to amend.

7        **A.    Applicants Lack Standing as to the Attorney General Because Their**
          **Alleged Injuries Are Not Traceable To Any Action or Authority of the**
8         **Attorney General**

9        To demonstrate this element of standing, a plaintiff must prove that there is a causal

10   connection between plaintiff's injury and the conduct complained of; in other words, the plaintiff

11   must show that his injury is "fairly traceable to the challenged action of the defendant."  *Lujan*,

12   504 U.S. at 560-561 (internal quotation marks and alterations omitted).  Applicants here cannot

13   satisfy this element because the Attorney General has no role in applying the challenged statutes

14   to Applicants.

15       Applicants contend they have established standing regarding the Attorney General because

16   he is the chief law enforcement officer of the state and has general supervisorial responsibility

17   regarding sheriffs and other local law enforcement agencies.  Compl., pp. 63:13-18; 64:15-65:21;

18   68:9-13; 70:20-22.  But this conclusory argument understates the standing requirement – the

19   Attorney General has no statutory authority to grant, deny or revoke CCWS licenses.  Only

20   sheriffs and chiefs of police are authorized to perform these functions.  Cal. Penal Code § 12050.

21   Review of CCWS license decisions by the sheriffs and chiefs of police is available from state

22   courts. *See*, e.g, *Gifford v. City of Los Angeles*, 88 Cal. App. 4th 801 (2001).  Contrary to

23   Applicants' implication (Compl., p. 68:9-13), the Attorney General is not authorized by the

24   CCWS statutes to review the decisions of the sheriffs and chiefs of police.  Because Applicants'

25   alleged injury can occur only through the actions of the Sheriff, independent of the authority of

26   the Attorney General, any ostensible harm cannot be traced to the Attorney General.

27       The Ninth Circuit has been very clear that suits cannot be brought in federal court against

28   an attorney general to challenge the validity of statutes that he has no authority to enforce,

8

1   because there is no Article III jurisdiction and because the action would be barred by the Eleventh

2   Amendment.  It has repeatedly rejected actions against attorney generals on these grounds.  *See*

3   *Long v. Van de Kamp*, 961 F.2d 151, 152 (9th Cir.1992) (the general supervisory powers of the

4   California Attorney General are insufficient to establish the connection with enforcement required

5   by Article III and *Ex parte Young*, 209 U.S. 123, 160 (1908)); *Southern Pac. Transp. Co. v.*

6   *Redden*, 651 F.2d 613, 615 (1980) (attorney general's stated intention to advise and direct the

7   district attorneys to prosecute is insufficient to establish a justiciable controversy where they are

8   not obligated to comply).

9        Applicants seek "injunctive relief in either having a CCWS issued, or having the statutes

10  and County's written policy declared unconstitutional."  Compl., p. 70:27-28.  In sum, Applicants

11  are seeking an injunction requiring the granting of their applications for CCWSs or the

12  elimination of any statutory or local restrictions on their carrying concealed handguns.

13       Since only sheriffs and chiefs of police have authority under the CCWS statutes to grant,

14  deny or revoke licenses, Applicants cannot establish Article III jurisdiction over the Attorney

15  General with regard to their facial challenges to the validity of the statutes or for review of the

16  Sheriff's refusal to grant their CCWS licenses.

17       **B.**    **Applicants Lack Standing as to the Attorney General Because Any**
       **Hypothetical Relief to Redress Applicant's Alleged Injuries Could Only Be**
18     **Addressed to the Sheriff**

19       To satisfy the relief-related standing element, a plaintiff must show that it is "likely, as

20  opposed to merely speculative, that the injury will be redressed by a favorable decision."  *Lujan*,

21  504 U.S. at 560-561.  Even if there were a recognized federal right at issue, no injunction or

22  declaratory relief ordered against the Attorney General preventing him from enforcing the CCWS

23  statutes could redress Applicants' core grievances – those against the Sheriff for denying their

24  CCWS applications in implementation of his authority pursuant to California Penal Code section

25  12050.

