1

**LAW OFFICES**
OF
**GARY W.  GORSKI**
**8459 NEPHI WAY**
**FAIR OAKS, CA 95628**
**(916) 965-6800**
**(916) 965-6801 FAX**

**LAW OFFICE OF DANIEL M KARALASH**
TELEPHONE: (916) 787-1234
FACSIMILE: (916) 787-0267
DMKARALASH@SUREWEST.NET

GARY W.  GORSKI
SBN: 166526
DANIEL M. KARALASH
SBN 176422
Attorneys for Plaintiffs

### IN THE UNITED STATES DISTRICT COURT

### IN AND FOR THE EASTERN DISTRICT OF CALIFORNIA

-ooOoo-

| | |
|---|---|
| JAMES ROTHERY, Esq.; ANDREA HOFFMAN | CASE NO.: 2:08-cv-02064-JAM-KJM |
| Plaintiffs, | **FIRST AMENDED COMPLAINT FOR:** |
| vs. | **1.** RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS statute (hereafter "RICO"), Title 18, United States Code, Sections 1961 through 1968 (Former Sheriff LOU BLANAS; SHERIFF JOHN MCGINNIS only) |
| Former Sheriff LOU BLANAS; SHERIFF JOHN MCGINNIS; Detective TIM SHEEHAN; SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, an independent branch of government of the COUNTY OF SACRAMENTO; COUNTY OF SACRAMENTO; STATE OF CALIFORNIA ATTORNEY GENERAL JERRY BROWN; DOES 1 through 225, unknown co-conspirators | 2. 42 U.S.C. SECTION 1983 (Equal Protection - 14th Amendment - unconstitutional policy and statute on their face and as applied) |
| Defendants. | 3. 42 U.S.C. § 1983 (Second and Fourteenth Amendment (incorporation) - unconstitutional CCW statute and Policy - on their face and as applied) |
| | 4. 42 U.S.C. § 1983 (14th Amendment Privileges and Immunities - - unconstitutional CCW statute and Policy - on their face and as applied) |
| | 5. 42 U.S.C. § 1983 (Ninth and Fourteenth Amendment - unconstitutional CCW statute and Policy - on their face and as applied) |
| | **6.** 42 U.S.C. § 1983 (Fourteenth Amendment - unconstitutional CCW |

statute and Policy - re Honorably Retired Peace Officers and Prima Facie Good Cause Standard - on their face and as applied)

7.    **SEVENTH OF ACTION 42 U.S.C. § 1983 (Declaratory and Injunctive Relief) [all Defendants except Sheehan]**

**CLASS ACTION CERTIFICATION REQUESTED**

**JURY TRIAL DEMANDED**

**COMES NOW** Plaintiffs who aver as follows:

1.    Plaintiffs JAMES ROTHERY, Esq., and ANDREA HOFFMAN are competent adults residing in the County of Sacramento, who have applied for permits to Carry Concealed Weapons (CCW) by filling out the appropriate applications and paying the required fees.

2.    Plaintiffs have exhausted all CCW administrative appeal rights.

3.    The CCW application and/or appeal process is futile.

4.    Plaintiffs, and others similarly situated, have been denied CCWs even though they were both qualified to have CCWs and they met the purported "good cause" criteria for issuance of a CCW, as that purported standard was applied to other approved applications.

5.    Both would have sought to apply for Honorary Deputy Sheriff's Commissions, had such commissions been allowed to the general public.

6.    By obtaining an Honorary Deputy Sheriff Commission, the Honorary Deputy Sheriff is given the same wallet badge as is given to full time deputy sheriffs with a signed written credential issued by the Defendant Sheriff's themselves, allowing these individuals to use such credentials for the purposes of graft and favors (e.g. getting out of traffic tickets).

7.    In addition, Plaintiff Hoffman requested an Honorary Deputy Sheriff's Commission, to join the Sheriff's Posse, and to join the Sheriff's Aero-Squadron, and she was denied all such oral applications.  There is no written application made available to the public and, to this date, no response to her appeal regarding her deputy commission or her Sheriff's Aero-Squadron membership.

8.    Plaintiff Hoffman applied for a CCW in November of 2007, and was denied a CCW. Thereafter, she appealed the decision, and was again denied in 2008.

9.    Plaintiff Rothery applied three separate times over the course of Defendant Blanas' and Defendant McGinnis' administrations.  Plaintiff Rothery submitted his first application in 2003, and submitted his third and final consecutive application August 31, 2006.

10.   Each time an application was denied, Plaintiff Rothery was advised that he could not apply for another year.

11.   Approximately one week after he submitted his final application on August 31, 2006, he was contacted by a Detective of the Sheriff's Department.  Approximately one to two weeks later he was notified via written letter from the Sheriff's Department that his application was denied, but that he had the right to appeal.

12.   Since he had lost his two previous appeals, he now for the first time realized the CCW application process was wrought with unequal application of the law, and was not fair.  He did not file an appeal, knowing that it would be <u>futile</u>.

13.   By mailing letters of denial indicating that Plaintiffs had failed to show "immediate" threat of harm and failed to meet the "good cause" criteria for issuance of a CCW, it was Defendants' specific intent to fraudulently conceal from plaintiffs the true reason for the denial of their CCWs.

14.   Defendants actively misled plaintiffs by issuing form letters of denial via mail that were knowingly false, without specifying that campaign contributors and friends received CCWs, honorary deputy badges and commissions.

15.   In fact, defendants conspired for years, commencing under the Craig/Blanas administration, to conceal the wrongs stated herein by 1) setting up a fake CCW review committee and appeal process to act as a cover for how CCWs are really issued, and 2)  issuing form denial letters to well deserved CCW applicants with the intentionally false and misleading statement that the application was denied for lack of good cause, which was not the true reason for denial.

16.   Plaintiffs had neither actual nor constructive knowledge of the facts constituting their causes of action despite their due diligence. Volk, 816 F.2d at 1415 ("The doctrine [of fraudulent concealment] is properly invoked only if a plaintiff establishes 'affirmative conduct upon the part of the defendant which would, under the circumstances of the case, lead a reasonable

person to believe that he did not have a claim for relief.' ")

17.    Here, the denial letters issued to each and every denied applicant stated the reject was for lack of "immediate" threat of harm, and nothing els.

18.    Plaintiff Hoffman did not believe that her application would be denied because of the high crime area she lives in, the threats made to her life and safety, and the fact that she and her family were carjacked at gun point with no means of defense.

19.    Both Plaintiffs were emotionally upset about the violations of their constitutional rights in the CCW application process.

20.    Defendants, and other unnamed co-conspirators, intentionally concealed their conspiracy from Plaintiffs.

21.    Former Detective MASON systematically destroyed all CCW applications.  Purportedly, this began in 2003, but it is believed that this destruction of records occurred much later when an FBI investigation commenced regarding Edwin Gerber's issuance of a CCW prior to both the submission of a written application and a formal DOJ background check, and the fact that he received his range card from taxpayer resources (i.e. a peace officer of the department was used to provide his range card).

22.    For example, Joseph Mohamed was issued a CCW and based upon information and belief, an Honorary Deputy Sheriff Commission on or about 3/15/1994.

23.    However, all paperwork as to Joseph Mohamed 's application was destroyed per a written memo by MASON in 2003.

24.    Joseph Mohamed was a member of the Sheriff's Posse.  Through Joseph Mohamed acted as a conduit, Joseph Mohamed paid DEFENDANT NAMED RACKETEERS campaign contributions.

25.    At the time Plaintiffs applied for CCWs, Joseph Mohamed had a CCW, and Mohamed's application on file as a purported "renewal" stated almost the identical reasons for its issuance, that Plaintiff Rothery stated in his applications.

26.    Plaintiff Rothery was never provided this information, and has now been deprived of this information by the intentional destruction of these records.

27.    Plaintiffs were never in the position to "discover, or be in a position to discover, the existence

1   of a pattern of racketeering activity in addition to the existence of the injury they sustained.

2   28.   Defendants LOU BLANAS is the former Sheriff of the County of Sacramento, elected in

3        1998 and 2002.  His co-conspirator, Defendant SHERIFF JOHN MCGINNIS was appointed

4        Undersheriff by Blanas.  McGinnis is currently the elected Sheriff, having been handed the

5        election in 2006.

6   29.   Defendants Detective TIM SHEEHAN and Detective FRED MASON are California Peace

7        Officers and employees of Defendant County of Sacramento Sheriff's Department.

8   30.   Defendant Detective TIM SHEEHAN and former Detective FRED MASON were co-

9        conspirators with Defendants BLANAS and MCGINNIS in that they were used extensively

10       to solicit bribe money from campaign contributors, and in return assisted in issuing CCWs

11       and Honorary Deputy Sheriff's Commissions to campaign contributors.

12  31.   Defendants Detective TIM SHEEHAN and Detective FRED MASON were co-conspirators

13       with Defendants BLANAS and MCGINNIS in that they were used extensively to provide

14       safety classes to campaign contributors, only so that these contributors could obtain CCWs,

15       all during county hours and authorized by Defendants BLANAS and MCGINNIS.

16  32.   Defendant SACRAMENTO COUNTY SHERIFF'S DEPARTMENT is an independent

17       branch of government of the COUNTY OF SACRAMENTO, created under California law.

18  33.   Defendant COUNTY OF SACRAMENTO is an independent branch of government created

19       under the California Constitution and California Law.

20  34.   Defendants Former Sheriff LOU BLANAS, SHERIFF JOHN MCGINNIS, and Detective

21       TIM SHEEHAN (hereinafter collectively known as "NAMED DEFENDANT

22       RACKETEERS") have engaged in racketeering activities affecting interstate commerce.

23  35.   NAMED DEFENDANT RACKETEERS have traveled to Nevada for the purposes of

24       conducting racketeering activities, such as receiving a house in exchange for a CCW by

25       Gerber, and being provided air travel to and from Reno and Las Vegas by wealthy campaign

26       contributors.

27  36.   Further, NAMED DEFENDANT RACKETEERS collect money which is spent out of state.

28  37.   Douglas Barkdull resides Scottsdale, Arizona which is outside the jurisdiction of Sacramento

         County, but was nonetheless issued a CCW in Sacramento County.

38. Furthermore, by issuing CCWs to campaign contributors and friends in exchange for votes, NAMED DEFENDANT RACKETEERS allow the permit holders to carry concealed weapons when they travel to AK*, AZ, ID, IN, KY, MI, MO, MT, OK, SD, TN, TX, UT, VT*  (*AK and VT don't require permits at all) and these other states recognize a California issued CCW.

39. Thus, if a person is concerned about having a concealed weapon for protection, whether he or she is issued a CCW permit will affect where he or she travels.

40. Plaintiffs bring this suit for monetary damages and injunctive relief pursuant to the Racketeer Influenced and Corrupt Organizations statute (hereafter "RICO"), Title 18, United States Code, Sections 1961 through 1968, to put an end to this systematic, long-standing, and ongoing corruption of the County of Sacramento Sheriff's Department and to restore control of the organization's affairs to the general public.

41. The Racketeer Influenced and Corrupt Organizations (RICO) provisions are a chapter of the Organized Crime Control Act of 1970 (OCCA), Pub. L. 91-452, Title IX, 84 Stat. 941, as amended, 18 U.S.C. §§ 1961-1968 (1988 ed. and Supp. IV).  Section 1962(c) prohibits any person associated with an enterprise from conducting the affairs of the organization through a pattern of racketeering activity.

42. RICO does not require proof that either the racketeering enterprise or the predicate acts of racketeering were motivated by an economic purpose.  *N.O.W. v. Scheidler*, 510 U.S. 249, 250 (1994).

43. **JURISDICTION**: Jurisdiction in this action is predicated upon Title 18, United States Code, Section 1964(b) and Title 28, United States Code, Sections 1331, 1345, and 2201.

44. **VENUE:** Venue for this action is predicated upon Title 18, United States Code, Section 1965 and Title 28, United States Code, Section 1391(b)).

## AVERMENTS

45. Defendant COUNTY OF SACRAMENTO SHERIFF'S DEPARTMENT is an enterprise,

46. Defendants, through a pattern of racketeering, issued through commerce (i.e. U.S. Mail) false and fraudulent denial letters of CCW applications with the proffered statements that there was no "good cause" for issuance of the CCWs.

47. Defendants have engaged in misleading, deceptive, or otherwise contrived actions and schemes in the course of denying qualified citizens and Plaintiffs CCWs.

48. Such schemes and actions are designed to mask the illegal and improper of denials of CCWs. See *Riddell v. Riddell Washington Corp.*, 866 F.2d 1480, 1491 (D.C. Cir. 1989).

49. **The Enterprise:** At all times material to this complaint, COUNTY OF SACRAMENTO SHERIFF'S DEPARTMENT constitutes an "enterprise", as that term is defined in Title 18, United States Code, Section 1961(4). This enterprise was engaged in interstate commerce, and the activities of the enterprise affected interstate commerce. The enterprise has been, and continues to be, a government law enforcement agency continuously and systematically controlled, exploited, and dominated in the conduct of its affairs by NAMED DEFENDANT RACKETEERS and Co-Conspirators in the manner and means which are described herein.

50. The term "enterprise" is defined in 18 U.S.C. § 1961(4) as including "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."

51. Over the last five or six terms of office for Sheriff, the County of Sacramento Sheriff's office and management level employees of the County of Sacramento have systematically exercised a sphere of influence over the issuance of Concealed Weapons Permits and Honorary Deputy Commissions. The commissions consisted of a peace officer wallet badge and a Sheriff's official identification card which stated that the holder is an honorary deputy sheriff, and usually accompanied a concealed weapons permit. The Sheriff often signed the commissions without the applicant having completed any POST training.

52. These badges and identification cards are created using taxpayer funds, and were also made and issued by the same vendors and employees that are responsible for producing peace officer credentials for Full Time Active Duty Deputy Sheriffs.

53. Honorary Deputy Commissions are issued only to close friends and supporters of the Sheriff, and are not available to members of the general public.

54. **Acquiring and Maintaining Control of COUNTY OF SACRAMENTO SHERIFF'S DEPARTMENT:** Commencing sometime in 1986, Defendant Blanas was specifically recruited by former Sheriff Craig to raise money for political campaigns. Later, Defendant

1   McGinnis joined the conspiracy through a process which later placed him in the position of

2   Sheriff.

3   55.   Defendants created various sub-organizations of the Enterprise ( **COUNTY OF**

4         **SACRAMENTO SHERIFF'S DEPARTMENT**) for the purposes of laundering campaign

5         contributions, legitimizing the issuance of CCWs and Deputy Sheriff's Commissions, and for

6         campaign contributors and supporters to take tax deductions for their campaign contributions.

7   56.   These sub-organizations are called the Sheriff's Aero Squadron and Sheriff's Posse.

8   57.   The "SSD Aero Squadron" entity consists of wealthy campaign contributors who own private

9         planes and jets.  These planes have been  used to transport Defendant Blanas and McGinnis

10        to Las Vegas and various other venues out of state for personal, non-business related reasons.

11  58.   The Sheriff's Posse consists of campaign contributors who own horses.

12  59.   Craig and Blanas conspired to sell their power to those who contributed money through a

13        variety of acts, including the issuance of level 3 reserve status to individuals who contributed,

14        the issuance of identification cards and badges to those who donated, the issuance of CCWs

15        to those who donated, and the promotion of individuals into key positions to effectuate these

16        acts, including individuals Captain Jim Cooper, Chief Bill Kelley, Detective Fred Mason and

17        Captain Tim Sheehan.

18  60.   Based upon information and belief, both unnamed co-conspirators Captain Cooper and Chief

19        Kelly were tacitly aware of the conspiracy and were peripheral participants.

20  61.   Defendant Blanas undertook a scheme and plan to infiltrate Defendant COUNTY OF

21        SACRAMENTO SHERIFF'S DEPARTMENT by soliciting bribes and extorting money

22        from individuals, and to use his election campaign and position of office with the COUNTY

23        OF SACRAMENTO SHERIFF'S DEPARTMENT as a conduit for laundering money.

24  62.   Mason, Kelly, Cooper, and Sheehan have been part of Defendant Blanas' Hobbs act

25        violations by being placed in key positions, such as Internal Affairs (IA), Special

26        Investigations Bureau (SIB), and other sensitive positions, since the  mid-1990s.

27  63.   NAMED DEFENDANT RACKETEERS and co-conspirators, up to and including the date of

28        the filing of this complaint, in the Eastern District of California and elsewhere, unlawfully,

          knowingly and intentionally did acquire and maintain, directly and indirectly, an interest in

and control of the aforementioned enterprise which was engaged in, and the activities of which affected interstate commerce through a pattern of racketeering activity, as alleged herein, in violation of Title 18, United States Code, Sections 1962.

