1　JOHN A. LAVRA, CSB No. 114533
　　JERI L. PAPPONE, CSB No. 210104
2　AMANADA L. BUTTS, CSB No. 253651
　　Longyear, O'Dea and Lavra, LLP
3　3620 American River Drive, Suite 230
　　Sacramento, Ca. 95864
4　Telephone: (916) 974-8500
　　Facsimile: (916) 974-8510

5

6　Attorneys for County of Sacramento
　　(also erroneously sued herein as Sacramento
7　County Sheriff's Department); Lou Blanas,
　　John McGinness, Timothy Sheehan, and
8　Fred Mason

9

10

11

12

*LONGYEAR, O'Dea & LAVRA, LLP*
*Attorneys at Law*
*3620 American River Drive, Suite 230*
*Sacramento, CA 95864-5923*
*Telephone (916) 974-8500 / Facsimile (916) 974-8510*

## UNITED STATES DISTRICT COURT  EASTERN DISTRICT

## OF CALIFORNIA SACRAMENTO DIVISION

| | |
|---|---|
| JAMES ROTHERY, Esq.; ANDREA HOFFMAN,　　　　　　　　　　　　)<br>　　　　　　　　　　　　　　　　　)<br>　　　Plaintiffs,　　　　　　　　　　)<br>　　　　　　　　　　　　　　　　　)<br>v.　　　　　　　　　　　　　　　　)<br>　　　　　　　　　　　　　　　　　)<br>Former Sheriff LOU BLANAS; SHERIFF )<br>JOHN McGINNESS; Detective TIM　　　)<br>SHEEHAN; Detective FRED MASON;　　)<br>SACRAMENTO COUNTY SHERIFF'S　　)<br>DEPARTMENT, an independent branch of )<br>government of the COUNTY OF　　　　　)<br>SACRAMENTO; COUNTY OF　　　　　　)<br>SACRAMENTO; STATE OF CALIFORNIA )<br>ATTORNEY GENERAL JERRY BROWN; )<br>DOES 1 through 25, unknown co-conspirators; )<br>ATTORNEY GENERAL MICHAEL B.　　)<br>MUKASEY,　　　　　　　　　　　　　)<br>　　　　　　　　　　　　　　　　　)<br>　　　Defendants.　　　　　　　　　　)<br>_____)| **CASE NO. 2:08-CV-02064-JAM-KJM**<br><br>**Date:  July 1, 2009**<br>**Time:  9:00 a.m.**<br>**Ctrm:  6**<br>**Judge: Honorable John A. Mendez**<br><br>**COUNTY DEFENDANTS' REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS [FRCP 12(b)(6)]; MOTION TO STRIKE [FRCP 12(f)]; AND MOTION FOR MORE DEFINITE STATEMENT [FRCP 12(e)]** |

24　　　　Pursuant to Federal Rule of Evidence 201, COUNTY DEFENDANTS, hereby request

25　this Court to take Judicial Notice of the following documents previously on file in this court in

26　other matters:

27　　　　A.　　Declaration of Fred Mason, filed in United States District Court Case Number CIV

28　S-03-02682-MCE-KJM, *Mehl, et al. v. Blanas, et al.*,  on October 15, 2007, Docket Number

---

**COUNTY DEFENDANTS' REQUEST FOR JUDICIAL NOTICE**

**PAGE: 1**

1  130-6, paragraphs 1, 2 & 6;

2      B.     Complaint, filed in United States District Court Case Number 07-CV-01636-LKK-

3  KJM, *Barnsdale, et al. v. Polete, et al.*, on August 9, 2007, Docket Number 1.

4      C.     Order of Judgment, issued in United States District Court Case Number 07-CV-

5  01636-LKK-KJM, *Barnsdale, et al. v. Polete, et al.*, on February 12, 2008, Docket Number 49.

6      D.     Declaration of Lou Blanas, United States District Court Case Number CIV S-03-

7  02682-MCE-KJM, *Mehl, et al. v. Blanas, et al.*,  on October 15, 2007, Docket Number 130-11,

8  at paragraph 1.

9

10  DATED:   May 11, 2009              LONGYEAR, O'DEA AND LAVRA, LLP

11                                     /s/ Jeri L. Pappone
                                  By:
12                                     JOHN A. LAVRA
                                       JERI L. PAPPONE
13                                     AMANDA L. BUTTS
                                       Attorneys for County of Sacramento,
14                                     Lou Blanas, John McGinness, Timothy
                                       Sheehan
15

16

17

18

19

20

21

22

23

24

25

26

27

28

LONGYEAR, O'DEA & LAVRA, LLP
Attorneys at Law
3620 American River Drive, Suite 230
Sacramento, CA 95864-5923
Telephone (916) 974-8500 / Facsimile (916) 974-8510

---

**COUNTY DEFENDANTS' REQUEST FOR JUDICIAL NOTICE**

**PAGE: 2**

# EXHIBIT A

1    LONGYEAR, O'DEA & LAVRA, LLP

2        3620 American River Drive, Suite 230
           Sacramento, California 95864-5923

3       Tel: 916-974-8500 Fax: 916 974-8510

4

5    John A. Lavra, CSB No. 114533
     Jeri L. Pappone, CSB No. 210104

6    Attorneys for Defendants, LOU BLANAS, as SHERIFF OF COUNTY
     OF SACRAMENTO; COUNTY OF SACRAMENTO,

7    SHERIFF'S DEPARTMENT; COUNTY OF SACRAMENTO

8

9               UNITED STATES DISTRICT COURT

10           EASTERN DISTRICT OF CALIFORNIA

11    DAVID K. MEHL, LOK T. LAU,    )   **CASE NO.:  CIV S-03 -2682 MCE KJM**
     and FRANK FLORES,         )

12                     )
                       )   **DECLARATION OF FRED MASON IN**

13             Plaintiffs,   )   **SUPPORT OF DEFENDANTS'**
                     )   **MOTION FOR SUMMARY**

14    vs.                   )   **JUDGMENT**
                     )

15    LOU BLANAS, individually and in his )
     official capacity as SHERIFF OF COUNTY )

16    OF SACRAMENTO;         )
     COUNTY OF SACRAMENTO,    )

17    SHERIFF'S DEPARTMENT;     )
     COUNTY OF SACRAMENTO;    )

18    BILL LOCKYER, Attorney General,  )
     State of California;         )

19    RANDI ROSSI, State Firearms Director )
     and Custodian of Records     )

20                     )
              Defendants   )

21                     )
    _____)

22

23       I, FRED MASON, declare as follows:

24         1.    I was a Detective in the Special Investigations Intelligence Bureau (SIIB) for the

25    Sacramento County Sheriff's Department, and I held that position from 1997 to July of 2003. I

    had also previously served as the Detective in the SIIB from 1987 until approximately 1992.

26         2.    In the course of my duties as a Detective in SIIB, I reviewed the applications

27    submitted to the Department for Carry Concealed Weapons permits ("CCW"). When an

28

1   application was received by SIIB, the standard practice of the Sheriff's Department was to

2   review the application, run a criminal records check on the applicant, and if additional

3   information was needed, contact the applicant either by telephone call or correspondence to

4   obtain any additional information if necessary. I am familiar with the procedures used by the

5   Sheriff's Department for the receipt, review and decision making process for determining

6   whether an individual would be issued a CCW permit. I am also familiar specifically with the

7   application file for David Mehl.

8          3.      I was the Detective in SIIB when Mr. David Mehl submitted his CCW permit

9   application in July of 2002. I reviewed his application pursuant to the standard practice of the

10  Department as described above. Mr. Mehl's application was incomplete as it did not include a

11  statement from him of his justification for the permit as is required by the California penal code.

12  In other words, there was no statement from Mr. Mehl describing the reasons why he felt he

13  needed a permit to carry a concealed weapon. The policy of the Sheriff's Department consistent

14  with the requirements of the California Penal Code, is that applicants provide information

15  explaining why they feel they need a license to carry a concealed weapon. Mr. Mehl's application

16  did not have this information and so it was sent back to him to complete and return.

17         4.      After the application was sent back to Mr. Mehl, Mr. Mehl still did not provide

18  information to the Department regarding his justification for requesting the permit. Initially his

19  application was returned to him with a simple request to complete the application and return it to

20  the Department. Mr. Mehl then sent two letters to the Department declining to fill out the

21  portion of the application which calls for the justification for the permit, as he felt that was not

22  consistent with the form instructions that come with the application package. In response to

23  those letters, Chief Denham on August 1, 2002 wrote to Mr. Mehl asking that he provide his

24  justification for issuance of the CCW permit, and agreed to waive the filing fee. No response

25  from Mr. Mehl was received by the Department following Chief Denham's letter of August 1,

26  2002.

27

28

LONGYEAR, O'DEA &
LAVRA, LLP
3620 American River
Drive, Suite 230
Sacramento, CA
95864
(916) 974-8500

DECLARATION OF FRED MASON

Page 2

5.    Mr. Mehl never completed his application by providing statements to the Department regarding his justification for the permit. He never provided any evidence or factual information at all as to whether he was threatened, needed to carry a gun for self-defense, or any other information. Consequently, no information was available upon which the Department could evaluate the application. Without proper information the Department had no choice but to deny the application. That was the reason, and the only reason, the application was denied in 2002.

6.    I retired from the Sheriff's Department in July of 2003, and therefore had no involvement in the re-submission by Mr. Mehl of his application in December of 2003.

7.    During both times I was assigned to SIIB, neither Sheriff Craig nor Sheriff Blanas ever requested any special consideration for the review of an application, denial of an application, or the issuance of a permit to any individual. Neither Sheriff attended the Evaluation Committee meetings where the applications were evaluated and decisions made as to whether or not a permit would be issued. I was never informed by the Sheriff, or any other individual (including the applicant themselves), whether or not an applicant was a campaign contributor to the Sheriff's campaign, or a friend or business associate of the Sheriff. Applications were evaluated pursuant to the California Penal Code and whether appropriate grounds existed pursuant to which the Department would, in its discretion, issue a CCW permit to a particular applicant.

I have personal knowledge of the foregoing and if called upon to testify thereto could competently do so.

I declare under penalty of perjury under the laws of the state of California that the foregoing is true and correct.

EXECUTED this 14 day of September 2007, at Sacramento, California.

FRED MASON

LONGYEAR, O'DEA &
LAVRA, LLP
3620 American River
Drive, Suite 230
Sacramento,   CA
95864
(916) 974-8500

DECLARATION OF FRED MASON

Page 3

# EXHIBIT B

1
2
3
4

**LAW OFFICES**
OF
**GARY W. GORSKI**
8459 NEPHI WAY
FAIR OAKS, CA 95628
(916) 965-6800
(916) 965-6801 FAX

5
6
7

**LAW OFFICE OF DANIEL M KARALASH**
1207 FRONT STREET, SUITE 15
SACRAMENTO, CA 95814
TELEPHONE: (916) 787-1234
FACSIMILE: (916) 787-0267
DMKARALASH@SUREWEST.NET

8
9
10

GARY W. GORSKI
SBN: 166526
DANIEL M. KARALASH
SBN 176422
Attorneys for Plaintiffs

11

## IN THE UNITED STATES DISTRICT COURT

12

## IN AND FOR THE EASTERN DISTRICT OF CALIFORNIA

13

-ooOoo-

| | |
|---|---|
| 14  WILLIAM BARNSDALE, acting Vice-<br>president Sacramento County Sheriffs'<br>15  Association; STEVE FISK, **President and**<br>**Chief Executive Officer of the Sacramento**<br>16  **County Deputy Sheriffs' Association in his**<br>**official capacity and individual capacity;**<br>17  ANDREW WEITNAUER, acting Treasurer<br>Sacramento County Deputy Sheriffs'<br>18  Association; ALAN COMA;  RICH DUNLOP;<br>JEAN THUOTTE, SR.;  BRIAN MAJURSKI;<br>19  class representatives on behalf of the SCDSA<br>General Membership; JOY BARNSDALE; and<br>20  CODY BLEVINS,<br><br>21              Plaintiffs,<br><br>22         vs.<br><br>23  BRANNON POLETE; ANDREW CROWLEY;<br>MARLAN MEGGERS; KATE ADAMS;<br>24  LUCIUS WINN; WAYNE EBE; JANET<br>ROBERTS; MICHAEL FREEWORTH;<br>25  RALPH RODRIGUEZ; SCOTT GURNABY;<br>ANTHONY COSTANZO; BRUCE WANNER;<br>26  KEVIN MICKELSON; MELODY LAFOND;<br>GREG COAUETTE; SACRAMENTO<br>27  COUNTY DEPUTY SHERIFFS'<br>ASSOCIATION, INC. d.b.a. SACRAMENTO<br>28  COUNTY DEPUTY SHERIFFS'<br>ASSOCIATION a.k.a. SCDSA<br><br>          Defendants. | CASE NO.:<br><br>**COMPLAINT FOR:**<br><br>1.   **RACKETEER INFLUENCED AND**<br>    **CORRUPT ORGANIZATIONS**<br>    statute (hereafter "RICO"), Title 18,<br>    **United States Code, Sections 1961**<br>    **through 1968**<br><br>2.   **42 U.S.C. SECTION 1983**<br><br>3.   **CONVERSION**<br><br>4.   **BARRING AND/OR REMOVING**<br>    **OFFICERS AND DIRECTORS**<br>    **FROM OFFICE California**<br>    **Corporations Code § 7223**<br><br>**TEMPORARY RESTRAINING ORDER,**<br>**AND ORDER TO SHOW CAUSE WHY A**<br>**PRELIMINARY INJUNCTION SHOULD**<br>**NOT BE GRANTED**<br><br>**JURY TRIAL DEMANDED** |

1

**COMES NOW** Plaintiffs who aver as follows:

1. Defendants (<u>former</u> officers and directors of Defendant SCDSA) BRANNON POLETE; ANDREW CROWLEY; MARLAN MEGGERS; KATE ADAMS; LUCIUS WINN; WAYNE EBE; JANET ROBERTS; MICHAEL FREEWORTH; RALPH RODRIGUEZ; SCOTT GURNABY; ANTHONY COSTANZO; BRUCE WANNER; KEVIN MICKELSON; MELODY LAFOND; GREG COAUETTE (hereinafter collectively known as "NAMED DEFENDANT RACKETEERS") have engaged in racketeering activities.

2. This action is brought against the SACRAMENTO COUNTY DEPUTY SHERIFFS' ASSOCIATION, INC. (hereafter alternatively, "SCDSA," or "the Union") and others to rid the Union of domination and influence by members and associates of NAMED DEFENDANT RACKETEERS.

3. SCDSA has been infiltrated at all levels by corrupt individuals who have exerted their control and influence over the union for personal gain and to the detriment of the Union, Plaintiffs and the SCDSA general (voting) membership.

4. SCDSA officers, directors, and employees at all levels, excluding President Fisk, have been controlled by various members and associates of former Sacramento County Sheriff Lou Blanas and current Sacramento County Sheriff John McGinness, the County of Sacramento, and former SCDSA General Counsel David P. Mastagni, Sr., all working in concert to retain control over a captive labor organization.

5. Consequently, the rights of the members of the Union to control the affairs of the organization have been abrogated.

6. Those Union members who opposed this corrupt state of affairs have been intimidated into silence by threats of violence and economic coercion.

7. Plaintiffs' bring this suit for monetary damages and injunctive relief pursuant to the Racketeer Influenced and Corrupt Organizations statute (hereafter "RICO"), Title 18, United States Code, Sections 1961 through 1968, to put an end to this systematic, long-standing, and ongoing corruption of the Union and to restore control of the organization's affairs to the general membership.

8.    The Racketeer Influenced and Corrupt Organizations (RICO) provisions are a chapter of the Organized Crime Control Act of 1970 (OCCA), Pub. L. 91-452, Title IX, 84 Stat. 941, as amended, 18 U.S.C. §§ 1961-1968 (1988 ed. and Supp. IV).  Section 1962© prohibits any person associated with an enterprise from conducting the affairs of the organization through a pattern of racketeering activity.

9.    RICO does not require proof that either the racketeering enterprise or the predicate acts of racketeering were motivated by an economic purpose. *N.O.W. v. Scheidler*, 510 U.S. 249, 250 (1994).

10.   **JURISDICTION**: Jurisdiction in this action is predicated upon Title 18, United States Code, Section 1964(b) and Title 28, United States Code, Sections 1331, 1345, and 2201.

11.   **VENUE:** Venue for this action is predicated upon Title 18, United States Code, Section 1965 and Title 28, United States Code, Section 1391(b)).

<b><u>AVERMENTS</u></b>

12.   Plaintiffs WILLIAM BARNSDALE acting Vice-president of the  Sacramento County Deputy Sheriffs' Association; STEVE FISK, President of the Sacramento County Deputy Sheriffs' Association; ANDREW WEITNAUER acting Treasurer of the Sacramento County Deputy Sheriffs' Association; ALAN COMA;  RICH DUNLOP; JEAN THUOTTE, SR.; BRIAN MAJURSKI; TERRY DAHLBERG (hereinafter "SCDSA Member Plaintiffs"), who were and are regular voting members in good standing with the SCDSA at the time of the transactions complained of herein, and who remain members in good standing.

13.   SCDSA Member Plaintiffs entered into a contract of membership with Defendant SCDSA on or before September 1, 2006.

14.   Plaintiff JOY BARNSDALE was hired as an office assistant (paid position) to the SCDSA President, per President FISK'S plenary power to appoint such employees.

15.   Plaintiff CODY BLEVINS was a security guard working as a contract employee on behalf of SCDSA who was hired by President FISK to safeguard SCDSA's office premises.

