1   EDMUND G. BROWN JR., State Bar No. 37100
    Attorney General of California
2   DOUGLAS J. WOODS, State Bar No. 161531
    Supervising Deputy Attorney General
3   GEOFFREY GRAYBILL, State Bar No. 53643
    Deputy Attorney General
4    1300 I Street, Suite 125
     P.O. Box 944255
5    Sacramento, CA 94244-2550
     Telephone:  (916) 324-5465
6    Fax:  (916) 324-8835
     E-mail:  Geoffrey.Graybill@doj.ca.gov
7   *Attorneys for Defendant Edmund G. Brown Jr.,
    AttorneyGeneral for the State of California*

8                    IN THE UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11

12

| | |
|---|---|
| 13  **JAMES ROTHERY, Esq.; ANDREA HOFFMAN,** | Case No. 2:08-cv-02064-JAM-KJM |
| 14                                  Plaintiffs, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ATTORNEY GENERAL EDMUND G. BROWN JR.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT** [Fed. R. Civ. P. 12(b)(1) and 12(b)(6)] |
| 15          v. | |
| 16 | |
| 17  **Former Sheriff LOU BLANAS; SHERIFF JOHN MCGINNIS; Detective TIM SHEEHAN; SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, an independent branch of government of the COUNTY OF SACRAMENTO; COUNTY OF SACRAMENTO; STATE OF CALIFORNIA ATTORNEY GENERAL JERRY BROWN; DOES 1 through 225, unknown co-conspirators,** | Date:       July 1, 2009<br>Time:      9:00 a.m.<br>Ctrm:      6<br>Judge:     The Honorable<br>               John A. Mendez<br>Action Filed:  9/3/2008 |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22                           Defendants. | |
| 23 | |

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

Introduction ................................................................................................................ 1

California's Regulation of Concealed Weapons ........................................................ 3

Allegations of the Complaint .................................................................................... 4

    I.    First Cause Of Action (Against County Defendants Only) ....................... 4

    II.   Second Cause Of Action (Against County, Sheriffs And Attorney General Only) ........................................................................................................... 5

    III.  Third Cause Of Action (Against County Defendants Only) ...................... 5

    IV.  Fourth Cause Of Action (Against All Defendants Except Sheehan) ........ 5

    V.   Fifth Cause Of Action (Against All Defendants Except Sheehan) ........... 6

    VI.  Sixth Cause Of Action (Against All Defendants Except Sheehan) .......... 6

    VII. Seventh Cause Of Action (Against All Defendants Except Sheehan) ..... 6

Argument .................................................................................................................... 6

    I.    The Statute Does Not Prevent Applicants From Using A Handgun To Protect Themselves, Their Families And Their Property ........................... 7

    II.   There Is No Federally Protected Right To Carry A Concealed Handgun Beyond What California Permits ............................................................... 8

         A.   The Second Amendment Does Not Establish A Right Beyond What California Permits .................................................................... 8

         B.   The Privileges Or Immunities Clause Of The Fourteenth Amendment Does Not Establish A Right Beyond What California Permits ................................................................................ 9

         C.   The Ninth Amendment Does Not Establish A Right Beyond What California Permits ............................................................... 11

    III.  Authorization For Retired Peace Officers To Carry Concealed Weapons Without A CCW License Does Not Deny Non-Peace Officers Equal Protection Of The Law ........................................................................... 12

         A.   Retired Peace Officers And Non-Peace Officers Are Not Similarly Situated ................................................................... 13

         B.   The Statute Provides Local Law Enforcement With The Same Information Regarding Non-Peace Officer Applicants As The Employing Law Enforcement Agency Has Regarding Its Retired Peace Officer ................................................................. 14

    IV.  Applicants Have Not Met The Case Or Controversy Requirement Of Article III As To The Attorney General ................................................... 16

         A.   Applicants Lack Standing Because They Allege No Legally Recognized Injury ..................................................................... 17

         B.   Applicants Lack Standing As To The Attorney General Because Their Alleged Injuries Are Not Traceable To Any Action Or Authority Of The Attorney General ........................................... 19

i

Memorandum of Points and Authorities in Support of Attorney General Edmund G. Brown Jr.'s Motion to Dismiss
First Amended Complaint (2:08-cv-02064-JAM-KJM)

# TABLE OF CONTENTS
(continued)

Page

C.   Applicants Lack Standing As To The Attorney General Because
Any Hypothetical Relief To Redress Applicant's Alleged Injuries
Could Only Be Addressed To The County Defendants ............................ 21

V.   The Eleventh Amendment Likewise Bars This Action As To The Attorney
General ........................................................................................................... 21

Conclusion ............................................................................................................................ 23

ii

1

# TABLE OF AUTHORITIES

2
**Page**

3 CASES

4 *Ashcroft v. Iqbal*
   556 U. S. __ ,--- S.Ct. ---.................................................................................... 20
5

6 *Astoria Federal Sav. & Loan Assn. v. Solarino*
   501 U.S. 104 (1991) ...................................................................................................... 7
7

*Augustine v. United States*
8   704 F.2d 1074 (9th Cir. 1983) ..................................................................................... 7

9 *Aydin Corp. v. Union of India*
   940 F.2d 527 (9th Cir. 1991).......................................................................................17
10

11 *Bell Atlantic Corp. v. Twombly*
   550 U.S. 544 ............................................................................................................... 20
12

13 *Biotics Research Corp. v. Heckler*
   710 F.2d 1375 (9th Cir. 1983) ..................................................................................... 7

14 *City of Cleburne v. Cleburne Living Center, Inc.*
   473 U.S. 432 (1985) ................................................................................................ 12, 14
15

16 *City of Los Angeles v. Lyons*
   461 U.S. 95 (1983) ....................................................................................................... 17
17

*Cruz v. Beto*
18   405 U.S. 319 (1972) ...................................................................................................... 6

19 *Dandridge v. Williams*
   397 U.S. 471 (1970) ..................................................................................................... 14
20

21 *David K. Mehl, et al. v. Lou Blanas, et al.*
   United States District Court for the Eastern District of California, Case No. CIV S 03
22   2682 MCE/KJM ........................................................................................................ 1, 2

23 *Demery v. Kupperman*
   735 F.2d 1139 (9th Cir. 1984)..................................................................................... 22
24

25 *District of Columbia v. Heller*
   128 S.Ct. 2783 (2008) ......................................................................................... passim

26 *Erdelyi v. O'Brien*
   680 F.2d 61 (9th Cir. 1982) .......................................................................................... 9
27

28

# TABLE OF AUTHORITIES
### (continued)

Page

*Ex parte Young*
209 U.S. 123 (1908) .................................................................... 20, 22, 23

*Gifford v. City of Los Angeles*
88 Cal.App.4th 801 (2001) ..................................................................... 13

*Guillory v. County of Orange*
731 F.3d 1379 (9th Cir. 1984) ................................................................... 9

*Heller v. Doe*
509 U.S. 312 (1993) ............................................................................. 15

*Hickman v. Block*
81 F.3d 98 (9th Cir. 1996) ............................................................... 9, 17, 18

*Hishon v. King & Spaulding*
467 U.S. 69 (1984) ............................................................................... 7

*Idaho Conservation League v. Mumma*
956 F.2d 1508 (9th Cir. 1992) ................................................................. 21

*Long v. Van de Kamp*
961 F.2d 151 (9th Cir. 1992) ......................................................... 20, 21, 23

*Lujan v. Defenders of Wildlife*
504 U.S. 555 (1992) .................................................................. 16, 17, 19, 21

*Mack v. South Bay Beer Distributors, Inc.*
798 F.2d 1279 (9th Cir. 1986) ................................................................... 7

*McCarthy v. United States*
850 F.2d 558 (9th Cir. 1988), *cert. den.*, 489 U.S. 1052 (1989) ...................... 7

*McGowan v. Maryland*
366 U.S. 420 (1961) ............................................................................. 14

*Monell v. Dept. of Social Services*
436 U.S. 658 (1978) .............................................................................. 2

*Nordlinger v. Hahn*
505 U.S. 1 (1992) ............................................................................... 12

*Nordyke v. King*
563 F.3d 439 (9th Cir. 2009) ............................................................. 3, 8, 9

Memorandum of Points and Authorities in Support of Attorney General Edmund G. Brown Jr.'s Motion to Dismiss
First Amended Complaint (2:08-cv-02064-JAM-KJM)

# TABLE OF AUTHORITIES
### (continued)

Page

*Pennhurst State School & Hosp. v. Halderman*
   465 U.S. 89 (1984) .................................................................................................... 22

*Plyler v. Doe*
   457 U.S. 202 (1982) .................................................................................................. 12

