**LAW OFFICES**
OF
**GARY W. GORSKI**
8459 NEPHI WAY
FAIR OAKS, CA 95628
(916) 965-6800
(916) 965-6801 FAX

**LAW OFFICE OF DANIEL M KARALASH**
TELEPHONE: (916) 787-1234
FACSIMILE: (916) 787-0267
DMKARALASH@SUREWEST.NET

GARY W. GORSKI
SBN: 166526
DANIEL M. KARALASH
SBN 176422
Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE EASTERN DISTRICT OF CALIFORNIA

-ooOoo-

| | |
|---|---|
| JAMES ROTHERY, Esq.; ANDREA HOFFMAN<br><br>Plaintiffs,<br><br>vs.<br><br>Former Sheriff LOU BLANAS; SHERIFF JOHN MCGINNIS; Detective TIM SHEEHAN; SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, an independent branch of government of the COUNTY OF SACRAMENTO; COUNTY OF SACRAMENTO; STATE OF CALIFORNIA ATTORNEY GENERAL JERRY BROWN; DOES 1 through 225, unknown co-conspirators<br><br>Defendants. | CASE NO.: 2:08-cv-02064-JAM-KJM<br><br>**PLAINTIFFS' OPPOSITION TO STATE OF CALIFORNIA ATTORNEY GENERAL JERRY BROWN TO DISMISS AND COUNTER MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO RULE 78-230(e)**<br><br>Date: July 1, 2009<br>Time: 9:00 a.m.<br>Ctrm: 6<br>Judge: Honorable John A. Mendez |

STATE OF CALIFORNIA ATTORNEY GENERAL JERRY BROWN is sued in his individual and official capacity in order to make a "facial" challenge to California Penal Code § 12025, which prohibits the carrying of a concealed weapon unless an individual applies for, and receives, permission to do so pursuant to § 12050(a)(1)(A), which gives the State a great amount of discretion in choosing whom should be granted a license to carry a handgun in the State of California. Likewise, California Penal Code § 12031 prohibits the carrying of any loaded weapon on his or her person or in his or her car.

1

Thus, by law, the only place one may possess a loaded firearm in California without prior authorization from the government is in the home or place of business.

This pleading presents a facial challenge against state law under the Second Amendment as an fundamental individual right held applicable to the state of California through both the 14th Amendment's Due Process clause, and in addition under the Privileges and Immunities clause.

Equal Protection Clause of the Fourteenth Amendment and the Second Amendment right to keep and bear arms is brought against the state under the retired peace officers exemption.

Plaintiffs filed a First Amended Complaint pursuant to 42 U.S.C. § 1983 challenging the Constitutionality of California's Concealed Carry Weapon (CCW) law (i.e. California Penal Code § 12025) on both Second Amendment and Fourteenth Amendment Equal Protection grounds, and a portion of the Equal Protection claim challenging the retired peace officer exception to the CCW law (e.g. Cal. Penal Code § 12027).

The remaining cause of actions are prosecuted pursuant to 42 U.S.C. § 1983, stating that Defendants (collectively referred to as "Defendants") violated Appellants' constitutional rights under the First, Second, Ninth and Fourteenth Amendments to the United States Constitution by denying their applications for a "Carry Concealed Weapon ("CCW") permit.

All causes of actions, except the First Cause of Action, are being applied to the State regarding a strictly "facial" challenge to the CCW statutes, as compared to the County Defendants, which is both a "facial" and "as applied" challenge.

PLAINTIFFS' OPPOSITION TO DEFENDANT BROWN'S MOTION TO DISMISS AND COUNTER MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO RULE 78-230(e)

## STANDING

The Supreme Court has repeatedly decided important standing cases where the existence of statute or the reasonable possibility of prosecution allows a challenge on the merits for persons adversely affected. *Gratz v. Bollinger*, 539 U.S. 244 (2003)("injury in fact" is the inability to compete on an equal footing in the application process, not the denial of the application), *Thompson v. Western States Medical Center*, 534 U.S. 357 (2002)(pre-enforcement standing found), *Epperson v. Arkansas*, 393 U.S. 97 (1968)(ripeness without enforcement). See also *Ashcroft v. Free Speech Coalition*, 534 U.S. 1389 (2002), on the Amendment adjacent to the Second (Note: "The prospect of

2

crime, by itself, does not justify laws suppressing protected speech." *Id.* at 1399) See Note, *Declaratory Relief in the Criminal Law*, 80 HARV. L. REV. 1490 (1967).

