1  EDMUND G. BROWN JR., State Bar No. 37100
   Attorney General of California
2  DOUGLAS J. WOODS, State Bar No. 161531
   Supervising Deputy Attorney General
3  GEOFFREY GRAYBILL, State Bar No. 53643
   Deputy Attorney General
4    1300 I Street, Suite 125
     P.O. Box 944255
5    Sacramento, CA 94244-2550
     Telephone:  (916) 324-5465
6    Fax:  (916) 324-8835
     E-mail:  Geoffrey.Graybill@doj.ca.gov
7
   *Attorneys for Defendant Edmund G. Brown Jr.,*
8  *Attorney General for the State of California*

9

10                IN THE UNITED STATES DISTRICT COURT

11              FOR THE EASTERN DISTRICT OF CALIFORNIA

12

13

| | |
|---|---|
| 14 **JAMES ROTHERY, Esq.; ANDREA** | Case No. 2:08-cv-02064-JAM-KJM |
| 15 **HOFFMAN,** | |
| 16                        Plaintiffs, | **ATTORNEY GENERAL'S REPLY** |
| 17           v. | **MEMORANDUM RE MOTION TO DISMISS FIRST AMENDED** |
| 18 | **COMPLAINT** |
| 19 **Former Sheriff LOU BLANAS; SHERIFF JOHN MCGINNIS; Detective TIM** | Date:          July 15, 2009 |
| 20 **SHEEHAN; SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, an** | Time:          9:00 a.m. |
|    **independent branch of government of the** | Ctrm:          6 |
| 21 **COUNTY OF SACRAMENTO; COUNTY** | Judge:         The Honorable |
|    **OF SACRAMENTO; STATE OF** |                   John A. Mendez |
| 22 **CALIFORNIA ATTORNEY GENERAL** | Action Filed:  September 3, 2008 |
|    **JERRY BROWN; DOES 1 through 225,** | |
| 23 **unknown co-conspirators,** | |
| 24                        Defendants. | |

25

26                          **INTRODUCTION**

27      Plaintiffs have filed an opposition to defendant Attorney General's motion to dismiss

28 ("Opp. AG") the first amended complaint ("FAC"), which they have combined pursuant to Fed.

1

1    R. Civ. P. 12(g) and Local Rule 78-230(e) with a motion for judgment against all defendants on

2    the pleadings.  Under either rubric, plaintiffs' arguments are without merit, and the complaint

3    should be dismissed.

4         Plaintiffs' motion for judgment on the pleadings is not authorized by Fed. R. Civ. P. 12(c)

5    because the pleadings in this action have not been closed.  Moreover, their motion cannot be

6    considered a motion for summary judgment because it does not comply with Local Rule 56-

7    260(a) which requires the motion to "be accompanied by a 'Statement of Undisputed Facts'."

8         The opposition fails to establish a constitutionally protected right to carry a loaded

9    concealable firearm in public.  It also fails to meet plaintiffs' burden for a "facial" challenge of

10   establishing that there is no situation in which California's CCW statute and separate system for

11   qualifying retired peace officers to carry concealed weapons are rationally related to a legitimate

12   state interest.

13        Plaintiffs' "facial" challenge to the "good cause" and "goood moral character" elements of

14   eligibility for a CCW license on the ground that they are "vague" also fails to state a claim for

15   which relief could be granted.  These criteria are widely used justiciable concepts that in the

16   context of the application process enable sheriffs and chiefs of police, those charged by law with

17   safeguarding the public, to fulfill their statutory responsibilities.

18        Each cause of action and the FAC as a whole fails to state a claim upon which relief could

19   be granted against the Attorney General.  Moreover, there is no realistic prospect that plaintiffs

20   could amend to state a claim against the Attorney General.  Accordingly, the Attorney General

21   respectfully requests that the complaint be dismissed with prejudice.

