James Rothery, Esq., Andrea Hoffman v. Former Sheriff Lou Blanas, et al.
United States District Court, Eastern District Case No: 2:08-cv-02064-JAM-KJM

# EXHIBIT "1"

## [Proposed] Order Dismissing First Amended Complaint With Prejudice As to Defendant Attorney General

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

---oOo---

BEFORE THE HONORABLE JOHN A. MENDEZ, JUDGE

---oOo---

JAMES ROTHERY, Esq.;
ANDREA HOFFMAN,

        Plaintiffs,

                         No. Civ. S-08-2064

vs.


Former Sheriff LOU BLANAS,
et al.,

        Defendants.

_____/


---oOo---

REPORTER'S TRANSCRIPT

COURT'S RULINGS ON MOTIONS TO DISMISS

WEDNESDAY, JULY 15, 2009

---oOo---


Reported by:      KELLY O'HALLORAN, CSR #6660

APPEARANCES


For the Plaintiff:

    DANIEL M. KARALASH
    ATTORNEY AT LAW
    1207 Front Street, Suite 15
    Sacramento, CA  95814


For the Defendant County of Sacramento:

    LONGYEAR, O'DEA & LAVRA, LLP
    3620 American River Drive, Suite 230
    Sacramento, CA  95864
    BY:  JOHN A. LAVRA

For the Defendant Attorney General Edmund G. Brown, Jr.:

    STATE OF CALIFORNIA
    DEPARTMENT OF JUSTICE
    OFFICE OF THE ATTORNEY GENERAL
    1300 I Street
    Sacramento, CA  95814
    BY:  GEOFFREY L. GRAYBILL

1          SACRAMENTO, CALIFORNIA

2      WEDNESDAY, JULY 15, 2009, 9:00 A.M.

3               ---oOo---

4     * * * * (Excerpt of proceedings.)

5          THE COURT:  Okay.  Let me begin by focusing on the

6     complaint itself.  And I want this record to be clear because

7     I assume this may end up in the Ninth Circuit, and so I want

8     my comments to be clear as well.

9          In terms of the complaint itself, it is for the most

10    part a rehash of the 2003 lawsuit, although it adds or

11    attempts to add a RICO claim.  It is a rehash of the prior

12    lawsuit that was before Judge England.  And the defendants

13    request the Court take judicial notice of that prior lawsuit.

14    In fact, I will make reference to that prior lawsuit

15    throughout my comments, even in the context of a motion to

16    dismiss.

17         The complaint itself is an example that more is not

18    better.  It's 808 paragraphs.  It's 78 pages long.  And it is

19    a mishmash of thoughts, legal argument, speculation, with

20    some allegations thrown in.  Quite frankly, Mr. Karalash,

21    it's Exhibit A of what you should not do in terms of pleading

22    a complaint in federal court.

23         And to the defendants' credit, you filed motions to

24    dismiss.  I don't know how you would have answered this

25    complaint given that there were paragraphs that don't allege

1    anything.  They're simply statements.  There's one paragraph

2    in here where it just contains -- there it is, paragraph 784.

3    "See Melendez vs. City of Los Angeles."  How do you respond

4    to an allegation like that in a complaint?

5         It contains a cause of action for declaratory and

6    injunctive relief that is almost identical to the same cause

7    of action in the 2003 case involving other plaintiffs which

8    Judge England clearly set forth that you can't maintain a

9    cause of action for declaratory and injunctive relief.  It

10   should have been included in the prayer for relief.

11        So the complaint itself, if I wasn't, as you see where

12   I'm headed, going to grant the motions to dismiss, I clearly

13   would have granted the motions to strike, and we would have

14   started all over.  We're not going to go there.

15        In terms of the lawsuit itself, it is apparent to the

16   Court that the plaintiffs are misreading cases.  That they,

17   in particular, have misread both the Heller case and the

18   Nordyke case.  Those cases in no way support this lawsuit or

19   maintaining this lawsuit.  They have not done the necessary

20   legal research in terms of maintaining a RICO claim.  And

21   nearly all of the other claims in this case, the 1983 claims,

22   were dealt with by Judge England in his order dismissing the

23   2003 case.  And I'll go through that.

