James Rothery, Esq., Andrea Hoffman v. Former Sheriff Lou Blanas, et al.
United States District Court, Eastern District Case No: 2:08-cv-02064-JAM-KJM

# EXHIBIT "2"

**[Proposed] Order Dismissing First Amended Complaint With Prejudice As to Defendant Attorney General**

FILED

SEP 03 2004

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----ooOoo----

| | |
|---|---|
| DAVID K. MEHL; LOK T. LAU; FRANK FLORES, <br><br> Plaintiffs, <br><br> v. <br><br> LOU BLANAS, individually and in his official capacity as SHERIFF OF COUNTY OF SACRAMENTO; COUNTY OF SACRAMENTO, SHERIFF'S DEPARTMENT; COUNTY OF SACRAMENTO; BILL LOCKYER, Attorney General, State of California; RANDI ROSSI, State Firearms Director and Custodian of Records, <br><br> Defendants. | NO. CIV. S 03-2682 MCE KJM <br><br> MEMORANDUM AND ORDER <br><br> C/mCE |

----ooOoo----

Defendants Bill Lockyer ("Lockyer") and Randi Rossi ("Rossi") (collectively "Defendants") filed this motion to dismiss Plaintiffs' first amended complaint. Defendants contend first that they are not proper defendants because they do not

1

have the authority to issue Carry Concealed Weapons ("CCW") permits, and therefore no controversy exists between Plaintiffs and Defendants as needed for subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1).[1] Alternatively, Defendants claim that Plaintiffs' complaint fails to state a claim upon which relief may be granted pursuant to Rule 12(b)(6). For the reasons explained below, Defendants motion to dismiss is GRANTED.

## BACKGROUND

In California, it is against the law to carry a concealed firearm. Cal. Penal Code § 12025. Carrying a concealed weapon in violation of this statute can be either a misdemeanor or felony. If a California resident wishes to carry a concealed firearm, he or she must apply for a permit allowing him or her to do so. Permits to carry concealed weapons are issued by the chief of police or the county sheriff, and require the applicant to complete the application form, complete a course of training on firearm safety, and demonstrate that good cause exists for issuance. Cal. Penal Code § 12050.

An exception to the statute governing the carrying of concealed firearms exists such that certain law enforcement officers and honorably retired law enforcement officers need not demonstrate good cause to receive a permit. Cal. Penal Code § 12027.

Plaintiffs are California residents who have applied for

---

[1] Unless otherwise stated, all further references to a "Rule" or "Rules" are to the Federal Rules of Civil Procedure.

permits to carry concealed weapons and had their applications denied. On December 30, 2003, Plaintiffs filed their complaint in this matter, alleging several 42 U.S.C. § 1983 claims based on various constitutional violations. Defendants filed a motion to dismiss the complaint that is virtually identical to the present motion. Plaintiffs did not oppose that motion, but requested leave to amend to correct the deficiencies. By order dated March 25, 2004, this Court granted Defendants' first motion to dismiss, and granted leave to amend. On April 23, 2004, Plaintiffs filed their first amended complaint. Defendants again moved to dismiss, claiming the first amended complaint, like the original complaint, fails to state a claim upon which relief may be granted, and claiming that there is no present case or controversy between Plaintiffs and Defendants. Oral argument on this second motion to dismiss was held on June 28, 2004.[2]

**STANDARD**

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). A complaint will not be dismissed for failure to state a claim "'unless it appears beyond doubt that plaintiff can prove no set of facts in support of her claim that would entitle her to relief.'" Yamaguchi v. Dep't of the Air

---

[2] Defendants' counsel was not present at oral argument due to unforseen military commitments.

3

Force, 109 F.3d 1475, 1480 (9th Cir. 1997) (quoting Lewis v. Tel. Employees Credit Union, 87 F.3d 1537, 1545 (9th Cir. 1996).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir.1990); see also Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 925 (9th Cir. 2001). However, the court may "consider material which has been properly submitted as part of the complaint" when deciding a Rule 12(b)(6) motion. Hal Roach Studios, 896 F.2d at 1555 n.19.

