James Rothery, Esq., Andrea Hoffman v. Former Sheriff Lou Blanas, et al.
United States District Court, Eastern District Case No: 2:08-cv-02064-JAM-KJM

# EXHIBIT "3"

**[Proposed] Order Dismissing First Amended Complaint With Prejudice As to Defendant Attorney General**

1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11  DAVID K. MEHL; LOK T. LAU;
    FRANK FLORES,
12                                       No. 2:03-cv-2682-MCE-KJM
              Plaintiffs,
13
        v.                               MEMORANDUM AND ORDER
14
    LOU BLANAS, individually and
15  in his official capacity as
    SHERIFF OF COUNTY OF
16  SACRAMENTO; COUNTY OF
    SACRAMENTO, SHERIFF'S
17  DEPARTMENT; BILL LOCKYER,
    Attorney General, State of
18  California; RANDI ROSSI, State
    Firearms Director and
19  Custodian of Records,

20            Defendants.

21                           ----oo0oo----

22       In bringing this lawsuit, Plaintiffs David K. Mehl and

23  Lok T. Lau (hereinafter "Plaintiffs" unless otherwise specified)

24  contend, pursuant to 42 U.S.C. § 1983, that Defendants Lou

25  Blanas, as Sheriff of the County of Sacramento, the Sheriff's

26  Department, and Sacramento County (collectively referred to as

27  "Defendants") violated their constitutional rights under the

28  First, Second, Ninth and Fourteenth Amendments to the

                                1

1   United States Constitution by denying their applications for a

2   "Carry Concealed Weapon ("CCW") permit.[1]   Defendants now move for

3   summary judgment.   Plaintiffs have not opposed that motion with

4   respect to Plaintiff's Lau's First Cause of Action, which alleges

5   that Defendants' denial of his CCW application was based on race

6   and/or national origin and gender.   In addition, Plaintiffs have

7   conceded that Ninth Circuit precedent currently bars their Fourth

8   and Sixth Causes of Action predicated on the Second and Ninth

9   Amendments, respectively.   Consequently, the only claims as to

10  which Plaintiffs oppose summary judgment are the Second Cause of

11  Action, which asserts equal protection violations, the Third

12  Cause of Action, for alleged violations of Plaintiffs' First

13  Amendment Rights, and the Fifth Cause of Action asserting that

14  Defendants' conduct ran afoul of the Privileges and Immunities

15  clause of the Fourteenth Amendment.

16       Inasmuch as this Court already determined that a denial of

17  the right to carry a concealed firearm does not constitute a

18  violation of the Privileges and Immunities Clause (See

19  September 2, 2004 Memorandum and Order, p. 15), only Plaintiffs'

20  Second and Third Causes of Action remain subject to adjudication

21  at this time.   For the reasons set forth below, summary judgment

22  will be granted in Defendants' favor as to both of those claims.

23  ///

24

25       [1] The Court notes that while Bill Lockyer and Randi Rossi
    were originally named as Defendants, they were dismissed as
26  parties to this lawsuit by Order filed September 3, 2004.   In
    addition, counsel stipulated to the dismissal of Plaintiff, Frank
27  Flores, pursuant to Federal Rule of Civil Procedure 41(a)(1) on
    or about December 12, 2006.   Consequently, the parties enumerated
28  above are the only remaining parties to this litigation.

ER 000002

1

## BACKGROUND

2

3      Individuals seeking permission to carry a concealed weapon

4 in Sacramento County must apply to the Special Investigations and

5 Intelligence Bureau ("SIIB") of the Sacramento County Sheriff's

6 Department for the necessary CCW permit.  According to

7 Defendants, the application process entails an initial review of

8 the application materials by a detective assigned to the SIIB,

9 followed by some investigation by the detective before submission

10 of the request to a three-person committee (generally comprised

11 of two captains and a chief deputy) for either approval or

12 denial.  Following notification of the decision by mail,

13 unsuccessful applicants may appeal an adverse decision.

14 Defendants assert that the appeals procedure includes a personal

15 interview by an appeals officer and an independent review of the

16 panel decision by that officer.

17      Plaintiff Mehl submitted his CCW request in July of 2002.

18 It is undisputed that Mehl did not submit any statement as to why

19 he needed a permit to carry a concealed weapon. (Defendants'

20 Undisputed Fact ("UF") No. 23).  After the application was

21 returned to Mehl as incomplete, he wrote to the Sheriff's

22 Department in protest, citing language of the application

23 instructions indicating that a department interviewer was

24 supposed to prepare that portion of the application.  On

25 August 1, 2002, Chief Robert Denham responded with a letter

26 asking Mehl to himself provide justification for the issuance of

27 CCW permit.  (Exh. "C" to Denham Decl.)

28 ///

3

1  Denham's letter offered to waive any additional application fee

2  upon submission of that information.   Mehl did not respond, and

3  never provided any evidence justifying his need for a CCW permit

4  (Denham Decl., ¶ 4).   Defendants claim that this failure on

5  Mehl's part caused them to deny his application as incomplete.[2]

6      The CCW permit application of the second plaintiff, Lok T.

7  Lau, followed a different course upon its submission about a year

8  later, in August of 2003.   Mr. Lau, a former FBI Special Agent,

9  submitted voluminous materials in connection with his

10  application.  It is undisputed that those materials contained

11  1) an admission by Lau that he had a pending lawsuit against the

12  FBI; 2) a December 13, 2000 Department of Justice appeals

13  decision indicating that Lau had been arrested twice for

14  shoplifting and subsequently had his FBI security clearance

15  revoked for providing false and misleading information;

16  3) information indicating that he had been placed on disability

17  retirement by the FBI due to being diagnosed with Post Traumatic

18  Stress Disorder ("PTSD") and Depression; and 4) reports

19  suggesting that in the Fall of 1996, both Lau's government

20  vehicle and gun and been taken away due to a sleep apnea disorder

21  diagnosed some two years previously.  (See Lau's CCW Application,

22  Exh. "A" to Decl. of C. Scott Harris, Jr.).

23  ///

24  ///

25  _____

26     [2] In addition, Plaintiff Mehl submitted yet another
application in 2003, and also refrained from providing any
27  justification concerning his need for a CCW permit, despite being
previously advised that his 2002 application had been rejected on
28  that basis.   The 2003 application was accordingly also rejected
as incomplete.  (Decl. of Stephen F. Cotta, ¶¶ 4-5).

4

1  Lau does not dispute the fact that at the time he applied for the

2  CCW permit, he was mentally disabled from depression, PTSD and

3  sleep apnea, and was unable to work.[3]  (UF No. 73).  He further

4  does not dispute that he was under doctors' care for those

5  conditions and was being prescribed anti-depressant and anxiety

6  medications.  (UF No. 74).