26       Of course, if a plaintiff cannot show that his injury is "fairly traceable" to the named

27  defendant under the causation prong of the case or controversy requirement of Article III, they

28  generally cannot satisfy the related prong articulated in *Lujan*, that the relief requested must

9

1  redress their alleged injuries.  *See Idaho Conservation League v. Mumma*, 956 F.2d 1508, 1517

2  (9th Cir. 1992) (the "two components together . . . are both alike in focusing on the question of

3  causation") (internal quotations omitted).  Just as Applicants cannot show that their alleged injury

4  was caused by the Attorney General, nor can they show how an injunction against him would

5  provide the redress they seek.  Applicants' alleged harm comes from exercise of prerogatives

6  vested by law in the Sheriff exclusively, and thus the only effective remedy for any ostensible

7  deprivation of rights would have to be directed to the Sheriff.

8      **C.    Applicants Lack Standing Because They Allege No Legally Recognized**
       **Injury**

9

10     To satisfy the "injury in fact" element of standing, a plaintiff must show "an invasion of a

11  legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not

12  conjectural or hypothetical."  *Lujan*, 504 U.S. at 560-561.  The "threatened injury must be

13  certainly impending" (*Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) (internal quotation marks

14  and citations omitted)), and "immediate and real" (*City of Los Angeles v. Lyons*, 461 U.S. 95, 102

15  (1983)).  This is also true for declaratory relief actions.  *Aydin Corp. v. Union of India*, 940 F.2d

16  527, 528 (9th Cir. 1991) ("Article III requires that there be a substantial controversy . . . of

17  sufficient immediacy and reality to warrant the issuance of a declaratory judgment"); *Thomas v.*

18  *Anchorage Equal Rights Comm.*, 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc) (in declaratory

19  relief actions plaintiff must show "a realistic danger of sustaining a direct injury as a result of the

20  statute's operation or enforcement") (internal quotation marks omitted).  This requirement of

21  immediacy has also been addressed under the federal courts' prudential concerns with respect to

22  "ripeness."  *Thomas*, 220 F.3d at 1138; *Scott v. Pasadena Unified School Dist.*, 306 F.3d 646, 662

23  (9th Cir. 2002).

24     Applicants' allegations of injury consist of misstatements of California law and a

25  misunderstanding of the Second Amendment right identified in *District of Columbia v. Heller*,

26  128 S.Ct. 2783 (2008).  They allege that they would be subject to arrest and prosecution if they

27  "were to exercise their right to self defense, self preservation, self and family protection, and right

28  to keep and bear arms without obtaining a CCWS."  Compl., p. 64:5-13.  However, unless

10

1   disqualified due to commission of a felony, use of narcotic drugs or a determination of mental

2   infirmity, Californians may keep loaded and concealable firearms in their homes, businesses and

3   other private property without a CCWS license, and may use them for self-defense or defense of

4   another.  Cal. Penal Code §§ 12026(b), 12031(h), (j), (l).  In a nutshell, the *Heller* decision

5   identifies a Second Amendment right to have firearms to defend one's self in one's home.  If

6   Applicants are demanding an unfettered right to carry a concealed weapon at any time and in any

7   place, there is no support for this position in *Heller* or any other authority.  Moreover, Applicants

8   are not similarly situated with retired law enforcement officers so as to have a legally cognizable

9   injury arising from any material difference in eligibility requirements for a CCWS.[3]

10        In the absence of a federal right infringed by the alleged injury for which relief is sought,

11   there is no standing to seek such relief in federal court.  *Silveira v. Lockyer*, 312 F.3d 1062, 1066-

12   1067 (9th Cir. 2002), reh'g en banc denied, 328 F.3d 567, cert. den., 124 S.Ct. 803 (2003)

13   ("Because we hold that the Second Amendment does not provide an individual right to own or

14   possess guns or other firearms, plaintiffs lack standing to challenge the [Assault Weapons Control

15   Act].") (footnotes omitted); accord *Hickman v. Block*,  81 F.3d 98, 101 (9th Cir. 1996) (no

16   standing to challenge California CCWS statutes because Second Amendment is inapplicable).

17   *Silveira* followed *Hickman* on this point after analyzing "extensive developments in the area of

18   Second Amendment law" occurring thereafter and concluding that the result in *Hickman* was not

19   changed by the intervening developments.  *Silveira v. Lockyer*, 312 F.3d at 1067 n.18.