64.   NAMED DEFENDANT RACKETEERS are all natural persons, and were sworn peace officers of the enterprise COUNTY OF SACRAMENTO SHERIFF'S DEPARTMENT, and have currently maintained *de facto* status.

65.   NAMED DEFENDANT RACKETEERS are a group of individuals associated in fact with others in the conspiracy for the purpose of engaging in certain specified racketeering activities, conducting and participating in the affairs of an enterprise engaged in interstate commerce by and through a pattern of said racketeering activities, in violation of 18 U.S.C. § 1962.

FIRST CAUSE OF ACTION
RICO
**Title 18, United States Code, Sections 1961 through 1968**
(only personally named defendants and no branches of government)

66.   All averments contained in this pleading are incorporated in their entirety, as though fully set forth below.

67.   Defendant Blanas was specifically recruited by then Sheriff Craig because of his connections developer Angelo Tsakopoulos.

68.   Tskaopoulos is a well known developer in the Sacramento area, and is one of the wealthiest land holders in the region, owning vast amounts of real estate.

69.   This developer owns AKT Development Corporation located at 7700 College Town Drive, Suite #101, Sacramento, CA, 95826.

70.   Said location is the hub and nerve center for other business entities, all closely associated with Defendants and their agents.

71.   Among these are John Anthony Christie (wife Julie Christie) who employees Defendant Blanas' wife, Nanette June. Also located at this address are Eleni Tsakopoulos-Kounalakis, president of AKT Development, Inc.; Mark Enes, executive vice president of AKT Investments Inc.; and Frank Greg Stathos DBA Metro Properties.

72.   **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

73.   Former Sheriff Glenn Craig paid Defendant Blanas a Captain's slot in return for Defendant Blanas' obtaining campaign contributions from various wealthy individuals and giving these contributions to Craig as payment for Blanas' Captain, Chief, and ultimately Under-Sheriff positions.

74.   Defendant Blanas was promoted to these positions, bypassing a civil service promotion process for the position of Captain, though better qualified individuals were seeking the position (Defendant Blanas was not even qualified for the position of Sergeant when employed by the Sacramento City Police Department as he had previously failed that exam on several occasions).

75.   During this period, Defendant Blanas (and later Defendant McGinnis) realized that many citizens of Sacramento County were applying for CCW permits.

76.   Because of the demand for CCWs, Defendants were able to sell CCW permits in return for both monetary campaign contributions and in-kind exchanges of wealth.

77.   **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

78.   Based upon information and belief, John and Julie Christie have become conduits for AKT Development Corporation (and related individuals and entities), disbursing campaign contributions to Defendants Blanas and McGinnis, and payments to Nanette June Blanas in the form of real estate sales commissions.  In return, each has received a CCW, and based upon information and belief, an Honorary Deputy Commission.

79.   **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

80.   John Christie was issued a CCW and, based upon information and belief, an Honorary Deputy Sheriff Commission on or about 1/4/1999.

81.   John Christie was either employed by, or had a business interest in, AKT Development Corporation, 7700 College Town Drive, Suite 101, Sacramento, CA  95826, as a licensed real estate broker at the time the CCW was issued.

82.   At the same time, as part of the payment for his CCW, John Christie employed Defendant Blanas' wife, Nanette Blanas, as a real estate agent working under his broker's license.

83.   AKT Development and John Christie are conduits for the personal campaign contributions of Angelo Tsakopoulos.

84.   Through AKT Development Corporation acting as a conduit, John Christie paid DEFENDANT NAMED RACKETEERS campaign contributions and employed Defendant Blanas' wife.

85.   DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from AKT Development Corporation and John Christie, and employed Defendant Blanas' wife.  In return for these payments in the form of campaign contributions, sales commissions, and employment opportunities, DEFENDANT NAMED RACKETEERS issued to John Christie a CCW under color of authority.

86.   **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

87.   Julie Christie, the wife of John Christie, was issued a CCW and, based upon information and belief, an Honorary Deputy Sheriff Commission on or about 12/15/1998.

88.   Based upon information and belief, Julie Christie had a financial relationship in AKT Development Corporation, 7700 College Town Drive, Suite 101, Sacramento, CA  95826, at the time the CCW was issued, as that is and was her husband's business.

89.   DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from Julie Christie.  In return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Julie Christie a CCW under color of authority.

90.   **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

91.   William Christie was issued a CCW and, based upon information and belief, an Honorary Deputy Sheriff Commission on or about 7/5/1990.

92.   William Christie paid DEFENDANT NAMED RACKETEERS campaign contributions.

93.   William Christie is believed to be a relation of John and Julie Christie, who also made campaign contributions to the DEFENDANT NAMED RACKETEERS.

94.   DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of

official right from William Christie.  In return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to William Christie a CCW in return for payment under color of authority.

95. **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

96. David Bruce Fite was issued a CCW and, based upon information and belief, an Honorary Deputy Sheriff Commission on or about 1/23/2007.

97. David Bruce Fite is a member of the Aero Squadron.

98. At the time the CCW was issued, David Bruce Fite was either employed by, or had a business interest in, D. Bruce Fite & Associates, Fite Construction & Development Co., and Fite Properties, all registered at 9857 Horn Road, Sacramento, CA 95827.

99. Through D. Bruce Fite & Associates, Fite Construction & Development Co., and Fite Properties, acting a conduits, David Bruce Fite paid DEFENDANT NAMED RACKETEERS campaign contributions.

100. DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from D. Bruce Fite & Associates, Fite Construction & Development Co., and Fite Properties.  In return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to David Bruce Fite a CCW under color of authority.

101. **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

102. Charles Fite was issued a CCW and, based upon information and belief, an Honorary Deputy Sheriff Commission on or about 4/20/1996.

103. Charles Fite is a member of the Aero Squadron.

104. Based upon information and belief, Charles Fite is a relation of David Bruce Fite and was in connection with D. Bruce Fite & Associates, Fite Construction & Development Co., and Fite Properties at the time the CCW was issued.

105. Through D. Bruce Fite & Associates, Fite Construction & Development Co., and Fite Properties, acting as conduits, Charles Fite paid DEFENDANT NAMED RACKETEERS

1    campaign contributions.

2    106.   DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of

3           official right from D. Bruce Fite & Associates, Fite Construction & Development Co., and

4           Fite Properties.  In return for these payments in the form of campaign contributions,

5           DEFENDANT NAMED RACKETEERS issued to Charles Fite a CCW under color of

6           authority.

7    107.   **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of

8           official right)

9    108.   Pete Halimi was issued a CCW and, based upon information and belief, an Honorary Deputy

10          Sheriff Commission on or about 1/2/2007.

11   109.   At the time the CCW was issued. Pete Halimi was either employed by, or had a business

12          interest in, D. Bruce Fite & Associates, Fite Construction & Development Co., and Fite

13          Properties, all registered at 9857 Horn Road, Sacramento, CA 95827.

14   110.   Through D. Bruce Fite & Associates, Fite Construction & Development Co., and Fite

15          Properties, acting as conduits, Pete Halimi paid DEFENDANT NAMED RACKETEERS

16          campaign contributions.

17   111.   Halimi is a member of the Aero Squadron.

18   112.   DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of

19          official right from D. Bruce Fite & Associates, Fite Construction & Development Co., and

20          Fite Properties.  In return for these payments in the form of campaign contributions,

21          DEFENDANT NAMED RACKETEERS issued to Pete Halimi a CCW under color of

22          authority.

23   113.   **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of

24          official right)

25   114.   Patrick R. Frink was issued a CCW and, based upon information and belief, an Honorary

26          Deputy Sheriff Commission on or about 2/24/2000.

27   115.   At the time the CCW was issued., Patrick R. Frink was either employed by, or had a business

28          interest in, Bob Frink Imports, Inc, and RPM Management, 5112 Madison Avenue, Suite

            201, Sacramento, Ca 95841.

116.   Through Bob Frink Imports, Inc, and RPM Management, acting as a conduit, Patrick R. Frink paid DEFENDANT NAMED RACKETEERS campaign contributions.

117.   DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from Bob Frink Imports, Inc, and RPM Management.  In return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Patrick R. Frink a CCW under color of authority.

118.   **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

119.   Robert Frink was issued a CCW and, based upon information and belief, an Honorary Deputy Sheriff Commission on or about 5/18/1995.

120.   Robert Frink is believed to be a relation of Patrick R. Frink.

121.   At the time the CCW was issued., Robert Frink was either employed by, or had a business interest in, Bob Frink Imports, Inc,  Bob Frink Mangement, Inc., and RPM Management, 5112 Madison Avenue, Suite 201, Sacramento, Ca 95841.

122.   Personally, and through Bob Frink Imports, Inc, and RPM Management, acting as conduits, Robert Frink paid DEFENDANT NAMED RACKETEERS campaign contributions and made campaign loans, some of which were forgiven.

123.   DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from Bob Frink Imports, Inc, and RPM Management.  In return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Robert Frink a CCW under color of authority.

124.   **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

125.   Richard Gord Hill was issued a CCW and, based upon information and belief, an Honorary Deputy Sheriff Commission on or about 9/6/2000.

126.   At the time the CCW was issued, Richard Gord Hill was either employed by, or had a business interest, in Bob Frink Management, Inc., RPM Management, 5112 Madison Avenue, Suite 201, Sacramento, CA 95841.

127.   Through Bob Frink Management, Inc., and RPM Management, acting as conduits, Richard

Gord Hill paid DEFENDANT NAMED RACKETEERS campaign contributions.

128. DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from Bob Frink Management, Inc., and RPM Management.  In return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Richard Gord Hill a CCW under color of authority.

129. **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

130. Edwin Gerber was issued a CCW and, based upon information and belief, an Honorary Deputy Sheriff Commission on or about 9/25/2006.

131. Edwin Gerber was either employed by, or had a business interest in, Energetic Painting and Drywall, Inc., 3030 Orange Grove Ave, North Highlands, CA 95660 at the time the CCW was issued.

132. Through Energetic Painting and Drywall, Inc., acting as a conduit, Edwin Gerber paid DEFENDANT NAMED RACKETEERS campaign contributions.

133. In addition, Edwin Gerber bought Defendant Blanas a vacation home in Reno, Nevada.  This home was purchased from other campaign contributors, Reynen and Bardis.

134. DEFENDANT NAMED RACKETEERS obtained a vacation home and campaign contributions from Energetic Painting and Drywall, Inc., under color of official right, and in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Edwin Gerber a CCW under color of authority.

135. **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

136. Bart E. Hightower was issued a CCW and, based upon information and belief, an Honorary Deputy Sheriff Commission on or about 9/27/2005.

137. Bart E. Hightower was either employed by, or had a business interest in, Porter, Scott, Weiberg & Delehant, 350 University Avenue, Suite 200, Sacramento, CA  95825, at the time the CCW was issued.

138. Through Porter, Scott, Weiberg & Delehant, acting as a conduit, Bart E. Hightower paid DEFENDANT NAMED RACKETEERS campaign contributions.

139. DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from Porter, Scott, Weiberg & Delehant, and in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Bart E. Hightower a CCW under color of authority.

140. **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

141. Jack Kimmel was issued a CCW and, based upon information and belief, an Honorary Deputy Sheriff Commission on or about 12/1/1987.

142. Jack Kimmel was either employed by, or had a business interest in, Kimmel Construction, Inc., 1815 Stockton Boulevard, Sacramento, CA 95816, and Sacramento Rendering, Co., 11350 Kiefer Boulevard, Sacramento, CA 95830, at the time the CCW was issued.

143. Through Kimmel Construction, Inc., and Sacramento Rendering, Co., acting as conduits, Jack Kimmel paid DEFENDANT NAMED RACKETEERS campaign contributions.

144. DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from Kimmel Construction, Inc., and Sacramento Rendering, Co.  In return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Jack Kimmel a CCW under color of authority.

145. **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

146. Michael Koewler was issued a CCW and, based upon information and belief, an Honorary Deputy Sheriff Commission on or about 6/5/1996.

147. Michael Koewler was either employed by, or had a business interest in, Sacramento Rendering, Co., 11350 Kiefer Boulevard, Sacramento, CA 95830, at the time the CCW was issued.

148. Personally, and through Sacramento Rendering, Co., acting as a conduit, Michael Koewler paid DEFENDANT NAMED RACKETEERS campaign contributions.

149. DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from Sacramento Rendering, Co.  In return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Michael Koewler

1    a CCW under color of authority.

2    150.   **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of

3           official right)

4    151.   John Manikas was issued a CCW and, based upon information and belief, an Honorary

5           Deputy Sheriff Commission on or about 10/18/1994.

6    152.   John Manikas was either employed by, or had a business interest in, Color Core Incorporated

7           and Five Star Painting at 975 Fee Drive, Sacramento, CA 95815, at the time the CCW was

8           issued.

9    153.   Personally, and through Color Core Incorporated and Five Star Painting acting as a conduit,

10          John Manikas paid DEFENDANT NAMED RACKETEERS campaign contributions.

11   154.   DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of

12          official right from Color Core Incorporated and Five Star Painting.  In return for these

13          payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS

14          issued to John Manikas a CCW under color of authority.

15   155.   **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of

16          official right)

17   156.   Kermit Schayltz was issued a CCW and, based upon information and belief, an Honorary

18          Deputy Sheriff Commission on or about 9/6/1996.

19   157.   Kermit Schayltz was either employed by, or had a business interest in, Point-Walker, Inc.,

20          Lucky Derby Casino, 7433 Greenback Lane, Citrus Heights, CA 95610 at the time the CCW

21          was issued.

22   158.   Personally, and through Point-Walker, Inc., Lucky Derby Casino, acting as a conduit, Kermit

23          Schayltz paid DEFENDANT NAMED RACKETEERS campaign contributions.

24   159.   DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of

25          official right from Point-Walker, Inc., Lucky Derby Casino.  In return for these payments in

26          the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to

27          Kermit Schayltz a CCW under color of authority.

28   160.   **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of

     official right)

161.   Michael Hisaw was issued a CCW and, based upon information and belief, an Honorary Deputy Sheriff Commission on or about 1/6/2000.

162.   Michael Hisaw was believed to be either employed by, or to have a business interest in, Lucky Derby Casino at the time the CCW was issued.

163.   Personally, and through Lucky Derby Casino acting as a conduit, Michael Hisaw paid DEFENDANT NAMED RACKETEERS campaign contributions.

164.   DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from Lucky Derby Casino.  In return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Michael Hisaw a CCW under color of authority.

165.   **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

166.   Gerry Harris was issued a CCW and, based upon information and belief, an Honorary Deputy Sheriff Commission on or about 9/9/1999.

167.   Gerry Harris was believed to be either employed by, or have a business interest in, Lucky Derby Casino at the time the CCW was issued.

168.   Gerry Harris is a known associate of Kermit Schayltz and Michael Hisaw.

169.   Personally, and through Lucky Derby Casino acting as a conduit, Gerry Harris paid DEFENDANT NAMED RACKETEERS campaign contributions.

170.   DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from Lucky Derby Casino and in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Gerry Harris a CCW under color of authority.

171.   **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

172.   Jack Sellers was issued a CCW and, based upon information and belief, an Honorary Deputy Sheriff Commission on or about 3/3/1993.

173.   Jack Sellers was either employed by, or had a business interest in, Sacramento Coca-Cola Bottling Company, Inc., P.O. Box 160608, Sacramento, CA 95816, at the time the CCW was

1    issued.

2   174.   Personally, and through Sacramento Coca-Cola Bottling Company, Inc., acting as a conduit,

3    Jack Sellers paid DEFENDANT NAMED RACKETEERS campaign contributions.

4   175.   DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of

5    official right from Sacramento Coca-Cola Bottling Company, Inc.  In return for these

6    payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS

7    issued to Jack Sellers a CCW under color of authority.

8   176.   **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of

9    official right)

10   177.   Ronald Sellers was issued a CCW and, based upon information and belief, an Honorary

11    Deputy Sheriff Commission on or about 3/3/1993 and 2/5/2001.

12   178.   Ronald Sellers was either employed by, or had a business interest in, Sacramento Coca-Cola

13    Bottling Company, Inc., P.O. Box 160608, Sacramento, CA 95816, at the time the CCW was

14    issued.