16.   Plaintiff FISK constitutes a class representative of Defendant SCDSA as required under Cal. Corp. Code § 7223 of Defendant SCDSA.

17.   Defendant SCDSA was formed as a non-profit mutual benefit corporation on 9/4/1951, with

3

California Corporation Number C0256617.

18. Defendant SCDSA's Chief Executive Officer, President, and Agent for Service of Process is Steve FISK.

19. By majority vote, the rank and file membership of the SCDSA elected Steve FISK as SCDSA President for a term of four years, effective January 1, 2004.

20. Defendant SCDSA's Constitution under Article V, Section 1, provides that "[t]he President shall coordinate and manage the organization. The President [not the Vice-President] shall exercise powers not specifically excluded in the Constitution and By-Laws. The President shall be the spokesperson of the organization."

21. The purpose of Defendant SCDSA, as set forth in its Constitution and By-Laws, is to provide a wide range of benefits and services to its members which affects interstate commerce, including, but not limited to negotiating a collective bargaining agreement (hereinafter "CBA") covering wages, hours and other terms and conditions of employment with the employer, the County of Sacramento.

22. Defendant SCDSA, a non-profit mutual benefit corporation, is founded on the principle that the ultimate authority rests with the <u>voting membership</u>.

23. Under the provisions of Robert's Rules of Order, 10th Edition, Newly Revised ("RONR"), which is incorporated by specific reference into Defendant SCDSA's Constitution under Article IX, NAMED DEFENDANT RACKETEERS, when acting as Officers and Directors serving as members of SCDSA's Board of Directors are ".... an instrumentality of the society's full assembly, to which it is subordinate." Robert's Rules of Order, 10th Edition, Newly Revised, page 9, lines 5-10.

24. Based upon past custom, practice and usage, the purpose and intent of Defendant SCDSA's governing documents is the placement of the ultimate authority over the internal workings of Defendant SCDSA in the hands of the general membership (i.e., "the society as a whole") based upon the "one person, one vote" rule.

25. Defendant SCDSA is a law enforcement labor union and an employer which affects interstate commerce, as that term is defined in RICO.

26. Defendant SCDSA is recognized as the collective bargaining representative for the

4

Non-Supervisory Law Enforcement Unit (hereinafter "NSLEU") regarding employment issues with the County of Sacramento.

27. The NSLEU consists of employment classifications covering over 90% of Sacramento County employees assigned to the Sheriff's Department.

28. SCDSA is named as a Defendant Party for the protection of its own interest.

29. The purpose of Defendant SCDSA, as set forth in its Constitution and By-Laws, is to provide a wide range of benefits and services to its members affecting interstate commerce.

30. Defendant SCDSA, a non-profit mutual benefit corporation, is founded on the principle that the ultimate authority rests with the voting membership ("one person, one vote" rule), and that the elected President (Steven FISK) is the exclusive spokesperson of the SCDSA and personally responsible for running the day-to-day operations of the SCDSA, including the power to hire office staff and appoint paid full time release officers and four board members, to fill vacancies on the board of directors as they may occur, and to discipline board members for breach of fiduciary duties and *ultra vires* acts.

31. While on union paid release time (UTO), each Board Member, Officer and Director is paid by funds withheld from SCDSA members' paychecks by the employer, the County of Sacramento.

32. For part time Board Members, each receives an average of 10 to 12 hours pay for each "official" Board or membership meeting attended during any regularly scheduled work hours for such Board Member.

33. Membership meetings are called by the President.

34. Only the President or the members (by petition) are empowered to call general and special meetings.

35. The President, and two full time agents designated by the President, are paid 80 hours bi-weekly from funds withheld from SCDSA members' paychecks by the employer, the County of Sacramento.

36. Under Article IV, Section 1 ("Officers and Directors") of the SCDSA Constitution, the highest ranking individual is the elected "President". The current CBA recognizes this fact, specifically stating under CBA section 2.3 that the County "shall" recognize officers and

1    representatives designated by the SCDSA.

2    37.   This designation can only be made by the sole and exclusive "spokesperson" of the SCDSA,

3          the President. (i.e. Article V, Section 1, dealing with Presidential powers, which specifically

4          states that "[t]he President shall coordinate and manage the organization.  The President shall

5          exercise powers not specifically excluded in the Constitution and By-Laws.  The President

6          shall be the spokesperson for this organization.")

7    38.   The Board of Directors essential function is to monitor and review policy, not run the

8          SCDSA.

9    39.   SCDSA Constitution, Article V, Section 3, states, "[t]he Board of Directors shall govern the

10         organization as to matters of policy and other specific responsibilities as specified in the

11         Constitution and By Laws."  (emphasis added)

12   40.   By-Laws Article I, Section 7, states, "[t]he Board of Directors shall review all business on

13         behalf of the membership."  (emphasis added)

14   41.   Under CBA section 2.3e, "[t]he President and up to two (2) officers appointed by the

15         President under Section 2.3-c.  shall each receive 80 hours of release time ..."

16   42.   Individual Defendants are former Directors and Officers of the SCDSA, and their former

17         legal titles and names are as follows:  VICE-PRESIDENT BRANNON POLETE;

18         TREASURER ANDREW CROWLEY; ASSISTANT TREASURER MARLAN MEGGERS;

19         SECRETARY KATE ADAMS; BOARD MEMBER LUCIUS WINN; BOARD MEMBER

20         WAYNE EBE; BOARD MEMBER JANET ROBERTS; BOARD MEMBER MICHAEL

21         FREEWORTH; BOARD MEMBER RALPH RODRIGUEZ; BOARD MEMBER SCOTT

22         GURNABY; BOARD MEMBER ANTHONY COSTANZO; BOARD MEMBER BRUCE

23         WANNER; BOARD MEMBER KEVIN MICKELSON; BOARD MEMBER MELODY

24         LAFOND; SERGEANT-AT-ARMS GREG COAUETTE (hereinafter collectively known as

25         "NAMED DEFENDANT RACKETEERS")

26   43.   These individual defendants whose names appear as above in the preceding paragraph are the

27         defendant former members of the Board of Directors of SCDSA, whose offices are

28         established by the SCDSA Constitution.  These defendants are named as defendants in their

           individual capacities but are named only in their official capacities for the purpose of

6

1      properly effectuating the relief requested in this complaint, pursuant to Rule 19 (a) of the

2      Federal Rules of Civil Procedure.

3    44.    Each of these Defendants conspired in unison to commit the acts averred to herein.

4    45.    Co-Conspirators: The following persons, along with others whose names are both known and

5      unknown, are named as co-conspirators, but not defendants, for the reasons indicated below.

6    46.    Former Sheriff of Sacramento County, Lou Blanas: extortion, solicitation of bribes, and

7      money laundering of SCDSA treasury funds.

8    47.    Former SCDSA President Jerry Moore, based upon information and belief: payment of

9      bribes and money laundering from the SCDSA treasury.

10    48.    County of Sacramento Sheriff McGinness: extortion, solicitation of bribery, and payment of

11      bribes.

12    49.    David P. Mastagni, Sr. former General Counsel for the SCDSA: payment of bribes to

13      influence decision making of NAMED DEFENDANT RACKETEERS with regard to the

14      affairs of SCDSA, in violation of State of California ethics rules and Business and

15      Professions Code regarding bribes and kickbacks.

16    50.    Based upon information and belief, Mastagni has represented Blanas in his personal capacity

17      while simultaneously representing the SCDSA's legal interests, a direct conflict of interest.

18    51.    Sacramento County Director of Labor Relations Steve Lakich and County Executive Terry

19      Schutten, executive employees of the County of Sacramento: receipt of bribes and

20      exchanging things of values, i.e. payments from SCDSA , which were directed to NAMED

21      DEFENDANT RACKETEERS for the purpose of influencing the affairs of SCDSA.

22    52.    **The Enterprise:** At all times material to this complaint, SCDSA constitutes an "enterprise",

23      as that term is defined in Title 18, United States Code, Section 1961(4), which enterprise was

24      engaged in, and the activities of which affected interstate commerce. The enterprise has been,

25      and continues to be, a captive labor organization which has been continuously and

26      systematically controlled, exploited, and dominated in the conduct of its affairs by NAMED

27      DEFENDANT RACKETEERS and Co-Conspirators in the manner and means which are

28      described herein.

   53.    The term "enterprise" is defined in 18 U.S.C. § 1961(4) as including "any individual,

partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."

54. Over the last several years, the County of Sacramento Sheriff's office and management level employees of the County of Sacramento have systematically exercised a sphere of influence over key union officials of the SCDSA.

55. **Acquiring and Maintaining Control of SCDSA:** Blanas was specifically recruited and hired by former Sheriff Craig to raise money for political campaigns.

56. Craig and Blanas conspired to sell their power to those who contributed money, through a variety of acts, including the issuance of level 3 reserve status to individuals who contributed, issuance of identification cards and badges to those who donated, issuance of CCWs to those who donated, and promotion of individuals into key positions to effectuate these acts, including individuals Captain Jim Cooper, Chief Bill Kelley, Detective Fred Mason and Captain Tim Sheehan.

57. Both Captain Cooper and Chief Kelly are former SCDSA Board Members who began their SCDSA Board duty as Sheriff's Sergeants in January 1996.

58. They have since been repeatedly promoted, in exchange for ensuring Blanas' continuing influence and control of the Union.

59. Blanas has in fact accepted bribes, such as receipt of a million dollar vacation home in Nevada, and his wife's direct employment as a real estate agent/broker by a very rich and powerful developer in Sacramento who has forgiven thousands of dollars of political "loans" to Blanas.

60. Blanas undertook a scheme and plan to infiltrate Defendant SCDSA by soliciting bribes and extorting money from the SCDSA, and to use the SCDSA as a conduit for money laundering.

61. To implement this plan, the union's administration had to continue to be compromised as it has been since early 1996.

62. This was accomplished by a series of "reward" promotions, special assignments, and post-retirement job opportunities in return for the solicited bribes paid or orchestrated to be paid, several of which were given to COAUETTE, ROBERTS, POLETE, Mason, Kelly and Sheehan.

63.  Mason, Kelly, Cooper and Sheehan have been part of Defendant Blanas' Hobbs act violations by being placed in key positions, such as Internal Affairs (IA) and Special Investigations Bureau (SIB) and in other sensitive positions since the mid-1990s. Such reward positions and promotions of Board and former Board members have occurred at 4 to 6 times the rate of Sheriff's employees who were not SCDSA Board Members/Officers.

64.  From at least the time co-conspirator Jerry Moore became President of the SCDSA (January 1, 2000 through December 31, 2003) up to and including the date of the filing of this complaint, in the Eastern District of California and elsewhere, defendants and co-conspirators unlawfully, knowingly and intentionally did acquire and maintain, directly and indirectly, an interest in and control of the aforementioned enterprise which was engaged in, and the activities of which affected interstate commerce through a pattern of racketeering activity, as alleged herein, in violation of Title 18, United States Code, Sections 1962.

65.  As previously noted, the purpose and intent of Defendant SCDSA's governing documents is the vesting of the ultimate authority over the internal workings of Defendant SCDSA in the hands of the general membership (i.e., "the society as a whole") based upon the "one person, one vote" rule; and that the President, as the designated CEO, is the custodian of that trust, and is identified as the sole and exclusive "spokesperson" of the organization.

66.  The SCDSA President is the only union official authorized to make nominations and appointments of union officers, directors and committee members.

67.  The SCDSA President is the only union official granted "plenary" powers under SCDSA's governing documents (i.e. "shall exercise all powers not specifically excluded...").

68.  Further, under the collective bargaining agreement, the SCDSA President is the only identified union official with whom the employer, the County of Sacramento, may deal except by designation of and by the SCDSA President.

69.  Based upon the actual language in Defendant SCDSA's governing documents, and the past custom, practice and usage, the purpose and intent of Defendant SCDSA's governing documents is the placement of the day-to-day responsibility and authority for the coordination and management of the SCDSA in the hands of the President, who is directly accountable to the Union's ultimate authority, the general membership (i.e., "the society as a

9

whole"). The SCDSA's Board of Directors is given very limited and specific authority over the President.

70. Based upon past custom, practice and usage, full time release agents and board members seldom display firearms or badges while working on union time.

71. In fact, the CBA specifically states that Union officials, while acting on union release time, are not agents of the County.

72. NAMED DEFENDANT RACKETEERS are all natural persons, and were Board Members/Officers of the enterprise SCDSA, and have currently maintained *de facto* status as Board Members/Officers by threats of force made under color of authority, and with assistance from unnamed co-conspirators.

73. NAMED DEFENDANT RACKETEERS are a group of individuals associated in fact with others in the conspiracy for the purpose of engaging in certain specified racketeering activities, conducting and participating in the affairs of an enterprise engaged in interstate commerce by and through a pattern of said racketeering activities, in violation of 18 U.S.C. § 1962.

FIRST CAUSE OF ACTION
RICO
**Title 18, United States Code, Sections 1961 through 1968**

74. All averments contained in this pleading herein are incorporated in their entirety, as though fully set forth below.

75. By majority vote, the rank and file membership of the SCDSA elected Plaintiff Steve FISK as SCDSA President for a term of four years, effective January 1, 2004.

76. Almost immediately after President FISK's election, commencing in early 2004, then Sheriff Blanas used SIB personnel (Tim Sheehan) to attempt to collect bribes and launder SCDSA funds solicited from FISK.

77. While on-duty as a peace officer employed by the Sacramento County Sheriff's Department Special Investigations Bureau, Tim Sheehan solicited $15,000 in bribe money from then SCDSA general manager Marlin Weinberger.

78. Weinberger relayed this solicitation to newly elected President Steve FISK, advising that the $15,000 was to be used by then Sheriff Blanas for "political purposes" which Blanas did not

1    want directly associated with himself (a violation of California FPPC statutes), and that

2    SCDSA would eventually "get the money back."

3  79.  In response, very soon thereafter, President FISK called Blanas to obtain more information

4    regarding the request for money from the SCDSA treasury.

5  80.  Blanas was evasive as to the purpose of the request, though it was very clear to President

6    FISK that the money was going to some other individual's campaign or personal account for

7    political purposes.

8  81.  Although Blanas used cryptic terms, it was very clear that: 1) a check in the amount of

9    $15,000 was to be tendered <u>without</u> a payee listed; 2) the SCDSA would have the money

10    returned eventually (e.g. "you'll get the money back"); and, 3) when President FISK was

11    hesitant about the concept of what Blanas was requesting, Blanas stated, " [immediate past

12    SCDSA President] Jerry [Moore] always did it."

13  82.  **PREDICATE ACT 1 (Predicate Acts are defined in 18 U.S.C. § 1961, including**

14    **enumerated State law offenses):**  (Solicitation to Commit Bribery, Bribery, and Extortion -

15    Cal. Penal Code §§ 7, 67, 518. )(Cal. Penal Code § 7  "6. The word "bribe" signifies

16    *anything of value or advantage*, present or prospective, or any promise or undertaking to

17    give any, asked, given, or *accepted*, with a corrupt intent to influence, unlawfully, the person

18    to whom it is given, in his or her action, vote, or opinion, in any public or official capacity."

19    Cal. Penal Code § 67.  "Every person who gives or offers any bribe to any executive officer

20    in this state, *with intent to influence him* in respect to *any act, decision*, vote, opinion, ..."

21    Under this section every person who merely offers a bribe to an executive officer with intent

22    to influence his decision is guilty. *People v. Finkelstin* (App. 1950) 98 Cal.App.2d 545, 220

23    P.2d 934.)(Cal. Penal Code 518.  *Extortion is the obtaining of property from another, with*

24    *his consent*, or the obtaining of an official act of a public officer, induced by a wrongful use

25    of force or fear, or *under color of official right*.)(Hobbs Act 18 U.S.C. § 1951 - "[a]t

26    common law, extortion was an offense committed by a public official who took 'by color of

27    his office' money that was not due to him for the performance of his official duties. . . .

28    Extortion by the public official was the rough equivalent of what we would now describe as

    'taking a bribe.'" *Evans v. United States*, 504 U.S. 255 (1992).)

83. Cal.Penal Code § 165 "Every person who gives or offers a bribe to any member of any common council, board of supervisors, or board of trustees of any county, city and county, city, or public corporation, with intent to corruptly influence such member in his action on any matter or subject pending before, or which is afterward to be considered by, the body of which he is a member, and every member of any of the bodies mentioned in this section who receives, or offers or agrees to receive any bribe upon any understanding that his official vote, opinion, judgment, or action shall be influenced thereby, or shall be given in any particular manner or upon any particular side of any question or matter, upon which he may be required to act in his official capacity, is punishable by imprisonment in the state prison for two, three or four years, and upon conviction thereof shall, in addition to said punishment, forfeit his office, and forever be disfranchised and disqualified from holding any public office or trust."

84. Penal Code Section 653f(a) provides: "Every person who, with the intent that the crime be committed, solicits another to offer, accept, or join in the offer or acceptance of a bribe, or ..., robbery, burglary, grand theft, receiving stolen property, extortion, ... shall be punished by imprisonment ...in the state prison ..."

85. This section against receiving and agreeing to receive bribe is satisfied when the individual "agreed" and intended in his own mind to receive bribe. *People v. Fitzpatrick* (App. 2 Dist. 1926) 78 Cal.App. 37, 247 P. 601.

86. Because Blanas made an admission against his penal interest, the following fact is alleged: Prior to 2004, then SCDSA President Jerry Moore paid bribe money and made illegal loans that were laundered (Money Laundering Control Act, 18 U.S.C. §§ 1956 and 1957) for then Sheriff Lou Blanas in return for things of value, such as Moore being appointed to represent the Law Enforcement Management Association (LEMA), a paid position, after his re-election loss in the SCDSA elections for the January 1, 2004-December 31, 2007 term, and subsequent retirement from the Sacramento County Sheriff's Department.