*Saenz v. Roe*
   526 U.S. 489 (1999) ............................................................................................ 10, 11

*Salute v. Pitchess*
   61 Cal.App.3d 557 (1976) ........................................................................................ 13

*San Diego County Gun Rights Committee v. Reno*
   98 F.3d 1121 (9th Cir. 1996) .............................................................................. 11, 12

*San Jose Police Officers Assn. v. City of San Jose*
   199 Cal.App.3d 1471 (1988) ........................................................................ 12, 13, 19

*Schowengerdt v. United States*
   944 F.2d 483 (9th Cir. 1991) .................................................................................... 12

*Scott v. Pasadena Unified School Dist.*
   306 F.3d 646 (9th Cir. 2002) .................................................................................... 17

*Silveira v. Lockyer*
   312 F.3d 1052 (9th Cir. 2002), *reh'g en banc denied*, 328 F.3d 567, *cert. den.*, 540
   U.S. 1046 (2003) ............................................................................................... passim

*Sommerfield v. Helmick*
   57 Cal.App.4th 315 (1997) ................................................................................. 12, 13

*Southern Pac. Transp. Co. v. Redden*
   651 F.2d 613 (9th Cir. 1980) ........................................................................ 20, 21, 23

*Thomas v. Anchorage Equal Rights Comm.*
   220 F.3d 1134 (9th Cir. 2000) (en banc) ................................................................. 17

*Valley Forge Christian Coll. v. Ams. United for Separation of Church & State*
   454 U.S. 464 (1982) .................................................................................................. 16

*Warth v. Seldin*
   422 U.S. 490 (1975) .................................................................................................. 16

*Whitmore v. Arkansas*
   495 U.S. 149 (1990) .................................................................................................. 17

v

Memorandum of Points and Authorities in Support of Attorney General Edmund G. Brown Jr.'s Motion to Dismiss
First Amended Complaint (2:08-cv-02064-JAM-KJM)

# TABLE OF AUTHORITIES
## (continued)

Page

STATUTES

18 United States Code §§ 1961-1968 ................................................................................ 4

42 United States Code § 1983 ........................................................................... 2, 5, 6, 20

California Family Code § 6380 ......................................................................................... 4

California Government Code § 1031(f) ........................................................................... 14

California Penal Code
  § 832 ..................................................................................................................... 13, 14
  § 832.4 ........................................................................................................................ 13
  § 832.05 ...................................................................................................................... 14
  § 11105(a) ..................................................................................................................... 4
  § 12000 ......................................................................................................................... 3
  § 12021 ......................................................................................................................... 9
  § 12021.1 ...................................................................................................................... 9
  § 12025 ......................................................................................................................... 6
  § 12026 ......................................................................................................................... 9
  § 12026(b) .......................................................................................................... 3, 8, 18
  § 12027 ................................................................................................................ 2, 5, 6
  § 12027.1(a) ........................................................................................................... 4, 14
  § 12027.1(a)(1)(B) ..................................................................................................... 14
  § 12027.1(e) ............................................................................................................... 14
  § 12031 ......................................................................................................................... 6
  § 12031(a) .................................................................................................................. 15
  § 12031(b) .................................................................................................................... 5
  § 12031(b)(1) ............................................................................................................. 14
  § 12031(b)(2) ............................................................................................................. 14
  § 12031(h) .......................................................................................................... 3, 8, 15, 18
  § 12031(i) ................................................................................................................... 15
  § 12031(j) ........................................................................................................... 3, 8, 15, 18
  § 12031(l) ........................................................................................................... 3, 8, 15, 18
  § 12050 ................................................................................................................. passim
  §§ 12050-12054 ........................................................................................................... 5
  § 12050(a)(1)(A), (B) ................................................................................................... 3
  § 12050(a)(1)(A), (B), (E) ............................................................................................ 3
  § 12050(a)(1)(E) ........................................................................................................ 13
  § 12050(a)(2)(A)(i) .................................................................................................... 18
  § 12050(b) .................................................................................................................... 3
  § 12050.2 ............................................................................................................... 3, 23
  § 12051(a)(1) ................................................................................................................ 4
  § 12051(a)(1) and (3) ................................................................................................... 3
  § 12051(a)(3)(A) ..................................................................................................... 4, 22

vi

# TABLE OF AUTHORITIES
### (continued)

**Page**

California Penal Code
§ 12051(a)(3)(B) ....................................................................................................... 4
§ 12052 ....................................................................................................................... 4
§ 12052(a) ................................................................................................................... 4
§ 12053(c) ................................................................................................................. 18
§ 12054(c) ............................................................................................................ 3, 15
§ 13510 ..................................................................................................................... 13

California Welfare. & Institutions Code
§ 8100 ......................................................................................................................... 9
§ 8103 ......................................................................................................................... 9
§ 8103(h) ..................................................................................................................... 4
§ 8104 ......................................................................................................................... 4

## CONSTITUTIONAL PROVISIONS

United States Constitution .............................................................................. 2, 11, 21
Article III .......................................................................................... passim
First Amendment .............................................................................................. 5
Second Amendment .............................................................................. passim
Ninth Amendment .................................................................................. passim
Eleventh Amendment .......................................................................... passim
Fourteenth Amendment ........................................................................ passim

California Constitution
Article V, Section 13 ......................................................................................... 22

## COURT RULES

Federal Rules of Civil Procedure
8 ................................................................................................................................. 20
12(b)(1) ................................................................................................................... 2, 7
12(b)(6) ................................................................................................................... 2, 6

## OTHER AUTHORITIES

California. Code of Regulations
Title 11, § 1000, et seq. ............................................................................................. 13
Title 11, § 1005 .......................................................................................................... 14

Howard J. Vogel, Article, *The "Ordered Liberty" of Substantive Due Process and the
Future of Constitutional Law as a Rhetorical Art:  Variations on a Theme from Justice
Cardozo in the United States Supreme Court*, 70 Alb. L. Rev. 1473, 1481 (2007) ............... 11

Memorandum of Points and Authorities in Support of Attorney General Edmund G. Brown Jr.'s Motion to Dismiss
First Amended Complaint (2:08-cv-02064-JAM-KJM)

# TABLE OF AUTHORITIES
### (continued)

Page

Laurence H. Tribe, Comment, *Saenz Sans Prophecy:  Does The Privileges or Immunities Revival Portend The Future - Or Reveal The Structure of the Present?*, 113 Harv. L. Rev. 110, 110 (1999)..................................................................................................... 11

**INTRODUCTION**

As it pertains to defendant Edmund G. Brown Jr., sued in his official capacity as Attorney General of California (hereinafter referred to as "the Attorney General"), the First Amended Complaint (FAC) in this action challenges the California law governing the issuance of Concealed Carry Weapons licenses (CCW), California Penal Code Sections 12050, et seq. (hereinafter the "Statute"). Plaintiffs ask this Court to declare the Statute invalid and void, as written and as applied, and to grant injunctive relief to prevent defendants from enforcing the Statute. In this regard the FAC is a reiteration of plaintiffs' counsel's unsuccessful action in *David K. Mehl, et al. v. Lou Blanas, et al.*, United States District Court for the Eastern District of California, Case No. CIV S 03 2682 MCE/KJM, for which an appeal is pending in the United States Court of Appeal for the Ninth Circuit (No. 08-15773[1]). This new version fares no better.

The plaintiffs, James Rothery and Andrea Hoffman, are apparently California citizens who are residents of Sacramento County, and not otherwise prohibited by law from possessing firearms. They allegedly applied several times to defendant County of Sacramento through the defendant Office of the Sheriff for CCW, but were denied each time. FAC, pp. 2-3. Accordingly, plaintiffs are referred to hereinafter as the "Applicants." The first and third causes of action are stated exclusively against the County defendants[2], and allege that CCW were granted to others for reasons that purportedly constitute violations of federal RICO, and were denied to Applicants on grounds that allegedly deprive them of equal protection of the law and violate their speech and association rights protected by the First and Fourteenth Amendments. FAC, pp. 1-63, 74.

The Second and Fourth through Seventh Causes of Action are directed against the Attorney General and the County defendants aside from defendant Detective Sheehan. In their Second Cause of Action the Applicants seek redress against Attorney General Brown, alleging that their

---

[1] Oral argument is scheduled for June 11, 2009.

[2] The FAC identifies the defendants as to the first cause of action as the County of Sacramento, Sacramento County Sheriff's Department, former Sheriff Lou Blanas, incumbent Sheriff John McGinnis, Detective Tim Sheehan and Detective Fred Mason. FAC, pp. 4:9-28; 5-6. In this memorandum these defendants will be referred to collectively as the "County defendants." The third cause of action is alleged against the sheriffs, the Sacramento County Sheriff's Department and Sacramento County only. FAC, p. 74:8-9.