*Abbott Laboratories v. Gardner*, 387 U.S. 136 (1967), is a leading standing case that conflicts with the court below. Justice Harlan noted there: "the impact of the regulations upon the petitioners is sufficiently direct and immediate as to render the issue appropriate for judicial review at this stage." *Id.* at 152.

Before and after *McMillian v. Monroe County*, 520 U.S. 781, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997), the Ninth Circuit has considered a California sheriff a local law enforcement agent for purposes of establishing section 1983 liability under *Monell*. In *McMillian*, the Supreme Court relied heavily on provisions of the state Constitution to determine the scope of executive authority.

In California, a sheriff is not designated by the constitution as a member of the executive branch, which is defined in Article V, titled "Executive." Instead, sheriffs in California are defined in Article XI of the Constitution, titled "Local Government." The California Constitution recognizes two forms of local government: counties and cities, with the sheriff designated as the chief law enforcement officer of the county. See Cal. Const. art. XI, §§ 1, 2. See, e.g., *Robinson v. Solano County*, 00 C.D.O.S. 5735, 5737 (9th Cir. July 12, 2000); *Headwaters Forest Defense v. County of Humboldt*, 211 F.3d 1121, 1126 n. 2 (9th Cir.2000); *LaLonde v. County of Riverside*, 204 F.3d 947, 961 (9th Cir.2000).

California Constitution Article V, section 13 grants the Attorney General a supervisory role over "every district attorney and sheriff and over such other law enforcement officers as may be designated by law." This provision was added in 1934, when the voters approved Proposition 4. As then Alameda County District Attorney Earl Warren told the voters, this amendment was designed to "address the lack of organization of our law enforcement agencies" by providing coordination and supervision by the Attorney General "[w]ithout curtailing the right of local self government." *Argument in Favor of Proposition 4 by Earl Warren*, District Attorney of Alameda County, 1934 General Election Ballot Pamphlet. Here, the CCW application is designed and implemented by the state Attorney General, and uniform standards are then set for the local agencies to comply with. Thus, the Attorney General has the ultimate authority for setting forth policy on how CCW's are issued and processed, leaving the actual review up to local officials.

Article V, section 13 is fleshed out in several California statutes which give the Attorney General direct supervisory power over sheriffs, including the power to require written reports concerning any investigation, detection, and punishment of crime in their jurisdiction, see *Cal. Gov't Code* § 12560; to appoint persons to perform the duties of sheriff in particular circumstances; see *Cal. Gov't Code* § 12561; and to call a conference of district attorneys, sheriffs, and police chiefs to further "uniform and adequate enforcement" of state law, see *Cal. Gov't Code* § 12524. In addition, a county board of supervisors in California is limited in its general supervisory control over the county sheriff from interfering with his power to investigate and prosecute state crimes. See *Cal. Gov't Code* § 25303. The *McMillian* Court drew support from analogous statutory provisions in Alabama in finding that Alabama sheriffs are state officials. See *McMillian*, 520 U.S. at 790, 117 S.Ct. 1734.

In sum, the AG is really charged with ensuring uniform enforcement of states laws, especially CCWs, and is thus a proper party for the case and controversy requirement, especially since a state regulated application is used.

**PLAINTIFFS' ARE ENTITLED TO A JUDGMENT AS A MATTER OF LAW AND DEFENDANT BROWN'S MOTION MUST BE DENIED**

Plaintiffs counter motion for a judgement on the pleadings must be granted striking down California Penal Code Sections 12027, 12031(b), 12050-12054 in that they exempt retired California peace officers only from those provisions and burdens which are held applicable to common good citizens and plaintiffs, in addition, the good cause and good moral character criteria are unconstitutionally vague which are not narrowly tailored for a compelling government purpose.