22                                        **ARGUMENT**

23   **I.    PLAINTIFFS FAIL TO ESTABLISH A CONSTITUTIONALLY PROTECTED
          RIGHT TO CARRY LOADED CONCEALED WEAPONS IN PUBLIC**
24

25        Plaintiffs purport to sue the Attorney General "in his individual and official capacity in

26   order to make a 'facial' challenge to California Penal Code section 12025, which prohibits the

27   carrying of a concealed weapon unless the individual applies for, and receives permission to do so

28   pursuant to section 12050(a)(1)(A). . ."  Opp. AG, pp. 1:23-28, 2:1-5.  Likewise, they challenge

                                              2

1    section 12031, which prohibits carrying loaded firearms in public.  *Id*.  Both provisions are part of

2    California's Dangerous Weapons Control Law set forth in Penal Code section 12000 et seq.[1]

3        The facial challenges to both provisions of the Dangerous Weapons Control Law are based

4    primarily on the contention that they violate plaintiffs' Second Amendment right to keep and bear

5    arms as interpreted by *District of Columbia v. Heller*, ---U.S.---, 128 S.Ct. 2783 (2008). *See* Opp.

6    AG, pp. 2-6.  In order to sustain a facial challenge to a state statute, however, the plaintiff must

7    "establish that no set of circumstances exists under which the Act would be valid."  *United States*

8    *v. Salerno*, 481 U.S. 739, 745 (1987).  *Heller* has actually *foreclosed* the facial challenge in this

9    case because it recognizes a state's right to ban concealed carry of weapons altogether and to

10   regulate use of firearms in general in a wide range of contexts.  128 S.Ct. at 2816-2817 n.26.

11   Plaintiffs concede as much.  Opp. AG, p. 6:6-8.  The Court characterizes state control of firearms

12   outside the home as "presumptively lawful regulatory measures." *Id*.

13       The statutes challenged in this case do not infringe on the only Second Amendment right

14   recognized in *Heller*, i.e., the right to possess an operable handgun in the home for self-defense.

15   128 S.Ct. at 2821-2822.  Plaintiffs concede as much.  Opp. AG, pp. 2:1-2, 5:8-9.

16   Correspondingly, the Ninth Circuit recently applied *Heller* to uphold a ban of firearms on county

17   property because it did not infringe on the core Second Amendment right to possess an operable

18   firearm in the home for self-defense and was within a "presumptively lawful" area of traditional

19   state regulation of firearms.  *Nordyke v. King*, 563 F.3d 439, 460 (9th Cir. 2009).  Therefore,

20   plaintiffs' facial challenge fails, as does their effort to establish a strict scrutiny standard of

21   review of the statutes based on a purported "fundamental right" set forth in *Heller*.  Opp. AG, p.

22   4:21-25.[2]

_____

   [1] Hereinafter all section designations are to the Penal Code unless context or specific
reference indicate otherwise.

   [2] Unless *Nordyke* becomes final, it is the law of this circuit that the Second Amendment is
not applicable to the states through incorporation by the Fourteenth Amendment.  *See Fresno
Rifle & Pistol Club, Inc. v. Van De Kamp*, 965 F.2d 723, 729-731 (9th Cir. 1992), *followed in
Hickman v. Block*, 81 F.3d 98, 103 (9th Cir. 1996).  A judge of the Ninth Circuit has requested a
vote as to rehearing *en banc* for *Nordyke*.  Two other circuits have ruled that only the Supreme
Court can determine whether the Second Amendment is applicable to the states, which was an
issue left open in *Heller* because only the weapons regulations of the District of Columbia were
                                                                                   (continued…)

The Ninth Circuit declined to apply strict scrutiny review to the county ordinance at issue in *Nordyke* because it did not infringe on the core Second Amendment right and it was within a presumptively lawful area of firearms regulation. *Nordyke*, 363 F.3d at 459-460. *Heller* acknowledges that concealed carry of firearms is a traditional area of state regulation. *See also* Tracey Bateman Farrell, Annotation, *Constitutionality of State Statutes and Local Ordinances Regulating Concealed Weapons*, 33 A.L.R. 6th 407 (2008). Thus, strict scrutiny review is not applicable to the challenged statutes, which are "presumptively lawful" under *Heller*.