24        In terms of the RICO claim, that, as Mr. Graybill, you

25   point out, that allegation is only against the county

1    defendants, as we'll call them.  So it does not involve the

2    Attorney General.  In terms of the county defendants, they

3    provided at least seven reasons why the RICO claim should be

4    dismissed.  I don't need to reach all seven reasons raised by

5    the county defendants, but the record should reflect that, in

6    fact, I agree with all seven reasons for the dismissal of the

7    first cause of action.

8          The seven reasons that they provided are as follows:

9    I'm sorry.  It's the AG's brief.  Here it is.  Okay.

10         One, that these plaintiffs do not have standing to

11   maintain a RICO claim.

12         Two, that they failed to establish, in particular,

13   that the defendant Sheehan engaged in any required conduct to

14   constitute a violation of RICO laws.  And I would note that

15   plaintiffs in their opposition don't address that argument

16   specifically.

17         Three, that the plaintiffs failed to establish that

18   the defendant Blanas and defendant McGinness are distinct

19   from the enterprise.

20         Four, that the plaintiffs failed to establish that the

21   enterprise engaged in interstate commerce.

22         Five, that the plaintiffs failed to establish that any

23   alleged predicate act under 18 USC Section 1951 had any

24   effect on interstate commerce.

25         Sixth, that the plaintiffs failed to establish any

1    predicate acts by defendants subject to liability under

2    29 USC Section 186.

3         And, seven, that these civil rights violations do not

4    constitute racketeering activity.

5         All meritorious arguments.  And for all the reasons

6    set forth in the county's brief, the Court clearly agrees

7    that the RICO claim cannot be maintained.

8         In the complaint, the plaintiffs have alleged that the

9    sheriff's department is an enterprise for the purpose of

10   RICO, and then they allege in detail that both sheriffs gave

11   out concealed weapon permits, CCW permits, in exchange for

12   campaign contributions and other perks.  That's the

13   allegation.

14        The defendants have argued, as I indicated, seven

15   reasons why I should dismiss this claim.  I want to focus on

16   some of those in particular.  One, that the plaintiffs do not

17   have standing to bring a RICO claim.  To bring a RICO claim,

18   a person must show that he was injured in his business or

19   property under 18 USC Section 1964(c), which reads that "Any

20   person injured in his business or property by reason of a

21   violation of Section 1962 of this chapter may sue therefor in

22   any appropriate United States district court," citing also

23   Sedima vs. Imrex Co., a U.S. Supreme Court case, 473 U.S.

24   479.  "The plaintiff only has standing if, and can only

25   recover to the extent that, he has been injured in his

1   business or property by the conduct constituting the

2   violation."  The Ninth Circuit has also stated that the harm

3   must be economic in nature, citing Guerrero vs. Gates, 442

4   F.3d 697, a 2006 Ninth Circuit case, which provides that "To

5   recover under RICO, the individual must show proof of

6   concrete financial loss and must demonstrate that the

7   racketeering activity proximately caused the loss."

8          In this case, plaintiffs do not have a property

9   interest in a CCW permit.  They have not alleged that they

10  have suffered any harm to their business.  Therefore, they do

11  not have standing to bring a RICO claim.

12         Defendants also argue, among other things, that the

13  RICO claim should fail, as I indicated, because the sheriffs

14  are not distinct from the enterprise because they were sued

15  in their official capacity, that the enterprise was not

16  engaged in interstate commerce, and there's statute of

17  limitations arguments as well.  Again, all those arguments

18  the Court finds to be meritorious and give the Court basis to

19  dismiss the RICO claim.

20         Throughout this discussion, you'll see that the Court

21  completely disagrees with the plaintiffs' reading of Heller.

22  Under no circumstances can Heller be read that an individual

23  now has a fundamental right to carry a concealed weapon.

24  That case has been completely misread by the plaintiffs.  And

25  as I indicated, so the record's clear, there is no basis in

1    law for the plaintiffs to maintain their claims under that

2    theory.