If the court grants a motion to dismiss a complaint, it must then decide whether to grant leave to amend. The Court should "freely give[]" leave to amend when there is no "undue delay, bad faith[,] dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of . . . the amendment, [or] futility of the amendment. . . ." Fed. R. Civ. P. 15(a); Foman v. Davis, 371 U.S. 178, 182 (1962). Generally, leave to amend is denied when it is clear that the deficiencies of the complaint cannot be cured by amendment. DeSoto v. Yellow Freight Sys., Inc., 957 F.2d 655, 658 (9th Cir. 1992).

**ANALYSIS**

1.  **Proper Defendants - Case or Controversy Requirement**

Defendants first contend that there is no case or controversy between themselves and Plaintiffs because Defendants have no authority to issue, or to influence the issuance of, a

4

CCW. CCWs may only be issued by a sheriff or police chief, not the attorney general or state firearms director. Cal. Penal Code § 12050. As such, Defendants contend that they could not have violated Plaintiffs' constitutional rights as alleged in the complaint.

Plaintiffs contend that both Lockyer and Rossi are proper defendants. Plaintiffs rely on the fact that under the California Constitution, Lockyer, as the Attorney General, is the "chief law officer of the State." Cal. Const. Art. 5 ¶ 13. Additionally, the "Attorney General shall have direct supervision over every district attorney and sheriff . . . in all matters pertaining to the duties of their respective offices. . . ." Id. Thus, Plaintiffs contend that Lockyer is responsible for the acts of the Sheriff.

Neither party presented the Court with any authority regarding this issue, however. On its own, the Court has found conflicting authority regarding the ability to pass liability from the sheriff to the Attorney General based upon the provision of California's Constitution Plaintiffs rely upon. The Ninth Circuit has twice held that the sheriff acts for the county rather than the state when performing law enforcement duties, and therefore liability does not pass to the state. Bishop Paiute Tribe v. County of Inyo, 291 F.3d 549 (9th Cir. 2002), vacated on other grounds and remanded, Inyo County v. Bishop-Shoshone Indians of the Bishop Cmty. of the Bishop Colony, 538 U.S. 701 (2003); Brewster v. Shasta County, 275 F.3d 803 (9th Cir. 2001). "That the Attorney General has authority to supervise state law enforcement officers does not transform sheriffs into state

actors because, taken to its logical extreme, this provision would immunize all law enforcement agencies in the State and 'thereby render[] meaningless the decision in Monell[ v. N.Y. Dep't of Soc. Servs., 436 U.S. 658, 690-91 (1978)], which preserves § 1983 actions against local governments.'" Cortez v. County of Los Angeles, 294 F.3d 1186, 1191-92 (9th Cir. 2002) (quoting Bishop Paiute Tribe, 275 F.3d at 908). The California Supreme Court, however, has held that a California Sheriff acts for the state when performing law enforcement duties, and therefore liability does pass from the sheriff to the Attorney General. Venegas v. County of Los Angeles, 32 Cal. 4th 820 (2004).[3]

Neither party has addressed the question of whether the issuance of CCWs constitutes law enforcement activities, or whether a sheriff acts as an agent of the state or the county when issuing a CCW. It is established that in order to "hold a local government liable for an official's conduct, a plaintiff must first establish that the official (1) had final policymaking authority 'concerning the action alleged to have caused the particular constitutional or statutory violation at issue' and (2) was the policymaker for the local governing body for the purposes of the particular act." Weiner v. San Diego County, 210 F.3d 1025, 1028 (9th Cir. 2000) (quoting McMillian v. Monroe

---

[3] Each of these cases concerned claims brought against a sheriff, and the sheriff's subsequent attempt to escape liability by claiming that the sheriff acts as an agent of the state. Therefore, the argument followed, the sheriff would be immune from liability under the Eleventh Amendment. The Court was unable to find, and the parties did not provide, a case in which the plaintiff filed suit against the Attorney General. These cases are, however, instructive.

6

County, 520 U.S. 781, 785 (1997)). In this case, the Court elects to follow the holdings of the Ninth Circuit and determine that the sheriff acts as the final policymaker for the county when issuing CCWs. Accordingly, Plaintiffs have failed to establish any connection between the Attorney General and a county sheriff insofar as the issuance of CCWs is concerned. Defendants' motion to dismiss as to Defendant Lockyer is GRANTED.