7      The committee assessing Lau's application unanimously agreed

8  to deny his application, and noted in its written evaluation that

9  said application presented "too many issues".  (See Decl. of

10  Captain Bill Kelly, ¶ 5); Decl. of James A Cooper, ¶ 5; Decl. of

11  David Lind, ¶ 5).

12      In approximately January of 2004, Plaintiff Lau lodged an

13  appeal which was assessed by Chief C. Scott Harris.  Chief Harris

14  interviewed Lau and felt that he presented as drowsy, unusually

15  nervous, overly suspicious, and somewhat paranoid.  (Harris

16  Decl., ¶ 8).  While Lau takes issue with that characterization,

17  he admitted at his deposition that he had suffered from severe

18  sleep apnea, causing him to feel drowsy and lethargic and

19  affecting his alertness and judgment, for some nine years, a

20  period of time which would have encompassed his CCW application.

21  (Dep. of Lau, December 13, 2006, 8:1-25-9:1-3).  In addition, at

22  the time of his appeals interview, Lau confirmed that he

23  continued to be treated for PTSD and depression, and was on

24  various medications as part of that treatment.  (Harris Decl.,

25  ¶ 8).

26

27      [3] Plaintiff Lau further admitted at his deposition that his
   sleep apnea condition had caused the FBI to take away his gun,
   and that he informed the Sheriff's Department of this at the time
28  he applied for the CCW permit (Lau Dep., 67:11-18; 68:16-18).

5

1    Chief Harris noted that Lau's application materials included

2  a letter from the FBI attesting to the fact that it had no

3  knowledge or information that Lau was at risk due to his past

4  employment activities with the FBI, despite Lau's claim that he

5  was at such risk.  (Harris Decl., ¶ 9).[4]  He states he asked Lau

6  why his former employer had not supplied a letter approving his

7  application for a CCW permit, as is customary for former law

8  enforcement applicant, and that Lau was unable to offer any

9  explanation.  (Id. at ¶ 8)  Based on his independent reevaluation

10  of Lau's application along with his observations at the interview

11  he conducted, Chief Harris affirmed the denial of Plaintiff Lau's

12  CCW application.  (Id. at ¶ 10).

13    Plaintiffs now claim that their constitutional rights were

14  violated, claiming that their applications would have been

15  approved had they been supporters of, and/or contributors to,

16  Sheriff Lou Blanas' political campaigns.  Defendants, on the

17  other hand, claim that the denial of Plaintiffs' applications had

18  nothing to do with whether or not they had ties to Defendant

19  Blanas.  Rather, according to Defendants, both applications were

20  rejected for legitimate, non-discriminatory reasons.  While

21  Defendants argue that Plaintiffs' claims fail on their merits,

22  they also argue as a fundamental matter that Plaintiffs lack

23  standing to challenge Defendants' policies and procedures in

24  granting CCW permits since the Court can conclude, as a matter of

25  law, that the rejection of their applications had nothing to do

26  with the alleged policies now contested through this lawsuit.

27
_____

28    [4] In fact, Lau's application materials contained two
letters, dated March 23, 2001 and May 1, 2003, to this effect.

6

**STANDARD**

The Federal Rules of Civil Procedure provide for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986).  Under summary judgment practice, the moving party

> "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) (quoting Rule 56(c).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 585-587 (1986); <u>First Nat'l Bank v. Cities Ser. Co.</u>, 391 U.S. 253, 288-289 (1968).

In attempting to establish the existence of this factual dispute, the opposing party must tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.

7

1  Fed. R. Civ. P. 56(e).  The opposing party must demonstrate that

2  the fact in contention is material, i.e., a fact that might

3  affect the outcome of the suit under the governing law, and that

4  the dispute is genuine, i.e., the evidence is such that a

5  reasonable jury could return a verdict for the nonmoving party.

6  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251-52

7  (1986); Owens v. Local No. 169, Assoc. of Western Pulp and Paper

8  Workers, 971 F.2d 347, 355 (9th Cir. 1987).  Stated another way,

9  "before the evidence is left to the jury, there is a preliminary

10 question for the judge, not whether there is literally no

11 evidence, but whether there is any upon which a jury could

12 properly proceed to find a verdict for the party producing it,

13 upon whom the onus of proof is imposed."  Anderson, 477 U.S. at

14 251 (quoting Improvement Co. v. Munson, 14 Wall. 442, 448, 20

15 L.Ed. 867 (1872)).  As the Supreme Court explained, "[w]hen the

16 moving party has carried its burden under Rule 56(c), its

17 opponent must do more than simply show that there is some

18 metaphysical doubt as to the material facts ... Where the record

19 taken as a whole could not lead a rational trier of fact to find

20 for the nonmoving party, there is no 'genuine issue for trial.'"

21 Matsushita, 475 U.S. at 586-87.

22

23                              **ANALYSIS**

24

25    California Penal Code § 12025 prohibits the carrying of a

26 concealed weapon unless an individual applies for, and receives,

27 permission to do so pursuant to § 12050(a)(1)(A), which states in

28 pertinent part as follows:

                                8

1    "The sheriff of a county, upon proof that the person
     applying is of good moral character, that good cause
2    exists for the issuance,...., **may** issue to that person
     a license to carry a pistol, revolver, or other firearm
3    capable of being concealed upon the person.....

4    (emphasis added)

5        The language of the statute on its face is permissive in

6    nature, a conclusion confirmed by case law, which indicates that

7    the sheriff has "extremely broad discretion" in whether to grant

8    a CCW permit. <u>Nichols v. County of Santa Clara</u>, 223 Cal. App. 3d

9    1236, 1240 (1990); <u>see also</u> <u>CBS Inc. v. Block</u>, 42 Cal. 3d 646,

10   655 (describing sheriff's discretion as "unfettered"); <u>Erdelyi v.</u>

11   <u>O'Brien</u>, 680 F.2d 61, 63 (9th Cir. 1982) (statute explicitly

12   grants discretion to officer issuing CCW license).  Plaintiffs

13   nonetheless argue that their constitutional rights were violated

14   because preference was granted to political supporters and/or

15   financial contributors of Sacramento County Sheriff Lou Blanas.

16       In order to proceed with a federal lawsuit alleging

17   violations of the United States Constitution, Plaintiffs must

18   identify an injury "fairly traceable" to conduct on the part of

19   Defendant that is unlawful. <u>Valley Forge Christian College v.</u>

20   <u>Americans United for Separation of Church and State, Inc., et</u>

21   <u>al.</u>, 454 U.S. 464, 472 (1982).  Because this requirement of

22   causal connection has been deemed an indispensable part of any

23   action challenging such violations under 42 U.S.C. § 1983 (<u>see</u>

24   <u>Arnold v. Int'l Business Machines Corp.</u>, 637 F.2d 1350, 135

25   (9th Cir. 1981)), Plaintiff bears the burden of establishing

26   causation in order to invoke federal jurisdiction under § 1983.