20        Failure to establish any of the three elements necessary for standing would deprive the

21   Court of Article III jurisdiction, and Applicants have failed to demonstrate all three.

22   _____

23        [3] Applicants contend without substantiation that state and federal judges have eligibility
     requirements for CCWS licenses different from ordinary citizens.  Compl., pp. 62:4-5; 66:14;
     68:17.  Contrary to Applicants' argument, there is no exception from or modification of the
24   eligibility requirements of California Penal Code section 12050 for judges.  There is a one-year
     difference in the maximum initial CCWS license validation period for judges (Cal. Penal Code §
25   12050(a)(2)(A)(i)), but the complaint does not contest the differential in validity periods.
     Moreover, the only reference to judges in the CCW application is the "Official Use Only" box on
26   the application form (pg.3), but this is only a check-off box for judges so that the DOJ can
     comply with California Penal Code section 12053(c), which requires the DOJ to collect and keep
27   a record of the total number of CCWS licenses issued to judges and reserve officers.  Attorney
     General Brown has filed a request for judicial notice of the CCW application form.

28

                                                    11

1      Accordingly, Applicants lack standing to proceed against Attorney General Brown on a

2  facial challenge to the CCWS license statutes including the differential requirements for retired

3  law enforcement officers.

4  **II.     THE ELEVENTH AMENDMENT LIKEWISE BARS THIS ACTION AS TO THE ATTORNEY**

5  **GENERAL**

6      For all of the same reasons Applicants cannot meet the required second element for

7  standing, the sovereign immunity under the Eleventh Amendment of the United States

8  Constitution requires dismissal of all claims against the Attorney General.  *See Long v. Van de*

9  *Kamp*, 961 F.2d at 152; *Southern Pac. Transp. Co. v. Redden*, 651 F.2d at 615.

10     The Eleventh Amendment states that "[t]he judicial power . . . shall not . . . extend to any

11  suit in law or equity . . . against one of the United States by Citizens of another State or by

12  Citizens or Subjects of any Foreign State."  U.S. CONST. amend. XI.  The immunity extended by

13  the Eleventh Amendment to states also prohibits lawsuits in federal court by the state's own

14  citizens.  *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).

15     Because the Attorney General is sued in his official capacity, the claims alleged against him

16  are really against the State since any judgment or remedy would necessarily be against the State,

17  not the Attorney General, who has no direct duties or responsibilities regarding the claims alleged

18  by Applicants.  *See*, e.g., *Pennhurst*, 465 U.S. at 100; *Demery v. Kupperman*, 735 F.2d 1139,

19  1146 (9th Cir. 1984) ("[t]he general rule is that relief sought nominally against an officer is in fact

20  against the sovereign if the decree would operate against the latter").  There is an exception to

21  Eleventh Amendment immunity applicable to certain claims for injunctive relief, found in the

22  case of *Ex parte Young*.  *Ex parte Young*, 209 U.S. at 160.  The *Ex parte Young* exception allows

23  for a lawsuit against a state official in his individual capacity – that is, outside the scope of his

24  official duties – to be prosecuted in federal court if the claim is limited to an injunction against

25  the official to prevent him from enforcing an unconstitutional state law.  *Id.* at 166.  The *Ex parte*

26  *Young* exception rests on a "fictional distinction" between the state and a state official such that if

27  the official is enforcing an unconstitutional statute, he is considered to be operating outside his

28  official capacity and can be enjoined from such enforcement.  *Pennhurst*, 465 U.S. at 100, 114.

12

1    In order to successfully employ the *Ex parte Young* exception, however, a plaintiff must allege

2    that the state official has "some connection with the enforcement of the act."  *See Ex parte Young*,

3    209 U.S. at 157.

4        In this case, there is no direct connection between the Attorney General and the challenged

5    statute, making Applicants' ability to utilize the *Ex parte Young* exception impossible.  The only

6    connection Applicants allege between the challenged state law and the Attorney General is that he

7    is responsible for ensuring that the laws of the State are uniformly and adequately enforced

8    pursuant to the California Constitution, Article V, Section 13 and related implementing statutes.[4]

9    Compl., pp. 63:15-18; 64:15-65:21; 68:9-13; 70:20-22.  The Ninth Circuit's precedent

10   specifically holds that a general allegation of the Attorney General's duties does not suffice to

11   make an *Ex parte Young* connection:

12           [T]here must be a connection between the official sued and enforcement
             of the allegedly unconstitutional statute, and there must be a threat of
13           enforcement.  We doubt that the general supervisory powers of the
             California Attorney General are sufficient to establish the connection with
14           enforcement required by *Ex parte Young*.

15   *Long v. Van de Kamp*, 961 F.2d at 152 (citing *So. Pac. Trans. Co. v. Brown*,

16   651 F.2d at 614).