15   179.   Personally, and through Sacramento Coca-Cola Bottling Company, Inc., acting as a conduit,

16    Ronald Sellers paid DEFENDANT NAMED RACKETEERS campaign contributions.

17   180.   DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of

18    official right from Sacramento Coca-Cola Bottling Company, Inc.  In return for these

19    payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS

20    issued to Ronald Sellers a CCW under color of authority.

21   181.   **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of

22    official right)

23   182.   Stephen Sellers was issued a CCW and, based upon information and belief, an Honorary

24    Deputy Sheriff Commission on or about 5/24/1994.

25   183.   Stephen Sellers is believed to be a relation of Jack Sellers.

26   184.   Stephen Sellers was either employed by, or had a business interest in, Sacramento Coca-Cola

27    Bottling Company, Inc., P.O. Box 160608, Sacramento, CA 95816, at the time the CCW was

28    issued.

   185.   Personally, and through Sacramento Coca-Cola Bottling Company, Inc., acting as a conduit,

Stephen Sellers paid DEFENDANT NAMED RACKETEERS campaign contributions.

186.  DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from Sacramento Coca-Cola Bottling Company, Inc.  In return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Stephen Sellers a CCW under color of authority.

187.  **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

188.  Margaret Abrate was issued a CCW and, based upon information and belief, an Honorary Deputy Sheriff Commission on or about 4/28/1993.

189.  Margaret Abrate was either employed by, or had a business interest in, Capitol Steel, Co., P.O. Box 215239, Sacramento, CA 95821, at the time the CCW was issued.

190.  Through Capitol Steel Co. acting as a conduit, Margaret Abrate paid DEFENDANT NAMED RACKETEERS campaign contributions.

191.  DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from Capitol Steel, Co.  In return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Margaret Abrate a CCW under color of authority.

192.  **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

193.  James Anderson was issued a CCW and, based upon information and belief, an Honorary Deputy Sheriff Commission on or about 11/21/1994.

194.  James Anderson was either employed by, or had a business interest in, Pacific Coast Building Products and Pacific Coast Companies at P.O. Box 160488, Sacramento, CA 95816, at the time the CCW was issued.

195.  Personally, and through Pacific Coast Building  Products, and Pacific Coast Companies acting as conduits, James Anderson paid DEFENDANT NAMED RACKETEERS campaign contributions.

196.  DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from Pacific Coast Building Products and Pacific Coast Companies.  In return

1   for these payments in the form of campaign contributions, DEFENDANT NAMED

2   RACKETEERS issued to James Anderson a CCW under color of authority.

3   197.   **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of

4          official right)

5   198.   Richard Merri was issued a CCW and, based upon information and belief, an Honorary

6          Deputy Sheriff Commission on or about 5/21/1998.

7   199.   At the time the CCW was issued,. Richard Merri was either employed by, or had a business

8          interest in, Pacific Coast Building Products and Pacific Coast Companies at P.O. Box

9          160488, Sacramento, CA 95816, and a close association with James Anderson.

10  200.   Personally, and through Pacific Coast Building Products and Pacific Coast Companies acting

11         as conduits, Richard Merri paid DEFENDANT NAMED RACKETEERS campaign

12         contributions.

13  201.   DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of

14         official right from Pacific Coast Building Products and Pacific Coast Companies, and in close

15         association with James Anderson, and in return for these payments in the form of campaign

16         contributions, DEFENDANT NAMED RACKETEERS issued to Richard Merri a CCW

17         under color of authority.

18  202.   **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of

19         official right)

20  203.   Stephen Beneto was issued a CCW and, based upon information and belief, an Honorary

21         Deputy Sheriff Commission on or about 8/28/1993.

22  204.   Stephen Beneto was either employed by, or had a business interest in, Beneto Petroleum

23         Products, P.O. Box 1496, West Sacramento, CA 95691, at the time the CCW was issued.

24  205.   Personally, and through Beneto Petroleum Products acting as a conduit, Stephen Beneto paid

25         DEFENDANT NAMED RACKETEERS campaign contributions.

26  206.   DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of

27         official right from Beneto Petroleum Products.  In return for these payments in the form of

28         campaign contributions, DEFENDANT NAMED RACKETEERS issued to Stephen Beneto a

    CCW under color of authority.

207.  **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

208.  Christopher Hansen was issued a CCW and, based upon information and belief, an Honorary Deputy Sheriff Commission on or about 6/30/1998.

209.  Christopher Hansen was either employed by, or had a business interest in, Chris Hansen Insurance, 8788 Elk Grove Boulevard, Suite M, Elk Grove, CA 95624, at the time the CCW was issued.

210.  Personally, and through Chris Hansen Insurance acting as a conduit, Christopher Hansen paid DEFENDANT NAMED RACKETEERS campaign contributions.

211.  DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from Chris Hansen Insurance and in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Christopher Hansen a CCW under color of authority.

212.  **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

213.  David Mastagni was issued a CCW and, based upon information and belief, an Honorary Deputy Sheriff Commission on or about 12/30/1996.

214.  David Mastagni was either employed by, or had a business interest in, Mastagni, Holstedt & Chiurazzi, 1912 I Street, Suite 102, Sacramento, CA 95814, at the time the CCW was issued.

215.  Through Mastagni, Holstedt & Chiurazzi, acting as a conduit, David Mastagni paid DEFENDANT NAMED RACKETEERS campaign contributions.

216.  DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from Mastagni, Holstedt & Chiurazzi and, in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to David Mastagni a CCW under color of authority.

217.  **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

218.  Kathleen Mastagni was issued a CCW and, based upon information and belief, an Honorary Deputy Sheriff Commission on or about 3/3/1994.

219.   Based upon information and belief, Kathleen Mastagni was either employed by, or had a relationship with, Mastagni, Holstedt & Chiurazzi, 1912 I Street, Suite 102, Sacramento, CA 95814, at the time the CCW was issued.

220.   Through Mastagni, Holstedt & Chiurazzi, acting as a conduit, Kathleen Mastagni paid DEFENDANT NAMED RACKETEERS campaign contributions.

221.   DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from Mastagni, Holstedt & Chiurazzi, and in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Kathleen Mastagni a CCW under color of authority.

222.   **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

223.   John Holstedt was issued a CCW and, based upon information and belief, an Honorary Deputy Sheriff Commission on or about 9/26/1988.

224.   Based upon information and belief, John Holsdtedt was either employed by, or had a relationship with Mastagni, Holstedt & Chiurazzi, 1912 I Street, Suite 102, Sacramento, CA 95814, at the time the CCW was issued.

225.   Through Mastagni, Holstedt & Chiurazzi acting as a conduit, John Holstedt paid DEFENDANT NAMED RACKETEERS campaign contributions.

226.   DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from Mastagni, Holstedt & Chiurazzi and in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to John Holstedt a CCW under color of authority.

227.   **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

228.   Joseph Mohamed was issued a CCW and, based upon information and belief, an Honorary Deputy Sheriff Commission on or about 3/15/1994.

229.   Joseph Mohamed was either employed by, or had a business interest in, Joseph Mohamed Enterprises, 4405 College Oak Drive, Sacramento, CA 95841, at the time the CCW was issued.

230. Joseph Mohamed was a member of the Sheriff's Posse.

231. Through Joseph Mohamed Enterprises acting as a conduit, Joseph Mohamed paid DEFENDANT NAMED RACKETEERS campaign contributions.

232. DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from Joseph Mohamed Enterprises and in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Joseph Mohamed a CCW under color of authority.

233. **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

234. John Mohamed was issued a CCW and, based upon information and belief, an Honorary Deputy Sheriff Commission on or about 12/28/1987.

235. John Mohamed was either employed by, or had a business interest in, Joseph Mohamed Enterprises, 4405 College Oak Drive, Sacramento, CA 95841, at the time the CCW was issued.

236. Through Joseph Mohamed Enterprises acting as a conduit, John Mohamed paid DEFENDANT NAMED RACKETEERS campaign contributions.

237. DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from Joseph Mohamed Enterprises and, in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to John Mohamed a CCW under color of authority.

238. **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

239. Ahmed Mohamed was issued a CCW and, based upon information and belief, an Honorary Deputy Sheriff Commission on or about 2/10/1996.

240. Ahmed Mohamed is believed to be a relation of Joseph Mohamed.

241. Ahmed Mohamed was either employed by, or had a business interest in, Joseph Mohamed Enterprises, 4405 College Oak Drive, Sacramento, CA 95841, at the time the CCW was issued.

242. Through Joseph Mohamed Enterprises acting as a conduit, Ahmed Mohamed paid

1   DEFENDANT NAMED RACKETEERS campaign contributions.

2   243.   DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of

3   official right from Joseph Mohamed Enterprises and, in return for these payments in the form

4   of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Ahmed

5   Mohamed a CCW under color of authority.

6   244.   **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of

7   official right)

8   245.   Shirley Mohamed was issued a CCW and, based upon information and belief, an Honorary

9   Deputy Sheriff Commission on or about 7/3/1993.

10  246.   Shirley Mohamed is believed to be a relation of Ahmed Mohamed and Joseph Mohamed.

11  247.   Shirley Mohamed was either employed by, or had a business interest in, Joseph Mohamed

12  Enterprises, 4405 College Oak Drive, Sacramento, CA, 95841, at the time the CCW was

13  issued.

14  248.   Through Joseph Mohamed Enterprises acting as a conduit, Shirley Mohamed paid

15  DEFENDANT NAMED RACKETEERS campaign contributions.

16  249.   DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of

17  official right from Joseph Mohamed Enterprises and, in return for these payments in the form

18  of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Shirley

19  Mohamed a CCW under color of authority.

20  250.   **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of

21  official right)

22  251.   Ed Rincon was issued a CCW and, based upon information and belief, an Honorary Deputy

23  Sheriff Commission on or about 12/31/1997.

24  252.   Ed Rincon was either employed by, or had a business interest in, Ed Rincon Towing, 1762

25  Santa Ynez Way, Sacramento, CA, 95816, at the time the CCW was issued.

26  253.   Through Ed Rincon Towing acting as a conduit, Ed Rincon paid DEFENDANT NAMED

27  RACKETEERS campaign contributions.

28  254.   DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of

official right from Ed Rincon Towing and, in return for these payments in the form of

campaign contributions, DEFENDANT NAMED RACKETEERS issued to Ed Rincon a CCW under color of authority.

255.   **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

256.   Julie Rollofson was issued a CCW and, based upon information and belief, an Honorary Deputy Sheriff Commission on or about 3/5/1999.

257.   Julie Rollofson was either employed by, or had a business interest in, Donald P. Rollofson, D.M.D., Inc., 9727 Elk Grove-Florin Road, Suite 280, Elk Grove, CA 95624, at the time the CCW was issued.

258.   Through Donald P. Rollofson, D.M.D., Inc., acting as a conduit, Julie Rollofson paid DEFENDANT NAMED RACKETEERS campaign contributions.

259.   DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from Donald P. Rollofson, D.M.D., Inc., and in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Julie Rollofson a CCW under color of authority.

260.   **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

261.   David Smith was issued a CCW and, based upon information and belief, an Honorary Deputy Sheriff Commission on or about 12/9/1995.

262.   David Smith was either employed by, or had a business interest in, Eagle Ridge Development and Eagle Ridge Construction & Roofing, 11721 Fair Oaks Boulevard, Fair Oaks, CA 95628, at the time the CCW was issued.

263.   Through Eagle Ridge Development and Eagle Ridge Construction & Roofing acting as a conduit, David Smith paid DEFENDANT NAMED RACKETEERS campaign contributions.

264.   DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from Eagle Ridge Development and Eagle Ridge Construction & Roofing and, in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to David Smith a CCW under color of authority.

265.   **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of

1    official right)

2    266.    Benjamin Upton was issued a CCW and, based upon information and belief, an Honorary

3            Deputy Sheriff Commission on or about 7/11/1994.

4    267.    Benjamin Upton was either employed by, or had a business interest in, Valley Painting, 8999

5            Elk Grove-Florin Road, Elk Grove, CA 95624, at the time the CCW was issued.

6    268.    Through Valley Painting acting as a conduit, Benjamin Upton paid DEFENDANT NAMED

7            RACKETEERS campaign contributions.

8    269.    DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of

9            official right from Valley Painting and, in return for these payments in the form of campaign

10           contributions, DEFENDANT NAMED RACKETEERS issued to Benjamin Upton a CCW

11           under color of authority.

12   270.    **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of

13           official right)

14   271.    Ronald D. Yee was issued a CCW and, based upon information and belief, an Honorary

15           Deputy Sheriff Commission on or about 12/9/1996.

16   272.    Ronald D. Yee was either employed by, or had a business interest in, Ronald D. Yee, D.D.S.,

17           Inc., 7213 Fawn Way, Sacramento, CA 95823, at the time the CCW was issued.

18   273.    Through Ronald D. Yee, D.D.S., Inc., acting as a conduit Ronald D. Yee paid DEFENDANT

19           NAMED RACKETEERS campaign contributions.

20   274.    DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of

21           official right from Ronald D. Yee, D.D.S., Inc., and, in return for these payments in the form

22           of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Ronald D.

23           Yee a CCW under color of authority.

24   275.    **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of

25           official right)

26   276.    Lloyd O'Kieff Snelson was issued a CCW in 1979.

27   277.    Lloyd O'Kieff Snelson paid DEFENDANT NAMED RACKETEERS campaign

28           contributions.

     278.    DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of

official right from Lloyd O'Kieff Snelson and, in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Lloyd O'Kieff Snelson a CCW under color of authority.

279.  **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

280.  James Teel was issued a CCW and, based upon information and belief, an Honorary Deputy Sheriff Commission on or about 6/11/1987.

281.  James Teel paid DEFENDANT NAMED RACKETEERS campaign contributions.

282.  DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from James Teel and, in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to James Teel a CCW under color of authority.

283.  **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

284.  John Francis Valensin was issued a CCW and, based upon information and belief, an Honorary Deputy Sheriff Commission on or about 9/18/1987.

285.  John Francis Valensin paid DEFENDANT NAMED RACKETEERS campaign contributions in the form of loans that appear to be forgiven.

286.  John Francis Valensin resides in Galt, which is outside the jurisdiction of Sacramento County.

287.  DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from John Francis Valensin and, in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to John Francis Valensin a CCW under color of authority.

288.  **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

289.  Dale W. Mahon was issued a CCW and, based upon information and belief, an Honorary Deputy Sheriff Commission on or about 1/1/1988.

290.  Dale W. Mahon was a member of the Sheriff's Posse.

291. Dale W. Mahon paid DEFENDANT NAMED RACKETEERS campaign contributions.

292. DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from Dale W. Mahon and, in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Dale W. Mahon a CCW under color of authority.

293. **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

294. Christopher Taylor was issued a CCW and, based upon information and belief, an Honorary Deputy Sheriff Commission on or about 5/25/1988.

295. Christopher Taylor is believed to be related to John Taylor of John Taylor Fertilizer, who is also a campaign contributor.

296. Christopher Taylor paid DEFENDANT NAMED RACKETEERS campaign contributions.

297. DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from Christopher Taylor, and, in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Christopher Taylor a CCW under color of authority.

298. **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

299. Spencer C. Bole was issued a CCW an,d based upon information and belief, an Honorary Deputy Sheriff Commission on or about 8/12/1988.

300. At the time he was issued a CCW, Spencer C. Bole was the Deputy Director of General Services of Sacramento County.

301. Spencer C. Bole paid DEFENDANT NAMED RACKETEERS campaign contributions.

302. DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from Spencer C. Bole and, in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Spencer C. Bole a CCW under color of authority.

303. **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

304.   Kent H. Gould was issued a CCW and, based upon information and belief, an Honorary Deputy Sheriff Commission on or about 1/1/1989.

305.   Kent H. Gould was either employed by, or had a business interest in, R & G Associates, Inc., at the time the CCW was issued.

306.   Kent H. Gould resides outside of the jurisdiction of Sacramento County.

307.   Through R & G Associates, Inc., acting as a conduit, Kent H. Gould paid DEFENDANT NAMED RACKETEERS campaign contributions.

308.   DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from R & G Associates, Inc., and, in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Kent H. Gould a CCW under color of authority.

309.   **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

310.   George Albert Gould was issued a CCW and, based upon information and belief, an Honorary Deputy Sheriff Commission on or about 10/21/1996.

311.   George Albert Gould is believed to be a relation of Kent H. Gould.

312.   George Albert Gould paid DEFENDANT NAMED RACKETEERS campaign contributions.

313.   DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from George Albert Gould and, in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to George Albert Gould a CCW under color of authority.