87. LEMA's interests are adverse to the interests of SCDSA's "rank and file" general membership, because that organization represents law enforcement management's interests.

88. Moore's appointment as the business agent of LEMA is a conflict of interest as he possessed

12

1    trade secrets of SCDSA regarding collective bargaining and other matters.

2  89.   President FISK questioned the legality and purpose of the funds which were being solicited,

3        requested from the SCDSA, and told Blanas that he would have to report it to Defendants

4        POLETE, MEGGERS, COAUETTE, ADAMS, RODRIGUEZ, COSTANZO,

5        MICKELSON, EBE, WINN, CROLEY, ROBERTS, GURNABY, and possibly others, who

6        were all Officers or Directors of SCDSA (i.e. Board Members of SCDSA at the time).

7  90.   Blanas became very angry and agitated, and the conversation ended.

8  91.   Blanas did not raise the issue directly with President FISK again.

9  92.   Instead, Blanas, as part of a conspiracy with certain defendants, attempted to extort the

10       compliance of President FISK into giving SCDSA funds to Blanas for purposes of money

11       laundering by means of economic extortion.

12 93.   Shortly after Blanas' conversation with FISK,  one SCDSA Board Member/Officer

13       (Defendant COAUETTE), and perhaps more SCDSA Board Members, conspired with

14       Blanas to have Blanas attend the next regularly scheduled monthly SCDSA Board of

15       Directors' meeting without prior notice to FISK, even though as President, FISK is solely

16       responsible final approval of the Board's meeting agendas.

17 94.   Under SCDSA's governing documents, the SCDSA President is an ex-officio member of the

18       Board, and attends all Board meetings.

19 95.   Blanas attended this meeting with then Undersheriff John McGinness, Chief Deputy Bill

20       Kelly (a former SCDSA Board member), then Chief Deputy Dave Lind, then Chief Deputy

21       Dan Drummond, then Sergeant Glenn Powell and then Lt. Tim Sheehan.  Both Lind and

22       Powell are California attorneys.

23 96.   At this meeting in 2004, Blanas threatened President FISK with economic coercion by

24       demanding that the Board of Directors remove President FISK from office, stating that

25       Plaintiff FISK was ineffective as President (apparently because he would not continue former

26       SCDSA President Jerry Moore's practice of  laundering SCDSA funds to pay bribes to, or at

27       the direction of, Blanas).

28 97.   Up to this time, the only interaction Plaintiff FISK had with Blanas after assuming the office

         of SCDSA President was Blanas' request for SCDSA funds to be given to Blanas for

1    unspecified political purposes.

2    98.    At this Board meeting, the SCDSA Board voted to make the political contribution suggested

3           by Blanas, which FISK did not immediately oppose due to Blanas' threat of economic

4           extortion (the removal of President FISK from his paid position), which Blanas had just

5           carried through with at said SCDSA Board meeting.

6    99.    **PREDICATE ACT 2:** (State law violations Solicitation to Commit Bribery, Bribery, and

7           Extortion)(Hobbs Act 18 U.S.C. § 1951)  President FISK was placed in economic fear (i.e.

8           loss of his salary as the President of the SCDSA). This fear constituted economic extortion,

9           and Defendants and Blanas and the members of Blanas' management team who were present

10          conspired to do such.

11   100.   Thereafter, in furtherance of the conspiracy to extort compliance from President FISK and to

12          place him in further economic fear, Defendants first attempted to obtain a recall of President

13          FISK by putting that question to the Union's general membership. This unsuccessful recall

14          attempt took place in July of 2004.

15   101.   Defendants are members of a continuing conspiracy to silence President FISK and further a

16          fraudulently obtained Collective Bargaining Agreement (CBA) procured through a pattern of

17          racketeering activity, including extortion, in violation of the Hobbs Act, 18 U.S.C. § 1951

18          and state law.

19   102.   The ultimate goals of Defendants' conspiracy are: 1) to seize or take control of the Union

20          (SCDSA) by fraud and force; 2) to commit fraud on the union's general membership by

21          seizing control of the members' dues ($55,000.00 bi-weekly) which collectively form the

22          Union's treasury; 3) commit fraud on the SCDSA general membership by inserting in the

23          CBA language that provided a "thing of value" for the Sheriff and the County of Sacramento

24          and David P. Mastagni, Sr., and his law firm.

25   103.   The inclusion of these "things of value" (i.e. CBA authority to civilianize currently sworn

26          jobs in Security and Corrections Divisions of the Sheriff's Department, and waiver of Civil

27          Service [and beyond] appeals of management imposed discipline) were never revealed to the

28          Union's general membership prior to or during the CBA mailed-out ratification vote.

     104.   Defendant POLETE and Defendant MEGGERS spearheaded the conspiracy to first remove

                                                     14

1    the only opposition to the conspiracy, Plaintiff FISK.

2    105.   On September 21, 2006, NAMED DEFENDANT RACKETEERS' indefinitely suspended,

3           then subsequently expelled the duly elected SCDSA President (President Steve FISK), even

4           though all legal authority to temporarily suspend President FISK from office ended October

5           6, 2006.

6    106.   Under the SCDSA Constitution (hereafter referred to as "Constitution")  Article VI, Section

7           1, such authority extends for a maximum of fifteen (15) days.

8    107.   After imposing this "temporary" suspension, NAMED DEFENDANT RACKETEERS never

9           instituted recall proceedings (as required by the SCDSA Constitution) and instead after

10          October 6, 2006, continued to illegally bar President FISK from office.

11   108.   After the suspension of President FISK from office beyond the maximum allowable 15 day

12          period, NAMED DEFENDANT RACKETEERS have continuously and repeatedly engaged

13          in fraudulent and dishonest acts, gross abuse of authority and discretion regarding the

14          corporation, and breach of duty arising under the California Corporations Code.

15   109.   Because of their conduct in suspending President FISK and their subsequent malfeasance

16          with respect to the CBA ratification, a recall petition was circulated by the members to recall

17          NAMED DEFENDANT RACKETEERS in February and March of 2007.

18   110.   In accordance with SCDSA Constitution Article VIII, Section 3, at a noon March 29, 2007

19          SCDSA General Membership Meeting, a membership petition signed by more than the

20          Constitutionally mandated 150 voting member  minimum was presented to Vice President

21          POLETE.  Approximately 200 SCDSA members and a majority of the SCDSA corporate

22          Board Members/Officers were present.

23   111.   At that March 29, 2007, meeting, NAMED DEFENDANT RACKETEERS were served with

24          the aforementioned petition (actually signed by 173 regular voting SCDSA members,

25          including Plaintiffs) which demanded that under SCDSA Constitution, Article VIII, Section

26          3, a special general membership meeting be called for the purposes of recalling NAMED

27          DEFENDANT RACKETEERS for cause, as defined under Article VI, Section 2 of the

28          SCDSA Constitution.

     112.   The cause stated for recall included the unannounced and unpublished inclusion in the CBA

of the unrestricted civilianization of sworn peace officers in Corrections at management's discretion, and the surrender of civil service (and beyond) appeal rights of management imposed discipline; the use of non-member, non-certified tellers to tally the CBA ratification vote, and violations of the SCDSA Constitution and By-Laws in connection with the indefinite suspension and subsequent attempted expulsion of President FISK.

113. POLETE was presented with a written demand that the "special" general membership meeting, which was being called by petition, be held between April 3, 2007 and April 12, 2007.

114. Both the cause listed and the membership's right to specify a time for the meeting date are not in dispute.

115. In response to this written demand for the timing of the "special" general membership meeting, POLETE (in the presence other NAMED DEFENDANT RACKETEERS and over 200 members) responded, "Yeah, we can do that".

116. However, by 8:00 a.m. on Tuesday, April 10, 2007, fully twelve days after the March 29, 2007 membership meeting at which the meeting dates had been specified, NAMED DEFENDANT RACKETEERS had failed and refused to schedule a three session "special" general membership meeting between April 3, 2007 and April 12, 2007.

117. President Steve FISK, as the only individual who was not part of the conspiracy, then called a meeting of the membership since it became apparent that the SCDSA was a captive labor organization held captive by NAMED DEFENDANT RACKETEERS.

118. Meeting notices were then distributed throughout the various work sites beginning at 8:00 a.m., PDT, on April 10, 2007.  This notice included over 1,500 copies placed in the mail boxes of SCDSA represented employees.  These 1,500 meeting notices well exceeded SCDSA normal practice and custom as to notice to members of a Union meeting.

119. The April 12, 2007 meeting sessions were scheduled for 8:30 am, 12:30 pm and 8:00 p.m. on Thursday, April 12, 2007, the last day of the ten day window specified in writing, which was served on and agreed to by POLETE at the SCDSA general membership meeting of March 29, 2007, as described above.

120. The times selected for these meeting sessions generally conformed to the meeting times

1    traditionally designated for SCDSA membership meetings, which permits SCDSA members

2    who work swing and graveyard shifts to attend membership meetings scheduled for days and

3    times when they are usually assigned to work.

4  121.  The members gathered on April 12, 2007 at the Dante Club (the customary location for

5    SCDSA membership meetings).

6  122.  The following motion was made on April 12, 2007, pursuant to the recall petition served on

7    RESPONDENT VICE-PRESIDENT POLETE, who agreed in front of 200+ regular members

8    of the SCDSA to schedule a three session "special" general membership meeting on or

9    before April 12, 2007, but who failed and refused to do so.

10  123.  The following is the verbatim reading of the recall motion which was made, seconded and

11    passed April 12, 2007:

12  Motion maker:        Dep. Andy Weitnauer

13  Motion second:        Sgt. Rex Parker

14  **MOTION:** "I make a motion to recall all the members of the Board and all corporate officers
except for President Steve FISK.

15
16    The first Cause for the recall is that in late 2006 they inserted two important contract sections
without telling us, the members, until after the ratification vote.

17    The second Cause for the recall is that they breached the members' trust regarding the
contract ratification vote count. They did not use an independent CPA firm to do the ballot count.
18  The use of a CPA for that purpose was implied by the numbering of the return envelopes pre-
addressed to a CPA firm.

19
    The third Cause is the repeated violation of the SCDSA Constitution and By Laws. They
20  suspended President FISK during a critical phase of contract negotiations and exceeded the
maximum allowable 15 days. They also failed to refer him to us, the members, for recall. They then
21  expelled him from SCDSA, again without a vote of the members, in violation of the State Corporate
Code. A state court had to reverse them just last month.

22
All corporate officers and Board members are to be suspended and barred from all SCDSA business
23  and functions immediately pending the results of the recall election.

24  President FISK is directed to:

25    1. Immediately take control of all SCDSA property.

26    2. Select an independent CPA firm to conduct a secret ballot recall election.

27    3. Appoint an interim Board and officers as needed until the recall results are known. If the
recall is successful those interim Board members and officers shall fill vacancies and serve until they
28  are replaced following our November 2007 elections."

124.  The motion passed with a 92% approved of the members present and voting; with NAMED DEFENDANT RACKETEERS COSTANZO AND MICKELSON present and participating in debate at all three scheduled session "representing (NAMED DEFENDANT RACKETEER) POLETE" and, by inference, all NAMED DEFENDANT RACKETEERS.

125.  NAMED DEFENDANT RACKETEERS were required to perform the duties as Members of the SCDSA Board of Directors and/or as Corporate Officers who vote as Members of the Board of Directors and must act in good faith in a manner that such Director/Officer believes to be in the best interests of the corporation and with such care, including reasonable inquiry, as an ordinarily prudent person in a like position would use under similar circumstances. (See Cal. Corp. Code § 7231.)

126.  **PREDICATE ACTS 3 and 4- 18 U.S.C. §§ 1341 (relating to mail fraud) and 1343 (relating to wire fraud):**

127.  As part of this continuing and un-authorized indefinite suspension, NAMED DEFENDANT RACKETEERS ordered President FISK not to attend any SCDSA meetings and not to communicate with any SCDSA members.

128.  During this same period of time, NAMED DEFENDANT RACKETEERS published through the internet, FAX and U.S. Mail system, a serious of fraudulent statements attempting to justify their reasons for the suspension and expulsion of President FISK.

129.  Each of these statements were published with the specific intent to deceive the members as to the true reason for the expulsion and suspension.

130.  The true reason for the expulsion and suspension was to make sure the conspiracy to conceal various unauthorized provisions in the CBA were not reported to the SCDSA general membership by President FISK.

131.  In addition, as President FISK was the only SCDSA official who was not part of the conspiracy, NAMED DEFENDANT RACKETEERS specific intent was to remove President FISK from a position where he could further discover and reveal the conspiracy; hence, that is why NAMED DEFENDANT RACKETEERS published false statements as to their justification for President FISK's removal.

132. After October 6, 2006, NAMED DEFENDANT RACKETEERS, knowing that they could not recall the popularly elected President by the Constitutionally required 2/3rds majority vote of the general membership, chose instead to attempt to make President FISK ineligible to continue to hold office by expelling him from membership in Defendant SCDSA, again without submitting the question of expulsion to the general membership pursuant to Defendant SCDSA's governing documents and as provided in Robert's Rules of Order. See Robert's Rules of Order, 10th Edition, Newly Revised, page 9, lines 5-10, (all relevant and pertinent sections underlined).

133. Because this act was *ultra vires*, NAMED DEFENDANT RACKETEERS and co-conspirators created economic duress on President FISK to silence his opposition to the fraudulent CBA provisions. As more fully described below, the NAMED DEFENDANT RACKETEERS later committed further acts of mail and wire fraud by sending out a false ballot seeking to ratify, after the fact, their impermissible and illegal expulsion of President FISK from SCDSA membership.

134. **PREDICATE ACTS 5 and 6 - 18 U.S.C. §§ 1341 (relating to mail fraud) and 1343 (relating to wire fraud):** In an attempt to commit fraud on the SCDSA members and the Superior Court, NAMED DEFENDANT RACKETEERS circulated a false and misleading ballot measure through the U.S. Mail asking members to expel President FISK.

135. This ballot was not authorized by any SCDSA governing document, and was circulated with the specific intent to deceive the SCDSA members and the Superior Court.

136. The members were deceived in that 1) they were led to believe that NAMED DEFENDANT RACKETEERS had authority to expel President FISK, and 2) it was a threat to the members that they too would be expelled from the SCDSA if they challenged the NAMED DEFENDANT RACKETEERS as President Fisk had done.

137. NAMED DEFENDANT RACKETEERS also used this same ballot count as a means of committing a fraud on a Superior Court Judge, since she had previously found NAMED DEFENDANT RACKETEERS actions to be in violation of the SCDSA Constitution, By-laws, and Roberts Rules of Order.

138.   A Superior Court judge first reversed the expulsion of President FISK with a preliminary injunction based upon the fact that the general membership had not voted on the question of expulsion, and then entered a permanent injunction restoring Plaintiff President FISK back to the office of "President" on May 25, 2007.  A true and correct copy of the Writ and Order is attached hereto as **Exhibit "1"**.

139.   NAMED DEFENDANT RACKETEERS have not complied with the Court's order as of the filing of this action.

140.   Between the date President FISK first filed a Writ of Mandate to have himself reinstated as President, NAMED DEFENDANT RACKETEERS began to pirate money from the SCDSA treasury for their own self interest to further the conspiracy of racketeering.

141.   During this same period of time (February and March of 2007), at general and special SCDSA membership meetings, Defendant POLETE presiding, numerous members made motions from the floor to restore President FISK to the presidency and stop interference with his membership/presidency status.

142.   Instead of allowing the motions to proceed, NAMED DEFENDANT RACKETEERS refused to allow any member to complete motions, even proper parliamentary motions modifying motions then before the meetings, thus reducing the membership to a silenced source of revenue controlled by NAMED DEFENDANT RACKETEERS.  The practice was to simply rule 'out of order' any member's motion not favored by the NAMED DEFENDANT RACKETEERS.

143.   It was also NAMED DEFENDANT RACKETEERS' routine practice since January 2004 to refuse to submit proposed Union Constitution and By Laws changes to a vote of the membership ("the society") as required by the Union's governing documents, unless it suited their own purposes. This to was done to simply reduce the general membership to a silenced source of revenue controlled by NAMED DEFENDANT RACKETEERS.

144.   **PREDICATE ACTS 7 and 8:** When it became necessary for President FISK to obtain a preliminary injunction to reverse the *ultra vires* acts of NAMED DEFENDANT RACKETEERS, Mastagni recruited other firms to file frivolous cross-complaints and to raise  legal issues without merit to obstruct justice and delay proceedings through a pattern of

1    mail and wire fraud (i.e. faxing and mailing knowingly false affidavits with the intent to

2    deceive President FISK and the Court) **18 U.S.C. §§ 1341 (relating to mail fraud) and 1343**

3    **(relating to wire fraud).**

4    145.   These knowingly false affidavits came from POLETE and Moore, to wit: that the SCDSA

5           resolves disputes through binding arbitration and that the Board, rather than the Union's

6           general membership, has the authority to expel a sitting president – both facts which are

7           patently false.

8    146.   When reinstated back to President on May 31, 2007, President FISK, as the leader of the

9           Corporation, demanded from each and every law firm hired by NAMED DEFENDANT

10          RACKETEERS that they turn over all billing records.  Each and every such law firm,

11          including Mastagni, has refused to comply with the applicable State Bar rules.

12   147.   SCDSA members, to this day, have never been informed of the total amount of these

13          expenditures, which were paid by funds pirated from the SCDSA treasury by NAMED

14          DEFENDANT RACKETEERS.

15   148.   By illegally expelling President FISK and by opposing his Writ with frivolous and meritless

16          claims, NAMED DEFENDANT RACKETEERS have stolen union funds and expended

17          those funds on lawyers paid to raise meritless arguments.