1

1   right to equal protection of the laws is violated by California Penal Code section 12027, which

2   purportedly "provide[s] preferential treatment to retired law enforcement officers." FAC, p.

3   64:22-25. The Fourth through Seventh Causes of Action assert the Statute violates Applicants'

4   right to carry handguns for protection of themselves, their families and their property as

5   purportedly guaranteed by the Second, Ninth and Fourteenth Amendments of the United States

6   Constitution. FAC, pp. 74:21-78.

7        The Attorney General moves this Court for an order dismissing this action pursuant to

8   Fed.R.Civ. P. 12(b)(1) and 12(b)(6), on the grounds that no case or controversy has been stated

9   against him and that allegations of the FAC fail to allege a claim for which relief can be granted.

10   These grounds are the same on which virtually identical allegations against Attorney General

11   Brown's predecessor, Bill Lockyer, were dismissed in *Mehl*.

12        Applicants' standing to challenge California's CCW statute derives from and depends

13   solely on their applications for and intentions to reapply for CCW. The Attorney General has no

14   authority to grant or deny CCW. Such authority resides exclusively in the Sheriff or Chief of

15   Police in the jurisdiction where Applicants reside or have a business.

16        Applicants candidly acknowledge that their purpose in bringing this action against the

17   Attorney General is to overcome their concern that damages cannot be recovered against

18   defendant County of Sacramento pursuant to 42 U.S.C. § 1983 as construed by *Monell v. Dept. of*

19   *Social Services*, 436 U.S. 658 (1978). FAC, pp. 68:13-15; 73:9-14. However, the limitations on

20   liability under section 1983 cannot confer standing where it does not otherwise exist.

21        Applicants cannot allege or prove any set of facts that would entitle them to the requested

22   relief against the Attorney General because the Statute does not confer upon him authority to

23   grant or deny CCW or to control County defendants' authority in that regard. Applicants neither

24   have standing to pursue their asserted claims against the Attorney General nor can overcome his

25   immunity from suit under the Eleventh Amendment. Moreover, the decision in *District of*

26   *Columbia v. Heller*, 128 S.Ct. 2783 (2008), does not support Applicants' contentions that the

27   Statute violates their Second Amendment "right to keep and bear arms" or "natural rights" as

28   allegedly guaranteed them by the Ninth and Fourteenth Amendments to the United States

2

1    Constitution.  The Ninth Circuit recently applied *Heller* in upholding an Alameda County

2    ordinance prohibiting possession of firearms on county property.  *Nordyke v. King*, 563 F.3d 439

3    (9th Cir. 2009).  Finally, the Statute's alleged separate treatment of retired law enforcement

4    officers' eligibility to carry concealed weapons does not deny Applicants equal protection or

5    privileges or immunities under the Fourteenth Amendment because they are not similarly situated

6    with retired law enforcement officers.

7                    **CALIFORNIA'S REGULATION OF CONCEALED WEAPONS**

8         California's system for regulation of firearms is set forth in its Dangerous Weapons Control

9    Law, California Penal Code Section 12000, et seq.

10        Unless disqualified due to commission of a felony, use of narcotic drugs or a determination

11   of mental infirmity, Californians may keep loaded and concealable firearms in their homes,

12   businesses and other private property without a CCW license, and may use them for self-defense

13   or defense of another.  Cal. Penal Code §§ 12026(b), 12031(h), (j), (l).

14        CCW licenses can be issued only by a chief of police or county sheriff ("licensing

15   authority") in the jurisdiction within which the applicant resides, is employed or conducts a

16   business.  Cal. Penal Code § 12050(a)(1)(A), (B).  The licensing authority is required to publish

17   its policy for reviewing applications (Cal. Penal Code § 12050.2) and may impose restrictions on

18   the licenses it issues (Cal. Penal Code § 12050(b)).

19        The licensing authority may issue a license only if the applicant establishes to the

20   satisfaction of the sheriff or police chief that he or she is of good moral character, that good cause

21   exists for issuance, and that he or she has completed an acceptable course of training in firearm

22   safety and the law regarding the permissible use of a firearm.  Cal. Penal Code § 12050(a)(1)(A),

23   (B), (E).  Moreover, the licensing agency may require the applicant to submit to the same

24   psychological examination process used for law enforcement officers.  Cal. Penal Code

25   § 12054(c).

26        The elements of a CCW license application are prescribed by California Penal Code section

27   12051(a)(1) and (3).  The Attorney General is required to make available a standardized

28   application form subject to review by a committee including representatives of the California

3

1  State Sheriffs' Association, the California Police Chiefs' Association and the California

2  Department of Justice ("DOJ"), which must be used to apply for a CCW license.  Cal. Penal Code

3  § 12051(a)(3)(A).  The Court is requested to take judicial notice of the standard application form.

4  An applicant must submit a written, signed application (Cal. Penal Code § 12051(a)(1)) attesting

5  to the truth of the information provided (Cal. Penal Code § 12051(a)(3)(B)).

6       As part of the application process, chiefs or sheriffs must forward the applicants'

7  fingerprints to the DOJ.  Cal. Penal Code § 12052.  A CCW license cannot be issued until the

8  licensing authority receives a DOJ report showing that the applicant is not prohibited from

9  possessing, receiving, owning or purchasing a firearm based upon data about the applicant which

10  DOJ is required by law to retain.  *Id.*  DOJ retains state summary criminal history information

11  (Cal. Penal Code § 11105(a)) and federal criminal history information (*id.*).  DOJ also retains

12  information about mental health adjudications (Cal. Welf. & Inst. Code §§ 8103(h), 8104) and

13  protective orders (Cal. Family Code § 6380) that result in the loss of eligibility to possess

14  firearms.  DOJ checks all of these databases and informs the licensing authority whether the

15  applicant may lawfully own or possess firearms.  *See* Cal. Penal Code § 12052(a).  The licensing

16  agency then makes the determination of whether the applicant qualifies for a CCW license.

17       A retired peace officer is not entitled under state law to carry a loaded concealable weapon

18  unless the employing agency certifies on the identification card issued at retirement that it

19  approves the officer's carrying such a firearm.  Cal. Penal Code § 12027.1(a).  The certification

20  can be denied or revoked for good cause.  *Id.* at subdivisons (a)(1)(B) & (b).  An officer who

21  retires after January 1, 1989, because of a psychological disability cannot receive this

22  certification.  *Id.* at subdivision (e).

23                 **ALLEGATIONS OF THE COMPLAINT**

24  I.   FIRST CAUSE OF ACTION (AGAINST COUNTY DEFENDANTS ONLY)

25       The complaint consists of seven causes of action set out in 78 pages and 808 paragraphs.

26  Of these, 63 pages and 675 paragraphs constituting the first cause of action are directed

27  exclusively against the County defendants pursuant to federal RICO (18 U.S.C. §§ 1961-1968).

28

                                    4

1   FAC, p. 6:8-24.  Applicants accuse the County defendants of requiring political and financial

2   support in exchange for CCW licenses.  FAC, pp. 1-63.

3   **II.   SECOND CAUSE OF ACTION (AGAINST COUNTY, SHERIFFS AND ATTORNEY GENERAL ONLY)**

4

5         The second cause of action is directed only against the County, the sheriffs and the

6   Attorney General.  FAC, p. 63:23-24.  Applicants contend that "Penal Code Sections 12027,

7   12031(b), 12050-12054 [are unconstitutional] in that they exempt retired California peace officers

8   and those associated with law enforcement from those provisions and burdens which are held

9   applicable to common good citizens and plaintiffs."  FAC, p. 64:22-25.  This cause of action also

10  appears to be a facial challenge to the Statute brought under 42 U.S.C. § 1983 on the ground that

11  it allegedly impacts the "personal individual right to keep and possess a handgun for purposes of

12  self defense and any licensing scheme must meet strict scrutiny standards."  FAC, p. 61:22-23.  In

13  the alternative, Applicants allege that even if the Statute passes constitutional muster, "in form,

14  substance and application it is applied in a discriminatory fashion in violation of the Fourteenth

15  Amendment's Equal Protection Clause and the First, Second and Ninth Amendment."  FAC, pp.

16  63:29; 64:1-3.

17        Applicants claim County defendants repeatedly denied them CCW licenses based on

18  unconstitutional policies and procedures.  FAC., pp. 69:21-71:1; 72:12-23.  Accordingly, they

19  request injunctive relief "declaring such policies, statutes, and practices unconstitutional."  FAC,

20  pp. 73:25; 78:24-26.