The right to keep and bear arms is a fundamental, individual right, requiring the application of strict scrutiny to the challenged statutes. *District of Columbia v. Heller*, --- U.S. ----, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008); *Nordyke v. King*, 563 F.3d 439 (9th Cir. (Cal.), 2009). In *Silveira v. Lockyer*, 312 F.3d 1052, 1087-8 (9th Cir. 2002), the 9th Circuit acknowledged that if the Second Amendment conferred a fundamental right, then strict scrutiny would apply.

Here, the statute in question affords retired "California" peace officers a life time CCW, without the application fees and procedures afforded to non-law enforcement personnel. It must be clear the retired peace officer exception is not a privilege that is even bestowed upon retired law enforcement officers from other states or federal agencies, such as the FBI.

California Penal Code § 12025 prohibits the carrying of a concealed weapon unless an individual applies for, and receives, permission to do so pursuant to California Penal Code § 12050(a)(1)(A), which gives Defendant Sheriff a great amount of discretion in choosing whom should be granted a license to carry a handgun in the State of California.  In addition to concealed carry permits, sheriffs has a monopoly on the issuance of permits to carry "loaded and exposed", but only in counties with a population less than 200,000.  Likewise, California Penal Code § 12031 prohibits the carrying of any loaded weapon on his or her person or in his or her car.

Thus, by law, the only place one may possess a loaded firearm in California without prior permission is in the home or place of business.  Such a state decreed monopolization runs afoul of the Second Amendment.  See *District of Columbia V. Heller*, 554 U.S. ___, 128 S.Ct. 2783(2008).

California applies a so-called good cause and good moral character standard for the issuance of CCWs.  Just imagine if the director of the DMV were given the same discretion for the issuance of a drivers license?  Currently, the DMV requires a license applicant to 1) attend a school, 2) pass a driving test, 3) a vision test, 4) a written test, 5) pay a fee, and 6) not have any physical limitations like epilepsy.  If all these conditions are met, a citizen is summarily issued a drivers license – and that is the standard for a regulated "privilege." Here, there is a fundamental right involved. To obtain a CCW one is subjected to an arbitrary statute that requires "good moral character" (a vague and subjective term) and "good cause" (a vague and subjective term).  If that threshold is met, Blanas "may" issue a CCW, but he does not have to.  If there is going to be a licensing scheme for the free exercise of a fundamental right, it must be made available to all citizens equally, or not at all. Absolute discretion must be removed from the process for any discretion in the process that is not relegated to a ministerial duty to issue a CCW is, and will always be, corrupt and abused.

A constitutional licensing scheme would be more akin to obtaining a drivers license.  Attend a class, pass an objective background check for convictions and mental institution commitments, take a shooting test, and pay a fee – this would apply to all citizens and retired law enforcement officers ALIKE.  In other words, IF government is to undertake the regulation of carrying firearms, it must be done in an objective manner, similar to how permits are issued that regulate speech, which is never left up to an absurdly subjective criteria.

In sum, the people are granted a "privilege" to drive the most deadliest weapon in America

using a basic objective criteria.  When it comes to a fundamental right, a single individual is granted the power under a state statute unrestricted and limitless discretion for the issuance of CCWs. If there is ever a case subject to government abuse and corruption under a statute, this is it!

The Court in *Heller* notes, by implication, that though firearms may be regulated in public, a complete ban of carrying or bearing firearms for self-defense is runs afoul of one of the intended purposes of the Second Amendment - "self defense." The Court made it perfectly that though "concealed" firearms have historically been regulated by the States, as well as possession by felons and the mentally ill, and carrying firearms in sensitive public places, a constructive ban that results in an abrogation of the individual right to self defense is unconstitutional.

Here, Appellants cannot carry a loaded weapon in their car to protect their family on a desolate highway in the Mojave Desert, or through gang infested territories of Oakland, Richmond, Los Angeles and South San Francisco.  This a right only bestowed upon the privileged class.

Keeping in mind that the one of the significant purposes of the Fourteenth Amendment was to allow the Freemen to keep and carry arms for self preservation in the South.  Had California's laws been in place in the South during reconstruction, then the right to keep and bear arms would have been a nullity for such laws would obviously result in arbitrary and capricious enforcement based upon race (i.e. The Freemen would have been denied CCWs).  Why should we think the situation is any different today, except that arbitrariness and capriciousness has evolved from race to status (e.g. political and retired law enforcement) and economics (e.g. campaign contributions)?  Power corrupts; absolute power corrupts absolutely.