Accordingly, all of plaintiffs' claims based on a supposed constitutional right to carry a concealed weapon in public must fail.

## II. PLAINTIFFS FAIL TO DEMONSTRATE THAT THERE IS NO INSTANCE IN WHICH THE CCW STATUTE IS RATIONALLY RELATED TO A LEGITIMATE STATE INTEREST, AND THUS FAIL TO STATE A CLAIM FOR ANY DUE PROCESS VIOLATION

Plaintiffs claim that even in the absence of a fundamental right to carry loaded concealed weapons in public, the "good cause" and "good moral character" prerequisites for issuance of CCW licenses are not rationally related to a legitimate governmental interest purportedly because they are "vague and subjective" terms. Opp. AG, pp. 5:17-18. They also contend that vesting "absolute discretion" in sheriffs and chiefs of police to grant or deny CCW licenses is not rationally related to a legitimate governmental interest and therefore invalid as a denial of due process of law. Opp. AG, pp. 5:19-22, 6:17-26, 8:3-4. These allegations are insufficient to state a due process claim.

### A. "Good Moral Character" Is A Standard Justiciable Concept

"Good moral character" is a statutory prerequisite for obtaining naturalized U.S. citizenship and is not unconstitutionally "vague," even when the administrative agency has discretion to interpret it by regulation and apply the interpretation on a case by case basis. *U.S. v. Dang*, 488 F.3d 1135, 1141-1142 (9th Cir. 2007). The first step in determining whether a statute or regulation is unconstitutionally "vague" is the question of whether a complaining party can show

(…continued)

involved. *See National Rifle Association of America, Inc. v. City of Chicago*, 2009 WL 15154443 (7th Cir., June 2, 2009); *Maloney v. Cuomo*, 554 F.3d 56 (2d Cir. 2009).

that he or she could not reasonably be expected to know that his or her circumstances would be disqualifying under the statutory or regulatory standard.  *Id.*  If the person could reasonably have been expected to understand that his or her circumstances would be disqualifying, he or she cannot sustain a vagueness challenge to the statute or regulation.  *Id.*[3]  If the standard was not applied to disqualify the applicant, the applicant's standing to maintain a facial challenge is suspect.  *See id.*

Plaintiffs do not claim the defendant sheriffs denied them CCW licenses based on lack of "good moral character."  Thus, not only is the "good moral character" requirement not facially void for "vagueness," plaintiffs cannot properly raise the issue.  Moreover, the standard is rationally related to effecting the state's legitimate interest in protecting the public.  (*See* section III, below).

### B.   "Good Cause" Is A Standard Justiciable Concept

Plaintiffs do claim that the "good cause" requirement was "a" or "the" basis for the Sheriff denying them CCW licenses.  FAC, pp. 3:13-16; 4:2-6.  However, even if plaintiffs show that they could not reasonably have anticipated that their circumstances would not constitute "good cause" for issuance of CCW licenses[4], in order to sustain a facial challenge to the statutory "good cause" requirement based on vagueness "outside the domain of the First Amendment [plaintiffs] must demonstrate that the enactment is impermissibly vague in all its applications."  *Dang,* 488

---

[3] Without disqualification pursuant to the standard, standing to bring a facial challenge to the standard would be questionable.  *Dang,* 488 F.3d at 1141.  Moreover, as discussed in section IV, *infra*, there would certainly be no standing to challenge the CCW statute against the Attorney General, who has no authority to grant or deny CCW licenses.