3         Count 2 is an equal protection claim brought under

4    42 USC Section 1983.  In that second cause of action, which

5    does include the Attorney General, the plaintiffs have

6    alleged that they were denied CCW permits, whereas retired

7    peace officers were granted permits without having to

8    demonstrate good cause.  And plaintiffs argue that this

9    violates the 14th Amendment right to equal protection.

10        Again, both the Attorney General and the county

11   defendants provided the Court with sound legal reasons why

12   that second cause should be dismissed as well.  And

13   Judge England also addressed this argument as well in his

14   2004 order in the Mehl vs. Blanas case.  That's case 03-2682.

15        I'm going to take a quick break because I left my

16   notes in chambers, and I want to make sure, again, that we

17   make a complete record here.  So I'll be right back.

18        (Brief recess taken.)

19        THE COURT:  Okay.  Back on the record.  And this gets

20   to Mr. Karalash's strict scrutiny versus rational basis

21   review.  And I'm going to adopt, because I agree with it

22   completely, Judge England's opinion with respect to this

23   claim.  As written by Judge England, in the case before me as

24   well as the case in 2003, the plaintiffs did contend that the

25   statutes that are being challenged here are unconstitutional

1    because they grant retired law enforcement officers special

2    treatment in allowing them to carry concealed weapons without

3    having to show good cause for a permit.  They specifically

4    argue that California Penal Code Section 12027 and 12031(b)

5    state that the statutes prohibiting the carrying of concealed

6    weapons, which is Section 12025 of the Penal Code, and loaded

7    weapons, which is Section 12031(a), do not apply to peace

8    officers or to honorably retired peace officers.

9         Plaintiffs contend, as they do in this case, that

10   Silveira vs. Lockyer compels judgment on the pleadings in

11   their favor.  And I'll get to that, by the way, as well.

12   That the plaintiffs are asking for judgment on the pleadings.

13   Silveira vs. Lockyer does not compel that.  Silveira

14   concerned California's ban on assault rifles, and the court

15   upheld the statute in every respect save one.  The court

16   found no rational basis for allowing retired peace officers

17   to possess assault weapons without any restriction on use

18   when active peace officers were permitted to possess and use

19   such weapons when off-duty only for law enforcement purposes.

20   The basis for allowing active off-duty officers to possess

21   and use assault weapons was that a peace officer is on call

22   24 hours a day, and may be called upon at any time to respond

23   to a call for help.  The same is not true of retired

24   officers.  Because they are not on call at all after

25   retirement, there was no rational basis in allowing retired

1    officers to keep assault weapons.

2         The justification and rationale for exempting retired

3    peace officers from the CCW is not the same as for the

4    exception to the assault weapon ban in Silveira.  The

5    justification for a CCW is personal protection, not public

6    protection.  Peace officers were entitled to carry assault

7    weapons so that they would not be inadequately armed to

8    confront criminals while protecting the public.  On the other

9    hand, they are entitled to carry concealed weapons to protect

10   themselves from the enemies they have made in performing

11   their duties.  While an officer's duty to respond to the

12   public's calls for help stops when he retires, the threat of

13   danger from enemies he might have made during his service

14   does not.  Therefore, there is a rational basis for allowing

15   a retired officer to continue to carry a concealed weapon,

16   even though there was no rational basis for allowing the same

17   officer to keep an assault weapon.  Because "plaintiffs have

18   no constitutional right to own or possess weapons, heightened

19   scrutiny does not apply," and the statute need meet only

20   rational basis review.  That's a quote from Silveira, 312

21   F.3d at 1088.

22        And again, there is nothing in Heller that changes

23   that analysis, despite plaintiffs' arguments to the contrary.

24        Having concluded that the statutory exception allowing

25   retired officers to carry concealed weapons is rationally

1    related to a legitimate governmental interest, protecting

2    retired law enforcement officers, it follows that this claim

3    in this case, which is the second claim, fails to state a

4    claim upon which relief may be granted.  Plaintiffs'

5    arguments to the contrary are without merit.