Plaintiffs do not, however, offer any basis for their claim against Defendant Rossi, the State Firearms Director and Custodian of Records. There is no constitutional or statutory basis cited for imposition of liability upon him for the acts of the sheriff. Because Rossi lacks the power to issue CCWs on his own, and cannot be held responsible for those that have the power, either the sheriff or chief of police, Plaintiffs have not pled any valid claims against Rossi. Accordingly, Defendants' motion to dismiss as to Defendant Rossi is GRANTED.

2.  **Fourteenth Amendment Equal Protection Clause**

The Court realizes that finding that Lockyer and Rossi are not proper defendants effectively ends the inquiry. However, even if Lockyer could be considered a proper defendant, Plaintiffs' complaint would still fail to state a claim. Furthermore, the Court chooses to address, briefly, several of the arguments Plaintiffs make in support of their claim.

Plaintiffs claim two separate violations of their rights under the Fourteenth Amendment's Equal Protection Clause. First, they claim that the application of the laws requiring CCW permits

7

discriminates based on race and nationality. Second, Plaintiffs claim that retired police officers are given unfair preferential treatment.

### A. Race and National Origin Discrimination

Plaintiffs begin their argument that Lockyer is liable for discrimination with the observation that there is no place for the applicant to indicate his/her race on the application for a CCW. Plaintiffs next cite People v. Rappard, 28 Cal. App. 3d 302, a 32 year old California Court of Appeal decision, for the proposition that "California courts have already determined that a racially biased purpose existed in establishing" the law that created the CCW system. Opp'n, at 5; Compl., ¶ 77. Due to this racially biased purpose, Plaintiffs contend that Lockyer has a duty to monitor the state laws concerning CCW issuance to ensure that they are applied fairly.

Contrary to Plaintiffs' position, however, Rappard had nothing to do with racial discrimination; the decision does not even mention racial discrimination. Rather, the decision held invalid California Penal Code section 12021, a statute that prohibited possession of a firearm capable of being concealed by "any person who is not a citizen of the United States. . . ." Thus, this statute discriminated against aliens, not races. Furthermore, the language "is not a citizen of the United States", which was held discriminatory by Rappard, was deleted in the 1974 Amendment to the statute, thereby correcting the unconstitutionality. Therefore, contrary to Plaintiffs'

8

argument, Rappard does not establish any affirmative duty on the Attorney General to monitor state law to guard against the possibility of discriminatory application.

The only direct act on Lockyer's part that Plaintiffs claim support their discrimination claim was drafting an application for CCW permits that omits any mention of race or national origin.[4] Compl. ¶¶ 82-91. Plaintiffs claim that in doing so, Lockyer tacitly allows the other defendants to discriminate based on race and national origin. Compl. ¶ 83. Any argument that the failure to provide a means for the use of race as a factor in considering the application amounts to racial discrimination must fail as a matter of law. Racial discrimination occurs when an action is taken because of a person's race. Therefore, taking an action without considering, or even knowing, the person's race cannot be racial discrimination.[5]

The Court finds this argument to be ridiculous and totally without merit, and declines to give it any legitimacy by further discussion. Defendants' motion to dismiss is GRANTED with prejudice.

---

[4] Plaintiffs contend that race must be used as a factor in considering the application because "a young black male in California under the age of 25 has a exceedingly [sic] far greater chance of being murdered than all law enforcement officers combined throughout the entire United States." Compl. ¶ 97; Opp'n at 13. Not surprisingly, Plaintiffs offer no support for this baseless contention.

[5] The Court emphasizes that the only action Lockyer is alleged to have taken is drafting an application that does not contain a place for the applicant to mark his or her race. The Court does not hold that there is no discrimination in the actual issuance of CCWs, but rather holds that merely drafting the application was not discriminatory.

9

### B. Preferential Treatment - Retired Peace Officers

Plaintiffs next contend that the challenged statutes are unconstitutional because they grant retired law enforcement officers special treatment in allowing them to carry concealed weapons without having to show good cause for a permit. Specifically, California Penal Code sections 12027 and 12031(b) state that the statutes prohibiting the carrying of concealed weapons, section 12025, and loaded weapons, section 12031(a), do not apply to peace officers or to honorably retired peace officers.