27   ///

28   ///

9

1  Plaintiffs accordingly lack standing to seek redress in federal

2  court unless they can make an initial showing that an

3  unconstitutional policy, practice or custom motivated Defendants'

4  denial of their CCW applications.

5      Plaintiffs cannot make that showing in this case, as they

6  must in order to proceed with this lawsuit.  See FW/PBS, Inc. v.

7  Dallas, 493 U.S. 215, 231 (1990) (burden of proof in

8  demonstrating standing rests with party asserting jurisdiction).

9  The evidence shows that Plaintiff Mehl's application was denied

10  not because of any unconstitutional conduct on Defendants' part

11  but instead simply because he never submitted a completed

12  application.  It is undisputed that Chief Denham wrote Mehl on

13  August 1, 2002 and advised him that his application would be

14  considered once he submitted his justification for needing to

15  carry a concealed weapon.  It is equally uncontroverted that

16  Plaintiff Mehl did not respond to that request or provide any

17  further support for his application, even when he reapplied a

18  year later.[5]  The evidence thus supports Defendants' contention

19  that Mehl's application was denied as incomplete rather than

20  because of any motives deemed constitutionally suspect.

21  ///

22

23      [5] While Plaintiff Mehl submitted a Declaration in Opposition
    to this Motion suggesting that he was never contacted by anyone
24  at the Sheriff's Department about finishing his application (Mehl
    Decl., ¶ 11), that assertion is contradicted by Chief Denham's
25  letter, which Mehl produced at his deposition (see Mehl Dep.,
    December 14, 2006, 46:23-47:22).  The declaration Plaintiff Mehl
26  has now provided is contrary to the letter that he received.  A
    party cannot create a triable issue of fact sufficient to defeat
27  summary judgment by contradicting his or her own previous sworn
    testimony.  Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795,
28  806 (1999).

10

1  Mehl consequently cannot establish standing to assert claims that
2  had no role in the disposition of his particular application.
3      The Ninth Circuit's decision in Madsen v. Boise State Univ.,
4  976 F.2d 1219 (9th Cir. 1992) supports this conclusion.   In
5  Madsen, the plaintiff complained about unconstitutional
6  discrimination in the issuance of disabled parking permits on the
7  Boise State campus.  Like Plaintiffs herein, Madsen filed a civil
8  rights suit under 42 U.S.C. § 1983.  The facts, however, revealed
9  that Madsen never completed the formal permit application for
10 obtaining a disabled parking permit.  The Court ruled that since
11 he did not complete the formal application process, Madsen was
12 precluded from making a constitutional challenge.  As the Ninth
13 Circuit stated:  "A plaintiff lacks standing to challenge a rule
14 or policy to which he has not submitted himself by actually
15 applying for the desired benefit."  Id. at 1220.
16     While this Court recognizes that Madsen may be distinguished
17 on grounds that the Plaintiff in that case submitted no written
18 application at all (instead making only oral inquiries about
19 handicap parking), the rationale for its decision is nonetheless
20 equally applicable.  Both this case and Madsen involved the
21 Plaintiffs' failure to fully avail themselves of the
22 administrative application process before escalating their
23 grievances to the Court.  Without completing the administrative
24 process, it would be sheer speculation to guess at what the
25 decision on Mehl's application would have been or what policies
26 (constitutional or otherwise) may have been implicated in the
27 decision.
28 ///

11

ER 000011

1 In the absence of completing that process, Plaintiff Mehl cannot

2 show that any unconstitutional policy played any role in the

3 denial of his CCW application.  As such, Mehl lacks standing and

4 his complaint against Defendants must be dismissed on that basis.

5   The posture of Plaintiff Lau's complaint is more developed

6 in that there is no question that Lau, unlike Mehl, completed a

7 full CCW application.  Therefore he progresses to the point where

8 it becomes necessary to consider whether any causal connection

9 exists between the decision to deny his request and Defendants'

10 allegedly unconstitutional policies (in favoring applications of

11 campaign supporters and/or financial contributors).  Plaintiff

12 Lau must show some causal link in that regard, and the

13 circumstances of this case show that he cannot.  This is because

14 there is overwhelming evidence that Plaintiff Lau's application

15 was denied for legitimate, non-discriminatory reasons having

16 nothing to do with whether or not he was a campaign contributor.

17   As delineated above, the application materials submitted by

18 Plaintiff himself showed that he was suffering from PTSD,

19 depression and sleep apnea and was being treated for those

20 conditions at the time of his application, that he had a pending

21 lawsuit against the FBI relating to his disability retirement as

22 a result of those conditions, and that his FBI security clearance

23 had been revoked because of Lau's alleged untruthfulness

24 regarding shoplifting arrests.  Moreover, Lau's application

25 packet included two letters from the FBI expressing its view that

26 Lau was no longer at risk due to his employment, therefore

27 countering Lau's claim that he needed a CCW permit for his

28 protection in that regard.

12

1   This information was all part of Lau's application, and according

2   to all three members of the panel that initially acted on his

3   application, his application was denied based on those

4   substantive factors.  That decision was confirmed by the notation

5   placed contemporaneously on the application that Lau's CCW

6   request was denied because he had "too many issues".

7       Additionally, with respect to Plaintiff's appeal, Chief

8   Harris came to the same conclusion after independently reviewing

9   Lau's application and following a personal interview after which

10  he concluded that Plaintiff seemed edgy and suspicious.

11  According to Harris, Lau further confirmed during the course of

12  that interview the same circumstances which caused the panel to

13  initially reject his application.  Moreover, at his deposition

14  Lau himself admitted that he was mentally disabled at the time of

15  his 2003 CCW application (UF No. 73), and that his FBI security

16  clearance was revoked, and his gun taken, due to concerns

17  stemming from his shoplifting and medical condition. (Lok Dep.,

18  December 13, 2006, 66:24-68:15).

19      Because Plaintiff himself, through the materials he

20  personally submitted and through information he directly provided

21  to Chief Harris on appeal, provided ample non-discriminatory

22  reasons justifying Defendants' decision to withhold a CCW permit,

23  he has shown no causal connection whatsoever to the denial of his

24  application and the allegedly unconstitutional policies he

25  identifies in his complaint.  As such, Lau too lacks standing and

26  Plaintiffs' complaint in its entirety therefore fails.

27  ///

28  ///

13

### CONCLUSION

For the reasons set forth above, neither of the two Plaintiffs remaining in this lawsuit has standing to challenge the allegedly unconstitutional policies of Defendants in favoring political contributors in the issuance of CCW permits.

Plaintiff Mehl lacks standing because he never submitted a complete application despite being specifically directed to do so. Defendants' resulting rejection of his application as incomplete hence has nothing to do with the policies Plaintiff Mehl now challenges as unconstitutional, and he has no standing to make those challenges.