17       This connection must be fairly direct; a generalized duty to enforce state law or general

18   supervisory power over the persons responsible for enforcing the challenged provision will not

19   subject an official to suit.  *Los Angeles Co. Bar Assoc. v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992)

20   (emphasis added, citations omitted).

21       Thus, a claim based on the Attorney General's generalized duties will not suffice as an

22   adequate connection between the Attorney General and the challenged statutes, and consequently

23   _____

        [4] Applicants seem to allege that development of the standard CCWS application form
24   under the auspices of the Attorney General subject to review by a multi-member committee
     (Penal Code § 12051(a)(3)(A)) creates a nexus between the Attorney General and the decision by
25   the defendant Sheriff's Office to deny their applications.  Compl., pp. 63:13-14; 66:12-14.
     However, on its face this section provides that the form is a "local form" (subdiv. (a)(3)(D)) and
26   does not create an exception to the exclusive authority and responsibility of sheriffs and chiefs of
     police pursuant to sections 12050 and 12050.2 to determine whether to grant or deny a CCWS
27   application.  As explained in note 3, *supra* at 11, infra, Applicants' allegation (Compl., p. 66:12-
     14) that the form "delineates differing standards of approval of applicants between peace officers,
28   judges, and common citizens" is as a matter of judicial notice factually incorrect and irrelevant.

                                                  13

1  the *Ex parte Young* exception cannot help the Applicants' claims bypass the immunity granted to

2  the Attorney General by the Eleventh Amendment.

3      As described above page 4, with respect to the "causal connection" element required to

4  establish standing under Article III, the Attorney General has no involvement in decisions to

5  grant, deny or revoke CCWS licenses.  It is the Sheriff who has the enforcement role here.  For all

6  the same reasons stated there with respect to standing, Applicants cannot satisfy the enforcement

7  role prerequisite to the *Ex parte Young* exception to the Attorney General's Eleventh Amendment

8  immunity from suit.  For this additional reason, the complaint should be dismissed with prejudice.

9  **III.   THE CCWS STATUTES DO NOT PREVENT APPLICANTS FROM USING A HANDGUN**

10         **TO PROTECT THEMSELVES, THEIR FAMILIES AND PROPERTY**

11      The fundamental premise of the four causes of action alleged against Attorney General

12  Brown is that the challenged CCWS statute prevents Applicants from "exercis[ing] their right to

13  self defense, self preservation, self and family protection."  Compl., p. 64:1-13.  Applicants

14  contend, directly, that by preventing them from using a handgun for these purposes, the CCWS

15  statute violates their rights under the Second Amendment allegedly applicable to the state through

16  the Fourteenth Amendment (Fourth Cause of Action), under the Privileges or Immunities Clause

17  of the Fourteenth Amendment (Fifth Cause of Action) and the Ninth Amendment (Sixth Cause of

18  Action).  Compl., pp. 63:24-25; 70:11-12, 26.  The Seventh Cause of Action alleges the same

19  deprivation results from retired law enforcement officers having the right to use a handgun for the

20  purposes in question without a CCWS while the same right is denied non-law enforcement

21  citizens like themselves.

22      Applicants' statement of California law in this regard is wrong as a matter of law.  Unless

23  disqualified due to commission of a felony, use of narcotic drugs or a determination of mental

24  infirmity, Californians may keep loaded and concealable firearms in their homes, businesses and

25  other private property without a CCWS license, and may use them for self-defense or defense of

26  another.  Cal. Penal Code §§ 12026(b), 12031(h), (j), (l).

27      Accordingly, each of these causes of action fails to state a claim for which relief can be

28  granted.  For these reasons alone the motion to dismiss with prejudice should be granted.

**IV.   THERE IS NO FEDERALLY PROTECTED RIGHT TO CARRY A CONCEALED HANDGUN BEYOND WHAT CALIFORNIA PERMITS**

**A.   The Second Amendment Does Not Establish A Right Beyond What California Permits**

Last term the U.S. Supreme Court decided that the Second Amendment provides an individual right to keep and bear arms, but it was careful to define the limited scope of such right. *District of Columbia v. Heller*, 128 S.Ct. 2783, 2816-2818 (2008). Moreover, the Court did not decide whether the Second Amendment is applicable to the states through the Fourteenth Amendment or otherwise.