314.   **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

315.   George Paras was issued a CCW and, based upon information and belief, an Honorary Deputy Sheriff Commission on or about 5/1/1989.

316.   George Paras paid DEFENDANT NAMED RACKETEERS campaign contributions.

317.   DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from George Paras and, in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to George Paras a CCW under

1    color of authority.

2    318.   **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of

3           official right)

4    319.   Clinton Luhmann was issued a CCW and, based upon information and belief, an Honorary

5           Deputy Sheriff Commission on or about 7/25/1992.

6    320.   Clinton Luhmann paid DEFENDANT NAMED RACKETEERS campaign contributions.

7    321.   Clinton Luhmann and George Paras, who also made donations to the DEFENDANT

8           NAMED RACKETEERS, were neighbors in an upscale neighborhood on Del Dayo Drive.

9    322.   DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of

10          official right from Clinton Luhmann and, in return for these payments in the form of

11          campaign contributions, DEFENDANT NAMED RACKETEERS issued to Clinton

12          Luhmann a CCW under color of authority.

13   323.   **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of

14          official right)

15   324.   Joseph Consulo was issued a CCW and, based upon information and belief, an Honorary

16          Deputy Sheriff Commission on or about 11/13/1989.

17   325.   Joseph Consulo paid DEFENDANT NAMED RACKETEERS campaign contributions.

18   326.   DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of

19          official right from Joseph Consulo and, in return for these payments in the form of campaign

20          contributions, DEFENDANT NAMED RACKETEERS issued to Joseph Consulo a CCW

21          under color of authority.

22   327.   **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of

23          official right)

24   328.   Maurica Marie Crooks was issued a CCW and, based upon information and belief, an

25          Honorary Deputy Sheriff Commission on or about 10/5/1992.

26   329.   Maurica Marie Crooks paid DEFENDANT NAMED RACKETEERS campaign

27          contributions.

28   330.   DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of

            official right from Maurica Marie Crooks and, in return for these payments in the form of

campaign contributions, DEFENDANT NAMED RACKETEERS issued to Maurica Marie Crooks a CCW under color of authority.

331.  **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

332.  Craig Regan was issued a CCW and, based upon information and belief, an Honorary Deputy Sheriff Commission on or about 5/21/1993.

333.  Craig Regan paid DEFENDANT NAMED RACKETEERS campaign contributions.

334.  DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from Craig Regan and, in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Craig Regan a CCW under color of authority.

335.  **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

336.  James Colafrancesco was issued a CCW and, based upon information and belief, an Honorary Deputy Sheriff Commission on or about 7/22/1993.

337.  James Colafrancesco paid DEFENDANT NAMED RACKETEERS campaign contributions.

338.  James Colafrancesco was arrested for brandishig a handgun .  As stated in the police report, James Colafrancesco said he received his Honorary Deputy Commission and CCW because of his connections to the "sheriff".

339.  DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from James Colafrancesco and, in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to James Colafrancesco a CCW under color of authority.

340.  **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

341.  Roger V. Bennett was issued a CCW and, based upon information and belief, an Honorary Deputy Sheriff Commission on or about 8/24/1993.

342.  Roger V. Bennett paid DEFENDANT NAMED RACKETEERS campaign contributions.

343.  DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of

official right from Roger V. Bennett and, in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Roger V. Bennett a CCW under color of authority.

344. **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

345. Jose Ramirez was issued a CCW and, based upon information and belief, an Honorary Deputy Sheriff Commission on or about 1/24/1994.

346. Jose Ramirez paid DEFENDANT NAMED RACKETEERS campaign contributions.

347. DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from Jose Ramirez and, in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Jose Ramirez a CCW under color of authority.

348. **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

349. Anselmo Padilla was issued a CCW and, based upon information and belief, an Honorary Deputy Sheriff Commission on or about 1/31/1994.

350. Anselmo Padilla paid DEFENDANT NAMED RACKETEERS campaign contributions.

351. Anselmo Padilla is believed to be a relation of Alejandro Reid Padilla, Greg A. Padilla, and Jess "Leonard" Padilla, who all made campaign contributions to the DEFENDANT NAMED RACKETEERS.

352. Defendants conditioned the issuance of the CCWs to Bail Bonds companies based upon the companies' contributions. Defendants essentially extorted money from the Padilla Bail Bond entities, as employees of bail bond companies have no chance of obtaining CCWs without payment of campaign contributions.

353. DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from Anselmo Padilla and, in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Anselmo Padilla a CCW under color of authority.

354. **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of

1    official right)

2    355.   Alejandro Reid Padilla was issued a CCW and, based upon information and belief, an

3          Honorary Deputy Sheriff Commission on or about 5/11/1995.

4    356.   Alejandro Reid Padilla paid DEFENDANT NAMED RACKETEERS campaign

5          contributions.

6    357.   Alejandro Reid Padilla is believed to be a relation of Anselmo Padilla, Greg A. Padilla, and

7          Jess "Leonard" Padilla, who all made campaign contributions to the DEFENDANT NAMED

8          RACKETEERS.

9    358.   DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of

10         official right from Alejandro Reid Padilla and, in return for these payments in the form of

11         campaign contributions, DEFENDANT NAMED RACKETEERS issued to Alejandro Reid

12         Padilla a CCW under color of authority.

13   359.   **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of

14         official right)

15   360.   Greg A. Padilla was issued a CCW and, based upon information and belief, an Honorary

16         Deputy Sheriff Commission on or about 12/30/1996

17   361.   Greg A. Padilla paid DEFENDANT NAMED RACKETEERS campaign contributions.

18   362.   Greg A. Padilla is believed to be a relation of Anselmo Padilla, Alejandro Reid Padilla, and

19         Jess "Leonard" Padilla, who all made campaign contributions to the DEFENDANT NAMED

20         RACKETEERS.

21   363.   DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of

22         official right from Greg A. Padilla and, in return for these payments in the form of campaign

23         contributions, DEFENDANT NAMED RACKETEERS issued to Greg A. Padilla a CCW

24         under color of authority.

25   364.   **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of

26         official right)

27   365.   Jess "Leonard" Padilla was issued a CCW and, based upon information and belief, an

28         Honorary Deputy Sheriff Commission on or about 8/11/1997.

     366.   Jess "Leonard" Padilla paid DEFENDANT NAMED RACKETEERS campaign

1    contributions.

2    367.  Jess "Leonard" Padilla is believed to be a relation of Anselmo Padilla, Alejandro Reid

3          Padilla, and Greg A. Padilla, who all made campaign contributions to the DEFENDANT

4          NAMED RACKETEERS.

5    368.  DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of

6          official right from Jess "Leonard" Padilla and, in return for these payments in the form of

7          campaign contributions, DEFENDANT NAMED RACKETEERS issued to Jess "Leonard"

8          Padilla a CCW under color of authority.

9    369.  **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of

10         official right)

11   370.  Darrell J. Dettling was issued a CCW and, based upon information and belief, an Honorary

12         Deputy Sheriff Commission on or about 6/30/1994.

13   371.  Darrell J. Dettlibg was either employed by, or had a business interest in, Dettling

14         Development at the time the CCW was issued.

15   372.  Based upon information and belief, Dettling Development was used as a conduit to funnel

16         such contributions.

17   373.  Darrell J. Dettling paid DEFENDANT NAMED RACKETEERS campaign contributions.

18   374.  DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of

19         official right from Darrell J. Dettling and, in return for these payments in the form of

20         campaign contributions, DEFENDANT NAMED RACKETEERS issued to Darrell J.

21         Dettling a CCWunder color of authority.

22   375.  **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of

23         official right)

24   376.  Stanley Silva was issued a CCW and, based upon information and belief, an Honorary

25         Deputy Sheriff Commission on or about 10/2/1994.

26   377.  Stanley Silva paid DEFENDANT NAMED RACKETEERS campaign contributions.

27   378.  DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of

28         official right from Stanley Silva and, in return for these payments in the form of campaign

     contributions, DEFENDANT NAMED RACKETEERS issued to Stanley Silva a CCW under

1   color of authority.

2   379.   **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of

3   official right)

4   380.   James Crump, Jr., was issued a CCW and, based upon information and belief, an Honorary

5   Deputy Sheriff Commission on or about 10/27/1994.

6   381.   James Crump, Jr. paid DEFENDANT NAMED RACKETEERS campaign contributions.

7   382.   DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of

8   official right from James Crump, Jr., and, in return for these payments in the form of

9   campaign contributions, DEFENDANT NAMED RACKETEERS issued to James Crump,

10   Jr., a CCW under color of authority.

11   383.   **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of

12   official right)

13   384.   Alvin Earl Ricci was issued a CCW and, based upon information and belief, an Honorary

14   Deputy Sheriff Commission on or about 11/28/1994.

15   385.   Alvin Earl Ricci paid DEFENDANT NAMED RACKETEERS campaign contributions.

16   386.   Alvin Earl Ricci is believed to be a relation of Gary M. Ricci, who also made campaign

17   contributions to the DEFENDANT NAMED RACKETEERS.

18   387.   DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of

19   official right from Alvin Earl Ricci and, in return for these payments in the form of campaign

20   contributions, DEFENDANT NAMED RACKETEERS issued to Alvin Earl Ricci a CCW

21   under color of authority.

22   388.   **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of

23   official right)

24   389.   Gary M. Ricci was issued a CCW and, based upon information and belief, an Honorary

25   Deputy Sheriff Commission on or about 7/24/1996.

26   390.   Gary M. Ricci paid DEFENDANT NAMED RACKETEERS campaign contributions.

27   391.   Gary M. Ricci is believed to be a relation of Alvin Earl Ricci, who also made campaign

28   contributions to the DEFENDANT NAMED RACKETEERS.

392.   DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of

official right from Gary M. Ricci and, in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Gary M. Ricci a CCW in under color of authority.

393. **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

394. Douglas Barkdull was issued a CCW and, based upon information and belief, an Honorary Deputy Sheriff Commission on or about 1/30/1995.

395. Douglas Barkdull paid DEFENDANT NAMED RACKETEERS campaign contributions.

396. Douglas Barkdull is believed to preside in Scottsdale, Arizona, which is outside the jurisdiction of Sacramento County.

397. DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from Douglas Barkdull and, in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Douglas Barkdull a CCW under color of authority.

398. **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

399. Rico Morotti was issued a CCW and, based upon information and belief, an Honorary Deputy Sheriff Commission on or about 4/14/1995.

400. Rico Morotti paid DEFENDANT NAMED RACKETEERS campaign contributions.

401. DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from Rico Morotti and, in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Rico Morotti a CCW under color of authority.

402. **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

403. Peter G. Scordakis was issued a CCW and, based upon information and belief, an Honorary Deputy Sheriff Commission on or about 6/5/1995.

404. Peter G. Scordakis paid DEFENDANT NAMED RACKETEERS campaign contributions.

405. DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of

1   official right from Peter G. Scordakis and, in return for these payments in the form of

2   campaign contributions, DEFENDANT NAMED RACKETEERS issued to Peter G.

3   Scordakis a CCW under color of authority.

4   406.   **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of

5   official right)

6   407.   George G. Brannigan was issued a CCW and, based upon information and belief, an

7   Honorary Deputy Sheriff Commission on or about 7/7/1995.

8   408.   George G. Brannigan paid DEFENDANT NAMED RACKETEERS campaign contributions.

9   Brannigan was a major contributor, and donated upwards of $20,000.

10  409.   DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of

11  official right from George C. Brannigan and, in return for these payments in the form of

12  campaign contributions, DEFENDANT NAMED RACKETEERS issued to George G.

13  Brannigan a CCW under color of authority.

14  410.   **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of

15  official right)

16  411.   Daryl B. Foreman was issued a CCW and, based upon information and belief, an Honorary

17  Deputy Sheriff Commission on or about 10/27/1995.

18  412.   Daryl B. Foreman paid DEFENDANT NAMED RACKETEERS campaign contributions.

19  413.   DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of

20  official right from Daryl B. Foreman and, in return for these payments in the form of

21  campaign contributions, DEFENDANT NAMED RACKETEERS issued to Daryl B.

22  Foreman a CCW under color of authority.

23  414.   **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of

24  official right)

25  415.   William Mosher was issued a CCW and, based upon information and belief, an Honorary

26  Deputy Sheriff Commission on or about 11/1/1995.

27  416.   William Mosher paid DEFENDANT NAMED RACKETEERS campaign contributions.

28  417.   DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of

official right from William Mosher and, in return for these payments in the form of campaign

1  contributions, DEFENDANT NAMED RACKETEERS issued to William Mosher a CCW

2  under color of authority.

3  418. **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of

4  official right)

5  419. Ernest Charles Martini was issued a CCW and, based upon information and belief, an

6  Honorary Deputy Sheriff Commission on or about 12/9/1995.

7  420. Ernest Charles Martini paid DEFENDANT NAMED RACKETEERS campaign

8  contributions.

9  421. DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of

10  official right from Ernest Charles Martini and, in return for these payments in the form of

11  campaign contributions, DEFENDANT NAMED RACKETEERS issued to Ernest Charles

12  Martini a CCW under color of authority.

13  422. **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of

14  official right)

15  423. Spiro Vasos was issued a CCW and, based upon information and belief, an Honorary Deputy

16  Sheriff Commission on or about 2/5/1996.

17  424. Spiro Vasos paid DEFENDANT NAMED RACKETEERS campaign contributions.

18  425. DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of

19  official right from Spiro Vasos and, in return for these payments in the form of campaign

20  contributions, DEFENDANT NAMED RACKETEERS issued to Spiro Vasos a CCW under

21  color of authority.

22  426. **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of

23  official right)

24  427. Robert J. Lessman was issued a CCW and, based upon information and belief, an Honorary

25  Deputy Sheriff Commission on or about 2/23/1996.

26  428. Robert J. Lessman paid DEFENDANT NAMED RACKETEERS campaign contributions.

27  429. DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of

28  official right from Robert J. Lessman and, in return for these payments in the form of

campaign contributions, DEFENDANT NAMED RACKETEERS issued to Robert J.

1    Lessman a CCW in return for payment under color of authority.

2    430.    **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of

3    official right)

4    431.    Alan Fukushima was issued a CCW and, based upon information and belief, an Honorary

5    Deputy Sheriff Commission on or about 5/4/1996.

6    432.    Alan Fukushima paid DEFENDANT NAMED RACKETEERS campaign contributions.

7    433.    DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of

8    official right from Alan Fukushima and, in return for these payments in the form of campaign

9    contributions, DEFENDANT NAMED RACKETEERS issued to Alan Fukushima a CCW

10   under color of authority.

11   434.    **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of

12   official right)

13   435.    James Donald Sandison was issued a CCW and, based upon information and belief, an

14   Honorary Deputy Sheriff Commission on or about 5/6/1996.

15   436.    Through the Law Offices of Whaley and Anderson acting as a conduit, James Donald

16   Sandison paid DEFENDANT NAMED RACKETEERS campaign contributions.

17   437.    DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of

18   official right from the Law Offices of Whaley and Anderson and, in return for these payments

19   in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to

20   James Donald Sandison a CCW under color of authority.

21   438.    **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of

22   official right)

23   439.    Christopher Ahern Lee was issued a CCW and, based upon information and belief, an

24   Honorary Deputy Sheriff Commission on or about 7/24/1996.

25   440.    Christopher Ahern Lee paid DEFENDANT NAMED RACKETEERS campaign

26   contributions.

27   441.    Christopher Ahern Lee stated, when applying for his CCW, that he "confronts strangers on

28   his property".

442.    DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of

official right from Christopher Ahern Lee and, in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Christopher Ahern Lee a CCW under color of authority.

443.   **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

444.   Louis A. Porta, Jr., was issued a CCW and, based upon information and belief, an Honorary Deputy Sheriff Commission on or about 7/29/1996.

445.   Louis A. Porta, Jr., paid DEFENDANT NAMED RACKETEERS campaign contributions.

446.   DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from Louis A. Porta, Jr., and, in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Louis A. Porta, Jr., a CCW under color of authority.

447.   **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

448.   James Franklin Grey was issued a CCW and, based upon information and belief, an Honorary Deputy Sheriff Commission on or about 7/30/1996.

449.   James Franklin Grey was either employed by or had a business interest in a bank at the time the CCW was issued.

450.   James Franklin Grey paid DEFENDANT NAMED RACKETEERS campaign contributions.

451.   James Franklin Grey is believed to be a relation of Sam Manalokas, who also made campaign contributions to DEFENDANT NAMED RACKETEERS.