18   149.   To date, legal expenses paid out of Defendant SCDSA's treasury by NAMED DEFENDANT

19          RACKETEERS in pursuit of sustaining the *ultra vires* actions complained of herein are

20          estimated to exceed $200,000.00.

21   150.   NAMED DEFENDANT RACKETEERS are jointly and severally liable to Defendant

22          SCDSA for all funds so expended.

23   151.   **PREDICATE ACTS 9 AND 10 - 18 U.S.C. §§ 1341 (relating to mail fraud) and 1343**

24          **(relating to wire fraud):**

25   152.   The motive of NAMED DEFENDANT RACKETEERS for the above described conduct

26          toward President FISK became apparent after the recently ratified Collective Bargaining

27          Agreement ("CBA") between SCDSA and the County of Sacramento covering

28          approximately 1,700 rank and file Sheriff's Department employees in the Non-Supervisory

1    Law Enforcement Unit (hereinafter "NSLEU") was printed and circulated among Defendant

2    SCDSA's members.

3  153. Per Defendant SCDSA's By-Laws, Article IV, Section 2, the voting membership has the

4    final authority to accept the CBA.

5  154. Part of the mailed-out, faxed and emailed (all placed in the stream of interstate commerce)

6    vote ratification process for Plaintiffs and other members to vote on whether or not to accept

7    the CBA included the SCDSA Ballot Summary and Analysis (e.g. "2006 Contract-At-A-

8    Glance"), a copy of which is attached hereto as **Exhibit "2"**.

9  155. This document was prepared by NAMED DEFENDANT RACKETEERS and an agent of

10    former SCDSA General Counsel David P. Mastagni, Sr.

11  156. NAMED DEFENDANT RACKETEERS' actions prevented President FISK from

12    communicating the Civilianization of Sworn Positions and the Elimination of Civil Service

13    Appeals issues which were included in the final CBA, but were not disclosed to Plaintiffs

14    and Defendant SCDSA's general membership.  Incorporated herein and attached hereto as

15    **Exhibit "3"** is a true and correct copy of the relevant portions of the **AGREEMENT**

16    **BETWEEN COUNTY OF SACRAMENTO AND SACRAMENTO COUNTY**

17    **DEPUTY SHERIFFS' ASSOCIATION COVERING ALL EMPLOYEES IN THE**

18    **NON-SUPERVISORY LAW ENFORCEMENT UNIT - 2006-11** (i.e. hereinafter

19    "CBA").

20  157. NAMED DEFENDANT RACKETEERS had a ministerial and affirmative duty to disclose

21    the provisions permitting management discretion for civilianization of currently sworn

22    employee jobs (held by Plaintiffs and other Defendant SCDSA members) and the elimination

23    of Civil Service Appeals of employer imposed disciplinary actions (including all subsequent

24    appeals to the Courts), both basic fundamental bargained rights of SCDSA members.

25  158. Had Plaintiffs and the rest of Defendant SCDSA's general membership been informed of the

26    provisions permitting management discretion for civilianization of currently sworn employee

27    jobs and the elimination of Civil Service Appeals of employer imposed disciplinary actions

28    (including all subsequent appeals to the Courts), both basic fundamental bargained rights of

1    SCDSA members, Plaintiffs and Defendant SCDSA's general membership would have voted

2    to reject the CBA.

3    159.   Moreover, on the vote for ratification of the CBA, Plaintiffs are informed and believe that

4           there were not sufficient votes by the general membership to ratify the CBA based upon the

5           following:

6           a.      An overwhelming number of named Plaintiffs voted "no" on the CBA.

7           b.      Prior to the ratification of the CBA being announced, many SCDSA voting members

8                   stated they voted "no" on ratification.

9           c.      NAMED DEFENDANT RACKETEERS had a ministerial and affirmative duty to

10                  conduct a fair and accurate vote regarding CBA ratification by the general

11                  membership.

12          d.      When conducting secret mail-in ballot elections, the custom, practice and usage of

13                  Defendant SCDSA has been to use an independent accounting firm to receive the

14                  mailed-in ballots, and count and certify the election.  After the election is certified,

15                  the actual ballots are retained so that any member can inspect them.  These

16                  procedures are designed to safeguard the integrity of the election process.

17          e.      However, CBA ratification votes are customarily conducted at meetings by a show of

18                  hands, division of the house, or by voice vote after the proposed CBA is explained

19                  and questions from the floor are received and responded to.

20          f.      In this instance, however, the same private accounting firm which prepares NAMED

21                  DEFENDANT RACKETEER POLETE's private tax returns was utilized to merely

22                  receive the mailed-in CBA ratification ballots.

23          g.      Plaintiffs and other SCDSA members were misled by the fact that the return

24                  envelopes for the CBA ratification ballots showed the accounting firm's name and

25                  address and had a 4 digit "control" number printed on the face of the return envelope.

26                  Plaintiffs allege that the use of the "control number" and the accounting firm's return

27                  address were included to falsely represent that the election was being supervised by

28                  the accounting firm.

h.   NAMED DEFENDANT RACKETEERS' agents collected the unopened ballots from the CPA firm and took them to the SCDSA office where un-certified non-member individuals were utilized as election "tellers".

i.   After the vote approving the CBA was announced, several SCDSA members called for a re-count.  NAMED DEFENDANT RACKETEERS reported that immediately after the election was tallied, but before the results were announced, the ballots were "destroyed" (shredded).

j.   Based upon information and belief, the ballots were "destroyed", in violation of the SCDSA's custom, practice and usage for secret ballot elections, because there were actually more legitimate returned ballots to reject the CBA than there were to approve it.

k.   Remarkably, NAMED DEFENDANT RACKETEERS recently claimed to have "found" those destroyed ballots.

160.   **PREDICATE ACTS 11 and 12:** (Solicitation to Commit Bribery and Bribery)

161.   NAMED DEFENDANT RACKETEERS GREG COAUETTE (Promoted to Sergeant, January 2007), JANET ROBERTS (Promoted to Records Officer II (Sergeant level for non-sworn employees) March 2007), and BRANNON POLETE (Promoted to Sergeant, April 2007) bribed County officials (Lakich, Schutten, McGinness) by making an agreement to participate in a conspiracy to mislead the members regarding the ratification process for the CBA whereby key CBA provisions (civilianization and loss of civil service appeals) would not be disclosed to the general membership.  In return, NAMED DEFENDANT RACKETEERS COAUETTE, ROBERTS, and POLETE would receive preferential treatment from the Sheriff and the County in the form of promotions and other benefits, such as assignment to special positions and promises of protection from the wrath of the general membership once the deception regarding the CBA was revealed.

162.   Based upon information and belief, NAMED DEFENDANT RACKETEERS GREG COAUETTE (Promoted to Sergeant, January 2007), JANET ROBERTS (Promoted to Records Officer II (Supervisor) March 2007), and BRANNON POLETE (Promoted to Sergeant, April 2007) were promoted by Sheriff McGinness, though other more qualified

applicants were available for promotion.  Those promotions of NAMED DEFENDANT

RACKETEERS, granted as a reward for their continuing influence and control of Defendant

SCDSA on behalf of County and Sheriff's management, resulted in the astonishing

promotion rates of four to six times that of the SCDSA general membership who are not

NAMED DEFENDANT RACKETEERS.

163.  **PREDICATE ACT 13 -  18 U.S.C. §§ 1341 (relating to mail fraud) and 1343 (relating to
wire fraud):**

164.  Under Article IV, Section 1 ("Officers and Directors") of the SCDSA Constitution, the
highest ranking union officer is the elected "President".

165.  The current CBA recognizes this fact, specifically stating under CBA section 2.3 that the
County "shall" recognize officers and representatives designated by the SCDSA.

166.  This designation can only be made by the sole and exclusive "spokesperson" of the SCDSA,
the President. (i.e. Article V, Section 1, dealing with Presidential powers, specifically states
that "[t]he President shall coordinate and manage the organization.  The President shall
exercise powers not specifically excluded in the Constitution and By-Laws.  The President
shall be the spokesperson for this organization.")

167.  The Board of Directors essential function is to monitor, not run the SCDSA.  SCDSA
Constitution, Article V, Section 3, states, "[t]he Board of Directors shall govern the
organization as to matters of policy and other specific responsibilities as specified in the
Constitution and By Laws."   By-Laws Article I, Section 7, states, "[t]he Board of Directors
shall review all business on behalf of the membership."

168.  Article V, Section 1, dealing with Presidential powers, specifically states that "[t]he President
shall coordinate and manage the organization.  The President shall exercise powers not
specifically excluded in the Constitution and By-Laws.  The President shall be the
spokesperson for this organization."  Nevertheless, the County has been dealing exclusively
with the Vice-President, NAMED DEFENDANT RACKETEER POLETE, even after
POLETE was recalled by a vote of the SCDSA general membership.

169.  Under CBA section 2.3e, "[t]he President and up to two (2) officers appointed by the
President under Section 2.3-c.  shall each receive 80 hours of release time ..."

170. Under the CBA, President FISK terminated the two full time release officers (POLETE and MEGGERS) immediately after he was returned to the Presidency via the Writ of Mandate attached hereto.

171. Under Article IV, Section 2, of the SCDSA Constitution, the Board of Directors consists of 18 members, including three Presidential appointees, plus an additional appointee if there is no is immediate Past President.

172. That means President FISK has a total of four SCDSA Board appointments that serve at his pleasure.

173. Under Article IV, Section 8, of the SCDSA Constitution, any Board member who misses 3 scheduled meetings without excuse forfeits their office.  Absences may only be reviewed and excused by the President.  Vacancies which occur due to a forfeiture of office are filled by appointment of the SCDSA President.

174. There were a total of eight Defendant board members who had three or more unexcused absences and who thereby forfeited their offices.

175. President FISK has the absolute sole and exclusive SCDSA Constitutional authority to remove a total of twelve Defendant Board members without any form of review by any individual or entity, especially the County of Sacramento.

176. President FISK removed and replaced a total of 12 Board members under his sole and exclusive SCDSA Constitutional authority as President.  He has also removed from full-time union release status the two SCDSA union release time officials, NAMED DEFENDANT RACKETEERS POLETE and MEGGERS, who had formerly been named to serve in that capacity by President FISK.

177. The SCDSA General Manager, Marlin Weinberger, was employed pursuant to President FISK'S plenary powers under SCDSA Constitution Article V, Section 1 ("The President shall coordinate and manage the organization.  The President shall exercise powers not specifically excluded in the Constitution and By-Laws.").  No one else has the authority to hire or fire Weinberger except for the President.

178.   Regardless, even though the County has been placed on notice about Weinberger's termination by the President, the County continues to treat Weinberger as if he were still an agent of the Union even though Weinberger was in fact terminated as of June 1, 2007.

179.   Even though the SCDSA Constitution and CBA are replete with mandatory language granting the President sole and exclusive powers on the management and operation of the Union, the County has ignored each and every Presidential act and instruction, and instead have  continuously and systematically permitted the NAMED DEFENDANT RACKETEERS to exercise domination and control over the day-to-day operations of the Union by continuing to recognize and deal with these now-recalled or removed former union Officers and Directors.

180.   Conspiring with NAMED DEFENDANT RACKETEERS, County officials Lakich, Schutten, McGinness ,all authored and circulated through the regular U.S. Mail and via fax the attached letters marked as **Exhibit "4"**, falsely identifying NAMED DEFENDANT RACKETEERS as current SCDSA Board Members in good standing, with the specific intent to defraud the general membership and other County employees into believing that SCDSA dues money was being lawfully distributed and entrusted to NAMED DEFENDANT RACKETEERS.

181.   These same false and misleading letters identify Weinberger as a recognized agent of the Union, despite the fact that the County was informed that Weinberger's employment with the Union had been terminated by President FISK.

182.   These letters were sent out, even though the SCDSA membership overwhelmingly voted to recall NAMED DEFENDANT RACKETEERS as of July 13, 2007.

183.   A special mail-out ballot was issued by the President, per the verified and valid petition signed by over 150 members which NAMED DEFENDANT RACKETEERS refused to recognize because said petition called for a "special meeting" of the SCDSA seeking the recall from office of said  NAMED DEFENDANT RACKETEERS.

184.   Because of this refusal by NAMED DEFENDANT RACKETEERS  to abide by the mandates of SCDSA's governing documents, the current interim Board, through its

1    disciplinary committee, mailed-out recall ballots to remove NAMED DEFENDANT

2    RACKETEERS from office.

3    185.    Attached hereto as **Exhibit "5"** is a true and correct copy of the tally of the recall election

4            seeking the removal of NAMED DEFENDANT RACKETEERS from SCDSA office.

5    186.    The final tally showed **648 votes to recall versus 70 not to recall.**

6    187.    This vote satisfies the 2/3rds majority of those voting requirement for recall of officers or

7            directors under SCDSA's governing documents.  However, NAMED DEFENDANT

8            RACKETEERS, Lakich, Schutten, and McGinness, and the County of Sacramento have

9            refused to recognize the results of this recall election.  This refusal is in violation of **Cal.**

10           **Corp. Code § 7224(b)(2) which provides "When by the provisions of the articles or**

11           **bylaws the members of any class, voting as a class, are entitled to elect one or more**

12           **directors, any DIRECTOR so elected may be removed only by the applicable vote of the**

13           **members of that class."**

14   188.    **PREDICATE ACTS 14 and 15** - (Hobbs Act 18 U.S.C. § 1951)(Extortion, Bribery and

15           solicitation thereof).

16   189.    A Hobbs Act violation does not require that the public official be the recipient of the benefit

17           of the extortion, and that a Hobbs Act case exists where the corpus of the corrupt payment

18           went to a third party.  See *United States v. Haimowitz*, 725 F.2d 1561, 1577 (11th Cir.), cert.

19           denied, 469 U.S. 1072 (1984) ("a Hobbs Act prosecution is not defeated simply because the

20           extorter transmitted the extorted money to a third party."); *United States v. Margiotta*, 688

21           F.2d 108 (2d Cir. 1982), cert. denied, 461 U.S. 913 (1983) (insurance agency made

22           kickbacks to brokers selected by political leader of town); *United States v. Scacchetti*, 668

23           F.2d 643 (2d Cir.), cert. denied, 457 U.S. 1132 (1982); *United States v. Forszt*, 655 F.2d 101

24           (7th Cir. 1981); *United States v. Cerilli*, 603 F.2d 415 (3rd Cir. 1979), cert. denied, 444 U.S.

25           1043 (1980); *United States v. Trotta*, 525 F.2d 1096 (2d Cir. 1975), cert. denied, 425 U.S.

26           971 (1976); *United States v. Brennan*, 629 F.Supp. 283 (E.D.N.Y.), aff'd, 798 F.2d 581 (2d

27           Cir. 1986).

28   190.    Private persons who are not themselves public officials can be convicted under the Hobbs

             Act if they caused public officials to perform official acts in return for payments to the

1   non-public official. *United States v. Margiotta*, 688 F.2d 108 (2d Cir. 1982), cert. denied,

2   461 U.S. 913 (1983) (court upheld conviction of head of local Republican Party under color

3   of official right where defendant could be said to have caused, under 18 U.S.C. 1951), public

4   officials to induce a third party to pay out money); see *United States v. Haimowitz*, 725 F.2d

5   1561, 1572-73 (11th Cir.), cert. denied, 469 U.S. 1072 (1984) (private attorney's conviction

6   of Hobbs Act violation upheld due to complicity with state senator); *United States v. Marcy*,

7   777 F.Supp. 1398, 1399-400 (N.D.Ill. 1991); *United States v. Barna*, 442 F.Supp. 1232

8   (M.D. Pa.), aff'd mem., 578 F.2d 1376 (3rd Cir.), cert. denied, 439 U.S. 862 (1978).

9   191.   Private individuals who make payments to a public official can be charged under the Hobbs

10          Act, either as an aider and abettor or co-conspirator, if he or she is truly the instigator of the

11          transaction. See *United States v. Torcasio*, 959 F.2d 503, 505-06 (4th Cir. 1992); *United*

12          *States v. Spitler*, 800 F.2d 1267, 1276-79 (4th Cir. 1986) (conviction affirmed for aiding and

13          abetting extortion under color of official right even though defendant, who paid kickbacks

14          from corporate coffers, was an officer of the victim corporation); *United States v. Wright*,

15          797 F.2d 245 (5th Cir. 1986).

16   192.   Under color of authority, and in furtherance of the conspiracy, Lakich, Schutten, and

17          McGinness circulated the attached letters with the specific intent to defraud the SCDSA

18          general membership by attempting to legitimize the continuing influence and control over

19          SCDSA by NAMED DEFENDANT RACKETEERS and Weinberger and to justify the

20          continuing transmittal of SCDSA members' dues and other funds, held in trust by the

21          County,  to NAMED DEFENDANT RACKETEERS and Weinberger.

22   193.   These funds were withheld from SCDSA members' paychecks and placed in trust under the

23          control of Lakich, Schutten, and McGinness.  Some or all of the authorizations for the

24          withholding and ultimate fraudulent transfer of these funds to the dominion and control of

25          NAMED DEFENDANT RACKETEERS was accomplished by wire.

26   194.   Lakich, Schutten, and McGinness (public officials) under color of authority, took custody of

27          said funds, which were not owed to them for the performance of their official duties, and

28          then fraudulently transmitted these funds to private individuals, NAMED DEFENDANT

RACKETEERS and Weinberger, to achieve domination and control of the enterprise (SCDSA).