21  **III.  THIRD CAUSE OF ACTION (AGAINST COUNTY DEFENDANTS ONLY)**

22        Applicants contend that County defendants' alleged "policies favoring campaign

23  contributors and political supporters regarding issuance of CCWs, [violates] Plaintiff's First

24  Amendment rights to freedom of expression and association" for which they seek relief pursuant

25  to 42 U.S.C. § 1983.  FAC, p. 74:15-17.

26  **IV.   FOURTH CAUSE OF ACTION (AGAINST ALL DEFENDANTS EXCEPT SHEEHAN)**

27        This three-sentence cause of action appears to be a facial challenge to the Statute on the

28  ground it allegedly impermissibly infringes on Applicants' right to keep and bear arms

5

1    purportedly provided by the Second Amendment applied to the states through the Fourteenth

2    Amendment, for which they seek relief pursuant to 42 U.S.C. § 1983.  FAC, p. 74:23-28.

3    **V.   FIFTH CAUSE OF ACTION (AGAINST ALL DEFENDANTS EXCEPT SHEEHAN)**

4        This cause of action appears to be a facial challenge to the Statute on the ground it allegedly

5    impermissibly infringes on Applicants' right to keep and bear handguns purportedly provided by

6    the Privileges or Immunities Clause of the Fourteenth Amendment, for which they seek relief

7    pursuant to 42 U.S.C. § 1983.  FAC., pp. 75:5-76:16.

8    **VI.   SIXTH CAUSE OF ACTION (AGAINST ALL DEFENDANTS EXCEPT SHEEHAN)**

9        This cause of action appears to be a facial challenge to the Statute on the ground it allegedly

10    impermissibly infringes on Applicants' right to keep and bear handguns purportedly provided by

11    the Ninth Amendment, for which they seek relief pursuant to 42 U.S.C. § 1983.  FAC, pp. 76:20-

12    77:11.

13    **VII.   SEVENTH CAUSE OF ACTION (AGAINST ALL DEFENDANTS EXCEPT SHEEHAN)**

14        Applicants "seek a declaration from the court regarding the constitutionality of the CCW

15    statutes and policies, enforced and promulgated by Defendants, providing preferential treatment

16    to those associated with law enforcement."  FAC, p. 77:23-25.  They cite Penal Code section

17    12027 as providing the preference for those "associated with law enforcement" and sections

18    12025 and 12031 as providing the discriminatory burden on them as persons not associated with

19    law enforcement.  FAC, pp. 77:26-78:13.  This purported discrimination is alleged to violate

20    Applicants' rights under Second Amendment and to deny them equal protection of the law for

21    which they seek relief pursuant to 42 U.S.C. § 1983.  FAC, p. 78:15-17.

22                         **ARGUMENT**

23        Attorney General Brown moves this Court pursuant to Fed. R. Civ. P. 12(b)(6) for an order

24    entering a judgment dismissing the complaint in its entirety and each cause of action alleged

25    against him therein because each asserted cause of action fails to state a claim upon which relief

26    can be granted.  Although the complaint must be construed in the light most favorable to the

27    plaintiffs (*Cruz v. Beto*, 405 U.S. 319, 322 (1972)), a motion to dismiss pursuant to Fed. R. Civ.

28    P. 12(b)(6) should be granted where it appears that the plaintiffs can prove no set of facts that

6

1  would entitle them to relief. *Hishon v. King & Spaulding*, 467 U.S. 69, 73 (1984); *Mack v. South*

2  *Bay Beer Distributors, Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986), *abrogated on other grounds*,

3  *Astoria Federal Sav. & Loan Assn. v. Solarino*, 501 U.S. 104 (1991). The court may take judicial

4  notice of facts outside pleadings without converting to summary judgment procedures. *Mack*,

5  798 F.2d at 1282.

6      Additionally, the causes of action alleged against Attorney General Brown must be

7  dismissed without leave to amend pursuant to Fed. R. Civ. P. 12(b)(1) because there is no present

8  case or controversy between either Applicant and the Attorney General, and therefore this Court

9  lacks subject matter jurisdiction. This motion is brought on the additional ground that the

10  Attorney General has Eleventh Amendment immunity from suit based on the claims alleged

11  against him.

12      When reviewing such a motion "'no presumptive truthfulness attaches to plaintiff's

13  allegations, and the existence of disputed material facts will not preclude the trial court from

14  evaluating for itself the merits of jurisdictional claims.'" *Augustine v. United States*, 704 F.2d

15  1074, 1077 (9th Cir. 1983) (citation for quote omitted). Nor is the court restricted to the face of

16  the pleadings to resolve factual disputes concerning the existence of jurisdiction. *McCarthy v.*

17  *United States*, 850 F.2d 558, 560 (9th Cir. 1988), *cert. den.*, 489 U.S. 1052 (1989). A court's

18  consideration of material outside the pleadings does not convert a 12(b)(1) motion into a motion

19  for summary judgment. *Biotics Research Corp. v. Heckler*, 710 F.2d 1375, 1379 (9th Cir. 1983).

20  **I.     THE STATUTE DOES NOT PREVENT APPLICANTS FROM USING A HANDGUN TO**
       **PROTECT THEMSELVES, THEIR FAMILIES AND THEIR PROPERTY**
21

22      The fundamental premise of the five causes of action alleged against the Attorney General

23  is that the Statute prevents Applicants from "exercis[ing] their right to self defense, self

24  preservation, self and family protection." FAC, pp. 66:28-67:2. Applicants contend, directly,

25  that by allegedly preventing them from using a handgun for these purposes, the Statute violates

26  their rights under the Second Amendment applicable to the state through the Fourteenth

27  Amendment (Fourth Cause of Action), under the Privileges or Immunities Clause of the

28

7

1   Fourteenth Amendment (Fifth Cause of Action) and under the Ninth Amendment (Sixth Cause of

2   Action).

3        Applicants' statement of California law in this regard is wrong as a matter of law.  Unless

4   disqualified due to commission of a felony, use of narcotic drugs or a determination of mental

5   infirmity, Californians may keep loaded and concealable firearms in their homes, businesses and

6   other private property without a CCW license, and may use them for self-defense or defense of

7   another.  Cal. Penal Code §§ 12026(b), 12031(h), (j), (l).

8        Accordingly, the Fourth, Fifth, and Sixth Causes of Action fail to state a claim for which

9   relief can be granted against the Attorney General.

10  **II.   THERE IS NO FEDERALLY PROTECTED RIGHT TO CARRY A CONCEALED HANDGUN
         BEYOND WHAT CALIFORNIA PERMITS**

11

12       **A.    The Second Amendment Does Not Establish A Right Beyond What
                 California Permits**

13       Last term the U.S. Supreme Court decided that the Second Amendment provides an

14  individual right to keep and bear arms, but it was careful to define the limited scope of such

15  right[3]. *District of Columbia v. Heller*, 128 S.Ct. 2783, 2816-2818 (2008).  The District of

16  Columbia's ban on handguns prohibited, among other things, handgun use for self-defense in the

17  home and required that the weapons be inoperable even in the home.  *Heller* at 2817.  The

18  Supreme Court struck down the ban to the extent it applied in the home, as defeating the core

19  right to self-defense implicated by the Second Amendment.  *Id.* at 2821-2822.  In doing so,

20  however, the Court carefully limited the scope of its opinion to prevent calling into question

21  longstanding state regulation of firearms, specifically including concealed weapons.  *Id.* at 2816-

22  2817 n.26 ("these presumptively lawful regulatory measures").[4]  Aside from standard prohibitions

23

24       [3] Although the Court did not decide whether the Second Amendment is applicable to the
    states through the Fourteenth Amendment or otherwise, the Ninth Circuit recently confirmed that
25  it is. *Nordyke v. King*, 563 F.3d 439, 457 (9th Cir. 2009).

26       [4] Other items on the non-exclusive list of "presumptively lawful regulatory measures"
    include:  forbidding carrying of firearms in sensitive places; imposing conditions and
27  qualifications on commercial sale of firearms; and prohibiting the carrying of "dangerous and
    unusual weapons." *Id.* at 2817.

28

8

Memorandum of Points and Authorities in Support of Attorney General Edmund G. Brown Jr.'s Motion to Dismiss
First Amended Complaint (2:08-cv-02064-JAM-KJM)

1   against certain persons possessing any firearm[5], California does not restrict the right to keep

2   loaded concealable firearms in one's home, business or private property.[6]

3       Correspondingly, in *Nordyke* the Ninth Circuit upheld an Alameda County ordinance

4   banning possession of firearms on county property against a Second Amendment challenge,

5   holding that restrictions on possession of firearms do not infringe the Second Amendment right

6   defined in *Heller* unless they "meaningfully impede the ability of individuals to defend

7   themselves in their homes with usable firearms, the core of the right as *Heller* analyzed it." 563

8   F.3d 439, 460 (9th Cir. 2009).  Applicants concede that the Statute permits them to possess

9   loaded firearms in the home and place of business without prior authorization.  FAC, p. 64:13-14.