In *Heller*, the Supreme Court cites *Nunn v. State*, 1 Ga. 243, 250-251 (1846), as a example whereby a State court banned the conceal carry of weapons, but not the open.  The Supreme Court seemed to rely on State Courts interpreting the Second Amendment to gather insight as to what the Framer's thought would constitute permissible regulation of arms.  A review of *Heller* leads to the obvious conclusion that a complete ban on both the open and concealed carry of a handgun, combined with an absolutely discretionary licensing scheme, runs afoul of the Second Amendment.

> i.   **Since the State has prevented it citizens from carrying firearms openly, and requires a discretionary license for concealment, the issuance of a license cannot be premised upon a subjective need criteria since a fundamental right is being infringed.**

In *Heller* at 128 S.Ct. 2818-2022, and footnote 27, the Supreme Court makes it implicitly clear that the State statute and Defendants' policy for issuance of CCWs must be "narrowly tailored to achieve a compelling governmental interest." See also, *Abrams v. Johnson*, 521 U.S. 74, 82, 117 S.Ct. 1925, 138 L.Ed.2d 285 (1997)

In *Heller* at 128 S.Ct. 2821, the Court had this to say, rejecting an "interest-balancing inquiry":

> Justice BREYER moves on to make a broad jurisprudential point: He criticizes us for declining to establish a level of scrutiny for evaluating Second Amendment restrictions. He proposes, explicitly at least, none of the traditionally expressed levels (strict scrutiny, intermediate scrutiny, rational basis), but rather a judge-empowering "interest-balancing inquiry" that "asks whether the statute burdens a protected interest in a way or to an extent that is out of proportion to the statute's salutary effects upon other important governmental interests." Post, at 2852. After an exhaustive discussion of the arguments for and against gun control, Justice BREYER arrives at his interest-balanced answer: because handgun violence is a problem, because the law is limited to an urban area, and because there were somewhat similar restrictions in the founding period (a false proposition that we have already discussed), the interest-balancing inquiry results in the constitutionality of the handgun ban. QED.
>
> We know of no other enumerated constitutional right whose core protection has been subjected to a freestanding "interest-balancing" approach. <u>The very enumeration of the right takes out of the hands of government-even the Third Branch of Government-the power to decide on a case-by-case basis whether the right is really worth insisting upon</u>. A constitutional guarantee subject to future judges' assessments of its usefulness is no constitutional guarantee at all. Constitutional rights are enshrined with the scope they were understood to have when the people adopted them, whether or not future legislatures or (yes) even future judges think that scope too broad. We would not apply an "interest-balancing" approach to the prohibition of a peaceful neo-Nazi march through Skokie. See National Socialist Party of America v. Skokie, 432 U.S. 43, 97 S.Ct. 2205, 53 L.Ed.2d 96 (1977) (per curiam). The First Amendment contains the freedom-of-speech guarantee that the people ratified, which included exceptions for obscenity, libel, and disclosure of state secrets, but not for the expression of extremely unpopular and wrong-headed views. The Second Amendment is no different. Like the First, it is the very product of an interest-balancing by the people-which Justice BREYER would now conduct for them anew. And whatever else it leaves to future evaluation, it surely elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home.
>  ***
> In sum, we hold that the District's ban on handgun possession in the home violates the Second Amendment, as does its prohibition against rendering any lawful firearm in the home operable for the purpose of <u>immediate self-defense</u>. [emphasis added]

In this case, the very enumeration of the right takes out of the hands of government-even the Third Branch of Government-the power to decide on a case-by-case basis who shall be issued a CCW.  If there is a licensing scheme in place, it must be equally applied to all citizens, and not just those who happen to be retired California peace officers or friends of the Sheriff.  Any good cause and moral character standard is not narrowly tailored, and is therefore unconstitutional.

### ii. Plaintiffs have a fundamental right to keep and bear arms, and any licensing scheme infringing that right must be narrowly tailored to meet a compelling government interest.