[4] Plaintiff Hoffman claims she was surprised that her application purportedly demonstrating that her residence is in a high crime area, that threats had been made to her life and safety and that her family had been "carjacked" at gun point was insufficient in the defendant Sheriff's judgment to establish "good cause."  FAC, p. 4:4-6.  As explained in section II-C, *infra,* plaintiff had and has an adequate remedy under state law for review of defendant Sheriffs' application of the "good cause" criteria to her.  Moreover, the description of her injury demonstrates her lack of standing to challenge the CCW statute against the Attorney General. *See* section IV, *infra.*  Likewise the absence of standing for plaintiffs' suit against the Attorney General is apparent from plaintiffs' challenge to the Sheriffs' allegedly pretextual policy of denying applications for failure to establish "good cause" in the form of an "'immediate' threat of harm" unless the applicant has political and/or financial connections to the Sheriffs.  FAC, pp. 3:13-63.

1    F.3d at 1141 (citation omitted).  Even if plaintiffs establish that the defendant sheriffs unlawfully

2    applied the "good cause" criteria to their applications, there are clearly lawful applications of the

3    standard.  *See e.g.,* section II-C, below.

4         "Good cause" is a widely used justiciable standard to grant or deny rights or benefits and

5    therefore cannot reasonably/legitimately be considered "vague" or "subjective."  *See, e.g.*, *Bracy*

6    *v. Gramley*, 520 U.S. 899, 908-909 (1997) ("good cause" for discovery for a post-conviction due

7    process claim is contextual); *Ramspeck v. Federal Trial Examiners Conference*, 345 U.S. 128,

8    141-142 (1953) (statutory restriction for removal of hearing officers to unspecified "good cause"

9    does not preclude layoffs for reduction in force); *Pintos v. Pacific Creditors Association*, 565

10   F.3d 1106, 1115-1116 (9th Cir. 2009) (applying "good cause" standard for sealing discovery

11   documents produced between private litigants).

12        Accordingly, use of a "good cause" standard for issuing CCW licenses does not constitute a

13   facial denial of due process on account of "vagueness."  Plaintiffs do not cite any authority to the

14   contrary.  Moreover, the standard is rationally related to the state's legitimate interest in

15   protecting the public.  (*See* section III, below)

16        **C.    Sheriffs and Chiefs of Police Do Not Have "Absolute Discretion" To Grant
              Or Deny CCW**

17

18        Sheriffs and chiefs of police are required to evaluate each application individually to

19   determine whether there is "good cause" to issue a CCW license.  *Salute v. Pitchess*, 61 Cal. App.

20   3d 557, 560-561 (1976).  Denials of CCW licenses are subject to state court review for abuse of

21   discretion or failure to follow the law.  *Gifford v. City of Los Angeles*, 88 Cal. App. 4th 801

22   (2001) (denial upheld for failure to update "good cause" for renewal).[5]

23        Thus, plaintiffs' characterization of a sheriff's discretion as "absolute" is inaccurate.

24   Moreover, there is of course no contention here that judicial review for denials of CCW licenses

25

26   [5] *Gifford* recites previous related litigation in which the Los Angeles County Sheriff's CCW
     procedures were established by stipulated judgment.  *Id*. at 803-804.

27

28

Attorney General's Reply Memorandum Re Motion To Dismiss FAC (2:08-cv-02064-JAM-KJM)

1  fails to afford afford them sufficient due process.  Plaintiffs' failure to invoke state court review,

2  which is undisputedly adequate on its face, precludes a due process challenge to the CCW statute

3  insofar as it vests discretion in the sheriff.  *See District Attorney's Office For The Third Judicial*

4  *District v. Osborne*,  No. 08-6, 2009 WL 1685601, at *12 [printed page] (U.S. Supreme Court

5  decision dated June 18, 2009)(inmate's failure to invoke state judicially created avenues for

6  obtaining post-conviction DNA testing precluded claim for a constitutional right to such testing).