6            Plaintiff contends in this case before this Court, as

7    they did in the 2003 case, that all one must do is "join the

8    club," that is, become a law enforcement officer and quit the

9    following day to secure the right to carry a concealed

10   weapon.  Becoming a law enforcement officer is not a club one

11   joins.  Furthermore, the statute gives preference only to

12   those officers "who have qualified for, and accepted a

13   service or disability retirement."  Thus, one who works for

14   one day as a law enforcement officer and quits would not

15   become exempt from the requirement to apply for a permit to

16   carry a concealed weapon.

17           There was some argument in the 2003 case concerning

18   officers who may have psychological issues or alcohol issues.

19   And again, the law deals with that.  In short, just as in

20   2003, it's clear that the statutory scheme allowing retired

21   officers to carry concealed weapons passes a rational basis

22   review.  And therefore defendants motion on this cause of

23   actions, as in 2003, must be dismissed.

24           I also want to make reference in the case before the

25   Court to the fact that under another recent Supreme Court

1    case, Ashcroft vs. Iqbal, a plaintiff is required in a

2    complaint to state a plausible claim for relief in order to

3    survive a motion to dismiss.  "Determining whether a case

4    states a plausible claim for relief will be a context

5    specific task that requires the reviewing court to draw on

6    its judicial experience and common sense.  Where the

7    well-pleaded facts do not permit the court to infer more than

8    the mere possibility of misconduct, the complaint has

9    alleged -- but it has not shown -- that the pleader is

10   entitled to relief."

11        In this case plaintiff has not sufficiently shown that

12   allowing retired peace officers to carry concealed weapons

13   has no rational basis.  And without that, without stating a

14   plausible claim for relief, that second cause of action

15   cannot be maintained as well.

16        In terms of Court 3, Count 3 alleges a claim under,

17   again, 42 USC Section 1983, brought under the First and

18   Fourteenth Amendments.  And that claim and the allegation, as

19   best as we can decipher from the complaint, is that plaintiff

20   is arguing that because those who contribute to campaigns are

21   given CCW permits, plaintiffs' First Amendment rights were

22   somehow violated.  As both defendants -- actually, this one

23   also only applies to the county; correct?

24        MR. LAVRA:  Yes.

25        THE COURT:  As the county points out, there are no

1    cases stating that not contributing to a campaign violates

2    the First Amendment.  The cases dealing with the effect of

3    campaign contributions on First Amendment rights deal with

4    campaign contribution limits.  And again, plaintiffs don't

5    address the First Amendment claim in their opposition.  And

6    there simply is no precedent for a First Amendment violation

7    based on failure to make a campaign contribution.

8         For those reasons, and for the reasons set forth in

9    the county's opposition, the third claim for relief should be

10    dismissed and will be dismissed as well.

11         All right.  Let's turn to the fourth cause of action

12    which is a new cause of action, in effect, somewhat different

13    from the prior claim.  And that's the Second Amendment

14    argument.  Again, specifically it's pled as a violation of

15    42 USC Section 1983.  The violation in particular is under

16    the Second and Fourteenth Amendments.  In the complaint, the

17    plaintiffs allege that the denial of the CCW permits violate

18    their right to bear arms under the Second Amendment.  As

19    pointed out, however, by both the Attorney General and the

20    county defendants, there is no constitutional right to carry

21    a concealed weapon.  That is the Nordyke vs. King case,

22    563 F.3d 439, which upheld regulation of gun possession in

23    public places post-Heller.  Even in the District of Columbia

24    vs. Heller case, 128 S. Ct. 2783, a 2008 Supreme Court case,

25    the Supreme Court noted, "Like most rights, the rights

1    secured by the Second Amendment is not unlimited." The court

2    went on to say that "The majority of the 19th-Century courts

3    to consider the question held that prohibitions on carrying

4    concealed weapons were lawful under the Second Amendment or

5    state analogues." Heller is distinguishable because in that

6    case, the D.C. ordinance banned the use of firearms in the

7    home. That's not what's involved in this case. This case

8    involves an attempt to get a permit to carry a concealed

9    weapon. In Heller, the Supreme Court found the right to use

10   firearms in self-defense to protect one's home was guaranteed

11   by the Constitution. On the other hand, the right to carry a

12   concealed weapon is not guaranteed by the Constitution. And

13   because plaintiffs do not have a Second Amendment right to

14   carry a concealed weapon, and no court has so held, this

15   claim also should be and will be denied.