Plaintiffs contend that Silveira v. Lockyer compels judgment on the pleadings in their favor. 312 F.3d 1062 (9th Cir. 2002) reh'g en banc denied, 328 F.3d 567, cert. denied, 124 S. Ct. 803 (2003). It does not. Silveira concerned California's ban on assault rifles, and the court upheld the statute in every respect save one. The court found no rational basis for allowing retired peace officers to possess assault weapons without any restriction on use when active peace officers were permitted to possess and use such weapons when off-duty only for law enforcement purposes. Id. at 1090-92. The basis for allowing active off-duty officers to possess and use assault weapons was that a peace officer is on call 24 hours a day, and may be called upon at any time to respond to a call for help. The same is not true of retired officers. Because they are not on call at all after retirement, there was no rational basis in allowing retired officers to keep assault weapons. Id.

The justification and rationale for exempting retired peace

10

officers from the CCW is not the same as for the exception to the assault weapon ban in <u>Silveira</u>. The justification for a CCW is personal protection, not public protection. Peace officers were entitled to carry assault weapons so that they would not be inadequately armed to confront criminals while protecting the public. On the other hand, they are entitled to carry concealed weapons to protect themselves from the enemies they have made in performing their duties. While an officer's duty to respond to the public's calls for help stops when he retires, the threat of danger from enemies he might have made during his service does not. Therefore, there is a rational basis for allowing a retired officer to continue to carry a concealed weapon, even though there was no rational basis for allowing the same officer to keep an assault weapon. Because "[P]laintiffs have no constitutional right to own or possess weapons, heightened scrutiny does not apply" and the statute need meet only rational basis review. <u>Silveira</u>, 312 F.3d at 1088. Therefore, Plaintiffs are not entitled to judgment on the pleadings on their second claim, and their motion is DENIED.

Having concluded that the statutory exception allowing retired officers to carry concealed weapons is rationally related to a legitimate governmental interest, protecting retired law enforcement officers, it follows that the second claim fails to state a claim upon which relief may be granted. Plaintiffs' arguments to the contrary are without merit.

Plaintiffs contend that all one must do is "join the club", that is, become a law enforcement officer and quit the following day, to secure the right to carry a concealed weapon. Becoming a

ER 000050

law enforcement officer is not a club one joins, however. Furthermore, the statute gives preference only to those officers "who have qualified for, and accepted a service or disability retirement." Cal. Penal Code § 12027(a)(1)(A). Thus, one who works for one day as a law enforcement officer and quits would not become exempt from the requirement to apply for a permit to carry a concealed weapon.

Plaintiffs also contend that there is no rational basis for the statutory scheme requiring CCW permits because it allows officers that are forced to retire due to a mental breakdown or alcoholism to carry a concealed weapon, even though the agencies they retire from no longer trust them to carry weapons. Plaintiffs quote at length from California Penal Code section 12027.1, specifically subsections (b), (c), and (d). They neglect to quote section 12027.1(e), however, which states that "[n]o peace officer who is retired after January 1, 1989, because of a psychological disability shall be issued an endorsement to carry a concealed and loaded firearm pursuant to this section." Thus, Plaintiffs' concerns about mentally unstable retired officers swarming the streets with concealed weapons is without merit.

In sum, it is clear that the statutory scheme allowing retired officers to carry concealed weapons passes a rational basis review. Therefore, Defendants' motion to dismiss the second claim is GRANTED.

//
//
//

ER 000051

### 3. Fourteenth Amendment Privileges and Immunities Clause

Plaintiffs, in their fifth claim, allege that the denial of their CCW applications violates their rights under the Fourteenth Amendment's Privileges and Immunities Clause. In their opposition, Plaintiffs assert that their claim represents a "cutting edge position justifying careful judicial scrutiny". Opp'n at 2. Plaintiffs then spend 21 pages taking the Court on a rambling history lesson starting at the Slaughter House Cases and the Freedmen's Bureau Act, and ending at Saenz v. Roe, 526 U.S. 489 (1999). Along the way, Plaintiffs offer a full page bibliography which represents the "manageable number of cases, books, articles, and other authorities [that] outline this important debate", seemingly expecting the Court to study each and discern the relevant material from each on its own. Opp'n at 22-23. All this is in an apparent attempt to convince the Court that the Fourteenth Amendment's Privileges and Immunities Clause is not dead, and therefore can be the basis of a claim for relief. What Plaintiffs do not do anywhere in these 21 pages, however, is explain how the denial of their CCW applications would lead to a violation of that clause.