Similarly, the contents of Plaintiff Lau's application materials themselves, as well as the other information Lau personally submitted to Defendants during the course of his CCW application and its subsequent appeal, demonstrate ample cause for the denial of his application that bears no relation to whether or not he was a political supporter of Defendant Blanas. Therefore Lau lacks standing to pursue this lawsuit as well, and summary judgment as requested by Defendants is GRANTED.[6]

///
///
///
///
///

---

[6] Because oral argument will not be of material assistance, the Court ordered this matter submitted on the briefs. E.D. Cal. Local Rule 78-230(h).

14

ER 000014

1    Given their lack of standing, it is not necessary to address

2  the additional substantive grounds identified by Defendants as

3  also supporting summary judgment, and the Court declines to do

4  so.[7]  The Clerk is directed to enter judgment in favor of

5  Defendants and against Plaintiffs for the case in its entirety,

6  and close the file in this matter.

7    IT IS SO ORDERED.

8  Dated: February 5, 2008

9

10

MORRISON C. ENGLAND, JR.
11  UNITED STATES DISTRICT JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26  _____

27    [7] Given Plaintiffs' lack of standing, the Court also denies
   Plaintiffs' Counter Motion for Judgment on the Pleadings, as
   raised in Opposition to Defendants' Motion pursuant to Local
28  Rule 78-230(e).

15

ER 000015

1

2

3

4

5

6

7

8                     UNITED STATES DISTRICT COURT

9                   EASTERN DISTRICT OF CALIFORNIA

10

11   DAVID K. MEHL, et al.          No. 2:03-cv-2682-MCE-KJM

12         Plaintiffs,

13      v.                          ORDER ON REQUEST FOR
                                    RECONSIDERATION
14   LOU BLANAS, individually and
     in his official capacity as
15   SHERIFF OF COUNTY OF
     SACRAMENTO, et al.,
16
           Defendants.
17
                            ----oo0oo----
18

19      Through the present action, Plaintiffs David K. Mehl, *et al.*

20   ("Plaintiffs") allege Defendants Blanas *et al.* ("Defendants")

21   violated the United States Constitution's guarantees of equal

22   protection and freedom of association; the privileges and

23   immunities clause of the Fourteenth Amendment; the "right to self

24   preservation" Plaintiffs argue is guaranteed by the Ninth

25   Amendment; and the right to keep and bear arms guaranteed by the

26   Second and Fourteenth Amendments.  Plaintiffs seek relief

27   pursuant to 42 U.S.C. § 1983.

28   ///

                                  1

1    Plaintiffs allege that Defendants have sole discretion in
2  the issuance of permits to carry concealed weapons ("CCWs")
3  within the County of Sacramento, California.  Plaintiffs further
4  allege that Defendants maintained a longstanding practice of
5  issuing CCWs to persons who donated money to the Craig, Blanas,
6  and McGinnis campaigns for Sheriff of Sacramento County.  In
7  addition according to Plaintiffs, Defendants simultaneously were
8  denying CCWs to deserving applicants who did not contribute
9  campaign funds.  Plaintiffs also argue that California Penal Code
10 sections 12027, 12031(b), and 12050-12054 are unconstitutional
11 because they give preference to judges and honorably retired
12 peace officers in the issuance of CCWs.

13    Now before the Court is Defendants' Motion for
14 Reconsideration of a December 1, 2006 Order issued by Magistrate
15 Judge Kimberly J. Mueller (hereinafter "Magistrate Judge").  For
16 the reasons set forth below, Defendants' Motion to Reconsider is
17 granted.[1]

18
19                          **BACKGROUND**
20
21    Plaintiffs David K. Mehl, *et al.* are persons who applied for
22 a CCW in the County of Sacramento, followed the procedure set
23 forth by the Sheriff's Department, and were denied.  Defendant
24 Blanas is the former Sheriff of Sacramento County.
25 ///
26
27    [1] Because oral argument will not be of material assistance,
   the Court orders this matter submitted on the briefs.  E.D. Cal.
28 Local Rule 78-230(h).

                              2

1  Also named Defendants in this action are the County of Sacramento

2  and its Sheriff's Department.

3      Defendants seek modification of the Magistrate Judge's

4  December 1, 2006 Order ("the Order") regarding a discovery

5  dispute between the Parties.[2]  The Order was issued after a

6  lengthy dispute between the parties over their respective

7  responsibilities in the discovery process.  The Order resolves

8  some of the disputed issues and requires the parties to submit a

9  revised proposed protective order to govern other parts of the

10  discovery process.  Defendants ask the Court to modify those

11  parts of the Order that require production of CCW applications

12  and related confidential documents to Plaintiffs: (1) without

13  removal of the home address, social security number, and other

14  sensitive information of current or former judges, district

15  attorneys and police officers; (2) without removal of information

16  that would identify times and places the applicants would be

17  vulnerable to attack; (3) without removal of information that

18  could be used for identity theft; and (4) without a watermark

19  that was included to prevent the unauthorized re-distribution of

20  the confidential information contained in the CCW applications.

21  ///

22  ///

23  ///

24

_____

25      [2] The Court previously notified the parties on the record
   that Judge England currently holds a permit to carry a concealed
26  weapon issued by the Sacramento County Sheriff's Department.
   This fact has no bearing on the Court's decision in this matter
27  and neither party has requested Judge England recuse himself from
   this case.
28

3

1  Defendants also ask the Court to reconsider those portions of the

2  Magistrate Judge's Order that require further responses to

3  Plaintiffs' Interrogatory Eight and Request for Production of

4  Document Twenty-Eight.

5  Also before the Court is Plaintiffs' Motion to Strike Defendants'

6  Request to Reconsider on ground that the Request does not meet

7  the requirements of the Local Rules.  Because Plaintiffs' Motion

8  to Strike is potentially dispositive, the Court will address it

9  first.

10

11                              **STANDARD**

12

13      In reviewing a magistrate judge's determination, the

14  assigned judge shall apply the "clearly erroneous or contrary to

15  law" standard of review set forth in Local Rule 72-303(f), as

16  specifically authorized by Federal Rule of Civil Procedure 72(a)

17  and 28 U.S.C. § 636(b)(1)(A).[3]  Under this standard, the Court

18  must accept the Magistrate Judge's decision unless it has a

19  "definite and firm conviction that a mistake has been committed."

20  *Concrete Pipe & Products of Cal., Inc. v. Constr. Laborers*

21  *Pension Trust for So. Cal.*, 508 U.S. 602, 622 (1993).

22  ///

23  ///

24  ///

25

26      [3] Federal Rule of Civil Procedure 72(a) directs the district court judge to "modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law."

27  Similarly, 28 U.S.C. § 636(b)(1)(A), the district judge may reconsider any pretrial order "where it is shown that the

28  magistrate's order is clearly erroneous or contrary to law."