The District of Columbia's ban on handguns prohibited, among other things, handgun use for self-defense in the home and required that the weapons be inoperable even in the home. *Id.* at 2817. The Supreme Court struck down the ban to the extent it applied in the home, as defeating the core right to self-defense implicated by the Second Amendment. *Id.* at 2821-2822. In doing so, however, the Court carefully limited the scope of its opinion to prevent calling into question longstanding state regulation of firearms, specifically including concealed weapons. *Id.* at 1216-1217 n.26 ("these presumptively lawful regulatory measures").[5] Aside from standard prohibitions against certain persons possessing any firearm[6], California does not restrict the right to keep loaded concealable firearms in one's home, business or private property.[7]

Thus, nothing in California's regulation of concealed weapons infringes on the carefully circumscribed individual Second Amendment right recognized in *Heller*. Accordingly, *Heller*

---

[5] Other items on the non-exclusive list of "presumptively lawful regulatory measures" include: forbidding carrying of firearms in sensitive places; imposing conditions and qualifications on commercial sale of firearms; and prohibiting the carrying of "dangerous and unusual weapons." *Id.* at 2817.

[6] California disqualifies persons with mental disorders or mental illnesses (Cal. Welf. & Inst. Code §§ 8100, 8103) and convictions for certain crimes and addiction to narcotics (Cal. Penal Code §§ 12021, 12021.1) from owning or possessing firearms. *Heller* likewise classifies these types of disqualification as "presumptively lawful regulatory measures." *Heller,* 128 S.Ct. at 2816-2817. California's disqualification criteria are not challenged in this litigation.

[7] Under California law, it is lawful for a person over the age of eighteen, who is not otherwise disqualified by law, to possess within his or her residence, business or private property a weapon capable of being concealed, without a CCWS license. Cal. Penal Code § 12026.

1   does not undercut the Ninth Circuit's line of precedent that there is no federally protected

2   unrestricted individual right to carry a concealed firearm.

3        The Ninth Circuit holds that the Second Amendment does not provide an individual right to

4   carry a concealed weapon.  *Hickman v. Block*, 81 F.3d 98 (9th Cir. 1996); *see* also *Erdelyi v.*

5   *O'Brien*, 680 F.2d 61, 63-64 (9th Cir. 1982) (denial of CCWS license to private detective not a

6   deprivation of property or liberty interest protected by Due Process Clause of 14th Amendment);

7   accord *Guillory v. County of Orange*, 731 F.3d 1379, 1382-1383 (9th Cir. 1984).

8        In *Hickman*, the operator of a responding security alarm company authorized by California

9   law to carry an exposed firearm while in uniform was denied a CCWS license for use when not

10  operating his business in uniform.  *Hickman*, 81 F.3d 98 at 100-101.  The Ninth Circuit rejected

11  the operator's claim that the Second Amendment provided a right to keep and bear arms in

12  "reasonable" circumstances, holding that the applicant could show no legal injury because the

13  Second Amendment did not provide an individual right to keep and bear arms.  *Id*.  This result

14  governs Applicants' claim as well because California does not restrict their right to keep and bear

15  arms beyond what is permitted under *Heller*.

16  **B.    In Any Event The Second Amendment Rights Prescribed in *Heller* Are Not
          Applicable to the States**

17

18       *Heller* expressly declined to address the issue of whether the Second Amendment is

19  applicable to the states.  *Heller*, 128 S.Ct. at 2813 n.23.

20       The governing Ninth Circuit law on this question is that the Second Amendment is not

21  applicable to the states.  *See Fresno Rifle & Pistol Club, Inc. v. Van De Kamp*, 965 F.2d 723, 729-

22  731 (9th Cir. 1992), followed in *Hickman,* 81 F.3d at 103; *see* also *Nordyke v. King*, 319 F.3d

23  1185, 1192 n.4 (9th Cir. 2003) (only the Supreme Court or the Ninth Circuit en banc can overrule

24  *Fresno Rifle* and *Hickman*).  *Fresno Rifle* addressed and rejected incorporation of the Second

25  Amendment through the Due Process Clause of the Fourteenth Amendment.  *Fresno Rifle.*, 965

26  F.2d at 729-731.  The holding of *Fresno Rifle* is unmistakable:

27            Until such time as *Cruikshank* and *Presser* are overturned, the Second
              Amendment limits only federal action, and we affirm the district court's

28

1    decision "that the Second Amendment stays the hand of the National
2    Government only."