452.   DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from James Franklin Grey and, in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to James Franklin Grey a CCW under color of authority.

453.   **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

454.   Sam Manalokas was issued a CCW and, based upon information and belief, an Honorary Deputy Sheriff Commission on or about 2/28/1993 and 7/14/1994.

455. Sam Manalokas paid DEFENDANT NAMED RACKETEERS campaign contributions.

456. Sam Manalokas is believed to be related to James Franklin Grey, who also made campaign contributions to the DEFENDANTS NAMED RACKETEERS.

457. Sam Manalokas lives in an exclusive American River neighborhood that has extra police patrol.

458. DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from Sam Manalokas and, in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Sam Manalokas a CCW under color of authority.

459. **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

460. John Korean was issued a CCW and, based upon information and belief, an Honorary Deputy Sheriff Commission on or about 8/16/1996.

461. John Korean paid DEFENDANT NAMED RACKETEERS campaign contributions.

462. DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from John Korean and, in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to John Korean a CCW under color of authority.

463. **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

464. Anne Hubbard was issued a CCW and, based upon information and belief, an Honorary Deputy Sheriff Commission on or about 8/27/1996.

465. Anne Hubbard paid DEFENDANT NAMED RACKETEERS campaign contributions.

466. Anne Hubbard lives in safe neighborhood.

467. DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from Anne Hubbard and, in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Anne Hubbard a CCW under color of authority.

468. **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of

1    official right)

2    469.   William Harrison Myers, Jr., was issued a CCW and, based upon information and belief, an

3            Honorary Deputy Sheriff Commission on or about 9/6/1996.

4    470.   William Harrison Myers, Jr., was either employed by, or had a business interest in, Myers-

5            Pacific Aviation and Marine Insurance at the time the CCW was issued.

6    471.   Through Myers-Pacific Aviation and Marine Insurance acting as a conduit, William Harrison

7            Myers, Jr., paid DEFENDANT NAMED RACKETEERS campaign contributions.

8    472.   William Harrison Myers, Jr., was a member of the Aero Squadron.

9    473.   DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of

10           official right from Myers-Pacific Aviation and Marine Insurance and in return for these

11           payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS

12           issued to William Harrison Myers, Jr., a CCW under color of authority.

13   474.   **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of

14           official right)

15   475.   David Commons was issued a CCW and, based upon information and belief, an Honorary

16           Deputy Sheriff Commission on or about 9/20/1996.

17   476.   David Commons paid DEFENDANT NAMED RACKETEERS campaign contributions.

18   477.   DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of

19           official right from David Commons and, in return for these payments in the form of

20           campaign contributions, DEFENDANT NAMED RACKETEERS issued to David Commons

21           a CCW under color of authority.

22   478.   **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of

23           official right)

24   479.   Robert Creedon was issued a CCW and, based upon information and belief, an Honorary

25           Deputy Sheriff Commission on or about 9/30/1996.

26   480.   Robert Creedon was either employed by, or had a business interest in, Senator Ford at the

27           time the CCW was issued.

28   481.   Through Senator Ford acting as a conduit, Robert Creedon paid DEFENDANT NAMED

             RACKETEERS campaign contributions.

482. DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from Senator Ford and, in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Robert Creedon a CCW under color of authority.

483. **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

484. Jeffrey C. Vernon was issued a CCW and, based upon information and belief, an Honorary Deputy Sheriff Commission on or about 10/23/1996.

485. Jeffrey C. Vernon paid DEFENDANT NAMED RACKETEERS campaign contributions.

486. Jeffrey C. Vernon is believed to be a successful dentist in the Sacramento area and lives in an upscale neighborhood.

487. DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from Jeffrey C. Vernon and, in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Jeffrey C. Vernon a CCW under color of authority.

488. **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

489. Robert G. Poage was issued a CCW and, based upon information and belief, an Honorary Deputy Sheriff Commission on or about 11/30/1996.

490. Robert G. Poage paid DEFENDANT NAMED RACKETEERS campaign contributions.

491. DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from Robert G. Poage and, in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Robert G. Poage a CCW under color of authority.

492. **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

493. Greta Crossland was issued a CCW and, based upon information and belief, an Honorary Deputy Sheriff Commission on or about 2/23/1997.

494. Greta Crossland paid DEFENDANT NAMED RACKETEERS campaign contributions.

495.    DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from Greta Crossland and, in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Greta Crossland a CCW under color of authority.

496.    **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

497.    John Raptakis was issued a CCW and, based upon information and belief, an Honorary Deputy Sheriff Commission on or about 3/13/1997.

498.    John Raptakis was either employed by, or had a business interest in, J.R. Painting and Waterproofing at the time the CCW was issued.

499.    Through J.R. Painting and Waterproofing acting as a conduit, John Raptakis paid DEFENDANT NAMED RACKETEERS campaign contributions.

500.    Based upon information and belief, John Raptakis was convicted of two D.U.I.'s and grand theft.

501.    John Raptakis is believed to be a relation of Steve M. Raptakis, who also made campaign contributions to the DEFENDANTS NAMED RACKETEERS.

502.    DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from J.R. Painting and Waterproofing and, in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to John Raptakis a CCW under color of authority.

503.    **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

504.    Steve M. Raptakis was issued a CCW and, based upon information and belief, an Honorary Deputy Sheriff Commission on or about 4/27/1999.

505.    Steve M. Raptakis paid DEFENDANT NAMED RACKETEERS campaign contributions.

506.    Steve M. Raptakis is believed to be a relation of John Raptakis, who also made campaign contributions to the DEFENDANTS NAMED RACKETEERS.

507.    DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from Steve M. Raptakis and, in return for these payments in the form of

campaign contributions, DEFENDANT NAMED RACKETEERS issued to Steve M. Raptakis a CCW under color of authority.

508. **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

509. Edward Faust was issued a CCW and, based upon information and belief, an Honorary Deputy Sheriff Commission on or about 4/25/1997.

510. Edward Faust paid DEFENDANT NAMED RACKETEERS campaign contributions.

511. DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from Edward Faust and, in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Edward Faust a CCW under color of authority.

512. **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

513. John Edward Virga was issued a CCW and, based upon information and belief, an Honorary Deputy Sheriff Commission on or about 6/21/1997.

514. John Edward Virga paid DEFENDANT NAMED RACKETEERS campaign contributions.

515. DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from John Edward Virga and, in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to John Edward Virga a CCW under color of authority.

516. **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

517. Blake Snider was issued a CCW and, based upon information and belief, an Honorary Deputy Sheriff Commission on or about 9/18/1997.

518. Blake Snider paid DEFENDANT NAMED RACKETEERS campaign contributions.

519. DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from Blake Snider and, in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Blake Snider a CCW under color of authority.

520.   **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

521.   John J. Capra was issued a CCW and, based upon information and belief, an Honorary Deputy Sheriff Commission on or about 10/27/1997.

522.   John J. Capra paid DEFENDANT NAMED RACKETEERS campaign contributions.

523.   DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from John J. Capra and, in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to John J. Capra a CCW under color of authority.

524.   **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

525.   Gerald "Jerry" Greenburg was issued a CCW and, based upon information and belief, an Honorary Deputy Sheriff Commission on or about 11/13/1997.

526.   Gerald "Jerry" Greensburg paid DEFENDANT NAMED RACKETEERS campaign contributions.

527.   DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from Gerald "Jerry" Greenburg and, in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Gerald "Jerry" Greensburg a CCW under color of authority.

528.   **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

529.   Jack Becker was issued a CCW and, based upon information and belief, an Honorary Deputy Sheriff Commission on or about 1/22/1998.

530.   Jack Becker paid DEFENDANT NAMED RACKETEERS campaign contributions.

531.   DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from Jack Becker and, in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Jack Becker a CCW under color of authority.

532.   **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of

official right)

533. Thomas Blair Holloway was issued a CCW and, based upon information and belief, an Honorary Deputy Sheriff Commission on or about 5/21/1998.

534. Thomas Blair Holloway paid DEFENDANT NAMED RACKETEERS campaign contributions.

535. DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from Thomas Blair Holloway and, in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Thomas Blair Holloway a CCW under color of authority.

536. **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

537. Herbert Hooper was issued a CCW and, based upon information and belief, an Honorary Deputy Sheriff Commission on or about 10/8/1998.

538. Herbert Hooper paid DEFENDANT NAMED RACKETEERS campaign contributions.

539. DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from Herbert Hooper and, in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Herbert Hooper a CCW under color of authority.

540. **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

541. Marc Alan Mogol was issued a CCW and, based upon information and belief, an Honorary Deputy Sheriff Commission on or about 2/2/1999.

542. Marc Alan Mogol paid DEFENDANT NAMED RACKETEERS campaign contributions.

543. DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from Marc Alan Mogol and, in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Marc Alan Mogol a CCW under color of authority.

544. **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

545.   Dale Alan Terry was issued a CCW and, based upon information and belief, an Honorary Deputy Sheriff Commission on or about 2/8/1999.

546.   Dale Alan Terry paid DEFENDANT NAMED RACKETEERS campaign contributions.

547.   Dale Alan Terry was a member of the Aero Squadron.

548.   DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from Dale Alan Terry and, in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Dale Alan Terry a CCW under color of authority.

549.   **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

550.   Dennis Carpenter was issued a CCW and, based upon information and belief, an Honorary Deputy Sheriff Commission on or about 4/27/1999.

551.   Dennis Carpenter paid DEFENDANT NAMED RACKETEERS campaign contributions.

552.   DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from Dennis Carpenter and, in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Dennis Carpenter a CCW under color of authority.

553.   **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

554.   Pano Nicholas Stathos was issued a CCW and, based upon information and belief, an Honorary Deputy Sheriff Commission on or about 5/10/1999.

555.   Pano Nicholas Stathos was either employed by, or had a business interest in or related to, AKT Investments, Inc., and Frank Greg Stathos DBA Metro Properties at the time the CCW was issued.

556.   Through AKT Investments, Inc., and Frank Greg Stathos DBA Metro Properties acting as a conduit, Pano Nicholas Stathos paid DEFENDANT NAMED RACKETEERS campaign contributions.

557.   DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from Pano Nicholas Stathos and, in return for these payments in the form of

campaign contributions, DEFENDANT NAMED RACKETEERS issued to Pano Nicholas Stathos a CCW under color of authority.

558.  **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

559.  Brian Chase was issued a CCW and, based upon information and belief, an Honorary Deputy Sheriff Commission on or about 5/19/1999.

560.  Brian Chase paid DEFENDANT NAMED RACKETEERS campaign contributions.

561.  DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from Brian Chase and in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Brian Chase a CCW under color of authority.

562.  **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

563.  Hatem N. Sharif  was issued a CCW and, based upon information and belief, an Honorary Deputy Sheriff Commission on or about 8/12/1999.

564.  Hatem N. Sharif was photographed with Defendant Blanas, and this photopraph appeared in a place of business owned and/or controlled by Shariff.

565.  Hatem N. Sharif was either employed by, or had a business interest in a jewelry story at the time the CCW was issued, and if fact had given jewelry to Defendant Blanas' wife.

566.  Hatem N. Sharif paid DEFENDANT NAMED RACKETEERS campaign contributions.

567.  DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from Hatem N. Sharif and, in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to Hatem N. Sharif a CCW under color of authority.

568.  **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

569.  John Charles Morgan was issued a CCW and, based upon information and belief, an Honorary Deputy Sheriff Commission on or about 11/12/2002.

570.  John Charles Morgan was either employed by, or had a business interest in, Padilla Bail

Bonds at the time the CCW was issued.

571.   Defendants conditioned the issuance of a CCW to a bail bonds company based upon its contribution, and essentially extorted money from the Padilla Bail bond entities.

572.   Through Padilla entities acting as a conduit, John Charles Morgan paid DEFENDANT NAMED RACKETEERS campaign contributions.  John Charles Morgan personally contributed as well.

573.   DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from John Charles Morgan and, in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to John Charles Morgan a CCW under color of authority.

574.   **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

575.   David John Baker was issued a CCW and, based upon information and belief, an Honorary Deputy Sheriff Commission on or about 4/15/2003.

576.   David John Baker was either employed by, or had a business interest in, the carpet business Conesco, Inc., at the time the CCW was issued.

577.   Through Conesco, Inc., acting as a conduit, David John Baker paid DEFENDANT NAMED RACKETEERS campaign contributions.

578.   David John Baker's CCW was approved by a single individual, Chief Dan Lewis.  No application was ever submitted, and it never went before any committee.

579.   Based upon information and belief, David John Baker was subsequently convicted of wiretapping.

580.   DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of official right from David John Baker and, in return for these payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS issued to David John Baker a CCW under color of authority.

581.   **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of official right)

582.   Christine Janele Barritt and John Everett Barritt were issued CCWs and, based upon

1    information and belief, Honorary Deputy Sheriff Commissions on or about 5/12/2003.

2    583.   Christine Janele Barritt and John Everett Barritt were either employed by, or had business

3    interests in, Badger John's at the time the CCW was issued.

4    584.   Through Badger John's acting as a conduit, Christine Janele Barritt and John Everett Barritt

5    paid DEFENDANT NAMED RACKETEERS campaign contributions.

6    585.   DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of

7    official right from Christine Janele Barritt and John Everett Barritt and, in return for these

8    payments in the form of campaign contributions, DEFENDANT NAMED RACKETEERS

9    issued to Christine Janele Barritt and John Everett Barritt CCWs under color of authority.

10   586.   **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of

11   official right)

12   587.   John Patrick Kearns was issued a CCW and, based upon information and belief, an Honorary

13   Deputy Sheriff Commission on or about 7/7/2006.

14   588.   DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of

15   official right from John Patrick Kearns and, in return for these payments in the form of

16   campaign contributions, DEFENDANT NAMED RACKETEERS issued to John Patrick

17   Kearns a CCW under color of authority.

18   589.   **PREDICATE ACT** (18 U.S.C. § 1951 obtaining campaign contributions under color of

19   official right)

20   590.   Daniel Heil was issued a CCW and, based upon information and belief, an Honorary Deputy

21   Sheriff Commission on or about the time BLANAS was sherifff.

22   591.   Daniel Heil worked as a fleet manager at Swift Car Dealership, owned by Chuck Swift who

23   donated campaign contributions to DEFENDANT NAMED RACKETEERS.

24   592.   Daniel Heil was either employed by, or had a business interest in, Swift Car Dealership at the

25   time the CCW was issued.

26   593.   Through Chuck Swift and Swift Auto acting as a conduit, Heil and Swift paid DEFENDANT

27   NAMED RACKETEERS campaign contributions.

28   594.   DEFENDANT NAMED RACKETEERS obtained campaign contributions under color of

     official right from Heil and, in return for these payments in the form of campaign

contributions, DEFENDANT NAMED RACKETEERS issued to Heil a CCW under color of authority.

595.   The above list is not inclusive, but is only representative of the more obvious predicate acts.

596.   Most of the above individuals who have received CCWs and honorary deputy sheriff commissions have had their CCWs renewed until this day, and have possession of their honorary deputy sheriff commissions.

597.   The following businesses have acted as conduits in funneling campaign funds and/or other bribes in exchange for CCWs: Al Ricci's Sacramento Bail Bond Agency; Beneto Petroleum Products; Bob Frink Mangement, Inc.; RPM Management; Frink Chevrolet; Capital Steel Co.; Central Valley Bail Bonds; Chris Hansen Insurance; Color Core Incorporated; Sheriff's Aero Squadron; D. Bruce Fite & Associates; Fite Properties; Fite Development; FHS Properties & Investments, Inc., DBA  Pacific West Properties; Fite, Charles D; Delta; Dettling Development; Donald P. Rollofson, D.M.D., Inc.; Eagle Ridge Development; Ed Rincon Towing Service; Florin Road Toyota; Hobby Warehouse of Sacramento; J.C. Parts Distributors, Inc.; John Taylor Fertilizer; Law Offices of Whaley & Anderson; Martini Associates Property Management; Mercantile Saloon; Mogol Construction; Mohamed Realty; Mosher Ranch; Myers Pacific Insurance; Old Republic Title Company; Old Sacramento Armory, Inc.; Pacific Coast Building Products, Inc.; Padilla Bail Bonds; Patrick Frink Properties; PMG Properties; Point-Walker, Inc.; R & G Associates, Inc.; Rico's; Ronald D. Yee, D.D.S., Inc.; Sacramento Bail Bonds; Sacramento Coca-Cola Bottling Company, Inc.; Sacramento Commerce Bank; Sacramento Metro Airport; Sacramento Rendering, Co.; Sacramento Rendering, Co.; Kimmel Construction.