195.   Under SCDSA's governing documents, NAMED DEFENDANT RACKETEERS have a ministerial duty to, at the first quarterly SCDSA general membership meeting, present an annual independent audit of the Union's financial condition and past year's operations.

196.   This presentation of the annual audit has been accomplished at the first quarterly SCDSA general membership meeting, scheduled for three sessions to permit every member the opportunity to attend for the past quarter of a century.

197.   To discourage member attendance, NAMED DEFENDANT RACKETEERS scheduled only one session on March 29, 2007.  The meeting was scheduled for noon, which prevented members working in Security and Corrections Divisions at remote work sites from attending.  Assignments which serve at Management's pleasure (e.g. Detectives and Administration) are often allowed to attend while on duty.  Such members are not subject to having their jobs civilianized and are seldom disciplined, and are therefore much more likely to tolerate NAMED DEFENDANT RACKETEERS' exercise of domination and control of the enterprise.  (**This also constitutes a predicate act in that these management appointees have agreed to cast a vote in furtherance of the conspiracy while being paid taxpayer dollars to cast such vote.**)

198.   Despite the fact that these meetings historically attract only a few dozen members, more than 230 members attended that single session.

199.   No annual audit was produced for the members to review at the single session (noon only) March 29, 2007 first quarter SCDSA general membership meeting.

200.   The 2006 SCDSA annual audit was to have been produced by an accounting firm whose primary contact with SCDSA is that it does business with NAMED DEFENDANT RACKETEER BRANNON POLETE and his spouse.

201.   This relationship creates a "conflict of interest" which undermines the credibility of any audit or review produced by said accounting firm.

202.   The 2006 SCDSA annual audit has not been presented to the membership at a quarterly general membership meeting as of this filing.  This means that the NAMED DEFENDANT

1    RACKETEERS have not complied with the minimal fiscal disclosures to the membership

2    required of them.

3    203.   On Monday, June 18, 2007, Plaintiff President Steven FISK, at the urging of corporate

4    counsel, SCDSA members and with the approval of the Union Bank's General Counsel,

5    froze the SCDSA's primary bank account to preserve and protect the member's dues and

6    other funds.

7    204.   This was made necessary by the repeated looting of the account by the  NAMED

8    DEFENDANT RACKETEERS, in violation of the State Corporations Code and the State

9    Banking Code.

10   205.   Since June 1, 2007, NAMED DEFENDANT RACKETEERS have established one or more

11   secret bank accounts.

12   206.   The location and amounts of those secret bank accounts are unknown to the general

13   membership, President FISK and the interim Board of Directors.

14   207.   Despite their suspension on June 1, 2007, and recall from SCDSA office on July 13, 2007,

15   NAMED DEFENDANT RACKETEERS have established and maintained such bank

16   accounts even though they cannot legally conduct any corporate or union business.

17   208.   NAMED DEFENDANT RACKETEERS have established these bank accounts, using an

18   outdated or improper California Secretary of State Form 100.

19   209.   This form is not a true list of corporate officers because all persons named on it were

20   suspended (and now are also recalled) at the time it was fraudulently presented to the banks

21   and other financial institutions in question.

22   210.   **UNFAIR BUSINESS PRACTICE REGARDING BRIBES AND KICKBACKS IN
     **VIOLATION OF THE CALIFORNIA BUSINESS AND PROFESSIONS CODE
23   **SECTION 17000.**

24   211.   Unknown to the SCDSA general membership, NAMED DEFENDANT RACKETEERS

25   have established one or more bank accounts since June 1, 2007,  into which they have

26   deposited a $25,000 "kickback payment" presented to them by attorney David P. Mastagni,

27   Sr.

28

31

212. That bribe money was offered with the specific intent that NAMED DEFENDANT RACKETEERS would continue to do business with attorney David P. Mastagni, Sr., despite the fact that Mastagni had been fired by President Steven FISK on May 31, 2007.

213. Under his SCDSA constitutional authority, the President is the only individual authorized to contract for legal services on behalf of the SCDSA.

214. NAMED DEFENDANT RACKETEERS have continued to do business with attorney David P. Mastagni, Sr. and other firms connected to his firm in violation of State Bar rules and in violation of the directions of President and Spokesman Steven FISK'S to the contrary.

215. David P. Mastagni, Sr. is involved in unfair business practices under the Unfair Practices Act (Bus. & Prof. Code, § 17000 et seq.).

216. NAMED DEFENDANT RACKETEERS have established one or more bank accounts since June 1, 2007, unknown to the membership into which they have deposited member's dues money from the County of Sacramento trust accounts at the rate of more than $55,000 biweekly since July 3, 2007.

217. NAMED DEFENDANT RACKETEERS have established one or more secret bank accounts since June 1, 2007, into which the County of Sacramento, at the direction of unnamed co-conspirator Steve Lakich and unnamed co-conspirator Terry Schutten, have deposited union members' dues and other funds from trust accounts under the sole control of employer, either through the U.S. Mail or, most recently, by electronic deposit.

218. Steve Lakich and Terry Schutten are both County of Sacramento executive officials.

219. On June 1, 2007, President and Spokesman Steven Fisk notified both Sheriff McGinness and Steve Lakich and Terry Schutten by personally delivering to their offices and to their agents written notice of the suspension and removal of NAMED DEFENDANT RACKETEERS.

220. All three unnamed co-conspirators have continued to further the interests of the NAMED DEFENDANT RACKETEERS by officially and for all purposes recognizing them as "the Union".

221. In addition, they have refused to carry out any directives of the duly elected PRESIDENT and Spokesperson, Sergeant Steve FISK, especially those directives that apply to the Union's funds controlled by the County of Sacramento.

222. Sheriff McGinness, who has the authority and duty to recognize and promptly respond to the direction of the SCDSA President, has refused to do so by retaining the NAMED DEFENDANT RACKETEERS POLETE AND MEGGERS in their positions as full-time release union officials.

223. Those two full-time release union officials are paid out of the member's dues money through a union funded "pass through" trust account controlled by the County of Sacramento.  That union member funded trust account is referred to as the **Organizational Release Time** or "ORT" account.

224. Sheriff McGinness generates the order that moves elected, recalled or retiring union officials into and out of those union member funded positions.

225. Following his restoration to the position of President and Spokesman on May 25, 2007, Steven FISK directed that NAMED DEFENDANT RACKETEERS POLETE and MEGGERS be removed from their union member funded full-time positions beginning Sunday, May 27, 2007.  Sheriff McGinness refused to act, and did not comply with the union President's direction.

226. NAMED DEFENDANT RACKETEERS POLETE AND MEGGERS remain on union member funded release time despite being suspended on June 1, 2007 and recalled from office as union officials on July 13, 2007.

227. Following his restoration to the position of President and Spokesman on May 25, 2007, Steven FISK directed that union official Bill Barnsdale be placed into one of the two vacated union member funded full-time positions.

228. Co-conspirator Sheriff McGinness refused to act, and did not comply with the union President's direction.  Union official Bill Barnsdale remains in the work force and is not able to perform his union full-time release duties.

229. Sheriff McGinness, who has the authority and duty to recognize and respond to the direction of the SCDSA President, has refused to do so by retaining the NAMED DEFENDANT RACKETEERS except POLETE AND MEGGERS in their positions of part-time release union officials.

230.  Those thirteen (13) part-time release union officials are paid out of the member's dues money through a union funded "pass through" trust account controlled by the County of Sacramento. That union member funded trust account is referred to as the **Union Time Off** or "UTO" account.

231.  Sheriff McGinness authorizes the payment of UTO union member funds from the union's UTO trust account on a day by day basis to recognized union officials when they are released from the work force to attend official union functions and meetings.

232.  On June 1, 2007, President and Spokesman Steven FISK notified both Sheriff McGinness and Steve Lakich and Terry Schutten, by personally delivering to their offices and their agents, written notice of the suspension and removal of NAMED DEFENDANT RACKETEERS.

233.  Sheriff McGinness continues to authorize the payment of UTO union member funds from the union's UTO trust account on a day by day basis to the suspended and recalled union officials in violation of the State Corporations Code, the CBA and the SCDSA Constitution and By Laws.

234.  This use of ORT and UTO funds to pay former union officials was intended to keep NAMED DEFENDANT RACKETEERS in a position of power by keeping them well funded.

235.  NAMED DEFENDANT RACKETEERS have a ministerial duty to enforce all the provisions of the CBA on behalf of the union membership. However, perhaps because so many on-call Deputy Sheriffs are either retired managers or are politically well connected with Sheriff's management, NAMED DEFENDANT RACKETEERS, in conspiracy with Steve Lakich and Terry Schutten, have refused to enforce the CBA provisions regarding the collection of union dues from "on-call" employees working for the Sheriff's Department in job classes represented by the Union.

236.  This violates the "fair share" language in the CBA and specific sections of the CBA relating to the collection of dues and ORT and UTO funds from "on-call" employees in represented classes.

237.  This permanent and on-going damage to the corporation's fiscal condition contributes to the "pro-management" perception of the NAMED DEFENDANT RACKETEERS.

238. It also helps explain the preferential treatment and early promotions of the NAMED DEFENDANT RACKETEERS by Sheriff McGinness.

239. The failure to collect and transmit these dues and other funds to the Union was done under color of authority in violation of the Hobbs Act.

240. **PREDICATE ACTS 15 through 33 (a thing of value received by each defendant primarily)** - 29 U.S.C. § 186, which prohibits any person involved with an employer or labor organization to accept or receive any money or other thing of value.

241. "Thing of value" " . . . is <u>not</u> limited to cash or tangible property." [emphasis added] *Conditioned Ari & Refrig. Co. v. Plumbing & Pipe Fit, Etc.*, 159 F.Supp. 887, 899 (S.D. Cal. 1956) aff'd 253 F.2d 427 (9th Cir. 1958).

242. "Similarly, ... courts have broadly construed the property element of extortion.... [to include] tangible as well as *intangible* property...." [emphasis added] *Petrochem Insulation v. Trade Council*, 137 L.R.R.M. 2199, 2196 (N.D. Cal. 1991).

243. The County of Sacramento and Sheriff McGinness received a thing of value in the form of cost reductions (elimination of higher paying jobs through civilianization discretion) and the ability to terminate employees more cheaply and swiftly by replacing the system of checks and balances incorporated into the civil service appeals process with a new scheme more to management's liking.

244. Mastagni also received a benefit. While continuing to receive an undiminished monthly retainer, his firm has to perform substantially less work (i.e. the substitution of a "one bite at the apple" appeals process). It was no accident that Mastagni's agent, who served as chief negotiator for the most recent CBA negotiations, was intimately involved in the fraudulently procured CBA.

245. Defendant COAUETTE was promoted to Sergeant, in January, 2007, in return for his participation in delivering a fraudulently procured CBA for Sheriff McGinness and the County.

246. Defendant ROBERTS was promoted to Records Officer II (Supervisor) in March, 2007, in return for her participation in delivering a fraudulently procured CBA for Sheriff McGinness and the County.

247. Defendant POLETE was promoted to Sergeant, in April, 2007, in return for his participation in delivering a fraudulently procured CBA for Sheriff McGinness and the County.

248. All NAMED DEFENDANT RACKETEERS received payments of money stolen from SCDSA trust accounts, delivered by Lakich, Schutten, and McGinness, to compensate NAMED DEFENDANT RACKETEERS for initially delivering the current fraudulently procured CBA, and to keep the CBA from being challenged in court or by arbitration.

249. **PREDICATE ACT 34:** (Hobbs Act 18 U.S.C. § 1951, threat of violence, robbery under color of authority) Cal.Penal Code § 211: "Robbery is the felonious taking of personal property *in the possession of another*, from his person or immediate presence, and *against his will*, accomplished by means of force or *fear*."

250. Hobbs Act 18 U.S.C. § 1951 prohibits actual or attempted robbery or extortion affecting interstate or foreign commerce.

251. Section 1951 also proscribes conspiracy to commit robbery or extortion without reference to the conspiracy statute at 18 U.S.C. § 371.

252. The extortion offense reaches the obtaining of property "under color of official right" by public officials as well.

253. NAMED DEFENDANT RACKETEERS conspired to use threatened or actual force, violence, or fear to obtain from Plaintiffs Barnsdale and Weitnauer pay that was lawfully theirs, and property in the possession and control of Plaintiff Blevins, and NAMED DEFENDANT RACKETEERS acquired the property of Plaintiffs (physically taking the jobs from Plaintiffs by threat of force under color of authority, thus acquiring property rights which were not NAMED DEFENDANT RACKETEERS to acquire.).

254. On Monday, June 18, 2007, at approximately 0750 hours, Defendants POLETE, RODRIGUEZ, MEGGERS, and Sacramento County Deputy Sheriff Drew Wyant (unnamed co-conspirator), Sacramento County Deputy Sheriff Chris Guerrero (unnamed co-conspirator), Sacramento County Deputy Sheriff Jason Cvitanov (unnamed co-conspirator), and Marlin Weinberger (unnamed co-conspirator), who is a sworn on-call reserve deputy sheriff, approached SCDSA headquarters with privately owned vehicles displaying official placards signed by Sheriff McGinness, stating "OFFICIAL BUSINESS, Sacramento County

36

1    Sheriff's Department, Sheriff John McGinness", followed by a Sheriff's Department seal

2    and McGinness' signature. Attached hereto are true and correct copies of photographs taken

3    by Plaintiff CODY BLEVINS of the vehicles and their license plates at the time of approach

4    marked as **Exhibit "6"**

5  255.  Standing outside of SCDSA headquarters was a private security guard, Plaintiff CODY

6    BLEVINS.

7  256.  Mr. BLEVINS was engaged in an occupation affecting interstate commerce.

8  257.  Mr. BLEVINS had a property interest in the his legal and gainful employment as a

9    contractual security officer, hired by SCDSA and President FISK.

10  258.  As they approached, all dressed in street clothes, several of the individuals displayed

11    firearms on their hips in plain view along with an official Deputy Sheriff Badge worn

12    directly adjacent to each firearm.

13  259.  These individuals surrounded Mr. BLEVINS with the specific intent to cause fear and

14    apprehension through the threat of force under color of authority.

15  260.  Based upon information and belief, Weinberger removed his Sheriff's Identification from his

16    wallet, flashed it at Mr. BLEVINS, along with a firearm attached to his hip in plain view, and

17    demanded that Mr. BLEVINS hand over his keys to the SCDSA declaring it was "official

18    police business." POLETE, standing in front of BLEVINS, also displayed his firearm and

19    badge in plain view.

20  261.  Because these individuals pulled up in privately owned vehicles displaying "Official

21    Business" placards, displayed firearms in such a manner that it was threatening, and

22    displayed official badges under color of authority, Mr. BLEVINS, under threat of force under

23    color of authority, handed over the (washroom) keys that he was entrusted to guard. Such

24    relinquishment was against his will.

25  262.  In addition, Mr. BLEVINS was forced to leave the location of his employment, depriving

26    him of work since he was placed in fear of returning to his place of business.

27  263.  Removal of property in Mr. BLEVINS exclusive control and trust against his will under both

28    threat of force and under color of authority constitutes both Robbery and Hobbs Act

    violations by all of these individuals, and conspiracy to commit same.

264.   Plaintiff JOY BARNSDALE, who was seated in her car in the parking lot, had Mr. BLEVINS and the armed peace officers in plain sight and saw them rob Mr. BLEVINS of his keys under color of authority.

265.   They were joined immediately after they entered the building by GREG COAUETTE and ANTHONY COSTANZO (both also suspended from SCDSA office on June 1, 2007, for misconduct).

266.   **PREDICATE ACT 35:** Hobbs Act 18 U.S.C. § 1951.

267.   Plaintiff JOY BARNSDALE was hired by President FISK to work as the SCDSA's general secretary, a paid position.

268.   While she approached work at the SCDSA headquarters, she witnessed the armed defendants and co-conspirators removing Mr. BLEVINS' keys under color of authority and threat of force with firearms.

269.   She further witnessed them breaking into the locked SCDSA headquarters, her lawful place of employment which affects interstate commerce.

270.   Upon witnessing the crime, several of these individuals established eye contact with JOY BARNSDALE, and turned and faced her in an aggressive and threatening manner.

271.   Because these RACKETEERS were armed under color of authority, and were breaking into SCDSA headquarters, and because of the look they gave her upon her witnessing of the crimes that had been committed, as a reasonable woman in that circumstance, JOY BARNSDALE did not go to work because of the threat of force and because she was afraid.

272.   The specific intent of NAMED DEFENDANT RACKETEERS was to use the threat of force under color of authority to seize control of SCDSA property, and to remove all employees and contractors of the SCDSA from the premises.

273.   Plaintiff JOY BARNSDALE also witnessed SCDSA President FISK being forced outside the SCDSA offices onto the sidewalk under threat of force.

274.   This act affected Plaintiff JOY BARNSDALE'S gainful employment, and caused her economic harm as she can no longer work for Defendant SCDSA.

275.   As Plaintiff JOY BARNSDALE has a property interest in her job, NAMED DEFENDANT RACKETEERS took her job away under threat of force and color of authority.

38

276.   **PREDICATE ACT 36:** Hobbs Act 18 U.S.C. § 1951.

277.   On June 18, 2007 Plaintiff President FISK was forcefully removed from his position as President of the SCDSA under threat of dangerous and deadly force, and under color of official authority by NAMED DEFENDANT RACKETEERS and unnamed co-conspirators.

278.   These NAMED DEFENDANT RACKETEERS and co-conspirators acted in concert to use force, and threat of force upon the person of President FISK, to gain control of SCDSA property, abusing their powers as peace officers. They did so by breaking into the Union office and forcing President FISK out of the building.

279.   This act was sanctioned by Sheriff McGinness as his signature appears on the official placards used to effectuate the hijacking of the SCDSA office.