10  Since Applicants' right to defend themselves in their homes with usable firearms is not infringed

11  by California's regulation of firearms as set forth in the Statute, they cannot state a claim against

12  the Attorney General (or any defendant) based on the Second Amendment.

13      Moreover, *Heller* does not undercut the Ninth Circuit's line of precedent that there is no

14  federally protected unrestricted individual right to carry a firearm openly or concealed.  The Ninth

15  Circuit holds that the Second Amendment does not provide an individual right to carry a

16  concealed weapon.  *Hickman v. Block*, 81 F.3d 98 (9th Cir. 1996); *see also Erdelyi v. O'Brien*,

17  680 F.2d 61, 63-64 (9th Cir. 1982) (denial of CCW license to private detective not a deprivation

18  of property or liberty interest protected by Due Process Clause of 14th Amendment); *accord*

19  *Guillory v. County of Orange*, 731 F.3d 1379, 1382-1383 (9th Cir. 1984).

20

21

22

23

---

24  [5] California disqualifies persons with mental disorders or mental illnesses (Cal. Welf. & Inst. Code §§ 8100, 8103) and convictions for certain crimes and addiction to narcotics (Cal. Penal Code §§ 12021, 12021.1) from owning or possessing firearms. *Heller* likewise classifies

25  these types of disqualification as "presumptively lawful regulatory measures." *Heller* at 2816-2817.  California's disqualification criteria are not challenged in this litigation.

26

27  [6] Under California law, it is lawful for a person over the age of eighteen, who is not otherwise disqualified by law, to possess within his or her residence, business or private property a weapon capable of being concealed, without a CCW license.  Cal. Penal Code § 12026.

28

Memorandum of Points and Authorities in Support of Attorney General Edmund G. Brown Jr.'s Motion to Dismiss
First Amended Complaint (2:08-cv-02064-JAM-KJM)

**B.   The Privileges or Immunities Clause of the Fourteenth Amendment Does Not Establish A Right Beyond What California Permits**

Applicants allege that the privileges or immunities provided by the Fourteenth Amendment "include the right to keep and bear arms, which is deemed a personal right," citing *Saenz v. Roe*, 526 U.S. 489 (1999), as support for their novel position. FAC, pp. 75-76:16.

The Privileges or Immunities Clause of the Fourteenth Amendment states: "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States . . . ." The decision in *Saenz* simply held that California's reduction of welfare payments for newly arrived residents violated their right as citizens of the United States to become citizens of any state, and to be treated equally with any other citizen of the state where they reside. *Saenz*, 526 U.S. at 502-507.

Applicants do not allege that they were denied the right to keep and bear arms based on previous residence in another state. Thus, *Saenz* does not support Applicants' claim pursuant to the Privileges or Immunities Clause, and there is no authority suggesting that the Privileges or Immunities Clause establishes any right other than of a citizen of the United States to be treated equally with any other citizen of the state where they reside.

Applicants make two nearly incomprehensible contentions apparently designed to fit within an undefined "penumbra" of *Saenz*. One contention is that because federal law allegedly allows honorably retired law enforcement officers "a right to travel with a firearm that Plaintiffs are not granted . . . Plaintiffs' right to travel with a firearm under the Privileges and [sic] Immunities Clause of the Fourteenth Amendment [is thereby violated]." FAC, p. 76:7-10. Under this contention it is federal law, not state law, that is interfering somehow with Applicants' "right to travel with a firearm under the Privileges and Immunities Clause." The Privileges or Immunities Clause of the Fourteenth Amendment does not apply to the federal government; moreover, there is no federal defendant in this action. Thus, this allegation would not even fit within any marginally conceivable "penumbra" of *Saenz*.

The second contention appears to be that because 14 states allegedly recognize CCW issued in other states "whether [people concerned about having concealed weapons for protection] are

10

1   issued CCW permits will affect where they travel." FAC, p. 76:11-15. The only conceivable

2   application of *Saenz* in this scenario would be if another state inexplicably refused to grant a

3   CCW to someone because he or she came from California without a CCW but would otherwise

4   qualify for one as a citizen of that state. Even under this strained scenario, it would be the new

5   state of residence, not California, that might have a *Saenz* problem. Thus, Applicants' conjuring

6   of a chimerical "penumbra" of *Saenz* is completely ineffectual to state a claim against the

7   Attorney General based on the Privileges or Immunities Clause.

8        Moreover, prominent commentators believe that *Saenz* will not be extended beyond its

9   precise holding. *See* Laurence H. Tribe, Comment, *Saenz Sans Prophecy: Does The Privileges*

10  *or Immunities Revival Portend The Future - Or Reveal The Structure of the Present?*, 113 Harv.

11  L. Rev. 110, 110 (1999) (concluding that *Saenz* has not been expanded beyond durational

12  residency issues and is not likely to); Howard J. Vogel, Article, *The "Ordered Liberty" of*

13  *Substantive Due Process and the Future of Constitutional Law as a Rhetorical Art: Variations*

14  *on a Theme from Justice Cardozo in the United States Supreme Court*, 70 Alb. L. Rev. 1473,

15  1481 (2007) ("Privileges or Immunities Clause of the Fourteenth Amendment virtually

16  meaningless").

17       Thus, Applicants' reliance on the Privileges or Immunities Clause is misplaced and does

18  not support their Fifth Cause of Action, which should therefore be dismissed with prejudice.

19  **C.     The Ninth Amendment Does Not Establish A Right Beyond What**
          **California Permits**

20

21       Notwithstanding *Heller*, Applicants invite this Court to find the right to keep and bear arms

22  in the Ninth Amendment. FAC, pp. 76:28-77:6. The Ninth Amendment, however, is of no more

23  avail to Applicants than the Second Amendment and the Privileges or Immunities Clause.

24       The Ninth Amendment to the United States Constitution states: "The enumeration in the

25  Constitution of certain rights shall not be construed to deny or disparage others retained by the

26  people." It is the law of Ninth Circuit that the "Ninth Amendment has not been interpreted as

27  independently securing any constitutional rights for purposes of making out a constitutional

28  violation." *San Diego County Gun Rights Committee v. Reno*, 98 F.3d 1121, 1125 (9th Cir. 1996)

11

1  (quoting *Schowengerdt v. United States*, 944 F.2d 483, 490 (9th Cir. 1991)).  Accordingly, the

2  Ninth Amendment does not recognize a right to keep and bear arms.  *Id.* ("We join our sister

3  circuits in holding that the Ninth Amendment does not encompass an unenumerated,

4  fundamental, individual right to bear firearms.").  *Heller* relies exclusively on the Second

5  Amendment and does not mention the Ninth Amendment, let alone treat it more expansively than

6  the Second Amendment.  Therefore, nothing in *Heller* undercuts or calls into question the holding

7  in *San Diego County Gun Rights Committee.*

8        Accordingly, Applicants can allege no injury under the Ninth Amendment, and the Sixth

9  Cause of Action should be dismissed with prejudice.

10  **III.   AUTHORIZATION FOR RETIRED PEACE OFFICERS TO CARRY CONCEALED
          WEAPONS WITHOUT A CCW LICENSE DOES NOT DENY NON-PEACE OFFICERS**

11  **EQUAL PROTECTION OF THE LAW**

12        In their Second (FAC, pp. 63-74) and Seventh (FAC, pp. 77-78) Causes of Action

13  Applicants specifically challenge statutory authorization for retired peace officers to carry

14  concealed weapons without demonstrating "good cause."  Applicants claim the different

15  requirements applicable to retired peace officers deny non-peace officers equal protection of the

16  law because non-peace officers must convince the licensing authority of "good cause" to obtain a

17  CCW license.  *Id.*

18        The Equal Protection Clause of the Fourteenth Amendment commands that all persons

19  similarly situated should be treated alike.  *City of Cleburne v. Cleburne Living Center, Inc.*, 473

20  U.S. 432, 439 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982).  Stated another way: "The

21  Equal Protection Clause . . . keeps governmental decisionmakers from treating differently persons

22  who are in all relevant respects alike." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992).  Here,

23  however, the groups receiving different treatment (retired peace officers vs. non-peace officers)

24  are not similarly situated, and any differential treatment is well-justified under the governing

25  rational basis review.