Here, the licensing scheme challenged gives absolute power to a single licensing official, without any system of checks or balances.   In sum, the pleadings are sufficient to state an unrebutted claim that the statute is unconstitutional and simply creates a privileged class of citizens who can obtain a CCW.

Since the state's CCW statute and county's CCW policy burdens a fundamental right, that statute and policy receives heightened scrutiny under the Second Amendment and Fourteenth Amendment's Equal Protection Clause. *Silveira v. Lockyer*, 312 F.3d 1052, 1087-8  (9th Cir. 2002).

In conclusion, Penal Code Sections 12027, 12031(b), 12050-12054 and Defendants' good cause standard for CCW issuance are unconstitutional in that this CCW issuance scheme specifically exempts retired law enforcement personnel from those provisions and burdens which are held applicable to common good citizens, including Plaintiffs.  The holding in *Silveira v. Lockyer*, 312 F.3d 1052 (9th Cir.)(Reinhardt, J), rehearing en banc denied, 328 F.3d 567 (9th Cir. 2003)(six dissents) mandates that these statutory and policy provisions be struck down under the Fourteenth Amendments Equal Protection clause, which was used to strike down an identical exemption in the State's Semi-Automatic Rifle's statute..

A similar exemption for retired peace officers was struck down in *Silveira v. Lockyer*, 312 F.3d 1052 (9th Cir.)(Reinhardt, J), rehearing en banc denied, 328 F.3d 567 (9th Cir. 2003)(six dissents).  Penal Code Sections 12027, 12031(b), 12050-12054 are unconstitutional in that this statutory scheme specifically exempts retired law enforcement personnel from those provisions and burdens which are held applicable to common good citizens, including Plaintiffs.  The holding in Silveira v. Lockyer, 312 F.3d 1052 (9th Cir.)(Reinhardt, J), rehearing en banc denied, 328 F.3d 567 (9th Cir. 2003)(six dissents) mandates that this statutory provision be struck down under the Fourteenth Amendments Equal Protection clause, which was used to strike down an identical exemption in the State's Semi-Automatic Rifle's statute.

Plaintiffs can discern no legitimate state interest in permitting retired peace officers and judges to possess and use for their personal pleasure concealed handguns.  "Rather, the retired officers exception arbitrarily and unreasonably affords a privilege to one group of individuals that is

**8**

denied to others, including plaintiffs." See *Silveira*.

Furthermore, the so-called "good cause" standard for Plaintiffs and other average citizens is addressed by the CCW application itself in the form of "investigator's interview notes", but information for the "prima facie" good cause standard for retired peace officers is not addressed in the application itself – even though the statute requires such.

Since moving Defendants are proper parties to be sued for an unconstitutional firearm statute, Plaintiffs counter motion must be granted However, there is a block which separates judges from other members of the Bar and Plaintiffs.

## MOTION TO STRIKE MUST BE DENIED

RICO requires pleading with particularity. Defendants would have this court strike out necessary facts supporting the enterprise operation.

## CONCLUSION

Based upon the above, Defendants' motion must be denied, and Plaintiffs counter motion for a judgement on the pleadings must be granted striking down California Penal Code Sections 12027, 12031(b), 12050-12054 in that they exempt retired California peace officers only from those provisions and burdens which are held applicable to common good citizens and plaintiffs, in addition, the good cause and good moral character criteria are unconstitutionally vague which are not narrowly tailored for a compelling government purpose.

In the alternative, if the Court is inclined to grant all or part of Defendants' motion, Plaintiffs requests leave of court to amend the complaint to cure any defect. If the court grants a Rule 12(b)(6) motion to dismiss, it "should" provide a statement of its reasons so that plaintiffs can make an intelligent decision on whether to amend the complaint. *See Griggs v. Hinds Junior College*, 563 F.2d 179 (5th Cir. 1997); *Bonanno v. Thomas*, 309 F.2d 320, 322 (9th Cir. 1962).

If an amendment is necessary, Plaintiff will amend the Complaint in accordance with this Court's Statement of Reasons.

DATED:   September 2, 2008   LAW OFFICES OF GARY GORSKI

By /s/ Gary W. Gorski
Gary Gorski
Attorney for Plaintiffs