7  **III.   PLAINTIFFS DO NOT REBUT THE ATTORNEY GENERAL'S**

8  **EXPLANATION THAT PLAINTIFFS ARE NOT SIMILARLY SITUATED WITH RETIRED PEACE OFFICERS AND ARE TREATED EQUALLY IN FURTHERANCE OF PRESUMPTIVELY VALID STATE INTERESTS**

9

10  Without compliance with the CCW statute, plaintiffs cannot claim to be similarly situated

11  with retired peace officers.  Such officers have extensive experience in the use of firearms in

12  dangerous situations, are presumptively at risk of unpredictable retaliation by persons against

13  whom they have enforced the law and had to maintain "good moral character" for employment as

14  peace officers.  Attorney General's Memorandum in Support of Motion to Dismiss First

15  Amended Complaint ("AG Memo."), pp. 12-16.

16  The Attorney General has demonstrated, and plaintiffs do not dispute, that the only

17  significant difference in the process of a retired peace officer qualifying to carry a concealable

18  weapon and that for a non-peace officer is that the licensing agency already has the information

19  necessary to qualify a retired peace officer, whereas the agency must acquire the same

20  information from and for a non-peace officer applicant.  *Id.*

21  The purpose of regulating concealed weapons, stated succinctly, is to "protect the public by

22  preventing an individual from having on hand a weapon of which the public is unaware, and

23  which might be used by the individual in a fit of passion."  Annotation, *supra*, 33 A.L.R.6th at

24  424 (citing Am. Jur. 2d, Weapons and Firearms § 12).  California recognizes that the public's

25  right to such protection is so compelling that licensing agencies must disclose the applications

26  and supporting documents of those to whom CCW licenses have been issued.  *CBS, Inc. v. Block*,

27  42 Cal. 3d 646, 654 (1986):

28

1

> Public inspection of the names of license holders and the reasons
> the licenses were requested enables the press and the public to
> ensure that public officials are acting properly in issuing licenses
> for legitimate reasons.

Plaintiffs do not dispute that the information required for both retired peace officers and non-peace officers is rationally related to fundamental interests of the states in protecting their citizens from the hazards of carrying concealed weapons or loaded weapons in public.  Moreover, the Supreme Court recognized in *Heller* that state regulation of concealable firearms is "presumptively valid."

Thus, even if an equal protection issue were triggered by a difference in the status of plaintiffs and retired peace officers, the parallel processes for obtaining CCW for each class of licensee would pass constitutional muster by whatever standard of review is applied.

## IV.   PLAINTIFFS CONCERNS WITH *MONELL* AND *McMILLIAN* ARE NO BASIS TO AVOID THEIR LACK OF STANDING TO SUE THE ATTORNEY GENERAL

Despite the clear absence of authority for the Attorney General to grant or deny CCW licenses, plaintiffs urge this Court to find standing for them against the Attorney General in order to avoid the effects of the decisions in *Monell v. New York City Dep't of Soc. Services*, 436 U.S. 658 (1978) and *McMillian v. Monroe County*, 520 U.S. 781 (1997).  Opp. AG, pp. 3:7-4:13.

Even if this were a valid basis to establish standing, their concerns are misplaced.  In the Ninth Circuit, *Monell* and *McMillian* do not apply to claims for prospective relief pursuant to 42 U.S.C. § 1983.  *Truth v. Kent Sch. Dist.*, 542 F.3d 634, 644 (9th Cir. 2008); *Chaloux v. Killeen*, 886 F.2d 247, 250 (9th Cir. 1989).  Plaintiffs seek both injunctive and declaratory relief – prospective relief -- in this action.  (FAC, p. 77:12-28.)