16        Count 5 in the complaint is again brought under

17   42 USC Section 1983, under the Privileges and Immunities

18   Clause. This is an identical claim to that which was brought

19   back in the case before Judge England. He dealt with that at

20   length in his order dismissing that case. And again, I'm

21   going to adopt his analysis as well with respect to that

22   claim.

23        Under Article IV, Section 2, of the United States

24   Constitution, the citizens of each state are entitled to all

25   privileges and immunities of citizens in the several states.

1    In this case before this Court, the plaintiffs are claiming

2    that by being denied a CCW permit, they were denied the

3    ability to travel with a concealed weapon to other states

4    that honor California's CCW permits.  As again argued by the

5    defendants in this case and as discussed by Judge England in

6    his opinion, plaintiffs do not have a right to carry a

7    concealed weapon.  It's Erdelyi vs. O'Brien, 680 F.2d 61, a

8    Ninth Circuit case from 1982, which holds that there is no

9    liberty or property interest in carrying a concealed weapon.

10   Therefore, plaintiffs were not denied the right to travel

11   with concealed weapons.

12        This was the portion of the opposition brief in which

13   the arguments concerning Freedmen and the effect on Freedmen

14   somehow should lead this Court to allow this case to go

15   forward, which are, the best way I can put it, nonsensical

16   arguments that really have little or anything to do with this

17   case.  Those same arguments were made before Judge England

18   back in 2003.  And they failed back then, and they fail this

19   time as well.

20        I want to read from Judge England's opinion.  In

21   dismissing the claim, the identical claim in the 2003 case,

22   Judge England writes:  "Plaintiffs proclaim that for the

23   first time, this Court, and the Ninth Circuit, will be asked

24   to define whether the 14th Amendment's Privileges and

25   Immunities Clause includes the fundamental right to keep and

1   bear arms.  Thus, it is finally clear to the Court that

2   plaintiffs' errors are twofold.  First, plaintiffs equate the

3   right to keep and bear arms with the right to carry firearms

4   concealed, without ever analyzing, or even acknowledging, a

5   possible difference between the two.  In their opposition,

6   plaintiffs do not even address the particular subject of

7   their lawsuit, which is the denial of a permit to carry

8   concealed weapons.  Even if the Court were to assume that if

9   plaintiffs were prevented from possessing firearms a

10  privileges and immunities violation would be found, it does

11  not follow that merely being denied a permit to carry those

12  firearms concealed amounts to such a violation.  Plaintiffs

13  have done nothing to persuade, indeed, they have not

14  attempted to persuade, the Court that possession of a firearm

15  equates to carrying that firearm concealed.  .

16          "Second, plaintiffs label the right to keep and bear

17  arms as a fundamental right.  In doing so, plaintiffs claim

18  support from some 35 Supreme Court cases, while only citing

19  strong dictum from one case."

20          Now, I recognize that this was written before the

21  Heller decision.  But Judge England does go on to discuss

22  Silveira vs. Lockyer.  And Judge England writes, "Plaintiffs

23  completely ignore the clear holding of Silveira vs. Lockyer,

24  a 2002 Ninth Circuit case, which represents binding authority

25  on this Court.  In Silveira, the court analyzed rights

1   guaranteed under the Second Amendment and held that the

2   Second Amendment right to keep and bear arms is a collective

3   right that 'guarantees the right of the people to maintain

4   effective state militias, but does not provide any type of

5   individual right to own or possess weapons.'"

6        Admittedly, Heller has changed that somewhat.  But

7   again, Heller didn't deal with carrying weapons concealed.