At the end of this long trail, Plaintiffs proclaim that "[f]or the first time, this Court, and the Ninth Circuit, will be asked to define whether the [Fourteenth Amendment's Privileges and Immunities] Clause includes the fundamental right to keep and bear arms . . . ." Opp'n at 35. Thus, it is finally clear to the Court that Plaintiffs' errors are two-fold. First, Plaintiffs equate the right to keep and bear arms with the right

13

to carry firearms concealed, without ever analyzing, or even acknowledging, a possible difference between the two. In their opposition, Plaintiffs do not even address the particular subject of their lawsuit, which is the denial of a permit to carry concealed weapons. Even if the Court were to assume that if Plaintiffs were prevented from possessing firearms a Privileges and Immunities violation would be found, it does not follow that merely being denied a permit to carry those firearms concealed amounts to such a violation. Plaintiffs have done nothing to persuade, indeed, they have not attempted to persuade, the Court that possession of a firearm equates to carrying that firearm concealed.

Second, Plaintiffs label the right to keep and bear arms as a fundamental right. In doing so, Plaintiffs claim support from some 35 Supreme Court cases, while only citing "strong dictum" from one case, that being Scott v. Sanford, 60 U.S. 393 (1856). Opp'n at 35. Furthermore, Plaintiffs completely ignore the clear holding of Silveira v. Lockyer, 312 F.3d 1052, a 2002 Ninth Circuit case, which represents binding authority on this Court. In Silveira the court analyzed rights guaranteed under the Second Amendment and held that the Second Amendment right to keep and bear arms is a collective right that "guarantees the right of the people to maintain effective state militias, but does not provide any type of individual right to own or possess weapons." Id. at 1060-61. The court went on to say that "the federal and state governments have the full authority to enact prohibitions and restrictions on the use and possession of firearms, subject only to generally applicable constitutional constraints, such as due

14

process, equal protection, and the like." Id. at 1060. Plaintiffs' failure to confront Silveira is even more egregious when the Court considers that Mehl was a plaintiff in Silveira, and Gary Gorski, Plaintiffs' current counsel, represented the plaintiffs in Silveira.

Denying Plaintiffs the right to carry a concealed firearm does not constitute a violation of the Privileges and Immunities Clause. Accordingly, Defendants' motion to dismiss the fifth claim is GRANTED with prejudice.

4. **Second and Ninth Amendments**

In their opposition, Plaintiffs admit that the Ninth Circuit does not recognize Plaintiffs' claims brought under the Second or Ninth Amendments. Plaintiffs state they brought these claims to preserve an appeal. As Plaintiffs do not oppose the motion to dismiss as to the fourth and sixth claims, the motion is GRANTED with prejudice as to those claims.

5. **7th Claim - Preliminary Injunction and Declaratory Relief**

Plaintiffs' first amended complaint contains a seventh claim seeking a preliminary injunction. This claim contains two paragraphs. The first incorporates by reference all 138 prior paragraphs. The second states, in its entirety, "Plaintiff seeks a declaration from the court regarding the constitutionality of the CCW statutes and policies enforced and promulgated by Defendants." Compl. ¶ 140. This is not a separate claim for

15

relief upon which relief may be based, but rather consists of nothing more than a request for a remedy based upon a favorable finding on the first six claims. Therefore, this seventh claim for relief is DISMISSED.

## CONCLUSION

For the reasons explained above, Plaintiffs' First Amended Complaint against Defendants Lockyer and Rossi is DISMISSED.

IT IS SO ORDERED.

DATED: 9/2/04

MORRISON C. ENGLAND, Jr.
UNITED STATES DISTRICT JUDGE

16