ER 000019

1  If the Court believes the conclusions reached by the Magistrate

2  Judge were at least plausible, after considering the record in

3  its entirety, the Court will not reverse even if convinced that

4  it would have weighed the evidence differently. *Phoenix Eng. &*

5  *Supply Inc. v. Universal Elec. Co., Inc.*, 104 F.3d 1137, 1141

6  (9th Cir. 1997).

7

8                     **ANALYSIS**

9

10  **1.  Plaintiffs' Motion to Strike**

11

12     In response to Defendants' request, Plaintiffs filed a

13  Motion to Strike on the ground that the request does not comply

14  with Eastern District Local Rule 78-230(k) and it therefore,

15  "must be stricken as it is just another delay tactic."  Pls.'

16  Mot. to Strike (12/11/2006) at 2.  Plaintiffs failed to notice

17  that Rule 78-230 applies when a District Court is called upon to

18  reconsider its own decision in a matter.  Rule 78-230 has no

19  application where, as here, a District Court is asked to

20  reconsider an order by a magistrate judge.  E.D. Cal. Local Rule

21  72-303(e).  Accordingly, the requirements of Rule 78-230 do not

22  apply in the instant case and Plaintiffs' Motion to Strike is

23  denied.

24  ///

25  ///

26  ///

27  ///

28  ///

5

2.  **Production of Documents containing Judicial and Law Enforcement Confidential Information**

The Federal Rules of Civil Procedure provide that a court may make any order limiting discovery which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.  Fed. R. Civ. P. 26(c). A party must show good cause for a protective order.  *Id.*  For good cause to exist, the party seeking protection from public disclosure of documents and information produced during discovery bears the burden of showing that specific prejudice or harm will result if no protective order is granted. *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210-11 (9th Cir. 2002).  Under Rule 26(c), "[i]f a court finds particularized harm will result from disclosure of information to the public, then it balances the public and private interests to decide whether a protective order is necessary." *Id.* at 1211.

Defendants first request reconsideration of the Magistrate Judge's Order denying Defendants' Motion for a Protective Order authorizing Defendants to remove the home address, home telephone number, Social security number and other sensitive information of persons who are or have been judges, district attorneys, peace officers, or other persons employed in the criminal justice system.

Defendants argue that removal of the information is necessary for the safety of these persons and is consistent with state law exempting this information from public disclosure. Cal. Gov't Code § 6254(u)(2).

6

1 | Plaintiffs respond that they need this information in order to

2 | locate and depose possible witnesses, and to determine which of

3 | these persons were both political donors and CCW applicants.

4 | They point out that the Magistrate Judge's Order restricts the

5 | information's use to attorneys' and experts' eyes only.

7 | *A.   Specific Prejudice or Harm*

9 | Defendants urge this Court to modify the instant order to

10 | ensure that sensitive information about criminal justice

11 | personnel is removed by the Defendants for the safety of those

12 | applicants.   Defendants point out that this information is

13 | privileged from disclosure to the public pursuant to California

14 | Government Code section 6254(u).   Defendants correctly contend

15 | that the statute evidences California's recognition of the

16 | applicant's interest in maintaining the confidentiality of this

17 | information.

18 | Defendants argue that the release of this sensitive

19 | information, even under the Magistrate Judge's Order, could lead

20 | to its ultimate disclosure to the public.   Given the advent of

21 | the internet, were this information disclosed to the public, it

22 | would likely become widely available to anyone with a home

23 | computer.   Disgruntled former litigants and arrestees could thus

24 | locate the information.   Disclosure of this information threatens

25 | to subject judicial and law enforcement officers to heightened

26 | risk of attacks upon themselves or their families at their place

27 | of residence and elsewhere.

28 | ///

7

1  This threat implicates the very reason that this sensitive
2  information is exempt from public disclosure under California
3  law; to prevent these public servants and their families from
4  suffering a retaliatory attack because of their constant contact
5  with California's most violent, uncontrollable, and unpredictable
6  residents.

7      Disclosure of this information also endangers the security
8  of numerous highly sensitive computer systems.  Dates and places
9  of birth, social security numbers, and mother's maiden names are
10 precisely the kind of information that many high-security systems
11 use to verify the identity of authorized users.  From personal
12 bank accounts to sensitive criminal justice computer systems,
13 disclosure of this information threatens to provide access to a
14 variety of secure systems.  Accordingly, Defendants have met
15 their burden of demonstrating a specific harm from public
16 disclosure exists in this case.  It is of note that this harm is
17 to numerous persons who are not even parties to this litigation.

18

19 B.  Balancing the Interests

20

21     Having found a specific harm, the Court must now turn to
22 balancing the interests involved to determine if a protective
23 order is necessary.  The interests of the non-litigants whose
24 information is to be disclosed is discussed above and must be
25 balanced with the interest of the Plaintiffs and any other
26 interests in this disclosure.
27 ///
28 ///

8

ER 000023

1   Plaintiffs' counsel responds to the interests of the non-
2   litigants above by asserting that they can be trusted to prevent
3   disclosure of this information to the public pursuant to the
4   Magistrate Judge's Order.  Additionally, they allege they need
5   the information to determine which CCWs were given as political
6   kickbacks, and to contact or serve those persons whom they
7   suspect were improperly given CCWs.

8       In an effort to accommodate Plaintiffs' asserted interest in
9   obtaining the sensitive personal information of all 3,000 CCW
10  applicants, Defendants have offered to forward process to
11  applicants that Plaintiffs seek to contact and notify them that
12  failure to respond to Plaintiffs' requests will result in
13  disclosure of home address, phone number, and other personal
14  information to Plaintiffs' counsel.

15      Plaintiffs cite *CBS., Inc. v. Block* to assert that all of
16  these records are open to public inspection and public disclosure
17  regardless of the presence of the aforementioned confidential
18  information.  42 Cal. 3d 646 (1986).  Plaintiffs' reliance on *CBS*
19  is misplaced.  There, the court held that "any information on the
20  applications and licenses that indicate times or places when the
21  licensee is vulnerable to attack may be deleted."  *Id.* at 653.
22  The *CBS* court recognized that the right to public inspection of
23  these documents is subject to the rights of privacy and safety of
24  the applicants.  The *CBS* court acknowledged the interest the
25  public has in ensuring that CCWs are issued impartially, but it
26  did not address the question of the home address and other
27  sensitive information of public servants in the criminal justice
28  setting.

9

1  Moreover, recent experience shows that documents produced in
2  the course of litigation may well end up in the hands of the
3  public.  Whether these disclosures are made accidentally, by
4  staff with access to an attorney's files, or by an attorney
5  seeking to use public pressure as a litigation tool is of no
6  moment to the affected non-litigants.