3    *Id.* (citation omitted).

4    The Supreme Court's venerable decisions in *United States v. Cruikshank*, 92 U.S. 542, 553

5    (1876), and *Presser v. Illinois*, 116 U.S. 252 (1886), held that the Second Amendment does not

6    apply to the states.  *Heller* notes that *Cruikshank* did not apply modern incorporation analysis, but

7    its holding is far from overturned.  Moreover, the Supreme Court may not see an urgency to apply

8    its doctrine of selective incorporation for application of the Second Amendment to the states

9    through the Due Process Clause of the Fourteenth Amendment.  *See* Chester James Aniteau &

10   William J. Rich, Modern Constitutional Law § 39.01 (2d ed. 1997) ("doctrine of selective

11   incorporation was recognized as the prevailing approach of the Court's majority"); accord

12   Laurence H. Tribe, American Constitutional Law § 11-2 (2d ed. 1988) ("full incorporation of the

13   Bill of Rights into the fourteenth amendment [has never] commanded a majority on the Court").

14   Therefore, until the Supreme Court resolves the issue to the contrary or until the Ninth

15   Circuit decides otherwise, it is the law of this Circuit that the Second Amendment is not

16   incorporated by the Fourteenth Amendment as a constraint on states.

17   **C.      The Privileges or Immunities Clause of the Fourteenth Amendment Does
             Not Establish a Right To Carry a Concealed Weapon**

18

19   Applicants allege that the Privileges or Immunities Clause of the Fourteenth Amendment

20   "includes the right to keep and bear arms and is deemed a personal right," citing *Saenz v. Roe*,

21   526 U.S. 489 (1999), as support for their novel position.  Compl., p. 72:9-10.

22   The Privileges or Immunities Clause of the Fourteenth Amendment states: "No state shall

23   make or enforce any law which shall abridge the privileges or immunities of citizens of the

24   United States . . . .".  The decision in *Saenz* simply held that California's reduction of welfare

25   payments for newly arrived residents violated their right as citizens of the United States to

26   become citizens of any state, and to be treated equally with any other citizen of the state where

27   they reside.  *Saenz,* 526 U.S. at 502-507.

28

17

1    Applicants do not allege that they were denied the right to keep and bear arms based on

2    previous residence in another state.  Thus, *Saenz* does not support Applicants' claim pursuant to

3    the Privileges or Immunities Clause, and there is no authority suggesting that the Privileges or

4    Immunities Clause establishes any right other than of a citizen of the United States to be treated

5    equally with any other citizen of the state where they reside.

6    Moreover, prominent commentators believe that *Saenz* will not be extended beyond its

7    precise holding.  *See* Laurence H. Tribe, Comment:  <u>*Saenz* Sans Prophecy:  Does The Privileges</u>

8    <u>or Immunities Revival Portend The Future - Or Reveal The Structure of the Present?</u>, 113 Harv.

9    L. Rev. 110 at 110 (1999) (concluding that *Saenz* has not been expanded beyond durational

10   residency issues and is not likely to); Howard J. Vogel, Article:  <u>The "Ordered Liberty" of</u>

11   <u>Substantive Due Process and the Future of Constitutional Law as a Rhetorical Art:  Variations on</u>

12   <u>a Theme from Justice Cardozo in the United States Supreme Court</u>, 70 Alb. L. Rev. 1473, 1481

13   (2007)  ("Privileges or Immunities Clause of the Fourteenth Amendment virtually meaningless").

14   Thus, Applicants' reliance on the Priviliges or Immunities Clause is misplaced and does not

15   support their contention.

16   **D.    The Ninth Amendment Does Not Establish a Right To Carry a Concealed**

17   **Weapon**

18   Notwithstanding *Heller*, Applicants invite this Court to find the right to keep and bear arms

19   in the Ninth Amendment.  Compl., pp. 72:15-73:9.  The Ninth Amendment, however, is of no

20   more avail to Applicants than the Second Amendment and the Privileges or Immunities Clause.