598.   **PREDICATE ACT: 29 U.S.C. § 186.**

599.   The Union (SCDSA) representing sworn and non sworn employees of the COUNTY OF SACRAMENTO SHERIFF'S DEPARTMENT, elected Steve FISK as COUNTY OF SACRAMENTO SHERIFF'S DEPARTMENT President for a term of four years, effective January 1, 2004.

600.   29 U.S.C. § 186 prohibits any person involved with an employer or labor organization to accept or receive any money or other thing of value.

601.   Almost immediately after President FISK's election to the Sacramento County Deputy Sheriffs' Association (a labor union also known as the SCDSA) in early 2004, then Sheriff Blanas used SIB personnel (Defendant Tim Sheehan) to attempt to collect bribes and launder SCDSA union funds solicited from FISK.

602.   While on-duty as a peace officer employed by the Sacramento County Sheriff's Department Special Investigations Bureau, Defendant Tim Sheehan solicited $15,000 in bribe money from then SCDSA general manager Marlin Weinberger.

603.   Weinberger relayed this solicitation to newly elected President Steve FISK, advising that the $15,000 was to be used by then Sheriff Blanas for "political purposes" which Blanas did not want directly associated with himself (a violation of California FPPC statutes), and that SCDSA would eventually "get the money back."

604.   In response, very soon thereafter, President FISK called Blanas to obtain more information regarding the request for money from the COUNTY OF SACRAMENTO SHERIFF'S DEPARTMENT treasury.

605.   Blanas was evasive as to the purpose of the request, though it was very clear to President FISK that the money was going to some other individual's campaign or personal account for political purposes.

606.   Although Blanas used cryptic terms, it was very clear that: 1) a check in the amount of $15,000 was to be tendered <u>without</u> a payee listed; 2) the SCDSA would have the money returned eventually (i.e., "you'll get the money back"); and, 3) when President FISK was hesitant about the concept of what Blanas was requesting, Blanas stated, "[immediate past SCDSA President] Jerry [Moore] always did it."

607.   **PREDICATE ACT 1 (Predicate Acts are defined in 18 U.S.C. § 1961, including enumerated State law offenses):** (Solicitation to Commit Bribery, Bribery, and Extortion - Cal. Penal Code §§ 7, 67, 518. ) (Cal. Penal Code § 7. "6. The word "bribe" signifies *anything of value or advantage*, present or prospective, or any promise or undertaking to give any, asked, given, or *accepted*, with a corrupt intent to influence, unlawfully, the person to whom it is given, in his or her action, vote, or opinion, in any public or official capacity.") (Cal. Penal Code § 67. "Every person who gives or offers any bribe to any executive officer

in this state, **with intent to influence him** in respect to **any act, decision**, vote, opinion, ..."

Under this section every person who merely offers a bribe to an executive officer with intent to influence his decision is guilty. *People v. Finkelstin* (App. 1950) 98 Cal.App.2d 545, 220 P.2d 934.) (Cal. Penal Code § 518. **Extortion is the obtaining of property from another, with his consent**, or the obtaining of an official act of a public officer, induced by a wrongful use of force or fear, or **under color of official right**.) (Hobbs Act 18 U.S.C. § 1951 - "[a]t common law, extortion was an offense committed by a public official who took 'by color of his office' money that was not due to him for the performance of his official duties. . . . Extortion by the public official was the rough equivalent of what we would now describe as 'taking a bribe.'" *Evans v. United States*, 504 U.S. 255 (1992).)

608.   Cal.Penal Code § 165 provides: "Every person who gives or offers a bribe to any member of any common council, board of supervisors, or board of trustees of any county, city and county, city, or public corporation, with intent to corruptly influence such member in his action on any matter or subject pending before, or which is afterward to be considered by, the body of which he is a member, and every member of any of the bodies mentioned in this section who receives, or offers or agrees to receive any bribe upon any understanding that his official vote, opinion, judgment, or action shall be influenced thereby, or shall be given in any particular manner or upon any particular side of any question or matter, upon which he may be required to act in his official capacity, is punishable by imprisonment in the state prison for two, three or four years, and upon conviction thereof shall, in addition to said punishment, forfeit his office, and forever be disfranchised and disqualified from holding any public office or trust."

609.   Penal Code Section 653f(a) provides: "Every person who, with the intent that the crime be committed, solicits another to offer, accept, or join in the offer or acceptance of a bribe, or ..., robbery, burglary, grand theft, receiving stolen property, extortion, ... shall be punished by imprisonment ...in the state prison ..."

610.   This section against receiving and agreeing to receive bribe is satisfied when the individual "agreed" and intended in his own mind to receive bribe. *People v. Fitzpatrick* (App. 2 Dist. 1926) 78 Cal.App. 37, 247 P. 601.

611.    Because Blanas made an admission against his penal interest, the following fact is alleged: Prior to 2004, then SCDSA President Jerry Moore paid bribe money and made illegal loans that were laundered (Money Laundering Control Act, 18 U.S.C. §§ 1956 and 1957) for then Sheriff Lou Blanas in return for things of value, such as Moore being appointed to represent the Law Enforcement Management Association (LEMA), a paid position, after his re-election loss in the SCDSA elections for the January 1, 2004-December 31, 2007 term, and subsequent retirement from the Sacramento County Sheriff's Department.

612.    LEMA's interests are adverse to the interests of COUNTY OF SACRAMENTO SHERIFF'S DEPARTMENT's "rank and file" general membership, because that organization represents law enforcement management's interests.

613.    Moore's appointment as the business agent of LEMA is a conflict of interest as he possessed trade secrets of COUNTY OF SACRAMENTO SHERIFF'S DEPARTMENT regarding collective bargaining and other matters.

614.    President FISK questioned the legality and purpose of the funds which were being solicited and requested from the SCDSA, and told Blanas that he would have to report it to Officers or Directors of SCDSA (i.e., board members of SCDSA at the time).

615.    Blanas became very angry and agitated, and the conversation ended.

616.    Blanas, along with then Undersheriff John McGinness, Chief Deputy Bill Kelly (a former SCDSA Board member), then Chief Deputy Dave Lind, then Chief Deputy Dan Drummond, then Sergeant Glenn Powell and then Lt. Tim Sheehan, threatened through economic coercion that the SCDSA Board of Directors remove President FISK from office, stating that Plaintiff FISK was ineffective as President because he would not continue former SCDSA President Jerry Moore's practice of laundering COUNTY OF SACRAMENTO SHERIFF'S DEPARTMENT funds to pay bribes to, or at the direction of, Blanas.

617.    This act was accomplished, and President Fisk had to obtain a court order for his illegal removal and reinstatement.

618.    **PREDICATE ACT:** (State law violations: Solicitation to Commit Bribery, Bribery, and Extortion) (Hobbs Act 18 U.S.C. § 1951)  President FISK was placed in economic fear (i.e. loss of his salary as the President of the COUNTY OF SACRAMENTO SHERIFF'S

DEPARTMENT). This fear constituted economic extortion, and Defendant Blanas and the members of Blanas' management team conspired to do such.

619. Thereafter, in furtherance of the conspiracy to extort compliance from President FISK and to place him in further economic fear, Defendants attempted to obtain a recall of President FISK by putting that question to the Union's general membership. This unsuccessful recall attempt took place in July of 2004.

620. Defendants are members of a continuing conspiracy to gain control of the SCDSA and advance a fraudulently obtained Collective Bargaining Agreement (CBA) procured through a pattern of racketeering activity, including extortion, in violation of the Hobbs Act, 18 U.S.C. § 1951, and state law.

621. Among the ultimate goals of Defendants' conspiracy are: 1) to seize or take control of the Union (SCDSA) by fraud and force; 2) to commit fraud on the Union's general membership by seizing control of the members' dues ($55,000.00 bi-weekly) which collectively form the Union's treasury; 3) to commit fraud on the SCDSA general membership by inserting in the CBA language that provided "things of value" for the Sheriff; for the County of Sacramento; for David P. Mastagni, Sr., a major campaign contributor, CCW permit holder, and Honoarary Deputy Sheriff; and for his law firm.

622. The inclusion of these "things of value" (i.e., CBA authority to civilianize currently sworn jobs in Security and Corrections Divisions of the Sheriff's Department, and waiver of Civil Service [and beyond] appeals of management imposed discipline) were never revealed to the Union's general membership prior to, or during, the CBA mailed-out ratification vote.

623. **PREDICATE ACTS 14 and 15** - (Hobbs Act 18 U.S.C. § 1951) (Extortion, Bribery and solicitation thereof).

624. A Hobbs Act violation does not require that the public official be the recipient of the benefit of the extortion, and a Hobbs Act case exists where the corpus of the corrupt payment went to a third party. See *United States v. Haimowitz*, 725 F.2d 1561, 1577 (11th Cir.), cert. denied, 469 U.S. 1072 (1984) ("a Hobbs Act prosecution is not defeated simply because the extorter transmitted the extorted money to a third party."); *United States v. Margiotta*, 688 F.2d 108 (2d Cir. 1982), cert. denied, 461 U.S. 913 (1983) (insurance agency made kickbacks to

brokers selected by political leader of town); *United States v. Scacchetti*, 668 F.2d 643 (2d Cir.), cert. denied, 457 U.S. 1132 (1982); *United States v. Forszt*, 655 F.2d 101 (7th Cir. 1981); *United States v. Cerilli*, 603 F.2d 415 (3rd Cir. 1979), cert. denied, 444 U.S. 1043 (1980); *United States v. Trotta*, 525 F.2d 1096 (2d Cir. 1975), cert. denied, 425 U.S. 971 (1976); *United States v. Brennan*, 629 F.Supp. 283 (E.D.N.Y.), aff'd, 798 F.2d 581 (2d Cir. 1986).

625.   Private persons who are not themselves public officials can be convicted under the Hobbs Act if they caused public officials to perform official acts in return for payments to the non-public official. *United States v. Margiotta*, 688 F.2d 108 (2d Cir. 1982), cert. denied, 461 U.S. 913 (1983) (court upheld conviction of head of local Republican Party under color of official right where defendant could be said to have caused, under 18 U.S.C. 1951, public officials to induce a third party to pay out money); see *United States v. Haimowitz*, 725 F.2d 1561, 1572-73 (11th Cir.), cert. denied, 469 U.S. 1072 (1984) (private attorney's conviction of Hobbs Act violation upheld due to complicity with state senator); *United States v. Marcy*, 777 F.Supp. 1398, 1399-400 (N.D.Ill. 1991); *United States v. Barna*, 442 F.Supp. 1232 (M.D. Pa.), aff'd mem., 578 F.2d 1376 (3rd Cir.), cert. denied, 439 U.S. 862 (1978).

626.   A private individual who make payments to a public official can be charged under the Hobbs Act, either as an aider and abettor or as a co-conspirator, if he or she is truly the instigator of the transaction. See *United States v. Torcasio*, 959 F.2d 503, 505-06 (4th Cir. 1992); *United States v. Spitler*, 800 F.2d 1267, 1276-79 (4th Cir. 1986) (conviction affirmed for aiding and abetting extortion under color of official right even though defendant, who paid kickbacks from corporate coffers, was an officer of the victim corporation); *United States v. Wright*, 797 F.2d 245 (5th Cir. 1986).

627.   Under color of authority, and in furtherance of the conspiracy, Lakich, Schutten, and McGinness circulated letters with the specific intent to defraud the SCDSA general membership by attempting to legitimize NAMED DEFENDANT RACKETEERS' continuing influence and control over SCDSA, and to justify the continuing transmittal of SCDSA members' dues and other funds–held in trust by the County to NAMED DEFENDANT RACKETEERS–as part of a money laundering scheme.

628. **PREDICATE ACTS 15 through 33 (a thing of value received by each defendant primarily)** -  29 U.S.C. § 186 prohibits any person involved with an employer or labor organization from accepting or receiving any money or other thing of value.

629. "Thing of value" " . . .  is not limited to cash or tangible property." [emphasis added] *Conditioned Ari & Refrig. Co. v. Plumbing & Pipe Fit, Etc.*, 159 F.Supp. 887, 899 (S.D. Cal. 1956) aff'd 253 F.2d 427 (9th Cir. 1958).

630. "Similarly, ... courts have broadly construed the property element of extortion.... [to include] tangible as well as *intangible* property...."  [emphasis added]  *Petrochem Insulation v. Trade Council*, 137 L.R.R.M. 2199, 2196 (N.D. Cal. 1991).

631. The County of Sacramento and Sheriff McGinness received a thing of value in the form of cost reductions (elimination of higher paying jobs through civilianization discretion) and the ability to terminate employees more cheaply and swiftly by replacing the system of checks and balances incorporated into the civil service appeals process with a new scheme of a single arbitration not subject to appeal.

632. An ancillary benefit to this was that Mastagni, then the SCDSA attorney, received the same monthly retainer for less work. While continuing to receive an undiminished monthly retainer, his firm performs substantially less work (i.e. the substitution of a "one bite at the apple" appeals process).  It was no accident that Mastagni's agent, who served as chief negotiator for the most recent CBA negotiations, was intimately involved in the fraudulently procured CBA.

633. Mastagni himself has a CCW and an honorary deputies commission, and, as noted above, is also a campaign contributor.

634. Key people recruited by Defendant racketeers to acquiring the fraudulently procured CBA were subsequently rewarded.

635. Coauette was promoted to Sergeant in January, 2007, in return for his participation in fraudulently procuring a CBA for Sheriff McGinness and the County.

636. Roberts was promoted to Records Officer II (Supervisor) in March, 2007, in return for her participation in delivering a fraudulently procured CBA to Sheriff McGinness and the County.

637.  Polete was promoted to Sergeant in April, 2007, in return for his participation in fraudulently procuring a CBA for Sheriff McGinness and the County.

638.  This scheme required the State of California to step in and obtain a ruling from the State of California Public Employees Relations Board.  The Board found that the Enterprise has been involved in unfair labor practices by dominating and controlling the SCDSA.

639.  Mastagni, while being paid by the SCDSA, is now fighting the State of California to have the finding of unfair labor practices nullified.  In other words, Mastagni is now representing the County of Sacramento while being paid by the SCDSA.

640.  **PREDICATE ACT 34:** (Hobbs Act 18 U.S.C. § 1951, threat of violence, robbery under color of authority)  Cal.Penal Code § 211: "Robbery is the felonious taking of personal property *in the possession of another*, from his person or immediate presence, and *against his will*, accomplished by means of force or *fear*."

641.  Hobbs Act 18 U.S.C. § 1951 prohibits actual or attempted robbery or extortion affecting interstate or foreign commerce.

642.  Section 1951 also proscribes conspiracy to commit robbery or extortion without reference to the conspiracy statute at 18 U.S.C. § 371.

643.  The extortion offense includes the obtaining of property "under color of official right" by public officials.

644.  NAMED DEFENDANT RACKETEERS conspired to use threatened or actual force, violence, or fear to obtain from Plaintiffs Barnsdale and Weitnauer pay that was lawfully Plaintiffs', and property in the possession and control of Blevins.  NAMED DEFENDANT RACKETEERS acquired the property of Plaintiffs (physically taking the jobs from Plaintiffs by threat of force under color of authority, thus acquiring property rights which were not NAMED DEFENDANT RACKETEERS' to acquire.).

645.  On Monday, June 18, 2007, at approximately 0750 Hours, Deputy Sheriffs Polete, Rodriguez, Wyant, Guerrero, Cvitanov and  Marlin Weinberger (who is a sworn on-call reserve deputy sheriff), approached SCDSA headquarters with privately owned vehicles displaying official placards signed by Sheriff McGinness which stated "OFFICIAL BUSINESS, Sacramento County Sheriff's Department, Sheriff John McGinness", followed by a Sheriff's Department

seal and McGinness' signature.

646.   Standing outside of SCDSA headquarters was a private security guard, CODY BLEVINS.

647.   BLEVINS was engaged in an occupation affecting interstate commerce.

648.   BLEVINS had a property interest in the his legal and gainful employment as a contractual security officer, hired by COUNTY OF SACRAMENTO SHERIFF'S DEPARTMENT and President FISK.

649.   As they approached, all dressed in street clothes, several of the individuals displayed firearms on their hips in plain view along with official Deputy Sheriff Badges worn directly adjacent to each firearm.

650.   These individuals surrounded BLEVINS with the specific intent to cause fear and apprehension through the threat of force under color of authority.