280.   In addition, after this unlawful use of force, Sheriff McGinness refused to investigate, even though a detailed internal affairs complaint was lodged.

281.   This conspiracy has injured the employment and property interests of the Plaintiffs, and therefore the SCDSA has been injured as well.

282.   **PREDICATE ACT 37:** Hobbs Act 18 U.S.C. § 1951; Burglary P.C. 459, 418 (entry without legal process), 182 (conspiracy).

283.   NAMED DEFENDANT RACKETEERS breached a locked door of the SCDSA headquarters, under color of authority and law, with the intent to remove funds and assets from Defendant SCDSA.

284.   NAMED DEFENDANT RACKETEERS have remained in control of the SCDSA building with loaded firearms and government issued badges, and continue to occupy property to which they have no rightful claim, and they remain in control under threat of force and color of law.

285.   NAMED DEFENDANT RACKETEERS have prevented President FISK from occupying said building to perform his work, and to serve the general membership.

286.   NAMED DEFENDANT RACKETEERS have prevented Plaintiffs from meeting in the SCDSA building to conduct lawful Union business, and prevented SCDSA employee Plaintiffs from receiving their daily wages under threat of force and color of authority.

287.   **PREDICATE ACT 38: Wire Fraud.**

288.   NAMED DEFENDANT RACKETEERS have published a website http://www.scdsa.org/ under the false pretense that this website is authorized by the SCDSA.

289.   This website is in fact controlled and maintained by NAMED DEFENDANT RACKETEERS, even though President FISK is the <u>only</u> authorized "spokesperson" of SCDSA.

290.   President FISK has not authorized this website, nor does he have any access to it.

291.   This website publishes false and misleading information, with the specific intent to misrepresent to the general SCDSA membership what is going on within the Union.

292.   The false information and innuendo published by wire includes misleading and false accounting of the extent to which SCDSA funds are being depleted by NAMED DEFENDANT RACKETEERS for their own personal use, specifically to provide legal counsel to defend their *ultra vires* and illegal actions.

293.   NAMED DEFENDANT RACKETEERS are also publishing information that falsely represents that President FISK is somehow authorizing all actions by NAMED DEFENDANT RACKETEERS.

294.   The SCDSA general membership has been lied to and mislead regarding the fiscal status of the SCDSA, including illegal financial transactions between NAMED DEFENDANT RACKETEERS, Mastagni, and employees of the County of Sacramento.

295.   As a result, the membership has been harmed by relying on this false and misleading information by allowing their continued dues money to be illegally extracted from their paychecks, and entrusted to unnamed co-conspirator employees of the County of Sacramento, who then, in turn, transfer these funds to the dominion and control of NAMED DEFENDANT RACKETEERS.

296.   As noted on the website, the current leadership of SCDSA is falsely represented as President FISK's picture and name do not appear on the SCDSA's leadership roster.  Attached hereto as **Exhibit "7"** is a true and correct copy of the relevant portion of the website publishing false information through the wire with the intent to deceive.  This website missappropriates the SCDSA's name and trademark as it is not published by President Fisk, the sole and

1    exclusive spokesperson of the SCDSA or his authorized agents, and thus, the SCDSA's good

2    name has been pirated.

3  297.    On this website, NAMED DEFENDANT RACKETEERS state that they represent the

4    members in "discipline matters" and "advance the interests of its members within the

5    Department." Attached hereto as **Exhibit "8"** is a true and correct copy of the relevant

6    portion of the website publishing false information through the wire with the intent to

7    deceive.

8  298.    This statement is false as civil service appeal rights were eliminated, allowing the County to

9    swiftly and decisively discipline members without previously guaranteed access to the

10    courts.

11  299.    Allowing civilianization of Security and Corrections Divisions personnel does not advance

12    the interests of the SCDSA general membership, so this statement is false.

13  300.    Also periodically published on this website are communications to the general membership

14    that falsely represent the status of President FISK and his lawful authority to act as SCDSA

15    President.

16  301.    Also periodically published on this website are letters to the membership that falsely

17    represent the financial status of the SCDSA.

18  302.    Also periodically published on this website are letters to the membership that falsely

19    represent that NAMED DEFENDANT RACKETEERS did not intentionally mislead the

20    membership with the Contract-at-a-Glance, which helped facilitate the loss of contractually

21    guaranteed rights in the now fraudulently ratified CBA.

22  303.    Continuously published on this website are letters and statements of fact that intentionally

23    omit critical information to the members that would allow the SCDSA membership to make

24    informed decisions, such as omitting that President FISK is the highest elected official, the

25    facts and circumstances involving CBA ratification, and the NAMED DEFENDANT

26    RACKETEERS' unlawful removal of President FISK from office.

27  304.    NAMED DEFENDANT RACKETEERS are a group of individuals associated in fact with

28    others in the conspiracy for the purpose of engaging in certain specified racketeering

    activities, and conducting and participating in the affairs of an enterprise engaged in

1  interstate commerce by and through a pattern of said racketeering activities, in violation of

2  18 U.S.C. § 1962.

3  305.  This conduct has caused harm to the SCDSA general membership and to Plaintiffs, in their

4  representative and individual capacities, including, but not limited to, the disruption of Union

5  services, conversion of Union funds for personal gain, loss of civil service rights and the

6  impending loss of deputy sheriff positions under the falsely procured CBA.

7  306.  As a direct and proximate result of NAMED DEFENDANT RACKETEERS conduct,

8  Plaintiffs have been damaged according to proof.

9  307.  Plaintiffs request interim injunctive relief, including a restraining order to prohibit violence

10  and further bad acts.

11

**SECOND CAUSE OF ACTION**
**42 U.S.C. 1983**

12  (Plaintiffs FISK, BLEVINS, JOY BARNSDALE, and WILLIAM BARNSDALE)

13  308.  All averments contained in this pleading herein are incorporated in their entirety, as though

14  fully set forth below.

15  309.  NAMED DEFENDANT RACKETEERS conspired to violate the civil rights of Plaintiffs.

16  310.  On Monday, June 18, 2007, at approximately 0750 hours, Defendants POLETE,

17  RODRIGUEZ, MEGGERS, and Sacramento County Deputy Sheriff Drew Wyant (unnamed

18  co-conspirator), Sacramento County Deputy Sheriff Chris Guerrero (unnamed co-

19  conspirator), Sacramento County Deputy Sheriff Jason Cvitanov (unnamed co-conspirator),

20  and Marlin Weinberger (unnamed co-conspirator), who is a sworn on-call Deputy Sheriff,

21  approached SCDSA headquarters with privately owned vehicles displaying placards signed

22  by Sheriff McGinness, stating "OFFICIAL BUSINESS, Sacramento County Sheriff's

23  Department, Sheriff John McGinness", followed by a Sheriff's Department official seal and

24  signature.

25  311.  Standing outside of SCDSA headquarters was a private security guard (CODY BLEVINS)

26  who was in his early 20s at the time the above named individuals approached.

27  312.  Mr. BLEVINS was engaged in an occupation affecting interstate commerce.

28  313.  Mr. BLEVINS had a property interest in his legal and gainful employment as a contracted

security officer, hired by SCDSA and President FISK.

314.   As they approached, all dressed in street clothes, several of the individuals displayed firearms on their side in plain view along with an official Deputy Sheriff Badge worn directly adjacent each firearm.

315.   These individuals surrounded Mr. BLEVINS with the specific intent to cause fear and apprehension through the threat of force under color of authority.

316.   Based upon information and belief, POLETE removed his badge, flashed it at Mr. BLEVINS along with a firearm attached to his hip in plain view and demanded that Mr. BLEVINS hand over his keys to the SCDSA as it was "official police business".

317.   Because these individuals pulled up in privately owned vehicles displaying "Official Business" placards, displayed firearms in such a manner that it was threatening, and displayed official badges under color of authority, Mr. BLEVINS, under threat of force under color of authority handed over the keys that he was entrusted to guard. Said relinquishment was against his will.

318.   In addition, Mr. BLEVINS was forced to leave the location of his employment, depriving him of work since he was placed in fear of returning to his place of business.

319.   Plaintiff JOY BARNSDALE, who was seated in her car in the parking lot, had Mr. BLEVINS and the armed peace officers in plain sight and saw them rob Mr. BLEVINS of his keys under color of authority.

320.   They were joined after they entered the building by GREG COAUETTE and ANTHONY COSTANZO (both also suspended from SCDSA office on June 1, 2007, for misconduct).

321.   Plaintiff JOY BARNSDALE was hired by President FISK to work as the SCDSA's general secretary, a paid position.

322.   While she approached work at the SCDSA headquarters, she witnessed the armed defendants and co-conspirators removing Mr. BLEVINS' keys under color of authority and threat of force with firearms.

323.   She further witnessed them breaking into the locked SCDSA headquarters, her lawful place of employment which affects interstate commerce.

324.   Upon witnessing the crime, several of these individuals established eye contact with JOY BARNSDALE, and turned facing her in an aggressive and threatening manner.

325.   Because these RACKETEERS were armed under color of authority, because they were breaking into SCDSA headquarters, and because of the look they gave her upon witnessing the crime being committed, as a reasonable woman in that circumstance, JOY BARNSDALE did not go to work because of the threat of force and because she was afraid.

326.   Plaintiff JOY BARNSDALE also witnessed SCDSA President FISK being forced out of the SCDSA offices onto the sidewalk under threat of force..

327.   This act affected Plaintiff JOY BARNSDALE gainful employment, and caused her economic harm as she can no longer work for Defendant SCDSA.

328.   As Plaintiff JOY BARNSDALE has a property interest in her job, NAMED DEFENDANT RACKETEERS took her job away under threat of force and color of authority.

329.   Plaintiff President FISK was forcefully removed from his station as President of the SCDSA under threat of dangerous and deadly force, and under color of official authority by NAMED DEFENDANT RACKETEERS.

330.   These NAMED DEFENDANT RACKETEERS conspired to use force, and threat of force upon the person of President FISK, to gain control of SCDSA property, abusing their powers as peace officers.

331.   This act was sanctioned by Sheriff McGinness as his signature appears on the official placards used to effectuate the hijacking of the SCDSA office.

332.   In addition, after this unlawful use of force, Sheriff McGinness refused to investigate, even though an internal affairs complaint was lodged.

333.   This conspiracy has injured the business and property interests of the Plaintiffs, and therefore, the SCDSA has been injured.

334.   NAMED DEFENDANT RACKETEERS have breached a locked door of the SCDSA headquarters, under color of authority and law, with the intent to remove funds and assets from Defendant SCDSA.

335.   NAMED DEFENDANT RACKETEERS have remained in control of the SCDSA building with loaded firearms and government issued badges, and continue to occupy property to which they have no rightful claim, and remain in control under threat of force and of color of law.

336.   NAMED DEFENDANT RACKETEERS have prevented President FISK from occupying said building to perform his work, and to serve the general membership of the Union.

337.   NAMED DEFENDANT RACKETEERS have prevented Plaintiffs from meeting in the SCDSA building to conduct lawful union business, and prevented them from receiving and/or earning their daily wages under threat of force and color of authority.

338.   Plaintiffs have been deprived of their freedom of travel in that NAMED DEFENDANT RACKETEERS have occupied SCDSA headquarters, armed, and cloaked under color of authority.

339.   Plaintiff FISK has been deprived right to travel freely, right to lawfully occupy the office and building of his paid employment, right to his personal affects and property in his office.

340.   Plaintiff FISK was removed from his place of employment under color of authority and threat of force.

341.   Plaintiff FISK has been deprived of his property and liberty interest in his job.

342.   Plaintiff JOY BARNSDALE has been precluded from entering the building of her employment by threat of force and color of authority.

343.   She has been deprived of her property and liberty interest in her job.

344.   Plaintiff CODY BLEVINS has been precluded from entering the building of his employment by threat of force and color of authority.

345.   He has been deprived of his property and liberty interest in his job.

346.   Because Plaintiff WILLIAM BARNSDALE cannot occupy the SCDSA building because of seizure under color of authority and threat of force, Plaintiff BARNSDALE has been deprived of his property and liberty interest in his job.

347.   Plaintiffs freedom and liberty to speak privately and to hold private assemblies for lawful purposes and in a lawful manner without governmental interference or hindrance is a protected right which has been violated.

348.   Plaintiffs right to intrastate travel (which includes intra-municipal travel) is a basic human right protected by the United States and California Constitutions as a whole.

349. Such a right is implicit in the concept of a democratic society and is one of the attributes of personal liberty under common law. See 1 Blackstone, Commentaries 134; U.S.Const., Art. IV, s 2 and the 5th, 9th and 14th Amends.; Cal.Const. Art. I, s 7(a) and Art. I, s 24.

350. "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....." 42 U.S.C. § 1983.

351. Plaintiffs have been deprived of their Constitutional rights under the 1st, 4th, 5th, 9th and 14th Amendments to the U.S. Constitution.

352. As a direct and proximate result of NAMED DEFENDANT RACKETEERS conduct, Plaintiffs have been damaged according to proof.

353. Plaintiffs request interim injunctive relief, including a restraining order to prohibit future violence.

### THIRD CAUSE OF ACTION
(Plaintiffs FISK, in his official capacity as President of the SCDSA)
### CONVERSION

354. All averments contained in this pleading herein are incorporated in their entirety, as though fully set forth below.

355. As the trustee of SCDSA's funds, Plaintiff FISK has a fiduciary duty to maintain said funds for SCDSA use.

356. NAMED DEFENDANT RACKETEERS have misappropriated Union funds for their own personal use and enjoyment, to the detriment of SCDSA and its members.

357. As custodian of these funds as the highest elected official, President FISK seeks a Court order for the return of all funds.

358. As a direct and proximate result of NAMED DEFENDANT RACKETEERS conduct, Plaintiff, as custodian, has been damaged according to proof.

359. Plaintiff requests interim injunctive relief, including a restraining order to prohibit future piracy of funds.

**FOURTH CAUSE OF ACTION**
(Plaintiffs FISK, in his official capacity as President of the SCDSA)
**BARRING AND/OR REMOVING NAMED DEFENDANT RACKETEERS (PREVIOUSLY OFFICERS AND DIRECTORS) FROM OFFICE California Corporations Code § 7223**

360. All averments contained in this pleading herein are incorporated in their entirety, as though fully set forth below.

361. On Friday, April 20, 2007, prior to the filing of this pleading with the Court, the proposed demand for relief was served on NAMED DEFENDANT RACKETEERS.

362. After the Court returned President FISK back to the Presidency, Lakich, Schutten, and McGinness were public officials who by color of their office, station and trust, took control of money that was not due to them for the performance of their official duties.

363. This money was thereafter transferred to the secret bank accounts established by NAMED DEFENDANT RACKETEERS.

364. Based upon NAMED DEFENDANT RACKETEERS' repeated past acts and already announced future intentions, it is necessary for the Court to intervene at this point, as is contemplated under the Corporation's Code authority for the Court to compel the performance of ministerial and other mandatory duties and obligations by Officers and Directors of California non-profit mutual benefit corporations.

365. NAMED DEFENDANT RACKETEERS' conduct will continue if they are allowed to retain control over SCDSA property.

366. Even as this Pleading was being prepared, the NAMED DEFENDANT RACKETEERS' have continued to pirate SCDSA funds for their own personal use, despite the recall of each of the NAMED DEFENDANT RACKETEERS on July 13, 2007. See **Exhibit "5"**.

367. NAMED DEFENDANT RACKETEERS', without proper authority, continue to utilize Defendant SCDSA's treasury to accomplish and defend their personal financial agenda to the detriment of the Defendant SCDSA corporation and its membership, whose dues are being misused against their own interest.

368. The conduct of NAMED DEFENDANT RACKETEERS' was intended to silence President FISK from communicating the Civilianization of Sworn Positions and the Elimination of Civil Service Appeals issues which were included in the final CBA, but were not disclosed to the SCDSA general membership prior to the ratification vote (see 2006 contract-at-a-glance,

47

1  which is  a summary of the significant issues of a proposed CBA, attached hereto as **Exhibit**

2  **"2"**, the **AGREEMENT BETWEEN COUNTY OF SACRAMENTO AND**

3  **SACRAMENTO COUNTY DEPUTY SHERIFFS' ASSOCIATION COVERING ALL**

4  **EMPLOYEES IN THE NON-SUPERVISORY LAW ENFORCEMENT UNIT - 2006-**

5  **11** (i.e. hereinafter "CBA"), **Exhibit "3"** The secret CBA provisions were not revealed until

6  after Defendant SCDSA Board of Directors and Officers had completed and counted the

7  CBA ratification mail-out election (i.e. approval of the final CBA by the SCDSA general

8  membership per SCDSA By-Laws Article IV, Section 2) and destroyed the ballots, thereby

9  frustrating any attempted recount of the ballots.

10  369.  NAMED DEFENDANT RACKETEERS, by virtue of their positions, had an affirmative

11  duty to present all significant issues contained within the proposed CBA so that the SCDSA

12  general membership could make an informed decision prior to casting their vote to either

13  accept or reject the proposed CBA.

14  370.  NAMED DEFENDANT RACKETEERS had an affirmative duty to disclose the proposed

15  civilianization of current sworn employee jobs and the elimination of appeals of employer

16  imposed disciplinary actions (including all subsequent appeals to the Courts), both basic

17  fundamental bargained rights of SCDSA members.

18  371.  NAMED DEFENDANT RACKETEERS breached their duty to disclose the proposed

19  civilianization of current sworn employee jobs and the elimination of appeals of employer

20  imposed disciplinary actions (including all subsequent appeals to the Courts) both basic

21  fundamental bargained rights of SCDSA members.