26        Moreover, the difference in treatment of the two groups is not materially significant with

27  regard to "good cause" for grant or denial of a CCW license or certification.  *See Sommerfield v.*

28  *Helmick* 57 Cal.App.4th 315, 322 (1997) (quoting *San Jose Police Officers Assn. v. City of San*

12

1    *Jose,* 199 Cal.App.3d 1471, 1481 (1988), ("Because the need for a concealed weapon does not

2    inevitably follow from a police officer's prior service, relatively slight factors may tilt the balance

3    in favor of finding good cause to deny.")) For both non-peace officers and retired peace officers

4    the remedy for allegedly incorrect findings regarding good cause for grant or denial of the right to

5    carry concealed weapons is the same:  mandamus review by California trial courts.  Compare

6    *Sommerfield* and *San Jose Police Officers Assn.* with *Gifford v. City of Los Angeles,* 88

7    Cal.App.4th 801, 806-807 (2001) (licensing authority's denial of CCW renewal for failure to

8    provide updated information to establish good cause for renewal of CCW not arbitrary or

9    capricious), and *Salute v. Pitchess,* 61 Cal.App.3d 557, 560-561 (1976) (licensing authority has

10   an enforceable duty to investigate each CCW application individually to determine whether there

11   is good cause for issuance).

12       **A.    Retired Peace Officers and Non-Peace Officers Are Not Similarly Situated**

13       "[I]n order for a state action to trigger equal protection review at all, that action must treat

14   similarly situated persons disparately." *Silveira v. Lockyer,* 312 F.3d 1052, 1088 (9th Cir. 2002),

15   *reh'g en banc denied,* 328 F.3d 567, *cert. den.,* 540 U.S. 1046 (2003).  A threshold defect in

16   Applicants' equal protection claim is that, in regard to screening for CCW licenses, non-peace

17   officers are not similarly situated with retired peace officers who were authorized to and did carry

18   firearms in the course of their duties.

19       The law enforcement agency from which a peace officer retires has all of the information it

20   needs to determine whether its retiree should have a CCW endorsement.  First, the mandatory

21   training and experience received by honorably retired peace officers while employed means that

22   such applicants have obtained a proficiency with and knowledge of lawful use of weapons in

23   excess of what is required of CCW applicants by California Penal Code section 12050(a)(1)(E).

24   The screening process prescribed for non-peace officers by California Penal Code section 12050

25   et seq. serves to approximate the background California peace officers acquire and maintain by

26   qualifying to be peace officers authorized to carry firearms.  A person cannot qualify as a peace

27   officer without completing rigorous training in procedures and conduct.  Cal. Penal Code §§ 832,

28   832.4, 13510 et seq.; *see also* Cal. Code Regs., tit. 11, § 1000, et seq.  In order to carry a firearm,

13

1    a peace officer must undergo meticulous training in firearm proficiency, safety and rules of

2    engagement. Cal. Penal Code § 832; *see also* Cal. Code Regs., tit. 11, § 1005. Moreover, one

3    cannot become a peace officer without obtaining a psychiatric clearance. Cal. Gov. Code §

4    1031(f); *see also* Cal. Penal Code § 832.05.

5       A retired California peace officer cannot qualify to carry a loaded concealable firearm

6    unless the employing agency at the time of retirement issues an identification certificate

7    indicating the officer was honorably retired. Cal. Penal Code § 12031(b)(1). Moreover, the

8    retired peace officer is not entitled to carry a concealed weapon unless the employing agency,

9    presumably in the position to be most knowledgeable about the peace officer's status and

10    qualifications, certifies on the identification that it approves the officer's carrying a loaded,

11    concealed firearm. Cal. Penal Code § 12027.1(a). The employing agency is prohibited from

12    providing an endorsement for a peace officer who is retired for psychiatric disability. Cal. Penal

13    Code § 12027.1(e). Additionally, that agency is authorized to deny or revoke for cause the retired

14    officer's privilege to carry a loaded concealed firearm. Cal. Penal Code §§ 12027.1(a)(1)(B),

15    12031(b)(2).

16       Local law enforcement responsible for issuing CCW would not have similar information

17    about non-peace officers without the Statute.

**B.    The Statute Provides Local Law Enforcement With The Same Information Regarding Non-Peace Officer Applicants As The Employing Law Enforcement Agency Has Regarding Its Retired Peace Officer**

20       If the threshold for equal protection review is passed, "the general rule is that legislation is

21    presumed to be valid and will be sustained if the classification drawn by the statute is rationally

22    related to a legitimate state interest." *City of Cleburne*, 473 U.S. at 439; *see also Dandridge v.*

23    *Williams*, 397 U.S. 471, 485 (1970); *McGowan v. Maryland*, 366 U.S. 420, 426 (1961). As

24    described above at pages 8-12, Applicants' claim does not implicate a fundamental constitutional

25    right because a CCW license is not necessary for Applicants to exercise the rights encompassed

26    within the Second Amendment, as defined by *Heller*. Therefore, their equal protection claim is

27    reviewed pursuant to the rational basis test. *Silveira*, 312 F.3d at 1088-1089. "When a statute is

28    reviewed under the rational-basis test, 'the burden is on the one attacking the legislative

14

1   arrangement to negate every conceivable basis which might support it.'" *Id.* (citing *Heller v.*

2   *Doe*, 509 U.S. 312, 320 (1993)). Moreover, "[t]he legislative record need not contain empirical

3   evidence to support the classification so long as the legislative choice is a reasonable one." *Id.*

4   (citations omitted).

5          The CCW license application process provides the mechanism by which a non-peace

6   officer can establish, to the satisfaction of the head of a local law enforcement agency, that he or

7   she has training and qualifications that approximate the background of a peace officer regarding

8   the safe use of and need for carrying concealed firearms. Cal. Penal Code § 12050. The

9   applicant must demonstrate good moral character and may be subject to the same psychological

10  evaluation applied to a peace officer. Cal. Penal Code § 12054(c).

11         It is important to bear in mind that persons engaged in lawful businesses may have a loaded

12  firearm within their place of business. Cal. Penal Code § 12031(h). Any person in lawful

13  possession of private property may keep a loaded firearm on that property. *Id.* Provided it is not

14  prohibited by local ordinance, a person may carry a loaded firearm within a city while engaged in

15  hunting. *Id.* § 12031(i). Unless he or she is disqualified by law from possessing a firearm, a

16  person may carry a loaded firearm if he or she reasonably believes his or her person or property

17  or that of another is in immediate, grave danger and that the carrying of the weapon is necessary

18  for the preservation of that person or property. *Id.* § 12031(j). Having a loaded firearm in one's

19  residence is not a violation of section 12031(a). *Id.* § 12031(l).

20         *Heller* clearly recognizes a state's interest in protecting and preserving public health and

21  safety from an unnecessary proliferation of firearms beyond their need to preserve one's life,

22  liberty and property. The foregoing statutes recognize and preserve the core individual rights

23  described in *Heller*. The challenged procedures enable local law enforcement to monitor whether

24  non-peace officers and retired peace officers who would carry concealed weapons in situations

25  where the core individual rights are not typically at risk might present an unnecessary risk to

26  public health and safety. Law enforcement agencies from which peace officers retire are most

27  knowledgeable of whether fitness and good cause exist for their retired officers to carry concealed

28  weapons. Local law enforcement generally would not have such information about non-peace

15

1   officer applicants for CCW without the challenged statutes.  Therefore, there is an obvious

2   rational relationship between California's interest in restricting the unnecessary proliferation and

3   use of firearms and the differential methodologies is employs to determine whether retired peace

4   officers and non-peace officers may carry concealed weapons when not otherwise authorized by

5   law.

6        Accordingly, Applicants have not and cannot meet their burden of showing that any

7   difference in statutory methodologies for authorizing CCW for retired peace officers and non-

8   peace officers violate the constitutional mandate for equal protection of the law.

9   **IV.   APPLICANTS HAVE NOT MET THE CASE OR CONTROVERSY REQUIREMENT OF
10   ARTICLE III AS TO THE ATTORNEY GENERAL**

11        The judicial power of the United States is restricted by the requirement found in Article III

12   of the U.S. Constitution that confines federal courts' jurisdiction "to the resolution of cases and

13   controversies." *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State,*

14   454 U.S. 464, 471 (1982) (internal quotation marks omitted).  A plaintiff's standing is "an

15   essential and unchanging part of the case-or-controversy requirement." *Lujan v. Defenders of*

16   *Wildlife,* 504 U.S. 555, 560 (1992).  "As an aspect of justiciability, the standing question is

17   whether the plaintiff has alleged such a personal stake in the outcome of the controversy as to

18   warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial

19   powers on his behalf." *Warth v. Seldin,* 422 U.S. 490, 498-499 (1975) (internal quotation marks

20   and citations omitted).  A plaintiff's standing is made of three separate elements:  (1) he or she

21   must allege an injury in fact; (2) he or she must be able to trace the causation of an injury to the

22   named defendant; and (3) the federal court must have the ability to redress the plaintiff's

23   grievance. *Lujan,* 504 U.S. at 560-561.