Moreover, just as California sheriffs' duties as crime investigators (*Brewster v. Shasta County*, 275 F.3d 803 (9th Cir. 2001)(search violating constitutional restrictions), and jail administrators (*Cortez v. County of Los Angeles*, 294 F.3d 1186 (9th Cir. 2002)(death of jailed inmate); *Streit v. County of Los Angeles*, 236 F.3d 552 (9th Cir. 2001)(failure to timely release prisoner)) are a local, rather than state, function, granting or denying CCW licenses is a local

8

1   function with policy for establishing "good cause" determined at the local level guaged by local

2   conditions. *CBS, Inc.*, 42 Cal.3d 646; *Gifford*, 88 Cal. App. 4th 801; *Salute*, 61 Cal. App. 3d at

3   560-561. Therefore, if claims such as these were proven, the defendant sheriff would be subject to

4   liability for damages pursuant to section 1983 as well as injunctive and declaratory relief.

5   *Brewster*, 275 F.3d at 811-812; *Cortez*, 294 F.3d at 1189-1190; *Streit,* 236 F.3d at 562-563.

6        By the same token that defendant sheriffs are subject to liability as the final county policy

7   maker for issuance of CCW licenses, plaintiffs do not have standing against the Attorney General

8   to litigate the constitutionality of the CCW statute or the exemptions from criminal statutes

9   prohibiting concealed carry of loaded firearms.  The Ninth Circuit has rejected plaintiffs'

10   contention (FAC, pp. 67:10-68:12) that the Attorney General has absolute control and authority

11   over sheriffs regarding investigation of crime such that sheriffs are state actors for the purpose of

12   enforcing state law.  It holds that, notwithstanding the litany of state constitutional and statutory

13   descriptions of the relationship between the Attorney General and county sheriffs recited by

14   plaintiffs, sheriffs have "significant autonomy as the officials responsible for investigating crime

15   within their respective counties" so as to render them the final policy makers with regard to

16   investigation and arrest practices within their counties.  *Brewster*, 275 F.3d at 809-811.

17        The theoretical possibility in light of the variety of constitutional and statutory duties,

18   responsibilities and powers vested in the Attorney General that he might directly investigate and

19   prosecute crime is insufficient to establish standing against him for challenges to statutes

20   providing criminal penalties or investigative authority, and such an action would be barred by the

21   Eleventh Amendment.  *Long v. Van de Kamp*, 961 F.2d 151 (9th Cir. 1992).  In *Long,* plaintiffs

22   entered into settlements with all officers and agencies involved in enforcing California Vehicle

23   Code section 2805(a), which authorized warrantless searches to locate stolen vehicles, but

24   pursued the constitutional challenge to the statute against the Attorney General.  *See Long v. Van

25   de Kamp*, 772 F. Supp. 1141, 1142 (C.D. Cal. 1991).  Notwithstanding the Attorney General's

26   theoretical enforcement authority, in the absence of an actual threat of enforcement[6] there was no

27       [6] Plaintiffs allege "Defendants enforce, or threaten to enforce, all penal [sic] codes [sic] sections

28   that involve the carrying of a concealed handgun without a CCW."  FAC, p. 67:3-4.  This

                    (continued…)

1   Article III standing against the Attorney General to challenge the statute, and the action against

2   him was barred by the Eleventh Amendment for the same reason.  *Long v. Van de Kamp,* 961

3   F.2d at 151-153.

4        Even if there were any *Monell* and *McMillian* problems for plaintiffs, they cannot avoid

5   their patent lack of standing against the Attorney General in this action.  AG Memo, pp. 16-21.

6   The Attorney General has no authority to grant or deny CCW licenses for plaintiffs.  This

7   authority is granted by statute exclusively to local law enforcement such as the county

8   defendants.[7]

9   **V.    PLAINTIFFS' MOTION FOR JUDGMENT ON THE PLEADINGS IS
             UNAUTHORIZED**

10

11       Fed. R. Civ. P. 12(c) authorizes a motion for judgment on the pleadings only "[a]fter

12   pleadings are closed."  Defendants have not filed answers to the FAC; they have filed motions to

13   dismiss.  Accordingly, pleadings are not closed in this case, and therefore a motion for judgment