8        "In Silveira, the court went on to say that 'the

9   federal and state governments have the full authority to

10  enact prohibitions and restrictions on the use and possession

11  of firearms, subject only to generally applicable

12  constitutional constraints, such as due process, equal

13  protection, and the like.'  Plaintiffs' failure to confront

14  Silveira is even more egregious when the Court considers that

15  Mehl was a plaintiff in Silveira, and Gary Gorski,

16  plaintiffs' current counsel, represented the plaintiffs in

17  Silveira."

18       Again, the bottom line is that nothing in Heller

19  changes that analysis with respect to that privileges and

20  immunities cause of action, Count 5 in this complaint.  There

21  is no constitutional right to carry a concealed weapon.  And

22  because plaintiffs do not have a right to carry concealed

23  weapons, their right to travel to other states has not been

24  violated, and the privileges and immunities claim must be

25  dismissed as well.

1            And then the sixth cause of action is also brought

2     under 42 USC Section 1983, alleging violations of the Ninth

3     and Fourteenth Amendments.  The Ninth Amendment provides that

4     "The enumeration in the Constitution, of certain rights,

5     shall not be construed to deny or disparage others retained

6     by the people."  Plaintiffs argue that their natural right to

7     self-preservation has been violated.

8            And as the defendants again point out in their briefs

9     in support of the motion to dismiss and in the reply, that

10    the Ninth Amendment does not encompass an individual right to

11    bear arms.  That's San Diego County Gun Rights Committee vs.

12    Reno, 98 F.3d 1121, a 1996 Ninth Circuit case, in which the

13    court wrote "We join our sister circuits in holding that the

14    Ninth Amendment does not encompass an unenumerated,

15    fundamental, individual right to bear firearms."  Plaintiffs

16    therefore lack standing to bring a claim under the Ninth

17    Amendment.  And because they lack standing to bring a claim

18    under the Ninth Amendment, this sixth cause of action must be

19    dismissed as well.

20            In terms of the seventh cause of action, which is a

21    claim for injunctive relief and declaratory relief, it is

22    almost identical to the claim that was filed in the Mehl case

23    back in 2003.  Again, I adopt Judge England's reasoning when

24    he dismissed that claim as well.  He wrote as follows:

25    "Plaintiffs' first amended complaint contains a seventh claim

1    seeking a preliminary injunction.  The claim contains two

2    paragraphs."

3         In this case before this Court, before me, there are

4    more paragraphs.  But there is the same allegation.

5         In the 2003 case, the allegation was "Plaintiff seeks

6    a declaration from the court regarding the constitutionality

7    of the CCW statutes and policies enforced and promulgated by

8    defendants."

9         In this complaint, it's paragraph 802.  And that reads

10   "Plaintiffs seek a declaration from the court regarding the

11   constitutionality of the CCW statutes and policies, enforced

12   and promulgated by defendants," and then they've added in

13   this case, "providing preferential treatment to those

14   associated with law enforcement."

15        The declaratory and injunctive relief claim is not a

16   separate claim for relief upon which relief may be based.  It

17   is, in fact, nothing more than a request for a remedy based

18   upon a favorable finding on the first six claims.  It should

19   have been included as part of the prayer for relief, not pled

20   as a separate cause of action.  And for those reasons, it

21   should be dismissed.

22        As the defendants point out in their reply briefs, the

23   plaintiff has requested that the Court grant judgment on the

24   pleadings under Federal Rule of Civil Procedure 12(c).

25   Again, the plaintiffs' request evidences just a fundamental

1   lack of understanding of the Federal Rules of Civil

2   Procedure.  And as both defendants point out, Federal Rule of

3   Civil Procedure 12(c) authorizes a motion for judgment on the

4   pleadings only "after pleadings are closed."  None of the

5   defendants have filed answers to this amended complaint.

6   They filed motions to dismiss.  Accordingly, pleadings are

7   not closed in this case, and therefore a motion for judgment

8   on the pleadings is not authorized.  And then as cited by the

9   Attorney General in its brief, a third circuit case also

10   confirms that, Season-All Industries, Inc. vs. Turkiye Sise

11   Ve Cam Fabrikalari, A.S., 425 F.2d 34, a Third Circuit case

12   1970.  There's no basis for that request.  It should not have

13   been made.  And, of course, it is denied as well.