7  As drafted, the Magistrate Judge's Order provides disclosure
8  of this information for "attorney's and expert's eyes only."  The
9  only safeguard preventing widespread public disclosure of this
10 sensitive personal information is the assurance of Plaintiffs'
11 counsel.  The Court does not doubt Plaintiffs' counsel's
12 sincerity.  However, balancing the interests involved, the Court
13 finds that a protective order is necessary.  The applicants'
14 interest in privacy and the security of their persons and
15 families requires a more stringent safeguard than the assurance
16 of any one litigant.

17 For the reasons stated above, after considering the record
18 in its entirety the Court has a definite and firm conviction that
19 the Magistrate Judge does not go far enough to provide adequate
20 safeguards to prevent the public disclosure of information which
21 could endanger the lives of judicial and law enforcement
22 personnel.  Accordingly, the Court hereby grants Defendants'
23 Motion for a Protective Order.

24 Defendants may remove the home address and phone number,
25 social security number, date and place of birth, mother's maiden
26 name, and other sensitive information from the confidential
27 documents relating to applications for CCWs submitted by current
28 or former law enforcement and judicial personnel.

10

1   Defendants are ordered to include in the place of any removed

2   material, "(REMOVED BY DEFENDANTS)."  Additionally, Defendants

3   are ordered to receive and forward process from the Plaintiff to

4   any persons whose sensitive information has been removed.

5   Defendants are to forward the process to the home address of

6   those persons affected with written notification that failure to

7   respond will result in revelation of the applicants address to

8   Plaintiffs' counsel.

9       Plaintiffs may, for good cause, move for disclosure of

10  redacted information on an applicant by applicant basis.  The

11  Court must narrowly tailor discovery in this case to balance the

12  Plaintiffs' interest in developing their civil suit against the

13  paramount interest each member of the judicial and law

14  enforcement community has in preventing a retaliatory attack by

15  vigilantly guarding the location where they live and other

16  information that could facilitate physical harm to them or their

17  families.

18

19  **3.    Production of Information That Would Reveal Vulnerability**

20

21      Defendants next request that the Court reconsider the

22  Magistrate Judge's denial of Defendants' Motion for a Protective

23  Order permitting the removal of information revealing the times

24  and/or places that a CCW applicant may be vulnerable to attack.

25  Defendants' request is governed by Federal Rule of Civil

26  Procedure 26(c) and the standards set forth in section 2 of this

27  Order.

28  ///

11

1    Defendants again stress the relationship of this information

2  to the safety of CCW applicants.  As a part of the application

3  process, applicants are required to reveal the circumstances

4  which create a need for a CCW.  In doing so, applicants are

5  likely to reveal information such as times and places where they

6  transport large sums of money from a business to a bank, or the

7  fact that they travel alone at night in a remote area and have

8  been subject to stalking, domestic violence, or other serious

9  threats of victimization.

10    In the case of a businessperson, disclosure to the public of

11  the times and places when they regularly transport the proceeds

12  of their business would create an opportunity for an

13  exceptionally lucrative robbery and the ensuing temptation to

14  actually rob the applicant.  In the case of a stalking or repeat

15  domestic violence victim, revelation of times or places of

16  vulnerability could lead the applicant's tormentor to a long

17  sought-after opportunity to confront the applicant alone.  In

18  either case, avoiding just such a confrontation and possible

19  tragedy is both the reason the applicant sought a CCW and the

20  reason they have a powerful interest in keeping that information

21  strictly confidential.

22    As stated above in section 2, the internet's ability to make

23  this information widely available and easily found further

24  aggravates the potential harm from disclosure of this

25  information.  California has also recognized these persons'

26  interest in the confidentiality of this information, both

27  statutorily and in case law.  Cal. Gov't Code § 6254(u)(1); *CBS*,

28  42 Cal. 3d at 653.

12

ER 000027

1  Defendants have again identified a specific harm to non-litigants

2  if this information were disclosed to the public.

3      The Court must now balance the interests involved in order

4  to determine if a protective order is necessary.  Plaintiffs

5  assert that they need this information to independently review

6  the adequacy of the grounds for the issuance of each and every

7  one of the 3000 CCW applications involved.  Further they argue

8  that the Magistrate Judge's Order adequately protects the non-

9  litigants' interest.

10      Balancing the interests involved, the Court finds that a

11  protective order is necessary.  Plaintiffs' interest is

12  adequately served by other exhaustive discovery in this

13  litigation which does not intrude upon the privacy and security

14  interests of non-litigants as severely as disclosure of this

15  information would.

16      For the reasons set forth above, after considering the

17  record in its entirety the Court has a definite and firm

18  conviction that the Magistrate Judge did not go far enough to

19  provide adequate by not granting Defendants' request for

20  permission to remove information that will reveal the

21  vulnerability to attack of persons who have applied for a CCW.

22  Accordingly, the Court hereby grants Defendants' Motion for

23  Protective Order.  Defendants may remove such information from

24  the CCW applications and related documents disclosed to

25  Plaintiffs.  As with sensitive law enforcement and judicial

26  information, Defendants' are to include in the place of any

27  removed material, "(REMOVED BY DEFENDANTS)."

28  ///

13

1  Plaintiffs may, for good cause, move for disclosure of redacted

2  information on an applicant by applicant basis.

**4.    Production of Information that Could Lead to Identity Theft**

6     Defendants next request that the Court reconsider the

7  Magistrate Judge's denial of Defendants' Motion for Protective

8  Order permitting the removal of information that could lead to

9  identity theft including social security numbers, driver's

10 license numbers, and dates and places of birth.  This request is

11 spererate and different from Defendants' request regarding

12 Judical and Law Enforcement information in section 2 of this

13 Order.  Here, Defendants seek to remove information from

14 applications that belong to laypersons.  As above, Defendants'

15 request is governed by Federal Rule of Civil Procedure 26(c) and

16 the standards set forth in section 2 of this Order.

17    Defendants argue that public disclosure of this information

18 creates the risk of subjecting these non-litigants to identity

19 theft.  The applications may include social security numbers,

20 dates and places of birth, and mother's maiden names.  Public

21 disclosure of this information subjects lay applicants to a

22 heightened risk of fraud if it becomes public.  Given the

23 prevalence of identity theft and its far-reaching impact on its

24 victims, Defendants have met their burden of demonstrating a

25 specific harm from public disclosure of this information.