21   The Ninth Amendment to the United States Constitution states:  "The enumeration in the

22   Constitution of certain rights shall not be construed to deny or disparage others retained by the

23   people."  It is the law of Ninth Circuit that the "Ninth Amendment has not been interpreted as

24   independently securing any constitutional rights for purposes of making out a constitutional

25   violation."  *San Diego County Gun Rights Committee v. Reno*, 98 F.3d 1121, 1125 (9th Cir. 1996)

26   (quoting *Schowengerdt v. United States*, 944 F.2d 483, 490 (9th Cir. 1991)).  Accordingly, the

27   Ninth Amendment does not recognize a right to keep and bear arms.  *Id.* ("We join our sister

28   circuits in holding that the Ninth Amendment does not encompass an unenumerated,

18

1   fundamental, individual right to bear firearms."). *Heller* relies exclusively on the Second

2   Amendment and does not mention the Ninth Amendment, let alone treat it more expansively than

3   the Second Amendment. Therefore, nothing in *Heller* undercuts or calls into question the holding

4   in *San Diego County Gun Rights Committee*.

5       Accordingly, Applicants can allege no injury under the Ninth Amendment, and the Sixth

6   Cause of Action should be dismissed with prejudice.

7   **V.    AUTHORIZATION FOR RETIRED PEACE OFFICERS TO CARRY CONCEALED
        WEAPONS WITHOUT A CCWS LICENSE DOES NOT DENY NON-PEACE OFFICERS
8       EQUAL PROTECTION OF THE LAW**

9       Applicants specifically challenge statutory authorization for retired peace officers to carry

10  concealed weapons without demonstrating "good cause." Compl., pp. 68:14-69:20; 70:2-14, 23-

11  28; 73:10-74:15. Applicants claim the different requirements applicable to retired peace officers

12  deny non-peace officers equal protection of the law because non-peace officers must convince the

13  licensing authority of "good cause" to obtain the license. *Id.*

14      The Equal Protection Clause of the Fourteenth Amendment commands that all persons

15  similarly situated should be treated alike. *Cleburne v. Cleburne Living Center, Inc.*, 473 U.S.

16  432, 439 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982). Here, however, the groups

17  receiving different treatment are not similarly situated, and any differential treatment is well-

18  justified under the governing rational basis review.

19      **A.    Peace Officers and Non-Peace Officers Are Not Similarly Situated**

20      "[I]n order for a state action to trigger equal protection review at all, that action must treat

21  similarly situated persons disparately." *Silveira*, 312 F.3d at 1088. A threshold defect in

22  Applicants' equal protection claim is that, in regard to screening for CCWS licenses, non-peace

23  officers are not similarly situated with retired peace officers who were authorized and did carry

24  firearms in the course of their duties. First, the mandatory training and experience received by

25  honorably retired peace officers when they were employed as peace officers, means that they

26  already meet the qualifications for CCWSs. The screening process prescribed for non-peace

27  officers by California Penal Code section 12050 et seq., serves to approximate the background

28  California peace officers acquire and maintain by qualifying to be peace officers authorized to

19

carry firearms.  A person cannot qualify as a peace officer without completing rigorous training in procedures and conduct.  Cal. Penal Code §§ 832, 832.4, 13510 et seq.; *see also* Cal. Code Regs., tit. 11, § 1000, et seq.  In order to carry a firearm, a peace officer must undergo meticulous training in firearm proficiency, safety and rules of engagement.  Cal. Penal Code § 832; *see also* Cal. Code Regs., tit. 11, § 1005.  Moreover, one cannot become a peace officer without obtaining a psychiatric clearance.  Cal. Gov. Code § 1031(f); *see also* Cal. Penal Code § 832.05.

A retired California peace officer cannot qualify to carry a loaded concealable firearm unless the employing agency at the time of retirement issues an identification certificate indicating the officer was honorably retired.  Cal. Penal Code § 12031(b)(1).  Moreover, the retired peace officer is not entitled to carry a concealed weapon unless the employing agency, presumably in the position to be most knowledgeable about the peace officer's status and qualifications, certifies on the identification that it approves the officer's carrying a loaded, concealed firearm.  Cal. Penal Code § 12027.1(a).  The employing agency is prohibited from providing an endorsement for a peace officer who is retired for psychiatric disability.  Cal. Penal Code § 12027.1(e).  Additionally, that agency is authorized to deny or revoke for cause the retired officer's privilege to carry a loaded concealed firearm.  Cal. Penal Code §§ 12027.1(a)(1)(B), 12031(b)(2).

Retired peace officers are also differently situated in that they are presumed to need a concealed weapon because of the obvious risk of retaliation from dangerous felons whom he or she has pursued, arrested and incarcerated while on active duty.