651.   Based upon information and belief, Weinberger removed his Sheriff's Identification from his wallet, flashed it at BLEVINS, along with a firearm attached to his hip in plain view, and demanded that BLEVINS hand over his keys to the COUNTY OF SACRAMENTO SHERIFF'S DEPARTMENT, declaring it was "official police business."  POLETE, standing in front of BLEVINS, also displayed his firearm and badge in plain view.

652.   Because these individuals pulled up in privately owned vehicles displaying "Official Business" placards, displayed firearms in a threatening manner, and displayed official badges under color of authority, BLEVINS, under threat of force under color of authority, handed over the (washroom) keys that he was entrusted to guard.  Such relinquishment was against his will.

653.   In addition, BLEVINS was forced to leave the location of his employment, depriving him of work since he was placed in fear of returning to his place of business.

654.   Removal of property in BLEVINS' exclusive control and trust against his will under both threat of force and under color of authority constitutes both Robbery and Hobbs Act violations by all of these individuals, and conspiracy to commit the same.

655.   JOY BARNSDALE, who was seated in her car in the parking lot, had BLEVINS and the armed peace officers in plain sight, and saw the peace officers rob BLEVINS of his keys under color of authority.

656. **PREDICATE ACT 35:** Hobbs Act 18 U.S.C. § 1951.

657. JOY BARNSDALE was hired by President FISK to work as the SCDSA's general secretary, a paid position.

658. While she approached work at the SCDSA headquarters, she witnessed the armed deputies removing Mr. BLEVINS' keys under color of authority and threat of force with firearms.

659. She further witnessed them breaking into the locked SCDSA headquarters, her lawful place of employment which affects interstate commerce.

660. Upon witnessing the crime, several of these individuals established eye contact with JOY BARNSDALE, and turned and faced her in an aggressive and threatening manner.

661. Because these RACKETEERS were armed under color of authority, and were breaking into COUNTY OF SACRAMENTO SHERIFF'S DEPARTMENT headquarters, and because of the look they gave her upon her witnessing the crimes that had been, and were being, committed, as a reasonable woman in that circumstance, JOY BARNSDALE did not go to work because of the threat of force and because she was afraid.

662. The specific intent of NAMED DEFENDANT RACKETEERS was to use the threat of force under color of authority to seize control of SCDSA property, and to remove all employees and contractors of the SCDSA from the premises.

663. JOY BARNSDALE also witnessed SCDSA President FISK being forced outside the SCDSA offices onto the sidewalk under threat of force.

664. This act affected Plaintiff JOY BARNSDALE'S gainful employment, and caused her economic harm as she can no longer work for Defendant COUNTY OF SACRAMENTO SHERIFF'S DEPARTMENT.

665. Plaintiff JOY BARNSDALE has a property interest in her job; NAMED DEFENDANT RACKETEERS took her job away under threat of force and color of authority.

666. **PREDICATE ACT 36:** Hobbs Act 18 U.S.C. § 1951.

667. On June 18, 2007, Plaintiff FISK was forcefully removed from his position as President of the SCDSA under threat of dangerous and deadly force, and under color of official authority by agents of NAMED DEFENDANT RACKETEERS and unnamed co-conspirators.

668. The agents of NAMED DEFENDANT RACKETEERS and co-conspirators acted in concert

to use force, and the threat of force, upon the person of President FISK to gain control of SCDSA property, abusing their powers as peace officers.  They did so by breaking into the Union office and forcing President FISK out of the building.

669.   This act was sanctioned by Sheriff McGinness, as his signature appears on the official placards used to effectuate the hijacking of the COUNTY OF SACRAMENTO SHERIFF'S DEPARTMENT office.

670.   In addition, after this unlawful use of force, Sheriff McGinness refused to investigate, even though a detailed internal affairs complaint was lodged.

671.   **PREDICATE ACT 37:** Hobbs Act 18 U.S.C. § 1951; Burglary P.C. § 459, § 418 (entry without legal process), § 182 (conspiracy).

672.   Agents of NAMED DEFENDANT RACKETEERS breached a locked door of the SCDSA headquarters, under color of authority and law, with the intent to remove funds and assets from Defendant SCDSA.

673.   NAMED DEFENDANT RACKETEERS have remained in control of the SCDSA building with loaded firearms and government issued badges, and continue to occupy property to which they have no rightful claim.  They remain in control under threat of force and color of law.

674.   NAMED DEFENDANT RACKETEERS have prevented President FISK from occupying said building to perform his work and serve the general membership, all because he refused to submit to money laundering.

675.   Plaintiffs have been damaged according to proof.

SECOND CAUSE OF ACTION
**42 U.S.C. 1983**
(DEFENDANTS COUNTY OF SACRAMENTO, BLANAS, McGINNISS AND BROWN ONLY)
(Fourteenth Amendment - Equal Protection - preferential treatment, including unconstitutional CCW statute and County policies <u>as written</u> and <u>as applied</u>).

676.   All averments contained in this pleading herein are incorporated in their entirety, as though fully set forth below.

677.   Plaintiffs have a personal individual right to keep and possess handguns for purposes of self defense, and any licensing scheme must meet strict scrutiny standards.

678.   In addition, even assuming arguendo that such a permit scheme is constitutionally

permissible, Plaintiffs allege that in form, substance and application it is applied in a discriminatory fashion in violation of the Fourteenth Amendment's Equal Protection Clause and the First, Second and Ninth Amendments.

679.   California Penal Code § 12025 prohibits the carrying of a concealed weapon unless an individual applies for, and receives, permission to do so pursuant to § 12050(a)(1)(A).  This gives Defendant Sheriff a great amount of discretion in choosing whom should be granted a license to carry a handgun in the State of California.

680.   In addition to concealed carry permits, sheriffs have extremely broad discretion to issue permits to carry "loaded and exposed" weapons, but only in counties with a population less than 200,000.

681.   Likewise, California Penal Code § 12031 prohibits the carrying of any loaded weapon on Plaintiffs' persons or in their cars.

682.   Thus, by state law, the only place one may possess a loaded firearm in California without prior authorization from Defendants is in the home or place of business.

683.   Attached hereto is a a true and correct copy of the County Defendants CCW policy that was in effect at the time Plaintiffs applied for their CCWs, and the same policy under which they were purportedly denied.

684.   The State statute and County policy for the issuance of a CCW are unconstitutional as promulgated.

685.   This cause of action is both a "facial challenge" and an "as applied" constitutional challenge as to Defendants BLANAS, McGINNIS and State Attorney General JERRY BROWN

686.   This cause of action also challenges the constitutionality of the attached County CCW policy and California Penal Code Sections 12027, 12031(b), 12050-12054 in that they exempt retired California peace officers and those associated with law enforcement from those provisions and burdens which are held applicable to common good citizens and plaintiffs.

687.   The holding in *Silveira v. Lockyear*, 312 F.3d 1052 (9th Cir.)(Reinhardt, J), rehearing en banc denied, 328 F.3d 567 (9th Cir. 2003)(six dissents) is controlling.  *Silveira* struck down an identical exemption in the State's Semi-Automatic Rifles statute.

688.   Plaintiffs further allege that County Defendants have maintained an unconstitutional policy

that mirrored Penal Code Sections 12027, 12031(b), 12050-12054 in that it exempts retired law enforcement personnel from those provisions and burdens which are held applicable to common good citizens.

689.   For instance, an officer who worked one day on the job, honorably retires because of injury, or just voluntarily, is granted a privilege to carry a concealed handgun for life, whereas all other citizens are not granted the same privilege.

690.   County Defendants have conspired to destroy evidence that would demonstrate the unequal application of these laws and policies.

691.   *Zelig V. County of Los Angeles, et al;* (2002) 27 Cal. 4th 1112, held in a unanimous California Supreme Court decision that government agencies and law enforcement officers have no duty to protect an individual from harm.  The Court states on page 1141 of the opinion:  "We have alluded above to the statutory immunity of both a public entity and a public employee 'for failure to provide sufficient police protection services.' (Gov. Code section  845.)  This provision supports our conclusion that the relevant parts of the Tort Claims Act do not impose liability upon either the public entity defendants or their policy making officers and employees under the facts alleged in the present complaint.  Even before the enactment of the Tort Claims act, public entities enjoyed sovereign immunity in most instances from liability for their failure to provide police protection." (See *Gates v. Superior Court* (1995) 32 Cal. App. 4th 481, 500, 38 Cal. Rptr. 2d 489, and cases cited.)  As noted, "the overwhelming weight of case law 'rejects liability based on a failure to provide police protection.' " (Slansky, The Private Police, supra, 46 UCLA. L.Rev. at pp. 1281-1282.)  In recommending adoption of the language of Government Code section 845 as part of the Tort Claims Act, the California Law Revision Commission stated: "This section grants a general immunity for failure to provide police protection or for failure to provide enough police protection.  Whether police protection should be provided at all, and to the extent to which it should be provided, are political decisions which are committed to the policy-making officials of government.  To permit review of these decisions by judges and juries would remove the ultimate decision-making authority from those politically responsible for making the decisions." *Zelig v. County of Los Angeles* (2002) 24 Cal. 4th 1112, 1141.

692.   A standard state DOJ application is used statewide for all CCW applications.

693.   There is a section required to be filled out in the presence of an "investigator" in order to obtain facts justifying issuance of a CCW (i.e. good cause)

694.   The so-called "good cause" standard for Plaintiffs and other average citizens is addressed on the application in the form of "investigator's interview notes".  However, information for the "prima facie" good cause standard for retired peace officers is not addressed in the application itself, even though the County Defendants have such a policy.

695.   In 1999, the Attorney General was tasked with creating a new state-standard CCW application form to replace those forms created and used by local agencies.

696.   Defendants, individually and collectively, are responsible for the issuance of concealed weapons permits under California Statute (i.e. California Penal Code §§ 12027, 12050-12054).  The failure of any citizen to obtain such a permissive use permit is grounds for prosecution and incarceration.

697.   Plaintiffs have applied for concealed weapons permits and are systematically impeded and rejected in the obtaining of such permits, along with other ancillary government benefits such as deputy sheriffs commissions and membership in the Sheriff's Aero Squadron.

698.   As such, this is a claim for retrospective and/or prospective relief, as well as monetary damages.

699.   Plaintiffs own handguns which they would like to carry in their vehicles and/or on their persons, concealed for protection of themselves, their families, and other citizens, just as other privileged and well connected citizens, retired peace officers, and the sheriff's various cronies and campaign contributors are allowed to carry concealed handguns.

700.   Plaintiffs also demand Honorary Deputy Sheriff's Commissions, and membership in the Sheriff's Aero Squadron.

701.   Law enforcement has failed to stop crime; therefore, Plaintiffs have a natural right of self preservation as recognized in both the Second, Ninth and Fourteenth Amendments.  The right to self preservation includes the right to posses the tools to defend oneself, and this right pre-existed Plaintiffs' enumerated Second Amendment rights.

702.   If Plaintiffs were to exercise their right to self defense, self preservation, self and family

protection, and their right to keep and bear arms without obtaining a CCW, they would be arrested, prosecuted, and incarcerated.

703.  Defendants enforce, and threaten to enforce, all penal codes sections that involve the carrying of a concealed handgun without a CCW.

704.  Plaintiffs are placed at unnecessary risk of prosecution due to Defendants' deliberate discrimination and unconstitutional statutes and/or policies.

705.  Indeed, law enforcement is not responsible for protecting Plaintiffs, but will prosecute Plaintiffs if Plaintiffs were to carry the means to protect themselves.

706.  Government officials have paid body guards or are easily granted CCWs.

707.  Defendant Brown was elected as California's Attorney General.  The Attorney General is the Chief Law Officer of the State of California and is charged by the State constitution with the responsibility of ensuring that State laws are uniformly and adequately enforced.

708.  Article V, Section 13, of the California Constitution describes the responsibilities of the Attorney General with the following words: "Subject to the powers and duties of the Governor, the Attorney General shall be the chief law officer of the State. It shall be the duty of the Attorney General to see that the laws of the State are uniformly and adequately enforced. The Attorney General shall have direct supervision over every district attorney and sheriff and over such other law enforcement officers as may be designated by law, in all matters pertaining to the duties of their representative offices, and may require any of said officers to make reports concerning the investigation, detection, prosecution, and punishment of crime in their respective jurisdictions as to the Attorney General may seem advisable. Whenever in the opinion of the Attorney General any law of the State is not being adequately enforced in any county, it shall be the duty of the Attorney General to prosecute any violations of law of which the superior court shall have jurisdiction, and in such cases the Attorney General shall have all the powers of a district attorney. When required by the public interest or directed by the Governor, the Attorney General shall assist any district attorney in the discharge of the duties of that office."

709.  The Attorney General represents the people of California before trial, appellate, and Supreme Courts of California and the United States in criminal and civil matters; serves as legal

counsel to State officers, boards, commissions, and departments; and assists district attorneys in the administration of justice.

710. Section 11042 of the Government Code requires state agencies to employ only the Attorney General, with few exceptions, as legal counsel to centralize legal work done on behalf of the State. Section 11041 lists those agencies that can represent themselves.

711. It is the responsibility of the Attorney General to assist city, county, state, federal, and international criminal justice agencies to ensure the uniformity and adequacy of enforcement of California State laws.

712. To support California's local law enforcement community, the Attorney General coordinates State-wide law enforcement efforts, participates in criminal investigations, provides forensic science services, and provides identification and information services and telecommunication support.

713. County Defendants have, on occasion, submitted legal filings signed under Rule 11 stating that Monell liability cannot attach to the County and its officials since the Attorney General is the Chief Law Enforcement Officer of the state, and that local sheriffs have to report to him.

714. Defendants Blanas and McGinniss are elected law enforcement officials of Sacramento County, and are charged with issuing CCWs, under the auspices of the State DOJ.

715. Defendant COUNTY OF SACRAMENTO is an incorporated municipality created under the constitution, laws and statutes of the State of California.  COUNTY OF SACRAMENTO SHERIFF'S DEPARTMENT is an agency subject to the control of the COUNTY OF SACRAMENTO.

716. Defendant COUNTY OF SACRAMENTO SHERIFF'S DEPARTMENT is, and was at all times relevant herein, a law enforcement agency which employed duly appointed and acting California Peace Officers.

717. At all times mentioned herein, Defendant COUNTY OF SACRAMENTO and Defendant BLANAS, by and through the Defendant SHERIFF'S DEPARTMENT, were acting under color of law, to wit, under color of statutes, ordinances, regulations, policies, customs, and usages of the State of California and/or the COUNTY OF SACRAMENTO SHERIFF'S DEPARTMENT.

718.  At all times mentioned herein, Defendant COUNTY OF SACRAMENTO and Defendant BLANAS, by and through the Defendant SHERIFF'S DEPARTMENT, were acting under color of law, to wit, under color of statutes, ordinances, regulations, policies, customs, and usages of the State of California and/or the COUNTY OF SACRAMENTO SHERIFF'S DEPARTMENT and denied each Plaintiff a CCW.

719.  The State DOJ designed the CCW application which is discriminatory on its face since it circumvents the Equal Protection clause in that it delineates differing standards for applicant approval of applicants among peace officers, judges, and common citizens.

720.  At all relevant times mentioned herein, Defendants are or were public officials subject to the limitations as set forth in the United States Constitution and the laws of the United States of America, including, but not limited to, the First, Second, Ninth and Fourteenth Amendments.

721.  Defendants, and each of them, were policy makers and ratified and/or supplemented the conduct of the other named defendants, and former Sheriff Glen Craig, and were in a position of power to enforce the laws of the State of California, United States of America, and uphold the Constitution.

722.  Defendants were, at all times herein mentioned, legally responsible for the acts of their employees, agents, and servants committed in the scope of their employment.

723.  As a direct and proximate result of the herein acts, omissions, and systematic deficiencies, policies and customs of all and/or part of Defendants, Plaintiffs have been harmed according to proof.

724.  Plaintiffs have continuously applied for, and been denied, CCW permits, and have been denied access to the application forms themselves.

725.  Defendants set up impediments to obtain applications for CCWs by giving citizens the run around about how and where to apply, and how to obtain the applications.

726.  Each time Plaintiffs attempted to apply, they were given the run around whereby they would visit the same office several times before an employee of Defendant Sheriff's Department would eventually provide him with the application forms.