22  372.  NAMED DEFENDANT RACKETEERS had intentionally or recklessly failed to disclose the

23  proposed civilianization of current sworn employee jobs and the elimination of appeals of

24  employer imposed disciplinary actions (including all subsequent appeals to the Courts) both

25  basic fundamental bargained rights of SCDSA members.

26  373.  NAMED DEFENDANT RACKETEERS knew, or should have known, that they had a duty

27  to disclose the proposed civilianization of current sworn employee jobs and the elimination

28  of appeals of employer imposed disciplinary actions (including all subsequent appeals to the

Courts) both basic fundamental bargained rights of SCDSA members.

374. Such failure to disclose the proposed civilianization of current sworn employee jobs and the elimination of appeals of employer imposed disciplinary actions (including all subsequent appeals to the Courts), both basic fundamental bargained rights of SCDSA members, is a breach of NAMED DEFENDANT RACKETEERS' duty to the SCDSA general membership.

375. Such failure to disclose the proposed civilianization of current sworn employee jobs and the elimination of appeals of employer imposed disciplinary actions (including all subsequent appeals to the Courts) both basic fundamental bargained rights of SCDSA members satisfies the **elements of fraud** on the part NAMED DEFENDANT RACKETEERS.

376. Such failure to disclose the proposed civilianization of current sworn employee jobs and the elimination of appeals of employer imposed disciplinary actions (including all subsequent appeals to the Courts) both basic fundamental bargained rights of SCDSA members satisfies the **elements of fraud in the inducement** on the part NAMED DEFENDANT RACKETEERS.

377. Such failure to disclose the proposed civilianization of current sworn employee jobs and the elimination of appeals of employer imposed disciplinary actions (including all subsequent appeals to the Courts) both basic fundamental bargained rights of SCDSA members satisfies the **elements of material misrepresentation** on the part NAMED DEFENDANT RACKETEERS.

378. Under the custom, practice and usage of Defendant SCDSA, this type of written summarization of significant CBA provisions is always made available to the SCDSA general membership prior to any CBA ratification vote.

379. Under the custom, practice and usage of Defendant SCDSA, this type of written summarization of significant CBA provisions always contains all material facts and substantive changes to the CBA, and this information is always made available to the SCDSA general membership prior to any CBA ratification vote.

380. Had President FISK not been so silenced by the actions of Defendant SCDSA Board of Directors and Officers, President FISK would have recommended a "No" vote to the SCDSA general membership on the question of ratification of any proposed CBA that included the

1    employer's right to civilianize sworn employee jobs and the elimination of Civil Service

2    appeals of employer imposed disciplinary actions (and all subsequent appeals to the Courts),

3    both of which involve basic fundamental bargained rights of SCDSA members which should

4    not be bargained away without full disclosure to the ultimate internal SCDSA authority

5    regarding approval of the CBA, the SCDSA general membership.

6    381.   After President FISK was initially temporarily suspended from the office of SCDSA

7          President, a Member of Defendant SCDSA Board of Directors advised the other Board

8          Members and Officers of the above requirements, but to no avail.

9    382.   One of the main purposes of the SCDSA is to negotiate wages, hours and other terms and

10         conditions of employment for its members.

11   383.   Pursuant to Article V, Section 1 of the SCDSA Constitution, the President alone is the

12         "spokesperson" of the Association.

13   384.   During contract negotiations, President FISK, who by virtue of his position is the chief

14         negotiator for the SCDSA, was improperly suspended from his office by unauthorized (i.e.

15         *ultra vires*) actions of the NAMED DEFENDANT RACKETEERS which violate the

16         SCDSA's own governing documents, Robert's Rules of Order.

17   385.   Defendant SCDSA is supposed to be dedicated to negotiating the best CBA possible for its

18         members.

19   386.   NAMED DEFENDANT RACKETEERS' purpose in removing President FISK was so that

20         the unannounced key contract terms would not be made timely known to the SCDSA general

21         membership (i.e. the "Society" under Robert's Rules of Order).

22   387.   Attached hereto as **Exhibit "2"**, is a true and correct copy of the SCDSA Ballot Summary

23         and Analysis (i.e. "2006 Contract-At-A-Glance") that President FISK all other SCDSA

24         members of the SCDSA received in the mail with the Contract Accept/Decline ballot.

25   388.   These documents are completely devoid of any mention of losing Civil Service Appeal rights

26         and the giving to the Sheriff the prerogative to civilianize sworn positions in Correctional

27         Services.

28   389.   Purposeful exclusion of key contract issues constitutes a fraud on the membership.

390.    Had President FISK not been improperly suspended as President and chief negotiator of the SCDSA, President FISK would never have permitted the giving away of Civil Service protection and the civilianization of sworn positions in Correctional Services absent an informed vote of the General Membership, thereby rendering a substantial service to his union as an institution and to all of its members.

391.    The SCDSA has been highly successful in the courts when it comes to Civil Service issues regarding discipline, and such a stellar track record is precisely why this "right" would never have been given away by the general membership as part of the ratification of a collective bargaining agreement.

392.    Secondly, the substitution of non-sworn personnel into previously sworn positions means less P.O.S.T. certified trained officers available as back-up, and presents a serious risk to the safety and well-being of sworn members working in Corrections Services, and to the members of the public when incarcerated in Sheriff's Department Facilities.

393.    Per Article IV, Section 2, of the SCDSA By-Laws, "the voting membership shall have the final authority to accept the agreement [e.g. the CBA]".

394.    Prior to June 28th, 2007, NAMED DEFENDANT RACKETEERS advertised via electronic email and fax that a general meeting was to be held on June 28th, 2007, falsely representing that this meeting was called by the only person authorized to call such a meeting, the President, pursuant to Article VIII of the SCDSA Constitution (Note: "special" meetings can also be called by petition signed by at least 150 members).

395.    NAMED DEFENDANT RACKETEERS conducted this meeting under false pretenses, fraudulently misrepresenting the office of the President, with the intent to deceive the members into believing that all *ultra vires* acts were actually pursuant to SCDSA Constitution and By-laws.

396.    Under the CBA, President FISK terminated the two full time release officers (Defendants POLETE and MEGGERS) who were involved in *ultra vires* acts (including breach of fiduciary duty) and replaced them.

397.    Since approximately June 1, 2007, neither one of these individuals, nor any other individual NAMED DEFENDANT RACKETEERS, were authorized to receive funds from the

51

1  SCDSA's members' treasury. Under Article IV, Section 8, any Board member who misses 3

2  scheduled meetings without cause forfeits their office, and is replaced by Presidential

3  appointment.  There are a total of eight former Board Member Defendants who were

4  removed pursuant to this provision.

5  398.  As of June 1, 2007, President FISK has the absolute sole and exclusive authority to remove a

6  total of twelve board members without any form of review by any individual or entity,

7  especially the County of Sacramento.  (Note: the President also sits as "Ex officio" member

8  of the Board of Directors under Article IV, Section 3.)

9  399.  President FISK has removed and/or replaced a total of 12 Board member defendants (and

10  also the two full time release officers) under his sole and exclusive power as President of

11  SCDSA.

12  400.  Conspiring with County of Sacramento officials Sheriff McGinness, Lakich and Schutten,

13  NAMED DEFENDANT RACKETEERS had those individuals publish through the U.S.

14  Mail System and electronic communication systems (i.e. fax and email), letters stating that

15  NAMED DEFENDANT RACKETEERS were authorized to conduct SCDSA business,

16  knowing these statements to be false with the specific intent to defraud the SCDSA general

17  membership.

18  401.  Those recognized by the County also happen to be the same NAMED DEFENDANT

19  RACKETEERS who allowed two critical provisions of the CBA to be passed WITHOUT

20  notice to the SCDSA members.  As noted on the CBA, the "Vice-President" signed the CBA,

21  and not the duly elected President.  This is additional evidence of a motive to defraud the

22  membership while the President was kept from his duties with the support of the County

23  employer who benefitted from the contract fraud.

24  402.  Article V, Section 1, dealing with Presidential powers, specifically states that "[t]he President

25  shall coordinate and manage the organization.  The President shall exercise powers not

26  specifically excluded in the Constitution and By-Laws.  The President shall be the

27  spokesperson for this organization."  Nevertheless, the County has been dealing exclusively

28  with the Vice-President (who is suspended by the President's powers) since it is the

52

1    Vice-President who orchestrated the current fiasco with the blessing and assistance of the

2    County.

3  403.   Even though the SCDSA Constitution and CBA are replete with mandatory language

4         granting the President sole and exclusive powers on the management and operation of the

5         union, the NAMED DEFENDANT RACKETEERS have ignored each and every

6         Presidential act, and instead continuously and systematically exercised domination and

7         control over the day-to-day operations of the Union even after they were suspended anan

8         subsequrntly recalled from office.

9  404.   Plaintiffs have been harmed as follows:

10        a.    Funds from Defendant SCDSA treasury have been misappropriated through the use

11              of a political engineering scheme which has no beneficial interest to Plaintiffs,

12              Defendant SCDSA and its members.

13        b.    Funds from Defendant SCDSA treasury have been misappropriated by NAMED

14              DEFENDANT RACKETEERS for their own self interest.

15        c.    Funds from Defendant SCDSA treasury are continuously being misappropriated by

16              NAMED DEFENDANT RACKETEERS for their own self interest, including

17              litigation costs associated with *ultra vires* and other illegal acts.

18        d.    President FISK's elected duties and obligations as elected President of the SCDSA

19              have been obstructed, delayed or impeded by NAMED DEFENDANT

20              RACKETEERS.

21        e.    President FISK's duty and obligations as chief labor negotiator have been impeded

22              by NAMED DEFENDANT RACKETEERS and un-named co-conspirators, thereby

23              preventing President FISK from rendering a substantial service to Plaintiffs,

24              Defendant SCDSA and its members.

25        f.    The membership of SCDSA has been deprived of President FISK's leadership,

26              counsel, and guidance.

27        g.    The Loss of Civil Service Rights.

28        h.    The impending Loss of Jobs through civilianization of Security and Correctional

              Services Divisions.

1        i.     The improper vote count on the ratification of the CBA.

2   405.   Both the suspension of President FISK from office and expulsion of President FISK from

3         membership in Defendant SCDSA violated the rights of the class of members who elected

4         President FISK to office (i.e. Plaintiffs and the rest of general membership).

5   406.   Said suspension from the Presidency negatively impacts the general membership of

6         Defendant SCDSA with regard to the day-to-day management of labor relations issues

7         between the NSLEU and the County of Sacramento for which President FISK was elected.

8   407.   President FISK's removal from office in violation of authorized recall and/or expulsion

9         procedures has caused irreparable harm to the membership.

10  408.   The Court may set aside any vote of the NAMED DEFENDANT RACKETEERS taken

11        during the period while the President FISK was wrongfully excluded under Ca. Corp. Code §

12        7341(e).

13  409.   Mandate lies in the following instances:

14     a.    To correct an abuse in the exercise of discretion by the Defendants.

15     b.    To remove NAMED DEFENDANT RACKETEERS from office.

16     c.    To enforce a nondiscretionary duty to act on the part of Defendant SCDSA.

17     d.    Mandate lies since NAMED DEFENDANT RACKETEERS have a clear, present and

18          usually ministerial duty and Plaintiffs President FISK has a clear, present and

19          beneficial right to performance of that duty.

20     e.    California Code of Civil Procedure 1085 (a) provides:

21         A writ of mandate may be issued by **any court** to any inferior tribunal, **corporation,**
22         **board,** or **person,** to compel the performance of an act which the law specially
            enjoins, as a duty resulting from an office, trust, or station, or to compel the
23         admission of a party to the use and enjoyment of a right or office to which the party is
            entitled, and from which the party is unlawfully precluded by such inferior tribunal,
24         corporation, board, or person. (Emphasis added.)

25     e.    Plaintiffs do not have a plain, speedy, and adequate remedy in the ordinary course of

26         law. "The writ must be issued in all cases where there is not a plain, speedy, and

27         adequate remedy, in the ordinary course of law. It must be issued upon the verified

28         petition of the party beneficially interested." C.C.P. § 1086.

f.    As an incidence of bringing and maintaining this proceeding, Plaintiffs have become and are personally obligated to pay attorney fees determined according to proof.

**WHEREFORE**, Plaintiffs requests that the court award:

1.    Compensatory damages according to proof.

2.    Special Damages in excess of $400,000.00

3.    Attorney fees and costs according to proof, and under RICO and 42 U.S.C. § 1983.

INJUNCTIVE RELIEF:

1.    An order to restraining the NAMED DEFENDANT RACKETEERS from having any access to funds or control of the SCDSA property or assets, and a prohibition of them entering SCDSA property.

3.    A removal and/or prohibition of NAMED DEFENDANT RACKETEERS of ever holding office in the SCDSA pursuant to Cal. Corp. Code § 7223, and named associates.

4.    Have each individual NAMED DEFENDANT RACKETEERS jointly and severally, reimburse Defendant SCDSA for all attorney's fees and costs associated with:

a.    President Steven FISK being expelled from the SCDSA membership, without a vote of the general membership.

b.    President Steven FISK being removed from office by Respondent individuals without a vote of the membership that elected him to office.

c.    Bringing this action.

5.    An order prohibiting the NAMED DEFENDANT RACKETEERS from using Defendant SCDSA funds to provide for their defense in this action, and the return of all missing Union funds (ORT, UTO as of May 27, 2007 paid to them individually, and all member's dues money transferred to them by the County employer from July 3, 2007 to the present).

6.    Issue an alternative writ of mandamus permanently removing BRANNON POLETE, ANDREW CROLEY, MARLAN MEGGERS, ADAMS, LUCIUS WINN, WAYNE EBE, JANET ROBERTS, RALPH RODRIGUEZ, SCOTT GURNABY, ANTHONY COSTANZO, BRUCE WANNER and KEVIN MICKELSON from office as a Director or Officer of Respondent SACRAMENTO COUNTY DEPUTY SHERIFFS' ASSOCIATION,

1   INC. d.b.a. SACRAMENTO COUNTY DEPUTY SHERIFFS' ASSOCIATION d.b.a.

2   SCDSA, including a prohibition from holding office for a period not less than six years.

3   7.   An Order to Show Cause why a preliminary injunction should not be entered against

4   Defendants (Former Positions) VICE PRESIDENT BRANNON POLETE, TREASURER

5   ANDREW CROLEY, ASSISTANT TREASURER MARLAN MEGGERS, SECRETARY

6   KATE ADAMS, BOARD MEMBER LUCIUS WINN, BOARD MEMBER WAYNE EBE,

7   BOARD MEMBER JANET ROBERTS, BOARD MEMBER RALPH RODRIGUEZ,

8   BOARD MEMBER SCOTT GURNABY, BOARD MEMBER ANTHONY COSTANZO,

9   BOARD MEMBER BRUCE WANNER and BOARD MEMBER KEVIN MICKELSON,

10   removing them from office.

11   8.   For judgment in favor of Plaintiffs' and against VICE PRESIDENT BRANNON POLETE,

12   TREASURER ANDREW CROLEY, ASSISTANT TREASURER MARLAN MEGGERS,

13   SECRETARY KATE ADAMS, BOARD MEMBER LUCIUS WINN, BOARD MEMBER

14   WAYNE EBE, BOARD MEMBER JANET ROBERTS, BOARD MEMBER RALPH

15   RODRIGUEZ, BOARD MEMBER SCOTT GURNABY, BOARD MEMBER ANTHONY

16   COSTANZO, BOARD MEMBER BRUCE WANNER and BOARD MEMBER KEVIN

17   MICKELSON, jointly and severally, for damages in the amount of attorney fees they

18   expended from the corporate treasury to retain counsel used to perpetuate their malfeasance,

19   for future damages incurred in the setting aside of the fraudulently procured CBA sections,

20   for costs and attorney fees expended from Defendant SCDSA's treasury to defend *ultra vires*

21   actions used to expel and/or indefinitely suspend President FISK, and other consequential

22   damages in an amount to be determined according to proof;

23   9.   For costs, litigation expenses, attorney fees pursuant to statute; and

24   10.   For such other and further relief as the court deems just and proper.

25   DATED:      August 6, 2007          LAW OFFICES OF GARY GORSKI

26

27                    By /s/ Gary W. Gorski
                         Gary Gorski
                         Attorney for Plaintiffs

28

## VERIFICATION
I, STEVEN D. FISK declare:

1

    I am the duly elected President of the SACRAMENTO COUNTY DEPUTY SHERIFFS'
2  ASSOCIATION, INC. d.b.a. SACRAMENTO COUNTY DEPUTY SHERIFFS' ASSOCIATION
d.b.a. SCDSA. I have read the foregoing complaint. The same is true and correct of my own
3  personal knowledge, except as to those matters which are therein alleged on information and belief,
and as to those matters, believe them to be true.

4

    I declare under penalty of perjury under the laws of the United States and the State of
5  California that the foregoing is true and correct.  Executed as indicated below, in Sacramento
County, California.

6

7  Date: August 6, 2007

STEVEN FISK
8  President of the SACRAMENTO COUNTY DEPUTY
SHERIFFS' ASSOCIATION, INC. d.b.a.
9  SACRAMENTO COUNTY DEPUTY SHERIFFS'
ASSOCIATION d.b.a. SCDSA.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

# EXHIBIT C

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

WILLIAM BARNSDALE, et al,

     Plaintiffs,

v.

SACRAMENTO COUNTY DEPUTY
SHERIFFS' ASSOCIATION, INC.,

     Defendants.