24        Applicants "requests [sic] injunctive relief in either having CCWs issued, or having the

25   statutes and County's written policy declared unconstitutional." FAC, p. 73:20-22.  Applicants

26   cannot establish the first element of constitutional standing because, for the reasons stated above,

27   Applicants do not have an injury in fact recognized by federal law.  They have no right under

28   federal law to carry concealed weapons other than as currently authorized by the challenged

16

1  Statute. Moreover, the Attorney General has no authority under California law to grant or deny

2  CCW licenses.  Therefore, even if warranted, the Court could not grant the requested redress *as to*

3  *the Attorney General* as required for Applicants to establish standing under the third element.  For

4  the same reasons, Applicants' alleged injuries are not traceable to any acts or omissions of the

5  Attorney General, thereby precluding the third prerequisite element of constitutional standing.

6       Applicants have failed to establish any of the three prerequisites for standing.  Therefore,

7  this action should be dismissed without leave to amend as to the Attorney General.

8      **A.**    **Applicants Lack Standing Because They Allege No Legally Recognized**
        **Injury**
9

10       To satisfy the "injury in fact" element of standing, a plaintiff must show "an invasion of a

11  legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not

12  conjectural or hypothetical." *Lujan*, 504 U.S. at 560-561.  The "threatened injury must be

13  certainly impending" (*Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) (internal quotation marks

14  and citations omitted)), and "immediate and real" (*City of Los Angeles v. Lyons*, 461 U.S. 95, 102

15  (1983)).  This is also true for declaratory relief actions. *Aydin Corp. v. Union of India*, 940 F.2d

16  527, 528 (9th Cir. 1991) ("Article III requires that there be a substantial controversy . . . of

17  sufficient immediacy and reality to warrant the issuance of a declaratory judgment"); *Thomas v.*

18  *Anchorage Equal Rights Comm.*, 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc) (in declaratory

19  relief actions plaintiff must show "a realistic danger of sustaining a direct injury as a result of the

20  statute's operation or enforcement") (internal quotation marks omitted).  This requirement of

21  immediacy has also been addressed under the federal courts' prudential concerns with respect to

22  "ripeness." *Thomas*, 220 F.3d at 1138; *Scott v. Pasadena Unified School Dist.*, 306 F.3d 646, 662

23  (9th Cir. 2002)

24       In the absence of a federal right infringed by the alleged injury for which relief is

25  sought, there is no standing to seek such relief in federal court. *Silveira v. Lockyer*, 312 F.3d at

26  1066-1067.  ("Because we hold that the Second Amendment does not provide an individual right

27  to own or possess guns or other firearms, plaintiffs lack standing to challenge the [Assault

28  Weapons Control Act].") (footnotes omitted); *accord, Hickman v. Block*,  81 F.3d 98, 101 (9th

17

1  Cir. 1996) (no standing to challenge California CCW statutes because Second Amendment is

2  inapplicable). *Silveira* followed *Hickman* on this point after analyzing "extensive developments

3  in the area of Second Amendment law" occurring thereafter and concluding that the result in

4  *Hickman* was not changed by the intervening developments. *Silveira v. Lockyer*, 312 F.3d at

5  1067 n.18.

6        Applicants' allegations of injury consist of misstatements of California law and a

7  misunderstanding of the Second Amendment right identified in *District of Columbia v. Heller*,

8  128 S.Ct. 2783 (2008). They allege that they would be subject to arrest and prosecution if they

9  "were to exercise their right to self defense, self preservation, self and family protection, and right

10 to keep and bear arms without obtaining a CCW license." FAC, pp. 66:12-13, 28; 67:1-2, 7-8.

11 However, unless disqualified due to commission of a felony, use of narcotic drugs or a

12 determination of mental infirmity, Californians may keep loaded and concealable firearms in their

13 homes, businesses and other private property without a CCW license, and may use them for self-

14 defense or defense of another. Cal. Penal Code §§ 12026(b), 12031(h), (j), (l). In a nutshell, the

15 *Heller* decision identifies a Second Amendment right to have firearms to defend one's self in

16 one's home. If Applicants are demanding an unfettered right to carry a concealed weapon at any

17 time and in any place, there is no support for this position in *Heller* or any other authority.

18 Moreover, Applicants are not similarly situated with retired law enforcement officers so as to

19 have a legally cognizable injury arising from any material difference in eligibility requirements

20 for a CCW.[7]

21

22 _____

23     [7] Applicants contend that state and federal judges have eligibility requirements for CCW
   licenses different from ordinary citizens. FAC, pp. 69:7-8. Contrary to Applicants' argument,
   there is no exception from or modification of the eligibility requirements of California Penal
24 Code section 12050 for judges. There is a one-year difference in the maximum initial CCW
   license validation period for judges (Cal. Penal Code § 12050(a)(2)(A)(i)), but the FAC does not
25 contest the differential in validity periods. Moreover, the only reference to judges in the CCW
   application is the "Official Use Only" box on the application form (pg.3), but this is only a check-
26 off box for judges so that the DOJ can comply with California Penal Code section 12053(c),
   which requires DOJ to collect and keep a record of the total number of CCW issued to judges and
27 reserve officers. The Attorney General has filed a request for judicial notice of the CCW
   application form.
28

                                          18

**B.  Applicants Lack Standing as to the Attorney General Because Their Alleged Injuries Are Not Traceable To Any Action or Authority of the Attorney General**

To demonstrate this element of standing, a plaintiff must prove that there is a causal connection between plaintiff's injury and the conduct complained of; in other words, the plaintiff must show that his injury is "fairly traceable to the challenged action of the defendant." *Lujan*, 504 U.S. at 560-561 (internal quotation marks and alterations omitted).  Applicants here cannot satisfy this element because the Attorney General has no role in applying the challenged statutes to Applicants.

Applicants contend they have established standing regarding the Attorney General because he is the chief law enforcement officer of the state and has general supervisorial responsibility regarding sheriffs and other local law enforcement agencies.  FAC, pp. 67:10-68:12.  But this conclusory argument understates the standing requirement – the Attorney General has no statutory authority to grant, deny or revoke CCW licenses.  Only sheriffs and chiefs of police are authorized to perform these functions (California Penal Code section 12050), and review of their CCW license decisions is available only from state courts. *See, e.g, Gifford v. City of Los Angeles*, 88 Cal. App. 4th 801 (2001).  Contrary to Applicants' implication (FAC, 71:2-4), the Attorney General is not authorized by the CCW statutes to manage, control or review the decisions of the sheriffs and chiefs of police.

Applicants also suggest that because the California Department of Justice is involved in the process of providing a standardized CCW application form, the Attorney General is thereby inexplicably implicated in the individualized decision-making by sheriffs and chiefs of police for granting or denying CCW.  FAC, pp. 66:1-9; 69:6-8.  But, because Applicants' alleged injury can occur only through the actions of the Sheriff, independent of any authority of the Attorney General, any ostensible harm cannot be traced to the Attorney General.

The Ninth Circuit has been very clear that suits cannot be brought in federal court against an attorney general to challenge the validity of statutes that he has no authority to enforce, because there is no Article III jurisdiction and because the action would be barred by the Eleventh Amendment.  It has repeatedly rejected actions against attorney generals on these grounds. *See*

19

1   *Long v. Van de Kamp*, 961 F.2d 151, 152 (9th Cir. 1992) (the general supervisory powers of the

2   California Attorney General are insufficient to establish the connection with enforcement required

3   by Article III and *Ex parte Young*, 209 U.S. 123, 160 (1908)); *Southern Pac. Transp. Co. v.*

4   *Redden*, 651 F.2d 613, 615 (9th Cir. 1980) (attorney general's stated intention to advise and direct

5   the district attorneys to prosecute is insufficient to establish a justiciable controversy where they

6   are not obligated to comply).

7        Just this term, the United States Supreme Court has re-affirmed that vicarious liability is

8   inapplicable to government officials under 42 U.S.C § 1983 and that a plaintiff must plead that

9   each government official-defendant, through his or her own actions, has violated the Constitution.

10  *Ashcroft v. Iqbal*, 556 U. S. __ ,--- S.Ct. ---, 2009 U.S. LEXIS 3472.  Conclusory allegations such

11  as "knew of, condoned, and willfully and maliciously agreed to subject [to violation of

12  constitutional rights]," "was the "principal architect' of this invidious policy," or "was

13  'instrumental' in adopting and executing it" are insufficient to escape the restriction against

14  vicarious liability or respondeat superior.  *Id.*  'In order to satisfy the requirements of Fed. R. Civ.