14

15   _____

     (…continued)
16   generalized allegation applicable wholesale to all named defendants is not sufficient to allege a
     cause of action under 42 U.S.C. § 1983 for threatened enforcement by the Attorney General.  AG
17   Memo., p. 20:7-26 (discussing *Ashcroft v. Iqbal*, 556 U.S. __, __S.Ct. __, 2009 U.S. Lexis 3472).
     In all but two of the cases cited by plaintiffs to establish standing on "the existence of statute or
18   the reasonable possibility of prosecution [to] challenge on the merits for persons adversely
     affected," standing was not an issue. Opp. AG, pp. 2:23-3:6.  *Gratz v. Bollinger*, 539 U.S. 244
19   (2003), involved a challenge to the University of Michigan admissions policy which was properly
     directed against the Regents of the University and its presidents who had authorized the policy.
20   *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149-154 ( 1967) held that pre-enforcement
     standing for suit against the promulgating agency by persons directly affected thereby to
21   challenge regulations is provided by the federal Administrative Procedure Act (5 U.S.C. §§ 701-
     704).  Since only the defendant sheriff has the authority to grant or deny CCW licenses, this case
22   is relevant only for standing against the sheriff but not for standing against the Attorney General
     who has no such authority.  The decision in *Thompson v. Western States Medical Center*, 535
23   U.S. 357 (2002) was a commercial speech case in which standing was not an issue.  The decision
     in *Epperson v Arkansas*, 393 U.S. 97 (1968) was an Establishment Clause case in which standing
24   was not an issue.  The decision in *Ashcroft v Free Speech Coalition*, 534 U.S. 1389 (2002) was a
     Freedom of Speech/obscenity case in which standing was not an issue.

25        [7] Plaintiffs allude to the Attorney General's role in establishing a standard CCW
     application form for use by all licensing agencies pursuant to Penal Code section 12051(a)(3)(A).
26   FAC, p. 66:1-9; Opp. AG, p. 3:26-28.  However, the standard form is deemed a "local form"
     consistent with its actual usage by local licensing agencies. Cal. Penal Code § 12051(a)(3)(D).
27   These provisions do not authorize the Attorney General to supervise the CCW application process
     in general or for "good cause" determinations for specific applications.
28

1   on the pleadings is not authorized.  *See Season-All Industries, Inc. v. Turkiye Sise Ve Cam*

2   *Fabrikalari, A.S.*, 425 F.2d 34, 36 (3rd Cir. 1970).

3            Although a motion for judgment on the pleadings may sometimes be considered as a

4   motion for summary judgment (*See id.*), such consideration would not be appropriate in this case

5   because plaintiffs have not filed a Statement of Undisputed Facts required by Local Rule 56-

6   260(a).  Moreover, without answers on file to define the issues and in the absence of discovery

7   responses or stipulations of fact, consideration of a motion for summary judgment would be

8   unwarranted.  *Id.* at 38-39 (summary judgment inappropriate without "benefit of a record

9   containing the factual version of each defendant.")

10                                **CONCLUSION**

11       For the reasons stated herein and in the original memorandum in support of the motion,

12   plaintiffs have failed to establish jurisdiction for an action against the Attorney General and have

13   failed to state any claim for which relief can be granted.  Therefore, the Attorney General

14   respectfully requests that the First Amended Complaint and this action be dismissed as to him

15   with prejudice.

16   Dated:  July 8, 2009                          Respectfully Submitted,

17                                                 EDMUND G. BROWN JR.
                                                   Attorney General of California
18                                                 DOUGLAS J. WOODS
                                                   Supervising Deputy Attorney General
19
                                                   /s/  ***Geoffrey Graybill***
20
                                                   GEOFFREY GRAYBILL
21                                                 Deputy Attorney General
                                                   *Attorneys for Defendant*
22                                                 *Edmund G. Brown Jr., Attorney General*
                                                   *for the State of California*
23   SA2009307218
     30793059.doc
24

25

26

27

28

Attorney General's Reply Memorandum Re Motion To Dismiss FAC (2:08-cv-02064-JAM-KJM)