14        There are a number of other arguments, Mr. Graybill, I

15   knowledge that you raised on behalf of the Attorney General.

16   I'm not going to reach those and don't need to reach those,

17   including that the Attorney General has sovereign immunity,

18   that he, in fact, has no authority to issue CCWs, and

19   therefore the case should be dismissed on those grounds.

20   Those weren't even addressed in the opposition.  I'm not

21   going to specifically reach those arguments, other than --

22   and I don't have to -- other than to say, again, I think

23   they're meritorious.  I'm just not specifically going to

24   reach a finding on those arguments as well.  I don't need to,

25   and I'm not going to.

1        The final issue is whether I should for some reason

2   allow the plaintiffs leave to amend or whether I should

3   dismiss this with prejudice.  The Court is going to order

4   that this case, and each and every claim, be dismissed with

5   prejudice for the reasons set forth in both the Attorney

6   General and the county defendants' briefs.  And that is there

7   is no legal basis for this lawsuit.  There is no support in

8   the law for this lawsuit.  And even if I gave the plaintiffs

9   an opportunity to try to amend, they would be unable to.

10  These are all solid, well-founded legal reasons set forth in

11  the defendants' briefs as to why this case should not go

12  forward.

13       I'm not sugarcoating this, obviously,

14  Mr. Karalash.  I find this lawsuit to be almost frivolous, if

15  not frivolous.  I recognize you disagree.  But it seems to me

16  that your clients had their shot in 2003.  I believe there

17  also may be another case before Judge Karlton that was

18  dismissed.  I'm not sure if I'm correct about that.  But I

19  know at least -- is that true, there's a similar case before

20  Judge Karlton?  I thought I read somewhere in somebody's

21  brief.  Maybe I'm wrong.

22       MR. LAVRA:  Not with respect to Mr. Gorski.  There may

23  be another CCW case out there.

24       THE COURT:  Okay.  But at least it just seems to me to

25  be a rehash of this lawsuit that was dismissed back in 2004

1   by Judge England.  And Heller has not in any way changed

2   that.  And Heller has been seriously misread by you, as well

3   as the Nordyke case.  Those two cases do not give your

4   clients a right to maintain this lawsuit.

5        Those comments being made, I'm not sure, since 1983

6   actions obviously sometimes raise issues of attorney's fees,

7   whether you're going to seek that.  Speaking to the defense

8   counsel, if you do seek that, there are obviously local rules

9   that govern those motions.  You should follow those.  I'm not

10  going to take that up this morning.  But I am, for all the

11  reasons stated, going to dismiss this complaint in its

12  entirety with prejudice against all defendants.

13       Did both of you submit proposed orders?

14       MR. GRAYBILL:  The state didn't, your Honor, but we

15  will.

16       THE COURT:  Did you?

17       MR. LAVRA:  No, we didn't, but we will.

18       THE COURT:  Okay.  I'm going to order both defendants

19  to submit proposed orders.  Run them by Mr. Karalash for

20  approval as to form, and get those to me, if you can, within

21  the next week.  Okay?

22       MR. LAVRA:  All right.

23       THE COURT:  Anything further?

24       MR. KARALASH:  Will the statement of reasons be

25  reduced to an order and put into the record?

1        THE COURT:  They're going to prepare the proposed

2    order.  If someone wants to order a transcript and adopt

3    that, that's fine with me, but I'm not going to send out a

4    separate written order.

5        MR. KARALASH:  Thank you.

6        THE COURT:  Okay.  Thank you.

7        MR. LAVRA:  Thank you, your Honor.

8        (Proceedings were concluded.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          I certify that the foregoing is a correct transcript

2     from the record of proceedings in the above-entitled matter.

3

4

5                              /s/ Kelly O'Halloran

6                         KELLY O'HALLORAN, CSR #6660

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

KELLY O'HALLORAN, OFFICIAL COURT REPORTER, USDC -- (916) 448-2712