26 ///

27 ///

28 ///

14

1    Accordingly, the Court must now balance the interests to
2  determine if a protective order is necessary.  Plaintiffs argue
3  that they need this information to locate, contact, and depose
4  potential witnesses in this case.  They further argue that this
5  data is necessary in order to compare the list of persons and
6  entities which have donated to the Craig, Blanas, and McGinnis
7  campaigns for Sheriff with the list of persons granted CCWs.
8  However, Defendants are not seeking to remove the address or
9  phone number of persons on the donor lists.  This should provide
10 Plaintiffs with the information they need to locate and contact
11 any potential witnesses in this case.  Additionally, removal of
12 social security numbers and other identifying information may
13 cause Plaintiffs to expend more effort in identifying CCW
14 applicants whose companies have donated to the relevant political
15 campaigns, but other discovery in this action will permit them to
16 make such a comparison and to investigate any corporate donations
17 leading to personal benefits.  Plaintiffs' actual interest in the
18 information is in convenience in comparing donor lists to CCW
19 applicants.  Balancing the interests involved, the Court finds
20 that a protective order is necessary.

21    For the reasons set forth above, after considering the
22 record in its entirety the Court once again finds that the
23 Magistrate Judge did not go far enough to provide adequate by not
24 granting Defendants' request for permission to remove information
25 that will expose CCW applicants to the threat of identity theft
26 if disclosed to the public.  Accordingly, the Court hereby grants
27 Defendants' Motion for Protective Order.
28 ///

15

1  Defendants may remove such information from the CCW applications

2  and related documents disclosed to Plaintiffs.  Defendants' are

3  to include in the place of any removed material, "(REMOVED BY

4  DEFENDANTS)."  Plaintiffs may again, for good cause, move for

5  disclosure of redacted information on an applicant by applicant

6  basis.

7

8  **5.    Watermark To Ensure Compliance With Confidentiality Order**

9

10         Defendants also seek to include a substantial watermark

11  designed to prevent the unlawful reproduction and redistribution

12  of the confidential CCW applications and related documents

13  provided to Plaintiffs.  Pursuant to the Magistrate Judge's

14  Order, all such documents produced in the course of this

15  litigation are for attorneys' and experts' eyes only.  Neither

16  party has challenged this limitation on the use of these

17  materials.  The Magistrate Judge ordered the watermark removed

18  and in its place required a marginal notation of the case number.

19  Because Defendants are again seeking a Protective Order, this

20  request is also governed by Federal Rule of Civil Procedure 26(c)

21  and the standards set forth in section 2 of this Order.

22         Defendants argue that even the redacted versions of these

23  documents possess information about CCW applicants that is

24  confidential including home addresses, weapons owned, names of

25  current and former family members, and medical and psychiatric

26  histories.

27  ///

28  ///

16

ER 000031

1   Further, they point out that because of the sheer volume of

2   applications and related documents, it is likely that some

3   information ordered removed will still accidentally be disclosed

4   as part of these documents.  Moreover, the Defendants urge that

5   the marginal notation mandated by the Magistrate Judge could

6   easily be removed by anyone with a photocopier.  As a result,

7   Defendants contend it does not adequately ensure that these

8   documents will not be disseminated to persons outside of the

9   litigation.  As discussed above, Defendants have demonstrated

10  several specific harms that will result if this information is

11  distributed to the public including the invasion of the

12  applicants' privacy and threats to their security.

13       Plaintiffs argue that inclusion of the watermark makes it

14  difficult to read the documents.  Having reviewed a sample of the

15  proposed watermark, the Court finds it has no impact on the

16  readability of the text in the documents.  Because it is printed

17  in a hollow letter style, the ability to read the underlying text

18  is unaffected.  Balancing the interests involved, the Court finds

19  that a protective order is necessary.

20       For the reasons set forth above, after considering the

21  record in its entirety the Court grants Defendants' request for a

22  Protective Order to include a substantial watermark to prevent a

23  violation of the Order limiting the persons who may view them.

24  Defendants may include the watermark they proposed (Gorski – Do

25  Not Duplicate) in the font, size, and location indicated in

26  Exhibit A to Defendant's Request for Reconsideration on all CCW

27  applications and related confidential documents.

28  ///

17

ER 000032

1    Plaintiffs may move for disclosure of any information obscured by

2    the watermark in the unlikely event it should occur.

3

4    **6.    Plaintiffs' Interrogatory Eight**

5

6         Defendants also request the Court reconsider that portion of

7    the Magistrate Judge's order that requires Defendants to respond

8    to Plaintiffs' Interrogatory Eight ("Interrogatory Eight").

9    Defendants object to Interrogatory Eight on ground that answering

10   would involve comparing the information on 3000 applications for

11   CCWs, an unknown number of personnel records of Sheriff's

12   Department volunteers and reservists, and approximately 800 pages

13   of campaign contribution documents.  Defendants correctly point

14   out that the Federal Rules of Civil Procedure provide that a

15   party subject to such a request is not required to perform

16   compilation of data or statistics where the answers are within

17   documents provided and the propounding party is equally able to

18   make such a compilation.  FRCP 33(d).  However, Defendants are

19   required to answer based upon personal knowledge and that

20   information which is available to them.  FRCP 33(a).  Moreover,

21   Plaintiffs point out that several parts of Interrogatory Eight

22   request information that is not contained in any documents that

23   have been produced to Plaintiffs, such as unreported campaign

24   loans that were subsequently forgiven and names of persons who

25   formerly held the position of Honorary Deputy Sheriff.

26   ///

27   ///

28   ///

18

1    For the sake of clarity and to avoid further needless waste

2  of the Court's time, Defendants' response to Interrogatory Eight

3  shall comply with the following mandates of Federal Rule of Civil

4  Procedure 33: (1) Defendant Blanas is to answer all of the sub-

5  parts of Interrogatory Eight to the best of his personal

6  knowledge; (2) where the information sought by Interrogatory

7  Eight is known to employees of the Sheriff's Department,

8  contained within files maintained by the Sheriff's Department, or

9  is otherwise available to Defendants, they shall locate and

10  disclose the information; (3) where the information sought by

11  Interrogatory Eight is contained in records produced to the

12  Plaintiffs and the answer requires compilation that would be

13  equally burdensome to either party, Defendants shall so state and

14  shall specify which documents contain the information.

15

16  **7.    Request for Document Twenty-Eight**

17

18    Defendants last request reconsideration of those portions of

19  the Magistrate Judge's Order that require Defendants to produce

20  the disciplinary records of the deputy sheriffs involved in

21  arresting a CCW holder and political donor.  The material is to

22  be produced pursuant to a protective order to be proposed by the

23  parties.  Defendants argue that discovery of the material

24  contained within the files invades the privacy rights of the non-

25  litigant deputies involved and is over-broad because it seeks

26  information not relevant to the litigation.

27  ///

28  ///

19

ER 000034

1  Because the relevance inquiry will shape the interests involved
2  in the discovery, the Court will begin with the relevance of the
3  material requested.