> **B.  The CCWS Application Process Is Necessary to Determine Whether Non-Peace Officers Meet Approximately the Same Qualifications for Carrying Loaded Concealed Weapons in Public as Peace Officers**

If the threshold for equal protection review is passed, "the general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *City of Cleburne*, 473 U.S. at 439; *see also Dandridge v. Williams*, 397 U.S. 471, 485 (1970); *McGowan v. Maryland*, 366 U.S. 420, 426 (1961).  As described above on page 14, Applicants' claim does not implicate a fundamental constitutional right because a CCWS license is not necessary for Applicants to exercise the rights encompassed

20

1    within the Second Amendment, as defined by *Heller*.  Therefore, their equal protection claim is

2    reviewed pursuant to the rational basis test.  *Silveira*, 312 F.3d at 1088.  "When a statute is

3    reviewed under the rational-basis test, 'the burden is on the one attacking the legislative

4    arrangement to negate every conceivable basis which might support it.'"  *Id.* citing *Heller v. Doe*,

5    509 U.S. 312, 320 (1993).

6         The CCWS license application process provides the mechanism by which a non-peace

7    officer can establish, to the satisfaction of the head of a local law enforcement agency, that he or

8    she has training and qualifications that approximate the background of a peace officer regarding

9    the safe use of and need for carrying concealed firearms.  Cal. Penal Code § 12050.  The

10   applicant must demonstrate good moral character and may be subject to the same psychological

11   evaluation applied to a peace officer.  Cal. Penal Code § 12054(c).

12        It is important to bear in mind that persons engaged in lawful businesses may have a loaded

13   firearm within their place of business.  Cal. Penal Code § 12031(h).  Any person in lawful

14   possession of private property may keep a loaded firearm on that property.  *Id.*  Provided it is not

15   prohibited by local ordinance, a person may carry a loaded firearm within a city while engaged in

16   hunting.  *Id.* § 12031(i).  Unless he or she is disqualified by law from possessing a firearm, a

17   person may carry a loaded firearm if he or she reasonably believes his or her person or property

18   or that of another is in immediate, grave danger and that the carrying of the weapon is necessary

19   for the preservation of that person or property.  *Id.* § 12031(j).  Having a loaded firearm in one's

20   residence is not a violation of section 12031(a).  *Id.* § 12031(l).

21        Retired peace officers are presumed to need a concealed weapon because of the obvious

22   risk of retaliation from dangerous felons whom he or she has pursued, arrested and incarcerated

23   while on active duty.   For all of these reasons, Applicants cannot meet their burden of showing

24   the different requirements for certain current and former peace officers are without any

25   constitutionally sufficient justification.

26   / / /

27   / / /

28

21

1

**CONCLUSION**

2    California's CCWS license requirements would not violate the Second Amendment right

3    afforded individuals identified in *Heller* even if it were applicable to the states.  Nor are

4    Applicants' arguments for finding a right to keep and bear arms in other provisions of the

5    Constitution of any merit.  Accordingly, Applicants' claims against the Attorney General fail as a

6    matter of substance, and dismissal is warranted.

7    Moreover, dismissal is likewise proper for lack of jurisdiction because Applicants lack

8    standing to bring an action in federal court challenging the CCWS license requirements based on

9    any claim that the Constitution provides a right as against the states to keep and bear arms, and

10   because of the absence of any enforcement role for the Attorney General with respect to the

11   challenged provisions.  That same lack of an Attorney General enforcement role also means that

12   Applicants' action against the Attorney General is subject to the Eleventh Amendment bar.

13   Applicants' equal protection arguments do not seriously challenge the reasonable bases for

14   the different requirements applicable to retired peace officers.

15   For all of these reasons, the complaint and each cause of action therein should be dismissed

16   as to Attorney General Brown without leave to amend and with prejudice.

17

18   Dated:  April 2, 2009                                Respectfully Submitted,

19                                                         EDMUND G. BROWN JR.
                                                           Attorney General of California
20                                                         DOUGLAS J. WOODS
                                                           Supervising Deputy Attorney General
21

22                                                         /s/    *Geoffrey L. Graybill*

23                                                         GEOFFREY L. GRAYBILL
                                                           Deputy Attorney General
24                                                         *Attorneys for Defendant*
                                                           *Edmund G. Brown Jr.,*
25                                                         *Attorney General of the State of California*

26

27   SA2009307218
     30704929.doc
28

22