727.  Per "Sacramento County Sheriff's Department, Concealed Weapons Permit Issuance Policy and Application Process" (codified in the challenged statutes), "Good cause exists for

issuance of a concealed weapons permit as follows:  General: The determination of good

cause for the issuance of a concealed weapons permit is perhaps the most difficult aspect in

this process. While every applicant may believe that he/she has good cause for a license, the

Sheriff's determination is based on consideration of public good and safety."

728. However, under the same policy, the following is "prima facie evidence of good cause for

issuance of a concealed weapons permit:  Applicant is an active or honorably separated

member of the criminal justice system directly responsible for the investigation, arrest,

incarceration, prosecution or imposition of sentence on criminal offenders and has received

threats of harm to person or family as a result of official duties."

729. Under this policy, all retired and former members of the State DOJ, Judges, District

Attorney's Office and Sheriff's Department are automatically granted permits, whereas all

other citizens must show good cause, in direct violation of the Equal Protection clause.

730. This is especially disturbing considering that members of the armed forces are excluded from

the so-called prima-facie good cause standards.

731. However, in practice, Defendant BLANAS, Defendant MCGINNIS and Defendant COUNTY

go much further in violation of the Equal Protection Clause.

732. Former Sheriff Glen Craig, Defendant BLANAS, Defendant MCGINNIS, Defendant

COUNTY and Defendant SHERIFF'S DEPARTMENT have established a policy and practice

of issuing CCWs to campaign contributors, in direct violation of the First (association and

speech) and Fourteenth (Equal Protection) Amendments.

733. Defendants issue honorary and low-level reserve law enforcement credentials ("Level 3"

untrained reserve status) to political campaign contributors just so that these campaign

contributors can carry concealed weapons.

734. Some of the lists of such "low level crony reservists" are NOT held within the Sheriff's

Department or any county building.  They are instead held in the offices of a private attorney

and not available to the Sheriff's Department "reserve coordinator".

735. For instance, through public records reviewed, it is well documented that Defendants have

obtained at least a half a million dollars from individuals for whom Blanas will not release

the so-called good cause data for issuance of a CCW.  Nevertheless, these same individuals

were given CCWs in exchange for campaign contributions.

736.   Defendant BROWN tacitly allowed Defendant LOU BLANAS and Defendant MCGINNIS, individually and in their official capacities as SHERIFF OF SACRAMENTO COUNTY, to issue CCWs to campaign contributors and political supporters of the issuing authority.

737.   The CCW statute in California creates separate classes of CCW recipients on its face.  Listed in order of ease of obtaining a CCW, the classes are as follows: 1) Honorably Retired California Peace officers [life time issuance], 2) retired law enforcement officers who were not California POST certified [reapply every two years], 3) those affiliated with law enforcement [prima facie standard], and 4) all other citizens who must meet very rigid standards under a purported "good cause" requirement to obtain a CCW.

738.   Retired California Peace Officers obtain their concealed weapons authorization under a separate statute, which does not demand a showing of good cause. See Cal. Penal Code § 12031(b).

739.   In other words, 12031(b) grants to "active or honorably retired" law enforcement officers preferential access to concealed weapons permits due to their current or former affiliation to the law enforcement community.

740.   Furthermore, Honorably Retired California Peace Officers, as part of their retirement benefits along with their gold watches for years of service, are issued lifetime CCW permits whereby they do not even have to apply or pay a fee.  All other applicants who must apply and pay a fee.

741.   The stated reason is to protect California Peace Officers from possible harm due to their high involvement and contact with criminals.  However, other professions carry the same or higher risk: military personnel subject to terrorist attacks and protests, doctors employed at abortion clinics, attorneys dealing with disgruntled litigants and inmates, and so forth.

742.   There is no rational basis for this statute as a black male in California under the age of 25 has an exceedingly far greater chance of being murdered than all law enforcement officers combined throughout the entire United States.

743.   Non-law enforcement citizens of good moral character and adequate training and experience in the use of firearms (i.e. hunters, military, etc.) are not granted the same privilege.

Therefore, the law has no rationale purpose other than not to disrupt law enforcement's support of the current firearms laws.

744.   If defendants enforced the same gun laws against law enforcement officers, the current gun laws would never have been passed as they would have been opposed by law enforcement.

745.   Currently, any California resident can carry a concealed weapon simply by becoming a member of a law enforcement agency, then immediately retiring.  Thus, Plaintiff would have to just join "the club", then quit.

746.   Plaintiffs are entitled to equal rights, protections and privileges under the law.  However, peace officers are given rights simply because they happen to be associated with law enforcement.  Enforcement of such laws violates Plaintiffs' equal protection and association rights.

747.   Plaintiffs have applied for, and attempted to apply for, a CCW with the Defendant County of Sacramento, Sheriff's Department.

748.   Each time Plaintiffs have applied, or attempted to apply, they are summarily rejected or prevented from obtaining CCWs.

749.   However, individuals who have made political campaign contributions to Defendant BLANAS have summarily received both  CCWs and/or honorary deputies badges when they apply for their CCWs.

750.   Under California's statutory scheme, CCWs are sold via campaign contributions.

751.   The selling of CCWs has been a long tradition since Defendant BLANAS was first brought in by then Sherif Craig to generate campaign contributions.

752.   Plaintiffs' right to equal protection under the law has been violated, and continues to be violated on a daily basis for the following reasons:

753.   Penal Code Sections 12027, 12031(b), 12050-12054 are unconstitutional in that this statutory scheme specifically exempts retired law enforcement personnel from those provisions and burdens which are held applicable to common good citizens, including Plaintiffs.  The holding in *Silveira v. Lockyer*, 312 F.3d 1052 (9th Cir.)(Reinhardt, J), rehearing en banc denied, 328 F.3d 567 (9th Cir. 2003)(six dissents) is controlling.  The *Silveira* court struck down an identical exemption in the State's Semi-Automatic Rifle statute.  Similarly, Penal

Code § 12050 makes exceptions in the statutory scheme for state and federal court judges as well.

754.   Plaintiffs can discern no legitimate state interest in permitting retired peace officers to possess, and use for their personal pleasure, concealed handguns.  "Rather, the retired officers exception arbitrarily and unreasonably affords a privilege to one group of individuals that is denied to others, including plaintiffs."  See *Silveira*.

755.   Plaintiffs are deprived of equal protection since those who have contributed to political campaigns are summarily given CCWs upon request.

756.   Defendants BLANAS, COUNTY, MCGINNIS, and DEPARTMENT have a written policy for the issuance of CCWs which discriminates against anyone who is not an honorably retired peace officer (i.e. prima facie good cause standard).

757.   For Monell liability purposes, Defendants BLANAS, MCGINNIS, SHERIFF'S DEPARTMENT, AND COUNTY have argued and taken the position that Defendant BROWN is the policy and decision maker for Sacramento County.

758.   However, all Defendants have created and/or enforced an unconstitutional statutory scheme and policy of issuing CCWs in violation of the Fourteenth Amendment's Equal Protection Clause.

759.   For instance, an officer who works one day on the job, honorably retires because of injury, or just voluntarily, is granted a privilege to carry a concealed handgun for life, whereas all other citizens are not granted the same privilege.  Plaintiffs requests injunctive relief in either having CCWs issued, or having the statutes and County's written policy declared unconstitutional.

760.   Plaintiffs have been damaged and harmed according to proof.

761.   Plaintiffs are entitled to punitive damages against Defendants in their individual capacities.

762.   Injunctive relief is requested declaring such policies, statutes, and practices unconstitutional.

763.   In addition, the California Constitution, Article I, Section 1 specifically provides that "All people are by nature free and independent and have inalienable rights.  Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy."

764. As a direct and proximate result, if Defendants are not enjoined from enforcing the subject laws, Plaintiffs will be irreparably harmed according to proof, including, but not limited to the loss of use and enjoyment of constitutional rights.

765. As a direct and proximate result, Plaintiffs have been damaged according to proof, including, but not limited to the loss of use and enjoyment of constitutional rights.

THIRD CAUSE OF ACTION
42 U.S.C. § 1983
(1st and 14th Amendments - Free Speech and Association)
[Defendants LOU BLANAS, MCGINNIS individually and in their official capacities as SHERIFF OF COUNTY OF SACRAMENTO; COUNTY OF SACRAMENTO SHERIFF'S DEPARTMENT; COUNTY OF SACRAMENTO only]

766. Plaintiffs incorporate by all preceding paragraphs as though the same were set forth herein at length.

767. Individuals who financially support defendants are provided CCWs upon request, whereas those who do not politically/financially support Defendants are summarily denied CCWs, such as Plaintiffs were denied.

768. Because of Defendants' policies favoring campaign contributors and political supporters regarding the issuance of CCWs, Plaintiffs' First Amendment rights to freedom of expression and association have been violated.

769. As a direct and proximate result, Plaintiffs have been damaged according to proof, including, but not limited to, the loss of use and enjoyment of constitutional rights.

FOURTH CAUSE OF ACTION
42 U.S.C. § 1983
(2nd and 14th Amendment)
[all Defendants except Sheehan]

770. Plaintiffs incorporate the above paragraphs as though the same were set forth herein at length.

771. Plaintiffs' right to keep and bear arms has been infringed under the Second Amendment, and as incorporated through the Fourteenth Amendment.

772. Plaintiffs have been damaged and harmed according to proof.

773. Plaintiffs are entitled to punitive damages against Defendants in their individual capacities.

774. Plaintiffs request injunctive relief declaring such policies, statutes, and practices unconstitutional.

FIFTH CAUSE OF ACTION
42 U.S.C. § 1983
(14TH Amendment - Privileges and Immunities)
[all Defendants except Sheehan]

775.   Plaintiffs incorporate the above paragraphs as though the same were set forth herein at length.

776.   Plaintiffs' privileges and immunities include the right to keep and bear arms, which is deemed a personal right.  See *Saenz v. Roe*, 526 U.S. 489 (1999).

777.   Flack, The Adoption of the Fourteenth Amendment (Johns Hopkins 1908) is illustrative on this cause of action.

778.   PC § 12027, which provides "Any peace officer described in this paragraph who has been honorably retired shall be issued an identification certificate by the law enforcement agency from which the officer has retired. The issuing agency may charge a fee necessary to cover any reasonable expenses incurred by the agency in issuing certificates pursuant to this subdivision. As used in this section and Section 12031, the term "honorably retired" includes all peace officers who have qualified for, and have accepted, a service or disability retirement. For purposes of this section and Section 12031, the term "honorably retired" does not include an officer who has agreed to a service retirement in lieu of termination."

779.   These statutes violate the Second Amendment, and the Second Amendment as applied to the States through the Fourteenth Amendment.

780.   The Law Enforcement Officers Safety Act (LEOSA) is a United States federal law, enacted in 2004, that allows two classes of persons -- the "qualified law enforcement officer" and the "qualified retired law enforcement officer" -- to carry a concealed firearm in any jurisdiction in the United States, regardless of any state or local law to the contrary, with certain exceptions.

781.   The LEOSA was considered during the 108th Congress as H.R. 218. It was signed into law by President George W. Bush on July 22, 2004, as Public Law 108-277. It is codified as 18 U.S. Code 926B (qualified law enforcement officers) and 926C (qualified retired law enforcement officers).

782.   This federal law allows two classes of persons — the "qualified law enforcement officer" and the "qualified retired law enforcement officer" — to carry concealed firearms in any

jurisdiction in the United States, regardless of any state or local law to the contrary, with certain exceptions.

783. Thus, between both State and Federal law, honorably retired law enforcement officers are provided a lifetime endorsement of self defense that is not bestowed upon any other citizen not affiliated with law enforcement.

784. See *Melendez v City of Los Angeles* (1998) 63 Cal. App. 4th I; 73 Cal. Rpts. 2d 469.

785. Thus, by federal law, retired law enforcement officers are provided a right to travel with a firearm that Plaintiffs are not granted.  Thereby, Defendants have violated Plaintiffs' right to travel with a firearm under the Privileges and Immunities Clause of the Fourteenth Amendment.

786. Furthermore, these provisions interfere with the right to travel in that a CCW issued in California will be honored by the following states: AK*, AZ, ID, IN, KY, MI, MO, MT, OK, SD, TN, TX, UT, VT*  (AK and VT don't require permits at all).

787. Thus, if people are concerned about having concealed weapons for protection, whether they are issued CCW permits will affect where they travel.

788. Plaintiffs have been damaged according to proof.

SIXTH CAUSE OF ACTION
42 U.S.C. § 1983
(Ninth Amendment - Right to Self Preservation)
[all Defendants except Sheehan]

789. Plaintiffs incorporate the above paragraphs as though the same were set forth herein at length.

790. The Supreme Court has ruled that the right to keep and bear arms is an individual right for purposes of self defense.  The Ninth Amendment of the U.S. Constitution specifically provides that the rights of the people, though not expressly enumerated, are nevertheless entitled to protection.

791. The Ninth Amendment is directly applicable to Plaintiffs since "The State of California is an inseparable part of the United States of America, and the United States Constitution is the supreme law of the land."  Article III, Section 1 of the California Constitution.

792. In this case, this country has a long and established history of "the people" keeping and bearing military arms.  Keeping and bearing arms is a natural right which pre-existed the

rights enumerated in the constitution.

793.   The right to keep and bear arms is a natural right that every law abiding citizen possesses; this right can never be restricted or taken away by Government.

794.   Plaintiffs have a natural right to self preservation as noted by the Ninth Amendment, which means nothing unless they is allowed to possess to tools to exercise such a right.  This includes the right to keep and bear arms, and is deemed a personal right.

795.   Defendants have violated Plaintiffs' Ninth Amendment rights.

796.   Plaintiffs have been damaged according to proof.

797.   Defendants have infringed upon Plaintiffs' natural right to possess, bear and keep firearms. As a direct and proximate result, Plaintiffs have been damaged according to proof, including, but not limited to, the loss of use and enjoyment of constitutional rights.

SEVENTH OF ACTION
42 U.S.C. § 1983
(Declaratory and Injunctive Relief)
[all Defendants except Sheehan]

798.   Plaintiffs incorporate the above paragraphs as though the same were set forth herein at length.

799.   There is absolutely no evidence or research that supports any rational basis why ALL retired law enforcement officers are at more risk of harm that ALL non-law enforcement affiliated citizens.

800.   In fact, retired law enforcement officers, or those associated with the criminal justice system, are less likely to be victims of crime, not more likely.

801.   However, law enforcement officers are at a greater risk of committing suicide with firearms than are non law enforcement citizens.

802.   Plaintiffs seek a declaration from the court regarding the constitutionality of the CCW statutes and policies, enforced and promulgated by Defendants, providing preferential treatment to those associated with law enforcement.

803.   Specifically, PC § 12027, which provides "Any peace officer described in this paragraph who has been honorably retired shall be issued an identification certificate by the law enforcement agency from which the officer has retired. The issuing agency may charge a fee necessary to cover any reasonable expenses incurred by the agency in issuing certificates pursuant to this

subdivision. As used in this section and Section 12031, the term "honorably retired" includes all peace officers who have qualified for, and have accepted, a service or disability retirement. For purposes of this section and Section 12031, the term "honorably retired" does not include an officer who has agreed to a service retirement in lieu of termination."

804.   California Penal Code § 12025 prohibits the carrying of a concealed weapon unless an individual applies for, and receives, permission to do so pursuant to § 12050(a)(1)(A).  Such statutory scheme is not narrowly tailored to meet a compelling reason.

805.   In addition to concealed carry permits, sheriffs have extremely broad discretion to issue permits to carry "loaded and exposed" weapons, but only in counties with populations less than 200,000.

806.   California Penal Code § 12031 prohibits the carrying of any loaded weapon on one's person or in one's car without a permit, and thus interferes with the right to self defense and the right to travel.

807.   The attached County policy is incorporated herein.

808.   On their faces, these statutes and policies violate the Second Amendment and as applied to the States through the Fourteenth Amendment, as well as the Equal Protection clause, as an enumerated constitutional right is involved, and therefore strict scrutiny applies.

WHEREFORE, Plaintiffs demand judgment against the Defendants, jointly and severally, including but not limited to:

1.   For general damages in a sum to be determined.

2.   For special damages in a sum to be determined.

3.   For attorney fees and costs.

4.   For punitive damages against "individually named" defendants only.

5.   For issuance of a preliminary and permanent injunction, including, but not limited to, prohibiting further enforcement of any act or law in violation of Plaintiffs' constitutional rights, or others similarly situated.

DATED:        September 2, 2008        LAW OFFICES OF GARY GORSKI

By /s/ Gary W. Gorski
Gary Gorski
Attorney for Plaintiffs