AND RELATED CROSSCLAIMS

CASE NO. 07-CV-01636 LKK-KJM

ORDER

On January 25, 2008, the Court issued an order (Docket No. 45) adopting the findings and recommendations of Special Master Eugene Lynch, United States District Court Judge for the Northern District of California (Retired)(Docket No. 46), and to advise the Court by February 8, 2008 of any outstanding issues that would preclude the Court from entering judgment and closing the case. Having received no opposition from the parties, and good cause appearing therefore, it is hereby ordered, adjudged and decreed as follows:

     1.     Judgment shall be, and hereby is, entered in favor of Defendants and against Plaintiffs on the Complaint filed by Plaintiffs in this case (Docket No. 1).

     2.     Judgment shall be, and hereby is, entered in favor of Cross-Defendants and against Cross-Complainant on the Cross-Complaint filed by Cross-Complainant in this case (Docket No. 7).

     3.     The election of officers and directors of the Sacramento County Deputy Sheriff's Association is validated as to all offices involved.

Judgment in a Civil Case

1   4.  The Special Master shall forthwith return the election documents to the Sacramento

2 County Deputy Sheriff's Association at the association's expense.

3   5.  Every person and entity holding funds that belong to the Sacramento County Deputy

4 Sheriff's Association shall forthwith return the funds to the association, including funds held by Union

5 Bank of California and Sacramento Credit Union.

6   IT IS SO ORDERED, ADJUDGED AND DECREED.

7

8

9   DATED: February 12, 2008

10

11

12

13           LAWRENCE K. KARLTON
14           SENIOR JUDGE
            UNITED STATES DISTRICT COURT

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Judgment in a Civil Case

# EXHIBIT D

1

LONGYEAR , O'D EA & LAVRA , LLP

2
3620 American River Drive, Suite 230
Sacramento, California 95864-5923

3
Tel: 916-974-8500 Fax: 916 974-8510

4

5
John A. Lavra, CSB No. 114533
Jeri L. Pappone, CSB No. 210104

6
Attorneys for Defendants, LOU BLANAS, as SHERIFF OF COUNTY
OF SACRAMENTO; COUNTY OF SACRAMENTO,

7
SHERIFF'S DEPARTMENT; COUNTY OF SACRAMENTO

8

9
UNITED STATES DISTRICT COURT

10
EASTERN DISTRICT OF CALIFORNIA

11
DAVID K. MEHL, LOK T. LAU,
and FRANK FLORES,

12

13
Plaintiffs,

14
vs.

15
LOU BLANAS, individually and in his
official capacity as SHERIFF OF

16
COUNTY OF SACRAMENTO;
COUNTY OF SACRAMENTO,

17
SHERIFF'S DEPARTMENT;
COUNTY OF SACRAMENTO;

18
BILL LOCKYER, Attorney General,
State of California;

19
RANDI ROSSI, State Firearms Director
and Custodian of Records

20

21
Defendants

22

CASE NO.:   CIV S-03 -2682 MCE KJM

Date:   November 16, 2007
Time:   9:00 a.m.
Ctrm:   3
Judge:  Honorable Morrison C. England, Jr.

**DECLARATION OF LOU BLANAS IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

23

24
I, LOU BLANAS, declare as follows:

25
1.      I was the Sheriff of Sacramento County from January 4, 1999 through July 26,

26
2006. Prior to becoming Sheriff, I was Undersheriff during the latter portion of the tenure of

27
Sheriff Glen Craig.

28
2.      I am familiar with the process established by the Sheriff's Department for the

1  application and issuance of Carry Concealed Weapons, CCW, permits by the Department, and as

2  described in this motion. The process in effect while I was Sheriff was developed and

3  established by Sheriff Craig in about 1996 or 1997 through input from a 8-person Citizen

4  Advisory Committee which included members from the community as well as Sheriff's

5  Department Staff. The application procedure was designed to operate with initial review of the

6  application by a SIIB Detective, followed by review and approval or denial by a 3-person

7  Sheriff's Department evaluation committee, which would not include the Sheriff.

8      3.      Under the California Penal Code § 12050 as Sheriff I have the discretion to issue

9  a CCW permit. During my tenure as Sheriff of Sacramento County, numerous individuals who

10  had contributed to my campaign for Sheriff, personally contacted me to apply for a CCW

11  permit. I informed them either that I would not approve them for a CCW permit, and/or that

12  they needed to show justification for the permit and proceed to apply with Special Investigations

13  Intelligence Bureau, SIIB, and go through the process established by the Department. Some of

14  those individuals and the circumstances of their requests are described in the Declarations of

15  Beutler, Marszal, Treadaway, Foondos, Roussos, Manikas, Dicenzo, Mace, Townsend, Mier and

16  Greenberg, submitted herewith in support of Defendants' Motion for Summary Judgment.

17      4.      Until the filing of this lawsuit by Plaintiffs, I had never heard the names of David

18  Mehl or Lok Lau, I had no knowledge of their applications, I had no involvement in the approval

19  or disapproval of their applications for CCW permits, or with respect to Mr. Lau's appeal.

20      5.      During the years that I was Sheriff, many individuals who had not contributed to

21  my campaign and who applied for CCW permits were granted CCW permits. During the years

22  from 1999 through July of 2006, 229 applicants who *had not* contributed to my campaign were

23  granted CCW permits. Attached hereto as Exhibit A is a list of individuals who *did not*

24  contribute to my campaign and were granted CCW permits during my tenure as Sheriff.

25      6.      During the time I was Chief Deputy for the Sacramento Sheriff's Department and

26

27

28

LONGYEAR, O'DEA
& LAVRA, LLP
3620 American River
Drive ~~ite 230
Sac      nto, CA
958
(916)   .8500

DECLARATION OF LOU BLANAS

Page 2

1  served on the evaluations committee for the issuance of CCW permits, as well as during the time

2  I was Undersheriff, I never approved the issuance of, issued, or authorized the issuance of a

3  CCW permit to any individual based upon their contribution to my or any other individual's

4  political campaign, or due to any personal, financial or familial relationship with the applicant.

5  Each and every permit issued or authorized to be issued by me at any time, including the time

6  during which I was Sheriff of the County of Sacramento and held the authority to issue CCW

7  permits, was based upon the establishment of good cause as set forth in the California Penal Code

8  and the criteria and policies of the Sacramento County Sheriff's Department.

9      I have personal knowledge of the forgoing and if called upon to testify thereto could

10  competently do so.

11      I declare under penalty of perjury under the laws of the State of California that the

12  foregoing is true and correct.

13      EXECUTED this 10TH day of October, 2007, at Sacramento, California.

14

15

16          LOU BLANAS

17

18

19

20

21

22

23

24

25

LONGYEAR, O'DEA &
LAVRA, LLP
3620 American River
Drive, Suite 230
Sacramento,   CA
95864
(916) 974-8500
26

27

28

**DECLARATION OF LOU BLANAS**

Page 3

# LIST OF "NON-CONTRIBUTORS" CCW PERMITS

# **DECLARATION OF LOU BLANAS**

# EXHIBIT A

**1999:**

| | | |
|---|---|---|
| 1. | Alexander, Patricia | 12/17/1999 |
| 2. | Beloberk, Nicholas | 10/12/1999 |
| 3. | Bennett, Chester | 04/01/1999 |
| 4. | Bennyhoff, John | 01/12/1999 |
| 5. | Bissell, John | 03/10/1999 |
| 6. | Bissell, Karen | 12/02/1999 |
| 7. | Bollinger, Carson | 05/20/1999 |
| 8. | Brown, Edward | 05/14/1999 |
| 9. | Brown, Roger | 02/16/1999 |
| 10. | Burns, Michael | 03/11/1999 |
| 11. | Catchot, Scott | 06/01/1999 |
| 12. | Cuevas, Edward | 11/06/1999 |
| 13. | Dagger, James | 04/08/1999 |
| 14. | Darr, James | 02/08/1999 |
| 15. | Davis, Delmar | 06/21/1999 |
| 16. | Dean, Teresa | 11/15/1999 |
| 17. | Dunn, William | 01/21/1999 |
| 18. | Eckels, Mark | 07/22/1999 |
| 19. | Frank, Paul | 06/21/1999 |
| 20. | Gervais, Marcus | 04/02/1999 |
| 21. | Harris, David | 12/01/1999 |
| 22. | Jacobs, John | 04/02/1999 |
| 23. | Jang, Mitchell | 10/29/1999 |
| 24. | Jones, James | 12/28/1999 |
| 25. | Kingsbury, John | 05/21/1999 |
| 26. | Lerner, Abraham | 03/15/1999 |
| 27. | Lewis, Roland | 06/03/1999 |
| 28. | Lewis, Wesley | 04/02/1999 |
| 29. | Linden, Bolton | 05/10/1999 |
| 30. | Malone, Christopher | 08/17/1999 |
| 31. | Mertes, William | 03/10/1999 |
| 32. | Miller, Anthony | 04/18/1999 |
| 33. | Morgan, Sheldon | 10/27/1999 |
| 34. | Morgan, Timothy | 01/26/1999 |
| 35. | Moya, Roberto | 01/21/1999 |
| 36. | Murphy, Monte | 07/12/1999 |
| 37. | Musick, Clarence | 06/01/1999 |
| 38. | Nolen, Steve | 01/12/1999 |
| 39. | Otero, Jose | 03/11/1999 |
| 40. | Prentice, Marshall | 06/14/1999 |
| 41. | Raptakis, Steve | 04/27/1999 |
| 42. | Reid, Scott | 11/01/1999 |

43. Robinson, Charles      01/21/1999
44. Robinson, Jan          01/21/1999
45. Rollofson, Julie       03/05/1999
46. Roten, Joshua          07/14/1999
47. Sales, Benjamin        11/01/1999
48. Sciacca, Phillip       01/21/1999
49. Scott, Daniel          03/12/1999
50. Scott, Patricia        04/02/1999
51. Shepherd, John Sr.     04/16/1999
52. Smith, Gerald          01/21/1999
53. Smith, James           12/28/1999
54. Smith, Renee           01/21/1999
55. Soldati, John          10/12/1999
56. Sortomme, Gordon       01/12/1999
57. Spaw, Gordon           02/20/1999
58. Stadjuhar, Edward      06/01/1999
59. Stadjuhar, Karen       08/05/1999
60. Stathos, Pano          05/10/1999
61. Stubbs, Lise (Jamie)   08/06/1999
62. Talley, David          10/01/1999
63. Thompson, Steven       03/29/1999
64. Tison, Dennis          03/15/1999
65. Tison, Elena           03/11/1999
66. Umberger, George       11/27/1999
67. Vernon, Arlene         03/22/1999
68. Virtue, Crystal        12/16/1999
69. Wagner, Richard        07/27/1999
70. Williams, Jack         10/29/1999
71. Williams, Paul         04/02/1999
72. Wright, Leon           01/21/1999
73. Yokoi, Jeffrey         01/21/1999
74. York, Mark             12/01/1999

## 2000:

1. Addison, Kenneth        08/29/2000
2. Cameron, Robert         02/19/2000
3. Charles, Philip         10/23/2000
4. Enoch, Douglas          01/20/2000
5. Faris, George           08/20/2000
6. Farris, Carlotta        01/01/2000
7. Faustman, Daniel        07/18/2000
8. Henderson, Timothy      09/06/2000

9. Hicks, Patrick              01/20/2000
10. Hisaw, Michael             01/06/2000
11. Ku, James                  10/23/2000
12. O'Neal, Paul               01/22/2000
13. Palmer, Ray                02/08/2000
14. Perez, Robert              01/13/2000
15. Rodriguez, Robert          07/17/2000
16. Tanner, Scott              12/18/2000
17. Ures, Nick                 10/24/2000

## 2001:

1. Bagley- Ranzoia, Hilary     03/01/2001
2. Bal, Manmohan               05/29/2001
3. Baranek, Randolph           09/21/2001
4. Brandon, Lance              11/29/2001
5. Branson, Conrad             02/01/2001
6. Cacci, Niklos               06/15/2001
7. Denny, Michael              03/08/2001
8. Fry, Richard                03/17/2001
9. Hake, Constance             02/17/2001
10. Johnson, Darrel            08/03/2001
11. Maier, Timothy             09/21/2001
12. Mark, Kevin                05/14/2001
13. Miller, Russell            06/05/2001
14. Nicolaus, Truman           06/07/2001
15. Oleary, Richard            09/27/2001
16. Olver, James               04/23/2001
17. Rosenfeld, Kenneth         06/05/2001
18. Sargetis, John             04/25/2001
19. Silva, Kelly               10/03/2001
20. Slort, Daniel              10/19/2001
21. Slort, Robin               10/27/2001
22. Sturgis, Jeffrey           03/08/2001
23. Tatoole, Cynthia           01/04/2001
24. Thorntona, Roman           02/05/2001
25. Tompkins, Alan             10/20/2001
26. Townsell, Joseph           05/11/2001
27. Van Loben Sels, Mark       05/29/2001
28. Vollman, Matthew           01/23/2001
29. Wells, Ronald              07/10/2001
30. White, Benjamin            04/23/2001
31. Wise, Michael              02/14/2001

32. Zehnder, Jeffrey                    05/03/2001

## 2002:

1. Barash, Yona                         04/04/2002
2. Daly, George                         01/10/2002
3. Drago, Kim                           01/23/2002
4. England, Morrison                    12/02/2002
5. Frazier, Tommy                       12/11/2002
6. Givens, Ronald                       02/21/2002
7. Hoxworth, Edward                     11/14/2002
8. Kimble, Gloria                       04/04/2002
9. Olver, Douglas                       02/21/2002
10. Reik, Robert                        03/01/2002
11. Sacco, David                        10/24/2002
12. Shurr, Brett                        09/15/2002
13. Soloman, Andrew                     03/19/2002
14. Thiessen, Robert                    06/04/2002
15. Vizzard, William                    10/08/2002
16. Wong, David                         10/16/2002

## 2003:

1. Adelman, David                       06/19/2003
2. Balzarini, Joseph                    11/05/2003
3. Barritt, Christine                   05/12/2003
4. Barritt, John                        05/12/2003
5. Bayer, Michael                       03/10/2003
6. Gill, Ravinderjit                    12/23/2003
7. Gilmore, Michael                     06/13/2003
8. Goudeaux, Phillip                    04/25/2003
9. Goudeaux, Phillip, II                04/25/2003
10. Halverstadt, Kurt                   07/02/2003
11. Kirtley, George                     07/01/2003
12. Klaves, Anthony                     05/28/2003
13. Nelson, Michael                     01/09/2003
14. Nowinski, Peter                     12/23/2003
15. Padilla, Michael                    07/03/2003
16. Read, Leonard                       04/14/2003
17. Reyes, Jose                         09/24/2003
18. Rogers, Rick                        03/10/2003
19. Rosier, Teresa                      07/11/2003
20. Rosier, William                     01/09/2003

21. Sanders, Michael          10/23/2003
22. Steinberg, Joel           12/23/2003
23. Traweek, Sara             08/12/2003
24. Zimmerman, Gregory        06/13/2003


**2004:**

1. Baquera, Anthony          06/15/2004
2. Blow, Janene              01/27/2004
3. Boghossian, Ohannes       08/10/2004
4. Henson, Jefferson         09/21/2004
5. Hewitt, Joseph            12/21/2004
6. Ingman, Jason             03/17/2004
7. King, Kyle                03/17/2004
8. Kitching, Dale            09/30/2004
9. Kitching, Dale (95628)    02/27/2004
10. Lopez, Michael           04/02/2004
11. Nunn, Christopher        12/07/2004
12. Peralta, Jesus           01/13/2004
13. Pike, Jack               03/09/2004
14. Powell, Dennis           07/14/2004
15. Scherbenske, Paul        08/04/2004
16. Van Breemen, Douglas     03/23/2004
17. Woods, Kathleen          07/14/2004


**2005:**

1. Avila, Carlos             07/05/2005
2. Brown, Charles            04/05/2005
3. Brown, Howard             04/26/2005
4. Brusato, Ronald           06/07/2005
5. Chapman, Gary             06/07/2005
6. Cooper, Calvin            01/11/2005
7. Deroo, Laurent            06/22/2005
8. Erbes, Marilyn            02/16/2005
9. Fong, Sonny               06/07/2005
10. Godwin, Raymond          11/08/2005
11. Green, Michael           03/15/2005
12. Harris, Mark             05/04/2005
13. Hightower, Bart          09/27/2005
14. Jackson, Andrew          02/08/2005
15. James, Stanley           11/22/2005

| | |
|---|---|
| 16. Keil, Harvey | 04/13/2005 |
| 17. Lopez, Tony | 05/10/2005 |
| 18. McClain, Barry | 03/15/2005 |
| 19. McDearmid, Tom | 06/07/2005 |
| 20. Picton, David | 06/07/2005 |
| 21. Vance, Ernest | 04/26/2005 |

## 2006:

| | |
|---|---|
| 1. Bonacich, Louis | 03/28/2006 |
| 2. Chaffron, Hans | 04/11/2006 |
| 3. Cox, Robert | 04/25/2006 |
| 4. Dennings, Mark | 05/30/2006 |
| 5. Flahive, Gregory | 06/20/2006 |
| 6. Hughes, Robert | 01/03/2006 |
| 7. Johnson, Gregory | 02/07/2006 |
| 8. Lowery, John | 02/07/2006 |
| 9. Midlam, Mark | 05/08/2006 |
| 10. Saephan, Kevin | 04/11/2006 |
| 11. Shelton, Nick | 05/29/2006 |
| 12. Singh, Pavinder | 03/28/2006 |
| 13. Stanton, James | 03/06/2006 |
| 14. Thames, Joseph | 02/07/2006 |
| 15. Thomas, Robert | 07/03/2006 |
| 16. Welch, Joseph | 03/06/2006 |
| 17. Williams, Mark | 01/10/2006 |