15  P. 8, a plaintiff must "allege more by way of factual content to 'nudg[e]' his claim of purposeful

16  discrimination 'across the line from conceivable to plausible."' U.S. LEXIS at 37, quoting *Bell*

17  *Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2009).  Applicants' allegations that the Attorney

18  General "tacitly allowed" County Defendants "to issue CCWs to campaign contributors and

19  political supporters" (FAC, p. 71:2-4) are too conclusory and attenuated to comply with Rule 8

20  requirements to establish a causal connection between their failure to obtain CCW licenses and

21  any specific conduct by the Attorney General.

22       Since only sheriffs and chiefs of police have authority under the Statute to grant, deny or

23  revoke CCW licenses, there is no injury traceable to the Attorney General, and Applicants thus

24  cannot establish Article III jurisdiction over the Attorney General with regard to their facial

25  challenges to the validity of the Statute or for review of the Sheriff's refusal to grant their CCW

26  licenses.

27

28

**C.   Applicants Lack Standing as to the Attorney General Because Any Hypothetical Relief to Redress Applicant's Alleged Injuries Could Only Be Addressed to the County Defendants**

To satisfy the relief-related standing element, a plaintiff must show that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 560-561. Even if there were a recognized federal right at issue, no injunction or declaratory relief ordered against the Attorney General preventing him from enforcing the Statute could redress Applicants' core grievances – those against the Sheriff for denying their CCW applications in implementation of his authority pursuant to California Penal Code section 12050.

Of course, if a plaintiff cannot show that his injury is "fairly traceable" to the named defendant under the causation prong of the case or controversy requirement of Article III, he generally cannot satisfy the related prong articulated in *Lujan*, that the relief requested must redress the alleged injuries. *See Idaho Conservation League v. Mumma*, 956 F.2d 1508, 1517 (9th Cir. 1992) (the "two components together . . . are both alike in focusing on the question of causation") (internal quotations omitted). Just as Applicants cannot show that their alleged injury was caused by the Attorney General, nor can they show how an injunction against him would provide the redress they seek. Applicants' alleged harm comes from exercise of prerogatives vested by law in the Sheriff exclusively, and thus the only effective remedy for any ostensible deprivation of rights would have to be directed to the Sheriff.

Failure to establish any of the three elements necessary for standing would deprive the Court of Article III jurisdiction, and Applicants have failed to demonstrate all three. Accordingly, Applicants lack standing to proceed against the Attorney General.

**V.   THE ELEVENTH AMENDMENT LIKEWISE BARS THIS ACTION AS TO THE ATTORNEY GENERAL**

For all of the same reasons Applicants cannot meet the required second element for standing, the sovereign immunity under the Eleventh Amendment of the United States Constitution requires dismissal of all claims against the Attorney General. *See Long*, 961 F.2d at 152; *Southern Pac. Transp. Co. v. Redden*, 651 F.2d at 615.

1       The Eleventh Amendment states that "[t]he judicial power . . . shall not . . . extend to any

2   suit in law or equity . . . against one of the United States by Citizens of another State or by

3   Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The immunity extended by

4   the Eleventh Amendment to states also prohibits lawsuits in federal court by the state's own

5   citizens. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).

6       Because the Attorney General is sued in his official capacity, the claims alleged against him

7   are really against the State since any judgment or remedy would necessarily be against the State,

8   not the Attorney General, who has no direct duties or responsibilities regarding the claims alleged

9   by Applicants. *See, e.g., Pennhurst*, 465 U.S. at 100; *Demery v. Kupperman*, 735 F.2d 1139,

10   1146 (9th Cir. 1984) ("[t]he general rule is that relief sought nominally against an officer is in fact

11   against the sovereign if the decree would operate against the latter"). There is an exception to

12   Eleventh Amendment immunity applicable to certain claims for injunctive relief, found in the

13   case of *Ex parte Young*. *Ex parte Young*, 209 U.S. at 160. The *Ex parte Young* exception allows

14   for a lawsuit against a state official in his official capacity to be prosecuted in federal court if the

15   claim is limited to an injunction against the official to prevent him from enforcing an

16   unconstitutional state law. *Id.* at 166. The *Ex parte Young* exception rests on a "fictional

17   distinction" between the state and a state official such that if the official is enforcing an

18   unconstitutional statute, he is considered to be operating outside his official capacity and can be

19   enjoined from such enforcement. *Pennhurst*, 465 U.S. at 100, 114. In order to successfully

20   employ the *Ex parte Young* exception, however, a plaintiff must allege that the state official has

21   "some connection with the enforcement of the act." *See Ex parte Young*, 209 U.S. at 157.

22       In this case, there is no direct connection between the Attorney General and the challenged

23   statute, making Applicants' ability to utilize the *Ex parte Young* exception impossible. The only

24   connection Applicants allege between the challenged state law and the Attorney General is that he

25   is responsible for ensuring that the laws of the State are uniformly and adequately enforced

26   pursuant to the California Constitution, Article V, Section 13 and related implementing statutes.[8]

27       [8] Applicants seem to allege that development of the standard CCW application form under

28   the auspices of the Attorney General subject to review by a multi-member committee (Penal Code

                                 (continued...)

1   FAC, pp. 67:10-68:17. The Ninth Circuit's precedent specifically holds that a general allegation

2   of the Attorney General's duties does not suffice to make an *Ex parte Young* connection:

> [T]here must be a connection between the official sued and enforcement of the
> allegedly unconstitutional statute, and there must be a threat of enforcement. We
> doubt that the general supervisory powers of the California Attorney General are
> sufficient to establish the connection with enforcement required by *Ex parte Young*.

*Long*, 961 F.2d at 152 (citing *Southern Pac. Transp. Co. v. Redden*, 651 F.2d at 614).

7        Thus, a claim based on the Attorney General's generalized duties will not suffice as an

8   adequate connection between the Attorney General and the challenged statutes, and consequently

9   the *Ex parte Young* exception cannot help the Applicants' claims bypass the immunity granted to

10  the Attorney General by the Eleventh Amendment.

11       As described above with respect to the "causal connection" element required to establish

12  standing under Article III, the Attorney General has no involvement in decisions to grant, deny or

13  revoke CCW licenses. It is the Sheriff who has the enforcement role here. For all the same

14  reasons stated there with respect to standing, Applicants cannot satisfy the enforcement role

15  prerequisite to the *Ex parte Young* exception to the Attorney General's Eleventh Amendment

16  immunity from suit. For this additional reason, the complaint should be dismissed with prejudice.

## CONCLUSION

18       California's CCW requirements provide individuals more extensive rights to carry or

19  possess firearms for defense of self, family and property than required by the Second Amendment

20  as defined by *Heller*. Applicants' arguments for finding a right to keep and bear arms in other

21  provisions of the Constitution are demonstrably without merit. Applicants are not similarly

22  situated with retired peace officers, and statutory requirements recognizing the differences do not

---

(...continued)
§ 12051(a)(3)(A)) creates a nexus between the Attorney General and the decision by the
defendant Sheriff's Office to deny their applications. FAC, pp. 66:1-12; 69:6-8. However, on its
face this section provides that the form is a "local form" (subdiv. (a)(3)(D)) and does not create
an exception to the exclusive authority and responsibility of sheriffs and chiefs of police pursuant
to sections 12050 and 12050.2 to determine whether to grant or deny a CCW application. As
explained in note 7, *supra* at 18, Applicants' allegation (FAC, pp. 69:6-8) that the form
"delineates differing standards of approval of applicants between peace officers, judges, and
common citizens" is as a matter of judicial notice factually incorrect and irrelevant.

1    deprive them of equal protection of the law.  Accordingly, Applicants' claims against the

2    Attorney General fail as a matter of substance, and dismissal is warranted.

3         Moreover, Applicants have failed to establish standing necessary to bring an action against

4    the Attorney General in federal court challenging the Statute, because the Attorney General has

5    no role in enforcing the Statute against them.  For the same reason, the action against the Attorney

6    General is barred by the Eleventh Amendment.

7         For all of these reasons, the First Amended Complaint and each cause of action therein

8    should be dismissed as to the Attorney General without leave to amend and with prejudice.

9    Dated:  May 29, 2009                          Respectfully Submitted,

10                                                 EDMUND G. BROWN JR.
                                                   Attorney General of California
11                                                 DOUGLAS J. WOODS
                                                   Supervising Deputy Attorney General
12
                                                   /s/  *Geoffrey Graybill*
13
                                                   GEOFFREY GRAYBILL
14                                                 Deputy Attorney General
                                                   *Attorneys for Defendant*
15                                                 *Edmund G. Brown Jr., AttorneyGeneral*
                                                   *for the State of California*
16

17   SA2009307218
     30765790.doc

18

19

20

21

22

23

24

25

26

27

28