4       "Relevance for purposes of discovery is defined very
5  broadly." *Garneau v. City of Seattle*, 147 F.3d 802, 812 (9th
6  Cir. 1998); *See Hickman v. Taylor*, 329 U.S. 495, 504–507 (1947).
7  To prove their claim under 42 U.S.C. § 1983, Plaintiffs seek to
8  establish a constitutional violation pursuant to a longstanding
9  practice or custom. *See Trevino v. Gates,* 99 F.3d 911, 918 (9th
10  Cir 1996). Specifically, Plaintiffs seek to prove that there has
11  been a longstanding practice of issuing CCWs to political donors
12  and denying them to deserving persons who did not contribute to
13  the Craig, Blanas, and McGinnis campaigns.

14       Plaintiffs have produced a Sheriff's Department report of
15  the arrest of James Colafrancesco ("the Report") for the rude or
16  threatening display of a firearm. Pls.' Ex. F.  The Report
17  indicates that during the course of the arrest, deputies
18  discovered that Mr. Colafrancesco possessed an official "Honorary
19  Deputy" badge, a Sacramento County Sheriff's Department
20  identification card signed by Sheriff Glenn Craig, and CCW signed
21  by Sheriff Craig.  Pls.' Ex. F at 2–4.  Upon inquiry as to why he
22  possessed the credentials and CCW, Colafrancesco indicated that
23  they were given to him in return for his status as a "major
24  contributor of Lou Blanas and Glen Craig."  Pls.' Ex. F at 2, 4.
25  Colafrancesco indicated that his occupation was contractor and
26  claimed no law enforcement duties related to his possession of
27  official Sheriff's Department identification, badge, and CCW.
28  ///

20

ER 000035

1   Throughout the detention and arrest, Colafrancesco requested the

2   arresting Deputy contact Undersheriff Blanas and other high

3   ranking Sheriff's Department officials to, "sweep this under the

4   rug." Pl.'s Ex. F at 4.  In an act of even-handed enforcement

5   without fear or favor, the deputy refused to contact high ranking

6   officials within his own department to solicit their

7   interference, despite Colafrancesco's alleged political

8   connections to Blanas and Craig.  *Id.*  According to Plaintiffs,

9   rather than praise the deputy for his scrupulous adherence to his

10  oath, Defendants immediately transferred him to a much less

11  desirable position guarding low-security inmates at the Rio

12  Cosumnes Correctional Center in Elk Grove.  Pls.' Opp'n at 44.

13  Plaintiffs contend that the disciplinary transfer was in

14  retaliation for the deputy's failure to give appropriate

15  deference to a political donor to Blanas and Craig.  *Id.*

16      The material sought to be discovered pursuant to Request

17  for Document Twenty-Eight is relevant to this claim in several

18  ways: (1) Defendants' alleged disciplinary transfer of the deputy

19  involved and any other subsequent adverse employment action lends

20  further weight to Colafrancesco's revelations of political

21  corruption and *quid pro quo* issuance of CCWs and official

22  Sheriff's Department identification and badges; (2) Defendants'

23  disciplinary transfer of the deputy supports Colafranceso's claim

24  that Blanas and other high-ranking Sheriff's Department officials

25  allegedly knew of and were involved in the corruption.

26  ///

27  ///

28  ///

21

1   It demonstrates that they actively worked to conceal the

2   corruption by punishing subordinates who took actions that

3   negatively affected Defendants' ability to continue and conceal

4   the corruption.  The material is highly relevant to Plaintiffs'

5   claims of a longstanding practice of *quid pro quo* issuance of

6   CCWs to political donors to the Craig, Blanas, and McGinnis

7   campaigns in violation of the Fourteenth Amendment to the United

8   States Constitution.

9        Having found the material at issue highly relevant to the

10  core of Plaintiffs claim, the Court now turns to the question of

11  confidentiality.

12       Federal common law recognizes a qualified privilege for
         official information.  Government personnel files are
13       considered official information.  To determine whether
         the information sought is privileged, courts must weigh
14       the potential benefits of disclosure against the
         potential disadvantages.  If the latter is greater, the
15       privilege bars discovery.

16  *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1033-34 (9th Cir.

17  1990) (internal citations omitted).

18       As in *Sanchez,* Plaintiffs seek discovery of information

19  contained in the law enforcement personnel files of persons not

20  parties to the instant litigation.  As described above, the

21  Plaintiffs have a substantial interest in discovery of this

22  information.  Discovery of this information also implicates the

23  interests of all citizens: exposing and ending political

24  corruption by the elected leaders of local law enforcement is in

25  the interest of everyone living in Sacramento County.

26       Defendants point out that the deputy in question is a non-

27  litigant with a weighty privacy interest in avoiding disclosure

28  of his confidential personnel records.

22

1  Defendants correctly point out that California Penal Code section

2  832.7, California Evidence Code section 1043, and 5 U.S.C. §

3  552(b)(6) all demonstrate the legitimacy of non-litigants'

4  interest in maintaining the privacy of personnel records which

5  include personal information about the non-litigant that is

6  unrelated to this case. .The Ninth Circuit has also recognized

7  this important interest, specifically in the context of law

8  enforcement personnel files. *Sanchez,* 936 F.2d at 1033.

9      Balancing the potential benefits of disclosure against the

10 potential disadvantages, the disadvantages are outweighed,

11 particularly in light of the Court's ability, as discussed below,

12 to craft a protective order that can minimize the impact on the

13 non-litigants' interests.  Accordingly, the information is not

14 privileged and is discoverable.

15     As with the private law enforcement and judicial information

16 discussed in section 2 of this Order, the contents of law

17 enforcement personnel files may include the home address, social

18 security number, and other information that could subject the

19 deputy or his family to a retaliatory attack at his residence.

20 Additionally, the files may contain financial, medical, and other

21 information about the deputy that is private, potentially

22 embarrassing, and not relevant to this litigation.  Disclosure of

23 those materials to the public would constitute a specific harm to

24 the non-litigant if this information is disclosed to the public.

25 Accordingly, the Court must balance the public and private

26 interests to determine if a protective order is necessary.

27 ///

28 ///

23

1       As mentioned above, the public interest in this case is

2   weighty.  Revelation and eradication of public corruption is an

3   absolute necessity in a free society.  However, as explored

4   above, the non-litigant's interest in privacy and security is

5   also strong.  Balancing the interests involved, the Court finds a

6   protective order is necessary in order to accommodate both of

7   these important interests.

8       Defendants are hereby ordered to produce, for *in camera*

9   review, all personnel records relating to the deputy or deputies

10  involved in the Colafrancesco incident.  The Magistrate Judge can

11  then determine what portions of the personnel records are

12  relevant to this action and thus discoverable, and what portions

13  are irrelevant or include confidential personal information that

14  is not to be released to Plaintiffs or their counsel.

15

16  **CONCLUSION**

17

18      For the reasons set for above the Defendants Motion for

19  Reconsideration is granted.

20      IT IS SO ORDERED.

21  Dated: March 27, 2007

22

23

24  MORRISON C. ENGLAND, JR.
    UNITED STATES DISTRICT JUDGE

25

26

27

28

24

ER 000039